**IN THE UNITED STATES DISTRICT COURT**

**SOUTHERN DIVISION OF TEXAS**

**HOUSTON DIVISION**

|  |  |
|---|---|
| **ANDREW ROACH,** | ) |
| *PLAINTIFFS* | ) |
|  | ) |
|  | ) CIVIL ACTION NO. <u>4:25-CV-03221</u> |
| **V.** | ) |
| **COLUMBIA DEBT RECOVERY,** | ) |
| <u>*DEFENDANT*</u> | ) |

## <u>PLAINTIFF'S AMENDED ORIGINAL PETITION</u>

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW,** Andrew Roach, (hereinafter referred to as "Plaintiff"), files this

Amended Original Petition complaining of Columbia Debt Recovery LLC (Doing Business As,

'Genesis') (hereinafter referred to as "Defendant"). Defendant Columbia Debt Recovery LLC is

in DEFAULT under Tex. R. Civ. P. and NO Answer or pleading has been filed at the time of this

filing; and for cause of action(s) would respectfully show unto the Court as follows:

### I.    <u>STATEMENT OF RELIEF SOUGHT</u>

**1.** Plaintiff seeks monetary relief within the jurisdictional limits of this court.

### II.    <u>DISCOVERY CONTROL PLAN</u>

**2.** Pursuant to Rule 190.3 and 190.4 of the Texas Rules of Civil Procedure, discovery is
intended to be conducted under Level 2.

**3.** Required Initial Disclosures. Pursuant Rule 194 of the Tex. R. Civ. P., Defendant is required
to disclose within thirty (30) days of after filing general appearance; '.. A party that is first

served or otherwise joined after general appearance must male the initial disclosures within thirty (30) days after being served or joined..' the information described in Rule 194. of the Tex. R. Civ. P.

## III. PARTIES

4. Plaintiff, Andrew Roach is an individual residing in Harris County, Texas.

5. Defendant(s), Columbia Debt Recovery LLC (Doing Business As 'Genesis'), is a limited liability company organized under the governing laws of the State of Washington and has it's headquarters at 906 SE Everett Mall Way, Suite 301, Everett, WA 98208, United States. Defendant may be served with process by serving its registered agent, Corporation Service Company, located at 300 Deschutes Way SW, Ste 208 Mc-CSC1, Tumwater, WA 98501, and/ or wherever any authorized agent may be found. *Exhibit-A through Q.*

6. In the event any parties are misnamed or are not included herein, it is Plaintiff's contention that such was a "misidentification", "misnomer", and/ or such parties were "alter egos" of parties named herein. Alternatively, Plaintiff contends that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice.

## IV. JURISDICTION AND VENUE

7. This Court has personal jurisdiction, both specific and general, over Defendant and Defendant is amenable to service by a Texas Court. Additionally, venue is proper in Harris County Texas because it is the county in which all or substantial part of the events and omissions giving rise to Plaintiff's claims occurred in Harris County, Texas.

## V. STATEMENT OF MATERIAL FACTS

8. On or about January 2025, Defendant began reporting an alleged debt account to one or more consumer reporting agencies under Plaintiff's name without providing any evidence of a valid creditor-debtor relationship.

9. On April 1, 2025, Plaintiff served Defendant with a Formal Cease and Desist Letter and Demand for Verification and Validation of Debt pursuant to applicable federal laws including 15 U.S.C. § 1692g(b) and 15 U.S.C. § 1681e(b). Said notice was delivered via certified USPS and registered electronic mail. A copy of the Formal Notice that was served on the Defendant's is attached hereto, **Exhibit-A.**

10. In response, on April 30, 2025, Defendant mailed to Plaintiff a copy of a contract between "Andrew Roach" and a third party, Kennect Phoenix, ***not "Columbia Debt Recovery",*** and ***failed*** to provide any evidence that Columbia owned, was assigned, or had any lawful authority to collect on the alleged debt; and or any legal authentication of Plaintiff. A copy o the mailing envelope and the contents of what the Defendants responded to Plaintiff's Exhibit-A with on April 30, 2025, are attached hereto as, **Exhibit-B.**

11. Despite this, Defendant continued reporting the collection account monthly through the date of this Petition and continuing subsequent hereinafter, without correction, verification, or deletion. Plaintiff's redacted credit report as of June 1, 2025, attached hereto as **Exhibit-C.**

12. Defendant failed to provide required documentation **under state and federal law**, thereby exposing Plaintiff to false credit reporting, reputational harm, and denial of financial opportunities; attached hereto as, **Exhibit-D,** Plaintiff's sworn testimony that the Exhibit(c) attached hereto are all a true and correct copy of the documents.

**13.** Moreover, in direct response to Plaintiff's Formal Cease and Desist and Verification Demand dated April 1, 2025, Defendant, on or about April 30, 2025, mailed to Plaintiff a purported contract executed between Plaintiff, **"Andrew Roach"**, and an unrelated third party, **"Kennect Phoenix"**. Critically, this instrument made *no reference* **whatsoever to Defendant, Columbia Debt Recovery, LLC**, *nor* did it reflect any assignment, sale, or lawful transfer of interest authorizing Defendant to collect or report on the alleged obligation; *nor* did it provide any sworn verification or authentication identifying Plaintiff as legally obligated to **Columbia Debt Recovery.** *(emphasis added).* **Exhibit-C.**

**14.** Notwithstanding the absence of such foundational documentation, Defendant **continued to report** the subject account as a derogatory collection tradeline to one or more consumer reporting agencies on a **recurring monthly basis** from **January 2025 through the present,** and upon information and belief, intends to persist in such reporting unless enjoined.

**15.** Defendant's continued failure to comply with Plaintiff's Formal Cease and Desist Letter—specifically, its refusal to provide the requisite legal documentation establishing ownership, assignment, or lawful authority to collect the alleged debt—constitutes a deliberate and deceptive act. Instead of complying with federal and state verification mandates, Defendant responded by producing documentation identifying an entirely separate legal entity, **Kennect Phoenix**, and subsequently sought to induce Plaintiff into performance under that unrelated agreement. This misrepresentation was sent directly to Plaintiff's legal address in **Harris County, Texas**, thereby invoking the jurisdiction of this Court.

**16.** As a direct and proximate result of Defendant's unlawful misreporting, and its continued refusal to verify, correct, or delete the disputed tradeline in accordance with federal and state law, **Plaintiff was denied a substantial and time-sensitive business opportunity** on or about **May 1, 2025.** Specifically, Plaintiff sought to engage in the **acquisition, sale, or transfer of a corporate entity,** the

value of which exceeded **$117,000.00,** but was ultimately declined by third-party investor(s) or an investment group upon review of Plaintiff's credit profile. Investor(s) and Investment Group(s), Jane Doe and John Doe, (hereinafter referred to as **"Interested Parties")** redacted sworn testimony is attached hereto as Exhibit-E, testifying that the "Collection(s)" accounted reported to Plaintiff's credit report file by Defendant(s), dissolve any and all acquisition of Ariv Holdings LLC. Interested Parties swore in **Exhibit-E** to their intentions of executing such acquisition of but not limited to Ariv Holdings LLC in the amount of $117,000.00 USD and accompanied investment portfolio effective July 1, 2025, but such representation made by Defendants deterred such. **Exhibit-E.**

17. Said denial was expressly based on the negative and inaccurate credit data furnished by Defendant to one or more consumer reporting agencies. The collapse of this transaction constitutes a **material, quantifiable, and foreseeable injury** to Plaintiff's financial standing, business credibility, and overall market position, directly traceable to Defendant's statutory violations and tortious conduct. Such investor(s) and investment group(s) intend to provide sworn testimony in this Cause.

18. Plaintiff has thus suffered egregious and ongoing damages arising from Defendant's unlawful conduct, including lost business opportunities, reputational harm, and financial destabilization. **Supporting documentation** substantiating the value and terms of the declined transaction, and the correspondence relating to the denial by the investment party or parties, **will be filed under seal** in accordance with **Texas Rule of Civil Procedure 76a** to preserve confidentiality and proprietary interest. **Exhibit-E. Exhibit-A,B,C, and D.**

# VI. CAUSES OF ACTION

## COUNT I – TEXAS DEBT COLLECTION ACT § 392.001

**19.** Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section V. Statement of Material Facts. Texas Debt Collection Act (TDCA), Tex. Fin. Code § 392.001 et seq.

**20.** This cause of action arises under the Texas Debt Collection Act (TDCA), codified at Tex. Fin. Code §§ 392.001 et seq., which prohibits debt collectors from using false, misleading, or abusive means to collect consumer debts. Plaintiff is a "consumer" under § 392.001(1), and Defendant is a "debt collector" under § 392.001(6). **Exhibit-A. Exhibit-B.**

**21.** Defendant knowingly violated multiple provisions of the TDCA, including but not limited to:

   a. § 392.202, by failing to conduct an investigation and correct or delete inaccurate tradeline information after receipt of Plaintiff's written dispute on April 1, 2025;

   b. § 392.304(a)(8), by misrepresenting the ownership, character, amount, and legal status of the alleged debt;

   c. § 392.304(a)(19), by employing false and deceptive practices in attempting to collect a debt it did not own, and could not lawfully enforce;

**22.** Defendant did not produce any valid assignment, bill of sale, or other competent legal documentation evidencing its ownership or authority to collect the alleged debt. Instead, it submitted a contract involving a third party, Kennect Phoenix, in which Defendant is not named. This constitutes a per se violation of the Act and demonstrates deceptive conduct.

**23.** As a proximate result of Defendant's conduct, Plaintiff suffered economic harm, loss of a

business transaction exceeding $117,000, reputational damage, and mental anguish. Plaintiff

seeks actual damages, statutory damages, injunctive relief, attorneys' fees, and costs of court

under Tex. Fin. Code § 392.403(a)(2), § 392.403(b). *(emphasis added).* **Exhibit-A and E.**

**24.** Plaintiff seeks judgment of this Court for actual damages, consequential damages, punitive

damages, exemplary damages, prejudgment interest, and costs of Court.

## COUNT II- TEXAS DECEPTIVE TRADE PRACTICES ACT (DTPA) § 17.41

**25.** Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section

V. Statement of Material Facts. Texas Deceptive Trade Practices Act (DTPA) § 17.41 et seq.

**26.** Plaintiff is a "consumer" under the Texas DTPA, having sought services related to credit and

debt collection for personal purposes. Defendant's actions, as set forth in Section V, constitute

false, misleading, and deceptive acts under Tex. Bus. & Com. Code § 17.46(b), including: (1)

Misrepresenting the existence of a valid debt; (2) Falsely claiming to possess the legal

authority to collect the debt; (3) Reporting inaccurate credit information despite statutory

disputes. **Exhibit-A. Exhibit-B.**

**27.** Defendant's conduct violates the DTPA through incorporation of the TDCA under Tex. Fin.

Code § 392.404. Plaintiff seeks actual damages, treble damages upon proof of knowing

violations, and attorneys' fees. **Exhibit-A. Exhibit-B.**

## COUNT III- FRAUD MISREPRESENTATION

**28.** Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section III. Statement of Material Facts. Fraud Misrepresentation. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of America*, 341 S.W.3d 323, 337 (Tex. 2011), *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (per curiam). ***SPEP Aircraft Holdings, LLC et al. v. Bombardier Aerospace Corporation***, Cause No. DC-12-14739, in the 44th Judicial District Court of Dallas County, Texas. ***Bombardier Aerospace Corporation v. SPEP Aircraft Holdings, LLC, et al.,*** Cause No. 05-16-00086-CV, Fifth Court of Appeals, Dallas, Texas. To establish fraud under Texas law, Plaintiff must show: (1) a material misrepresentation, (2) made with knowledge of its falsity or recklessness, (3) with intent to induce reliance, (4) actual and justifiable reliance by Plaintiff, and (5) injury resulting from that reliance. **Exhibit-A. Exhibit-B.**

**29.** Defendant Columbia Debt Recovery, LLC made an affirmative material misrepresentation by transmitting to Plaintiff a written communication, purporting to verify the existence and validity of a debt allegedly owed by Plaintiff. In this communication, Defendant produced an instrument—namely, a purported contract between Plaintiff and a third party, Kennect Phoenix—representing it as proof of indebtedness to Columbia. However, Columbia was not a party to that contract, nor did the document contain any reference to Columbia, nor any assignment or bill of sale evidencing legal authority to enforce or collect on the alleged obligation. This submission was intended to induce Plaintiff to believe that Columbia was a valid and lawful creditor. **Exhibit-D.**

**30.** At the time this representation was made, Defendant knew or should have known that the information it was providing was false, incomplete, and misleading. Defendant either possessed no legal documentation to support its claim of ownership of the alleged debt or knowingly omitted the material fact that no such transfer or assignment ever occurred. By presenting a third-party contract as though it substantiated its own collection rights, Defendant acted with at minimum a reckless disregard for the truth, if not with actual knowledge of the falsity of its claim. **Exhibit-A. Exhibit-B. Exhibit-D.**

**31.** Defendant intended for Plaintiff to rely on this false representation to deter or delay legal action and to continue collection efforts under the false pretense of creditor status. Plaintiff justifiably relied on this misrepresentation by deferring immediate litigation and by undertaking further attempts to administratively resolve the dispute. At the time, Plaintiff had no access to documentation establishing the falsity of Columbia's claim and reasonably interpreted the response as indicative of a genuine, enforceable debt. As a result of the Plaintiff relying on the materials provided by Columbia Debt Recovery, Plaintiff has initiated this lawsuit to address such misrepresentations or representations made by Defendant.

**32.** As a direct and proximate result of Defendant's fraudulent misrepresentation, Plaintiff sustained actual and consequential damages. These include reputational harm, emotional distress, financial loss, and the loss of a significant business transaction exceeding $117,000. The misrepresentation of debt ownership and the continued reporting of inaccurate credit information materially impaired Plaintiff's creditworthiness and contributed to Plaintiff's exclusion from an investment opportunity that was both time-sensitive and financially significant. **Exhibit-C. Exhibit-E.**

**33.** Under Texas law, fraud of this nature supports an award of actual damages, consequential

damages, and exemplary damages under Tex. Civ. Prac. & Rem. Code § 41.003(a), as

Defendant's conduct was knowing, intentional, and fraudulent. The record, as pleaded and to

be further supported by documentary evidence and witness testimony, shows a calculated

effort by Defendant to mislead and manipulate Plaintiff in violation of established legal

duties. Accordingly, Plaintiff respectfully requests that this Court enter judgment in favor of

Plaintiff on this count, and award all such legal and equitable relief as is just and proper.

## COUNT IV- FRAUD NON-DISCLOSURE

**34.** Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section

V. Statement of Material Facts. Fraud Non-Disclosure. *Italian Cowboy Partners, Ltd. v.*

*Prudential Ins. Co. of America*, 341 S.W.3d 323, 337 (Tex. 2011), *Aquaplex, Inc. v. Rancho*

*La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (per curiam). ***SPEP Aircraft Holdings,***

***LLC et al. v. Bombardier Aerospace Corporation***, Cause No. DC-12-14739, in the 44th

Judicial District Court of Dallas County, Texas. ***Bombardier Aerospace Corporation v.***

***SPEP Aircraft Holdings, LLC, et al.,*** Cause No. 05-16-00086-CV, Fifth Court of Appeals,

Dallas, Texas.

**35.** Under Texas law, fraud by non-disclosure arises where: (1) the defendant failed to disclose

material facts, (2) the defendant had a duty to disclose, (3) the facts were known to the

defendant, (4) the plaintiff did not know of the facts, (5) the defendant intended to induce the

plaintiff to act or refrain from acting, and (6) the plaintiff relied and suffered damages.

**36.** When a party voluntarily makes a partial disclosure or communicates in a manner intended to induce reliance, a **duty to disclose the whole truth** arises. See *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001). **Exhibit-A. Exhibit-B.**

**37.** Here, Defendant Columbia Debt Recovery, LLC, had both a **common law and statutory duty** to disclose whether it owned, was assigned, or had any legal authority to collect on the alleged debt when it received a formal **written dispute and demand for verification** from Plaintiff pursuant to **15 U.S.C. § 1692g(b)** of the **Fair Debt Collection Practices Act (FDCPA)** and **15 U.S.C. § 1681i** and **§ 1681s-2(b)** of the **Fair Credit Reporting Act (FCRA).**

    a. **15 U.S.C. § 1692g(b)** requires that upon receipt of a consumer's written dispute, a debt collector "shall cease collection… until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor."

    b. **15 U.S.C. § 1681s-2(b)** mandates that, after notice of a dispute, the furnisher of credit information must "conduct an investigation with respect to the disputed information," "review all relevant information provided by the consumer reporting agency," and "report the results of the investigation to the consumer reporting agency."

    c. **Tex. Fin. Code § 392.202(a)** provides that a consumer may dispute the accuracy of a debt and request correction; subsection (b) imposes a duty on the debt collector to investigate and notify the consumer of results within 30 days.

**38.** In response to Plaintiff's formal notice dated April 1, 2025, Defendant produced a contract between Plaintiff and a third-party entity, **Kennect Phoenix**, which neither referenced

Columbia Debt Recovery, LLC, nor contained any assignment, bill of sale, or legal transfer of interest. Defendant failed to disclose that it lacked privity of contract and had no valid creditor status — facts which were material and exclusively within Defendant's knowledge.

**39.** Despite the absence of ownership or legal authority to collect, Defendant continued to report the alleged debt to one or more consumer reporting agencies, thereby inducing Plaintiff to refrain from further legal action or additional dispute filings, and causing harm including lost business opportunity exceeding $117,000 and reputational injury. **Exhibit-E. Exhibit-B.**

**40.** This nondisclosure was knowing and intentional. By providing partial documentation without full disclosure of its lack of legal standing or debt ownership, Defendant triggered a duty to disclose the whole truth under Texas law. See *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997). ***SPEP Aircraft Holdings, LLC et al. v. Bombardier Aerospace Corporation***, Cause No. DC-12-14739, in the 44th Judicial District Court of Dallas County, Texas. ***Bombardier Aerospace Corporation v. SPEP Aircraft Holdings, LLC, et al.,*** Cause No. 05-16-00086-CV, Fifth Court of Appeals, Dallas, Texas. **Exhibit-C. Exhibit-B.**

**41.** Plaintiff respectfully requests judgment against Defendant for actual damages, consequential damages, punitive and exemplary damages, pre- and post-judgment interest, and all costs of court. **Exhibit-A. Exhibit-B. Exhibit-C. Exhibit-D. Exhibit-E.**

**42.** WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully avers that the foregoing causes of action—each independently and collectively—establish Defendant's knowing, willful, and unlawful conduct under Texas and federal law, including but not limited to the Texas Debt Collection Act, Texas Deceptive Trade Practices Act, Fair Credit Reporting Act, Fair Debt Collection Practices Act, and Texas common law principles of fraud and non-disclosure.

## IV.    DAMAGES

**43.** As a result of Defendants actions and omissions as set forth herein, Plaintiffs sustained the
following damages, for which Plaintiffs seek judgment against Defendants:

   a.    Actual damages in the amount of $117,000.00

   b.    Statutory Damages;

   c.    Exemplary Punitive damages;

   d.    Pre-judgment penalty and post judgment interest; and

   e.    Reasonable expenses and costs of court.

## V. EXEMPLARY DAMAGES

**44.**  Additionally, Plaintiff would show that Defendants actions were intentional, fraudulent,
malicious, and in bad faith, justifying the imposition of exemplary damages against
Defendants.

## VI. CONDITIONS PRECEDENT SATISFIED

**45.** Plaintiff has fully or substantially performed all acts necessary to perfect and establish all
claims and causes of action asserted in this lawsuit.

**46.** All conditions precedent to Plaintiff's right to recover on any of the claims and causes of
action asserted in this lawsuit have been discharged, satisfied or fully performed.

## VII. RULE 47 STATEMENT

**47.** Pursuant to Rule 47(b) of the Texas Rules of Civil Procedure, damages are within he
jurisdictional limits of this Court. Further, Plaintiff is required by Rule 47(c) to state the
dollar amount of damages that represent Plaintiff's harms and losses due to Defendant's
conduct. The legislative history of this requirement indicates that it is for record-keeping

purposes, and statistical purposes only, for lawsuits filed in the State of Texas. Plaintiff's counsel states that Plaintiff seeks monetary relief, of which the maximum harms, losses, and damages of any type are less than $200,000 at this time. The amount of monetary relief actually accessed by the Honorable Judge, however, will ultimately be determined by the fact-finder after hearing all the evidence presented.

## VIII. NON-JURY TRIAL

**48.** The Plaintiff hereby requests a non-jury trial, trial by Honorable Judge pursuant to Rule 216 of Texas Rules of Civil Procedure. Furthermore, Plaintiff respectfully reserves their right to a jury trial in this matter should such be deemed appropriate at a latter stage.

## IX. PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs respectfully pray that Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendants as follows:

a) Upon trial, judgment against Defendants for the full amount of Plaintiffs' actual damages (past, future, special, direct) and Statutory damages as found by the trier of facts;

b) Exemplary Punitive damages as found by the trier of facts;

c) Prejudgment and post-judgment interest at the highest lawful rates in Harris County, Texas.

d) All costs of court;

e) Any and all further relief to which Plaintiff may be entitled at law or in equity.

Respectfully Submitted,

/S/. *Andrew Roach*

Andrew Roach, Plaintiff, Pro Se,

2917 Lake Forest Dr, Upper Marlboro, MD 20774

P: 424-420-5550 / drewroach37@gmail.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a correct, true and full copy of the foregoing has been served on all Parties, in

this Cause, in this action.

Respectfully Submitted,

/S/. ***Andrew Roach***

Andrew Roach, Plaintiff, Pro Se,

2917 Lake Forest Dr, Upper Marlboro, MD 20774

P: 424-420-5550 / drewroach37@gmail.com

|  |  |  |
|---|---|---|
| | ) | |
| **ANDREW ROACH,** | ) | |
| *PLAINTIFFS* | ) | |
| | ) | **CIVIL ACTION NO. 4:25-CV-03221** |
| **V.** | ) | |
| **COLUMBIA DEBT RECOVERY,** | ) | |
| *DEFENDANT* | ) | |



**A**

COPY OF PLEADING PROVIDED BY PLTD

6/26/2025 3:13 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 102486209
By: Jasmine Garner
Filed: 6/26/2025 3:13 PM

CAUSE NO. 202538552
RECEIPT NO. 32934    0.00   ATY
   TR # 74490452

PLAINTIFF: ROACH, ANDREW
vs.
DEFENDANT: COLUMBIA DEBT RECOVERY (DBA GENESIS)

In The 125th
Judicial District Court
of Harris County, Texas
125TH DISTRICT COURT
Houston, TX

CITATION

THE STATE OF TEXAS
County of Harris

TO: COLUMBIA DEBT RECOVERY (DBA GENESIS) (LIMITED LIABILITY COMPANY) MAY
BE SERVED BY SERVING ITS REGISTERED AGENT CORPORATION SERVICE COMPANY
OR WHEREVER ANY OTHER DULY AUTHORIZED OFFICER OR AGENT MAY BE FOUND
300 DESCHUTES WAY SW STE 208 MC-CSCI   TUMWATER WA 98501
Attached is a copy of PLAINTIFF'S ORIGINAL PETITION

This instrument was filed on the 2nd day of June, 2025, in the above cited cause number
and court. The instrument attached describes the claim against you.

YOU HAVE BEEN SUED, You may employ an attorney. If you or your attorney do not file a
written answer with the District Clerk who issued this citation by 10:00 a.m on the Monday
next following the expiration of 20 days after you were served this citation and petition,
a default judgment may be taken against you. In addition to filing a written answer with the
clerk, you may be required to make initial disclosures to the other parties of this suit. These
disclosures generally must be made no later than 30 days after you file your answer with the
clerk. Find out more at TexasLawHelp.org.

TO OFFICER SERVING:
This citation was issued on 5th day of June, 2025 under my hand and
seal of said Court.

Issued at request of:
ROACH, ANDREW
2917 LAKE FOREST DR
UPPER MARLBORO, MD 20774
Tel: (424) 420-5550
Bar No.: 1

Mari Burgen
MARILYN BURGESS, District Clerk
Harris County, Texas
201 Caroline, Houston, Texas 77002
(P.O. Box 4651, Houston, Texas 77210)

Generated By: LAWSON, CHANDRA K 22D//12869306

OFFICER/AUTHORIZED PERSON RETURN

Came to hand at 0913 o'clock A.M. on the 10th day of June, 2025.
Executed at (address) 300 Deschutes Way SW Ste 208 in
Thurston County at 1045 o'clock A.M., on the 13th day of June,
2025, by delivering to Ellen Jones/Customer Representative defendant, in person, a
true copy of this Citation together with the accompanying 1 copy(ies) of the
Citation, petition 202538552 Petition
attached thereto and I endorsed on said copy of the Citation the date of delivery.
To certify which I affix my hand officially this 13th day of June, 2025.

FEE: $ 100.00

Thurston County Sheriffs Office
of Thurston County, Texas WA

By R Russell
Deputy

_____
Affiant

Deputy Ryan Russell, known to me to be the person whose
appears on the foregoing return, personally appeared. After being by me duly sworn,
that this citation was executed by him/her in the exact manner recited on the

SWORN TO AND SUBSCRIBED BEFORE ME, on this 13 day of June, 2025.

_____
Notary Public

*74490452*

COPY OF PLEADING PROVIDED BY PLTD

CAUSE NO. 202538552
RECEIPT NO. 32934                    0.00        ATY
**********                    TR # 74490452

PLAINTIFF: ROACH, ANDREW                          In The   125th
        vs.                                       Judicial District Court
DEFENDANT: COLUMBIA DEBT RECOVERY (DBA GENESIS)   2025 JUN 1 of Harris County, Texas
                                                  125TH DISTRICT COURT
                                                  Houston, TX

                          CITATION        RECEIVED

THE STATE OF TEXAS
County of Harris

TO: COLUMBIA DEBT RECOVERY (DBA GENESIS) (LIMITED LIABILITY COMPANY) MAY
    BE SERVED BY SERVING ITS REGISTERED AGENT CORPORATION SERVICE COMPANY
    OR WHEREVER ANY OTHER DULY AUTHORIZED OFFICER OR AGENT MAY BE FOUND
    300  DESCHUTES WAY SW STE 208 MC-CSCI   TUMWATER  WA  98501
    Attached is a copy of PLAINTIFF'S ORIGINAL PETITION

This instrument was filed on the 2nd day of June, 2025, in the above cited cause number
and court. The instrument attached describes the claim against you.

    YOU HAVE BEEN SUED. You may employ an attorney. If you or your attorney do not file a
written answer with the District Clerk who issued this citation by 10:00 a.m. on the Monday
next following the expiration of 20 days after you were served this citation and petition,
a default judgment may be taken against you. In addition to filing a written answer with the
clerk, you may be required to make initial disclosures to the other parties of this suit. These
disclosures generally must be made no later than 30 days after you file your answer with the
clerk. Find out more at TexasLawHelp.org.

TO OFFICER SERVING:

    This citation was issued on 5th day of June, 2025, under my hand and
seal of said Court.

Issued at request of:                     MARILYN BURGESS, District Clerk
ROACH, ANDREW                             Harris County, Texas
2917  LAKE FOREST DR                       201 Caroline, Houston, Texas 77002
UPPER MARLBORO, MD  20774                  (P.O. Box 4651, Houston, Texas 77210)
Tel: (424) 420-5550
Bar No.:  1

                                          Generated By: LAWSON, CHANDRA K  2ZD//12869306

                    OFFICER/AUTHORIZED PERSON RETURN

Came to hand at _____ o'clock ____.M., on the _____ day of _____, _____.

Executed at (address) _____ in

_____ County at _____ o'clock ____.M., on the _____ day of _____,

_____, by delivering to _____ defendant, in person, a

true copy of this Citation together with the accompanying _____ copy(ies) of the

_____ Petition

attached thereto and I endorsed on said copy of the Citation the date of delivery.
To certify which I affix my hand officially this _____ day of _____, _____.

FEE: $_____

                              _____

                              _____ of _____County, Texas


_____          By _____
        Affiant                                  Deputy

On this day, _____, known to me to be the person whose
signature appears on the foregoing return, personally appeared. After being by me duly sworn,
he/she stated that this citation was executed by him/her in the exact manner recited on the
return.

SWORN TO AND SUBSCRIBED BEFORE ME, on this _____ day of _____, _____.

                              _____
                                      Notary Public

N.INT.CITD.P                    *74490452*

**ANDREW ROACH,** §     HONORABLE COURT _125_,

***PLAINTIFFS***

**V.** §     **DISTRICT COURT,**

**COLUMBIA DEBT RECOVERY,** §

***DEFENDANT*** §     **HARRIS COUNTY, TEXAS.**

## PLAINTIFF'S ORIGINAL PETITION

### TO THE HONORABLE JUDGE OF SAID COURT:

**COMES NOW,** Andrew Roach, (hereinafter referred to as "Plaintiff"), files this Original Petition complaining of Columbia Debt Recovery LLC (Doing Business As, 'Genesis') (hereinafter referred to as "Defendant"), and for cause of action(s) would respectfully show unto the Court as follows:

### I. STATEMENT OF RELIEF SOUGHT

1. Plaintiff seeks monetary relief within the jurisdictional limits of this court.

### II. DISCOVERY CONTROL PLAN

2. Pursuant to Rule 190.3 and 190.4 of the Texas Rules of Civil Procedure, discovery is intended to be conducted under Level 2.

3. Required Initial Disclosures. Pursuant Rule 194 of the Tex. R. Civ. P., Defendant is required to disclose within thirty (30) days of after filing general appearance; '.. A party that is first served or otherwise joined after general appearance must male the initial disclosures within thirty (30) days after being served or joined..' the information described in Rule 194. of the Tex. R. Civ. P.

### III.     PARTIES

4. Plaintiff, Andrew Roach is an individual residing in Harris County, Texas.

5. Defendant(s), Columbia Debt Recovery LLC (Doing Business As 'Genesis'), is a limited liability company organized under the governing laws of the State of Washington and has it's headquarters at 906 SE Everett Mall Way, Suite 301, Everett, WA 98208, United States. Defendant may be served with process by serving its registered agent, Corporation Service Company, located at 300 Deschutes Way SW, Ste 208 Mc-CSC1, Tumwater, WA 98501, and/ or wherever any authorized agent may be found.

6. In the event any parties are misnamed or are not included herein, it is Plaintiff's contention that such was a "misidentification", "misnomer", and/ or such parties were "alter egos" of parties named herein. Alternatively, Plaintiff contends that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice.

### IV.     JURISDICTION AND VENUE

7. This Court has personal jurisdiction, both specific and general, over Defendant and Defendant is amenable to service by a Texas Court. Additionally, venue is proper in Harris County Texas because it is the county in which all or substantial part of the events and omissions giving rise to Plaintiff's claims occurred in Harris County, Texas.

### V.     STATEMENT OF MATERIAL FACTS

8. On or about January 2025, Defendant began reporting an alleged debt account to one or more consumer reporting agencies under Plaintiff's name without providing any evidence of a valid creditor-debtor relationship.

9. On April 1, 2025, Plaintiff served Defendant with a Formal Cease and Desist Letter and Demand for Verification and Validation of Debt pursuant to applicable federal laws including 15 U.S.C. § 1692g(b) and 15 U.S.C. § 1681e(b). Said notice was delivered via certified USPS and registered electronic mail. A copy of the Formal Notice that was served on the Defendant's is attached hereto, **Exhibit-A.**

10. In response, on April 30, 2025, Defendant mailed to Plaintiff a copy of a contract between "Andrew Roach" and a third party, Kennect Phoenix, ***not "Columbia Debt Recovery",*** and ***failed*** to provide any evidence that Columbia owned, was assigned, or had any lawful authority to collect on the alleged debt; and or any legal authentication of Plaintiff. A copy o the mailing envelope and the contents of what the Defendants responded to Plaintiff's Exhibit-A with on April 30, 2025, are attached hereto as, **Exhibit-B.**

11. Despite this, Defendant continued reporting the collection account monthly through the date of this Petition and continuing subsequent hereinafter, without correction, verification, or deletion. Plaintiff's redacted credit report as of June 1, 2025, attached hereto as **Exhibit-C.**

12. Defendant failed to provide required documentation **under state and federal law**, thereby exposing Plaintiff to false credit reporting, reputational harm, and denial of financial opportunities; attached hereto as, **Exhibit-D,** Plaintiff's sworn testimony that the Exhibit(c) attached hereto are all a true and correct copy of the documents.

13. Moreover, in direct response to Plaintiff's Formal Cease and Desist and Verification Demand dated April 1, 2025, Defendant, on or about April 30, 2025, mailed to Plaintiff a purported contract executed between Plaintiff, **"Andrew Roach",** and an unrelated third party, **"Kennect Phoenix"**. Critically, this instrument made *no reference* **whatsoever to Defendant, Columbia Debt Recovery, LLC,** *nor* did it reflect any assignment, sale, or

lawful transfer of interest authorizing Defendant to collect or report on the alleged obligation; *nor* did it provide any sworn verification or authentication identifying Plaintiff as legally obligated to **Columbia Debt Recovery.** *(emphasis added).* **Exhibit-C.**

14. Notwithstanding the absence of such foundational documentation, Defendant **continued to report** the subject account as a derogatory collection tradeline to one or more consumer reporting agencies on a **recurring monthly basis** from **January 2025 through the present**, and upon information and belief, intends to persist in such reporting unless enjoined.

15. Defendant's continued failure to comply with Plaintiff's Formal Cease and Desist Letter—specifically, its refusal to provide the requisite legal documentation establishing ownership, assignment, or lawful authority to collect the alleged debt—constitutes a deliberate and deceptive act. Instead of complying with federal and state verification mandates, Defendant responded by producing documentation identifying an entirely separate legal entity, **Kennect Phoenix**, and subsequently sought to induce Plaintiff into performance under that unrelated agreement. This misrepresentation was sent directly to Plaintiff's legal address in **Harris County, Texas**, thereby invoking the jurisdiction of this Court.

16. As a direct and proximate result of Defendant's unlawful misreporting, and its continued refusal to verify, correct, or delete the disputed tradeline in accordance with federal and state law, **Plaintiff was denied a substantial and time-sensitive business opportunity** on or about **May 1, 2025**. Specifically, Plaintiff sought to engage in the **acquisition, sale, or transfer of a corporate entity**, the value of which exceeded **$117,000.00**, but was ultimately declined by third-party investor(s) or an investment group upon review of Plaintiff's credit profile. Investor(s) and Investment Group(s), Jane Doe and John Doe, (hereinafter referred to as **"Interested Parties"**) redacted sworn testimony is attached hereto as Exhibit-E, testifying that the "Collection(s)" accounted reported to Plaintiff's credit report file by Defendant(s), dissolve any and all acquisition of Ariv Holdings LLC. Interested Parties

swore in **Exhibit-E** to their intentions of executing such acquisition of but not limited to Ariv Holdings LLC in the amount of $117,000.00 USD and accompanied investment portfolio effective July 1, 2025, but such representation made by Defendants deterred such. **Exhibit-E.**

17. Said denial was expressly based on the negative and inaccurate credit data furnished by Defendant to one or more consumer reporting agencies. The collapse of this transaction constitutes a **material, quantifiable, and foreseeable injury** to Plaintiff's financial standing, business credibility, and overall market position, directly traceable to Defendant's statutory violations and tortious conduct. Such investor(s) and investment group(s) intend to provide sworn testimony in this Cause.

18. Plaintiff has thus suffered egregious and ongoing damages arising from Defendant's unlawful conduct, including lost business opportunities, reputational harm, and financial destabilization. **Supporting documentation** substantiating the value and terms of the declined transaction, and the correspondence relating to the denial by the investment party or parties, **will be filed under seal** in accordance with **Texas Rule of Civil Procedure 76a** to preserve confidentiality and proprietary interest. **Exhibit-E. Exhibit-A,B,C, and D.**

## VI. CAUSES OF ACTION

### COUNT I – TEXAS DEBT COLLECTION ACT § 392.001

19. Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section V. Statement of Material Facts. Texas Debt Collection Act (TDCA), Tex. Fin. Code § 392.001 et seq.

20. This cause of action arises under the Texas Debt Collection Act (TDCA), codified at Tex. Fin. Code §§ 392.001 et seq., which prohibits debt collectors from using false, misleading, or abusive means to collect consumer debts. Plaintiff is a "consumer" under § 392.001(1), and Defendant is a "debt collector" under § 392.001(6). **Exhibit-A. Exhibit-B.**

21. Defendant knowingly violated multiple provisions of the TDCA, including but not limited to:

    a.  § 392.202, by failing to conduct an investigation and correct or delete inaccurate tradeline information after receipt of Plaintiff's written dispute on April 1, 2025;

    b.  § 392.304(a)(8), by misrepresenting the ownership, character, amount, and legal status of the alleged debt;

    c.  § 392.304(a)(19), by employing false and deceptive practices in attempting to collect a debt it did not own, and could not lawfully enforce;

22. Defendant did not produce any valid assignment, bill of sale, or other competent legal documentation evidencing its ownership or authority to collect the alleged debt. Instead, it submitted a contract involving a third party, Kennect Phoenix, in which Defendant is not named. This constitutes a per se violation of the Act and demonstrates deceptive conduct.

23. As a proximate result of Defendant's conduct, Plaintiff suffered economic harm, loss of a business transaction exceeding $117,000, reputational damage, and mental anguish. Plaintiff seeks actual damages, statutory damages, injunctive relief, attorneys' fees, and costs of court under Tex. Fin. Code § 392.403(a)(2), § 392.403(b). *(emphasis added).* **Exhibit-A and E.**

24. Plaintiff seeks judgment of this Court for actual damages, consequential damages, punitive damages, exemplary damages, prejudgment interest, and costs of Court.

## COUNT II- TEXAS DECEPTIVE TRADE PRACTICES ACT (DTPA) § 17.41

25. Plaintiff fully incorporates herein verbatim by reference, as originally stated herein, Section V. Statement of Material Facts. Texas Deceptive Trade Practices Act (DTPA) § 17.41 et seq.

26. Plaintiff is a "consumer" under the Texas DTPA, having sought services related to credit and debt collection for personal purposes. Defendant's actions, as set forth in Section V, constitute false, misleading, and deceptive acts under Tex. Bus. & Com. Code § 17.46(b), including: (1) Misrepresenting the existence of a valid debt; (2) Falsely claiming to possess the legal authority to collect the debt; (3) Reporting inaccurate credit information despite statutory disputes. **Exhibit-A. Exhibit-B.**

27. Defendant's conduct violates the DTPA through incorporation of the TDCA under Tex. Fin. Code § 392.404. Plaintiff seeks actual damages, treble damages upon proof of knowing violations, and attorneys' fees. **Exhibit-A. Exhibit-B.**

## COUNT III- FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681 es seq

**28.** Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section

V. Statement of Material Facts. Fair Credit Reporting Act 15 U.S.C. § 1681 et seq.

**29.** Defendant violated the FCRA by: (1) Furnishing inaccurate information after being notified

of a dispute, in violation of 15 U.S.C. § 1681s-2(b); (2) Failing to conduct a reasonable

investigation or to delete inaccurate tradelines after Plaintiff's formal notice on April 1, 2025,

in violation of § 1681i; (3) Reporting false data without verifying legal ownership of the

debt, in violation of § 1681e(b). **Exhibit-A. Exhibit-B.**

**30.** As a result, Plaintiff sustained actual damages, including denial of a $117,000 business

transaction. Plaintiff seeks actual damages, statutory damages, punitive damages (for willful

violations), and attorney's fees under 15 U.S.C. §§ 1681n and 1681o. **Exhibit-E.**

## COUNT IV- FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. § 1692 et seq.

**31.** Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section

V. Statement of Material Facts. FDCPA 15 U.S.C. § 1692 et seq.

**32.** Defendant is a "debt collector" under 15 U.S.C. § 1692a(6), and its conduct violated the

FDCPA as follows: (1) Using false representations to collect a debt under § 1692e(2)(A); (2)

Collection collection efforts without validation of the debt after Plaintiff's written dispute, in

violation of § 1692g(b); (3) Attempting to collect a debt it did not own and could not

substantiate, violating § 1692f. **Exhibit-A. Exhibit-B.**

**33.** Plaintiff is entitled to actual damages, statutory damages up to $1,000, and attorney's fees

and costs under 15 U.S.C. § 1692k.

## COUNT V- FRAUD MISREPRESENTATION

**34.** Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section
III. Statement of Material Facts. Fraud Misrepresentation. *Italian Cowboy Partners, Ltd. v.
Prudential Ins. Co. of America*, 341 S.W.3d 323, 337 (Tex. 2011), *Aquaplex, Inc. v. Rancho
La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (per curiam). ***SPEP Aircraft Holdings,
LLC et al. v. Bombardier Aerospace Corporation***, Cause No. DC-12-14739, in the 44th
Judicial District Court of Dallas County, Texas. ***Bombardier Aerospace Corporation v.
SPEP Aircraft Holdings, LLC, et al.,*** Cause No. 05-16-00086-CV, Fifth Court of Appeals,
Dallas, Texas. To establish fraud under Texas law, Plaintiff must show: (1) a material
misrepresentation, (2) made with knowledge of its falsity or recklessness, (3) with intent to
induce reliance, (4) actual and justifiable reliance by Plaintiff, and (5) injury resulting from
that reliance. **Exhibit-A. Exhibit-B.**

**35.** Defendant Columbia Debt Recovery LLC made an affirmative material misrepresentation by
transmitting to Plaintiff a written communication, purporting to verify the existence and
validity of a debt allegedly owed by Plaintiff. In this communication, Defendant produced an
instrument—namely, a purported contract between Plaintiff and a third party, Kennect
Phoenix—representing it as proof of indebtedness to Columbia. However, Columbia was not
a party to that contract, nor did the document contain any reference to Columbia, nor any
assignment or bill of sale evidencing legal authority to enforce or collect on the alleged
obligation. This submission was intended to induce Plaintiff to believe that Columbia was a
valid and lawful creditor. **Exhibit-D.**

**36.** At the time this representation was made, Defendant knew or should have known that the information it was providing was false, incomplete, and misleading. Defendant either possessed no legal documentation to support its claim of ownership of the alleged debt or knowingly omitted the material fact that no such transfer or assignment ever occurred. By presenting a third-party contract as though it substantiated its own collection rights, Defendant acted with at minimum a reckless disregard for the truth, if not with actual knowledge of the falsity of its claim. **Exhibit-A. Exhibit-B. Exhibit-D.**

**37.** Defendant intended for Plaintiff to rely on this false representation to deter or delay legal action and to continue collection efforts under the false pretense of creditor status. Plaintiff justifiably relied on this misrepresentation by deferring immediate litigation and by undertaking further attempts to administratively resolve the dispute. At the time, Plaintiff had no access to documentation establishing the falsity of Columbia's claim and reasonably interpreted the response as indicative of a genuine, enforceable debt. As a result of the Plaintiff relying on the materials provided by Columbia Debt Recovery, Plaintiff has initiated this lawsuit to address such misrepresentations or representations made by Defendant.

**38.** As a direct and proximate result of Defendant's fraudulent misrepresentation, Plaintiff sustained actual and consequential damages. These include reputational harm, emotional distress, financial loss, and the loss of a significant business transaction exceeding $117,000. The misrepresentation of debt ownership and the continued reporting of inaccurate credit information materially impaired Plaintiff's creditworthiness and contributed to Plaintiff's exclusion from an investment opportunity that was both time-sensitive and financially significant. **Exhibit-C. Exhibit-E.**

**39.** Under Texas law, fraud of this nature supports an award of actual damages, consequential damages, and exemplary damages under Tex. Civ. Prac. & Rem. Code § 41.003(a), as Defendant's conduct was knowing, intentional, and fraudulent. The record, as pleaded and to be further supported by documentary evidence and witness testimony, shows a calculated effort by Defendant to mislead and manipulate Plaintiff in violation of established legal duties. Accordingly, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff on this count, and award all such legal and equitable relief as is just and proper.

## COUNT VI- FRAUD NON-DISCLOSURE

**40.** Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section V. Statement of Material Facts. Fraud Non-Disclosure. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of America*, 341 S.W.3d 323, 337 (Tex. 2011), *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (per curiam). ***SPEP Aircraft Holdings, LLC et al. v. Bombardier Aerospace Corporation***, Cause No. DC-12-14739, in the 44th Judicial District Court of Dallas County, Texas. ***Bombardier Aerospace Corporation v. SPEP Aircraft Holdings, LLC, et al.,*** Cause No. 05-16-00086-CV, Fifth Court of Appeals, Dallas, Texas.

**41.** Under Texas law, fraud by non-disclosure arises where: (1) the defendant failed to disclose material facts, (2) the defendant had a duty to disclose, (3) the facts were known to the defendant, (4) the plaintiff did not know of the facts, (5) the defendant intended to induce the plaintiff to act or refrain from acting, and (6) the plaintiff relied and suffered damages.

42. When a party voluntarily makes a partial disclosure or communicates in a manner intended to induce reliance, a **duty to disclose the whole truth** arises. See *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001). **Exhibit-A. Exhibit-B.**

43. Here, Defendant Columbia Debt Recovery, LLC, had both a **common law and statutory duty** to disclose whether it owned, was assigned, or had any legal authority to collect on the alleged debt when it received a formal **written dispute and demand for verification** from Plaintiff pursuant to **15 U.S.C. § 1692g(b)** of the **Fair Debt Collection Practices Act (FDCPA)** and **15 U.S.C. § 1681i** and **§ 1681s-2(b)** of the **Fair Credit Reporting Act (FCRA)**.

   a. **15 U.S.C. § 1692g(b)** requires that upon receipt of a consumer's written dispute, a debt collector "shall cease collection until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor."

   b. **15 U.S.C. § 1681s-2(b)** mandates that, after notice of a dispute, the furnisher of credit information must "conduct an investigation with respect to the disputed information," "review all relevant information provided by the consumer reporting agency," and "report the results of the investigation to the consumer reporting agency."

   c. **Tex. Fin. Code § 392.202(a)** provides that a consumer may dispute the accuracy of a debt and request correction; subsection (b) imposes a duty on the debt collector to investigate and notify the consumer of results within 30 days.

44. In response to Plaintiff's formal notice dated April 1, 2025, Defendant produced a contract between Plaintiff and a third-party entity, **Kennect Phoenix**, which neither referenced

Columbia Debt Recovery, LLC, nor contained any assignment, bill of sale, or legal transfer of interest. Defendant failed to disclose that it lacked privity of contract and had no valid creditor status — facts which were material and exclusively within Defendant's knowledge.

45. Despite the absence of ownership or legal authority to collect, Defendant continued to report the alleged debt to one or more consumer reporting agencies, thereby inducing Plaintiff to refrain from further legal action or additional dispute filings, and causing harm including lost business opportunity exceeding $117,000 and reputational injury. **Exhibit-E. Exhibit-B.**

46. This nondisclosure was knowing and intentional. By providing partial documentation without full disclosure of its lack of legal standing or debt ownership, Defendant triggered a duty to disclose the whole truth under Texas law. See *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997). *SPEP Aircraft Holdings, LLC et al. v. Bombardier Aerospace Corporation*, Cause No. DC-12-14739, in the 44th Judicial District Court of Dallas County, Texas. *Bombardier Aerospace Corporation v. SPEP Aircraft Holdings, LLC, et al.,* Cause No. 05-16-00086-CV, Fifth Court of Appeals, Dallas, Texas. **Exhibit-C. Exhibit-B.**

47. Plaintiff respectfully requests judgment against Defendant for actual damages, consequential damages, punitive and exemplary damages, pre- and post-judgment interest, and all costs of court. **Exhibit-A. Exhibit-B. Exhibit-C. Exhibit-D. Exhibit-E.**

48. WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully avers that the foregoing causes of action—each independently and collectively—establish Defendant's knowing, willful, and unlawful conduct under Texas and federal law, including but not limited to the Texas Debt Collection Act, Texas Deceptive Trade Practices Act, Fair Credit Reporting Act, Fair Debt Collection Practices Act, and Texas common law principles of fraud and non-disclosure.

# IV.    DAMAGES

**49.** As a result of Defendants actions and omissions as set forth herein, Plaintiffs sustained the

following damages, for which Plaintiffs seek judgment against Defendants:

    a.  Actual damages in the amount of $117,000.00

    b.  Statutory Damages;

    c.  Exemplary Punitive damages;

    d.  Pre-judgment penalty and post judgment interest; and

    e.  Reasonable expenses and costs of court.

## V. EXEMPLARY DAMAGES

**50.** Additionally, Plaintiff would show that Defendants actions were intentional, fraudulent,

malicious, and in bad faith, justifying the imposition of exemplary damages against

Defendants.

## VI. CONDITIONS PRECEDENT SATISFIED

**51.** Plaintiff has fully or substantially performed all acts necessary to perfect and establish all

claims and causes of action asserted in this lawsuit.

**52.** All conditions precedent to Plaintiff's right to recover on any of the claims and causes of

action asserted in this lawsuit have been discharged, satisfied or fully performed.

## VII. RULE 47 STATEMENT

**53.** Pursuant to Rule 47(b) of the Texas Rules of Civil Procedure, damages are within he

jurisdictional limits of this Court. Further, Plaintiff is required by Rule 47(c) to state the

dollar amount of damages that represent Plaintiff's harms and losses due to Defendant's

conduct. The legislative history of this requirement indicates that it is for record-keeping

purposes, and statistical purposes only, for lawsuits filed in the State of Texas. Plaintiff's counsel states that Plaintiff seeks monetary relief, of which the maximum harms, losses, and damages of any type are less than $200,000 at this time. The amount of monetary relief actually accessed by the Honorable Judge, however, will ultimately be determined by the fact-finder after hearing all the evidence presented.

## VIII. NON-JURY TRIAL

**54.** The Plaintiff hereby requests a non-jury trial, trial by Honorable Judge pursuant to Rule 216 of Texas Rules of Civil Procedure. Furthermore, Plaintiff respectfully reserves their right to a jury trial in this matter should such be deemed appropriate at a latter stage.

## IX. PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs respectfully pray that Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendants as follows:

a) Upon trial, judgment against Defendants for the full amount of Plaintiffs' actual damages (past, future, special, direct) and Statutory damages as found by the trier of facts;

b) Exemplary Punitive damages as found by the trier of facts;

c) Prejudgment and post-judgment interest at the highest lawful rates in Harris County, Texas.

d) All costs of court;

e) Any and all further relief to which Plaintiff may be entitled at law or in equity.

Respectfully Submitted,

*Andrew Roach*

Andrew Roach, Plaintiff, Pro Se,

2917 Lake Forest Dr, Upper Marlboro, MD 20774

P: 424-420-5550 / drewroach37@gmail.com

# CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a correct, true and full copy of the foregoing has been served on all Parties, in this Cause, in this action.

Respectfully Submitted,

*Andrew Roach*

Andrew Roach, Plaintiff, Pro Se,

2917 Lake Forest Dr. Upper Marlboro, MD 20774

P: 424-420-5558 / andrewroach37@gmail.com

# CAUSE NO._____

| | | |
|---|---|---|
| **ANDREW ROACH,** | § | HON. COURT _____th, |
| *PLAINTIFFS* | § | |
| **V.** | § | **DISTRICT COURT** |
| **COLUMBIA DEBT RECOVERY,** | § | |
| *DEFENDANT* | § | **HARRIS COUNTY, TEXAS.** |

<u>**AFFIDAVIT OF LAST KNOWN ADDRESS OF DEFENDANT(S)**</u>

<u>**AND NON-MILITARY STATUS**</u>

**BEFORE ME,** the undersigned authority, duly authorized to administer oaths and take acknowledgments, personally appeared, Andrew Roach, who after by me first duly sworn, deposes, and says:

1. I, Andrew Roach, am over the age of eighteen (18) years old, and having personal knowledge of the facts set forth herein, and am competent to testify to the following facts and matters:
2. Plaintiff filed this above styled and numbered Cause with the Harris County District Court of Texas which retains appropriate jurisdiction over this Cause of Action(s) contained and asserted in Plaintiff's Original Petition to this Hon. Court.
3. Columbia Debt Recovery LLC (Doing Business As, 'Genesis') is a Limited Liability Corporation under the governing laws of the State of Washington, USA, with a principal address at 906 SE Everett Mall Way, Suite 301, Everett, WA 98208, with a registration expiration date set for January 31, 2026.
4. Columbia Debt Recovery LLC (Doing Business As, 'Genesis' retains a 'Registered Agent Name': CORPORATION SERVICE COMPANY with the following addresses:
   a. **Street Address:** 300 DESCHUTES WAY SW STE 208 MC-CSC1, TUMWATER, WA, 98501, UNITED STATES.
   b. **Mailing Address:** 300 DESCHUTES WAY SW STE 208 MC-CSC1, TUMWATER, WA, 98501, UNITED STATES.
5. Columbia Debt Recovery LLC (Doing Business As 'Genesis'), is not of military status, governmental entity, or individual but rather a limited liability company under the laws of the State of Washington, as affirmed by the State of Washington Secretary of State. This status was expressly acknowledged and affirmed herein by Plaintiff through diligent governmental record search and verifications. Columbia Debt Recovery LLC, UBI Number: **604 074 740.**

**Further Affiant Sayeth Naught.**                    *[Signature Page Follows]*

Filed Official Public Record of the Marriage Business District Clerk



*Andrew Roach*



ANDREW ROACH
Notary Public, State of Texas
Comm. Expires 11-02-2027
Notary ID 134630531

*Duly Sworn and Subscribed before me on <u>May 27, 2025.</u>*



*Notary*

ALIA AL QAISSY
Notary ID #132724408
My Commission Expires
February 28, 2029

*State of Texas,*

*County of Harris*

*Personally known to me.*

Unofficial Copy Office of Marilyn Burgess District Clerk

*Respectfully Submitted.*

*Andrew Roach*

Andrew Roach, Plaintiff, Pro Se,

2917 Lake Forest Dr, Upper Marlboro, MD 20774

P: 424-420-5550 / drewroach37@gmail com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a correct, true and full copy of the foregoing has been personally served on Defendant(s) and or Defendant(s) authorized Counsel, in Cause 202369852, in this action.

*Respectfully Submitted,*

*Andrew Roach*

Andrew Roach, Plaintiff, Pro Se.

29(7)Lake Forest Dr, Upper Marlboro, MD 20774

P: 424-420-5550 / drewroach37@gmail.com

Unofficial Copy Office of Marilyn Burgess District Clerk

# BUSINESS INFORMATION

Business Name:
**COLUMBIA DEBT RECOVERY, LLC**

UBI Number:
**604 074 740**

Business Type:
**WA LIMITED LIABILITY COMPANY**

Business Status:
**ACTIVE**

Principal Office Street Address:
**906 SE EVERETT MALL WAY, SUITE 301, EVERETT, WA, 98208, UNITED STATES**

Principal Office Mailing Address:
**906 SE EVERETT MALL WAY, SUITE 301, EVERETT, WA, 98208, UNITED STATES**

Expiration Date:
**01/31/2026**

Jurisdiction:
**UNITED STATES, WASHINGTON**

Formation/ Registration Date:
**01/10/2017**

Period of Duration:
**PERPETUAL**

Inactive Date:

Nature of Business:
**DEBT COLLECTION AGENCY**

# REGISTERED AGENT INFORMATION

Registered Agent Name:
**CORPORATION SERVICE COMPANY**

Street Address:
**300 DESCHUTES WAY SW STE 208 MC-CSC1, TUMWATER, WA, 98501, UNITED STATES**

Mailing Address:
**300 DESCHUTES WAY SW STE 208 MC-CSC1, TUMWATER, WA, 98501, UNITED STATES**

# GOVERNORS

| Title | Governors Type | Entity Name | First Name | Last Name |
|-------|----------------|-------------|------------|-----------|
| GOVERNOR | INDIVIDUAL | | WILLIAM P. | WODJAK |

Unofficial Copy Office of Marilyn Burgess District Clerk

# THURSTON COUNTY SHERIFF RECEIPT

**PLNTF**

ANDREW ROACH

**DFNDT**

COLUMBIA DEBT RECOVERY

**ATTORNEY:** ANDREW ROACH

**ADDRESS** 2900 BRAESWOOD BLVD APT 2411
HOUSTON, TX 77025-

**PH NO.:** (424) 420-5550
**PROCESS:**
PLAINTIFFS ORIGINAL PETITION, AFFFIDAVIT OF LAST KNOWN ADDRESS

**CAUSE NO.:**
2025-38552
**DATE SERVED BY:**

**PERSONAL SERVICE:**
YES
**SERVE ON:**

**PERSONALLY TO:**
COLUMBIA DEBT RECOVERY LLC C/O CORPORATION SERVICE COMPANY

3000 DESCHUTES WAY SW STE 208 MC-CSC1
TUMWATER, WA 98501,

**SERVED/NOT FOUND**

| | |
|---|---|
| Notary | |
| Service | 60 — |
| Return | |
| Mileage | |
| Deed/Redemption | |
| Wrt Fees | |
| | |
| Wnt Served | |
| Wnt Mileage | |
| Refund | |
| Total | 60 — |

**DEPUTY**

RECEIPT DATE: 6/10/2025

Thurston County Sheriff's Office
2000 Lakeridge Dr. SW
Olympia, WA 98502
(360) 786-5500

## RECEIPT

| Receipt Number | Received From | Service | Qty. | Fee Each | Fee Ext. |
|---|---|---|---|---|---|
| 00083642 | Andrew Roach | | | | |
| | | Summons/Complaint/Small Claim (1)- | 1 | $60.00 | $60.00 |
| | | | | Total Fees | $60.00 |
| | | | | Amount Received | $60.00 |
| | | | | Paid By | Money Order |
| | | | | Money Order Reference # | 38194464385 |

Unofficial Copy Office of Marilyn Burgess District Clerk

<u>CAUSE NO. __2025-38552___</u>

| | | |
|---|---|---|
| ANDREW ROACH, | § | HON. COURT 125th, |
| *PLAINTIFFS* | § | |
| V. | § | DISTRICT COURT |
| COLUMBIA DEBT RECOVERY, | § | |
| *DEFENDANT* | § | HARRIS COUNTY, TEXAS. |

# <u>EXHIBITS A THROUGH E</u>
# <u>SERVED WITH ORIGINAL PETITION</u>
# <u>AND E-FILED UNDER SENSITIVE DATA.</u>
# <u>SEE COURT RECORD FOR REFERENCE.</u>

Unofficial Copy Office of Marilyn Burgess District Clerk

Respectfully Submitted,

/s/  *Andrew Roach*

Andrew Roach, *Plaintiff, Pro Se,*

2917 Lake Forest Dr, Upper Marlboro, MD 20774

P: 424-420-5550 / drewroach37@gmail.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a correct, true and full copy of the foregoing has been served on all Parties, in this Cause, in this action.

Respectfully Submitted,

/s/ **Andrew Roach**

Andrew Roach, *Plaintiff, Pro Se,*

2917 Lake Forest Dr, Upper Marlboro, MD 20774

P: 424-420-5555, drewroach37@gmail.com

Unofficial Copy Office of Marilyn Burgess District Clerk

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 102486209
Filing Code Description: No Fee Documents
Filing Description: Citation Return Executed
Status as of 6/26/2025 3:20 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Andrew Roach | | drewroach37@gmail.com | 6/26/2025 3:13:53 PM | SENT |

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DIVISION OF TEXAS

HOUSTON DIVISION

|  |  |
|---|---|
| ) | |
| **ANDREW ROACH,** ) | |
| *PLAINTIFFS* ) | |
| ) | CIVIL ACTION NO. <u>4:25-CV-03221</u> |
| **V.** ) | |
| **COLUMBIA DEBT RECOVERY,** ) | |
| *DEFENDANT*_____ ) | |

# B


## our file number 10131188 Roach v. Columbia Debt Recovery 2025-38552
2 messages

**Peter Fish** <Peter.Fish@genesiscred.com>                Thu, Jul 10, 2025 at 10:07 AM
To: "drewroach37@gmail.com" <drewroach37@gmail.com>
Cc: David Kaminski <kaminskid@cmtlaw.com>

Mr. Roach:

I am in-house counsel for Columbia Debt Recovery in the above matter. I'm copying my outside counsel as well.

I'm requesting an extension on this matter in hopes of resolving this case.

Please advise if you approve.

Thanks ,

**Peter N. Fish, Esq. | Legal Defense Counsel**

**Columbia Debt Recovery LLC dba Genesis**
PO Box 3630

Everett, WA 98213
Office: (425) 250-8936 | Email: Peter.Fish@genesiscred.com
www.genesiscred.com

Attorney is licensed in New Jersey & Pennsylvania



This communication is from a debt collector attempting to collect a debt. Any information obtained will be used for that purpose. IMPORTANT CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files, or previous e-mail messages attached to it may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is prohibited. If you have received this transmission in error, please immediately notify us by reply e-mail. Thank you.

**Dr. Andrew Roach** <drewroach37@gmail.com>                                      Thu, Jul 10, 2025 at 10:29 AM
To: Peter Fish <Peter.Fish@genesiscred.com>
Cc: David Kaminski <kaminskid@cmtlaw.com>

Greetings Counselor Fish,

First and foremost, it' Dr. Roach; respectfully. Secondly, everyone on this email thread possesses a J.D. so we can be direct on this matter. If you would like to amicably resolve this matter, kindly advise on your proposal; if any. Furthermore, **I will oppose any extension** on this matter and respond if necessary in subsequent filings. Appreciate your time.

Best Regards,

-Dr. Andrew Roach Sr.
[Quoted text hidden]



# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | William P Wodjak<br>Columbia Debt Recovery, LLC<br>906 SE Everett Mall Way<br>Ste 301<br>Everett, WA 98208-3744 |

| | |
|---|---|
| **Entity:** | Columbia Debt Recovery, LLC<br>Entity ID Number 3900695 |
| **Entity Served:** | Columbia Debt Recovery LLC |
| **Title of Action:** | Andrew Roach vs. Columbia Debt Recovery |
| **Matter Name/ID:** | Andrew Roach vs. Columbia Debt Recovery  (17468853) |
| **Document(s) Type:** | Petition |
| **Nature of Action:** | Violation of State/Federal Act |
| **Court/Agency:** | Harris County District Court, TX |
| **Case/Reference No:** | 202538552 |
| **Jurisdiction Served:** | Washington |
| **Date Served on CSC:** | 06/13/2025 |
| **Answer or Appearance Due:** | Other/NA |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Andrew Roach<br>424-420-5550 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674  (888) 690-2882  l  sop@cscglobal.com

2025 JUN 10 AM 9: 14

RECEIVED

| | | |
|---|---|---|
| **ANDREW ROACH,** | § | **HONORABLE COURT** /25th, |
| ***PLAINTIFFS*** | § | |
| **V.** | § | **DISTRICT COURT** |
| **COLUMBIA DEBT RECOVERY,** | § | |
| ***DEFENDANT*** | § | **HARRIS COUNTY, TEXAS.** |

### PLAINTIFF'S ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

.COMES NOW, Andrew Roach, (hereinafter referred to as "Plaintiff"), files this
Original Petition complaining of Columbia Debt Recovery LLC (Doing Business As, 'Genesis')
(hereinafter referred to as "Defendant"), and for cause of action(s) would respectfully show unto
the Court as follows:

### I.    STATEMENT OF RELIEF SOUGHT

**1.**  Plaintiff seeks monetary relief within the jurisdictional limits of this court.

### II.    DISCOVERY CONTROL PLAN

**2.**  Pursuant to Rule 190.3 and 190.4 of the Texas Rules of Civil Procedure, discovery is
intended to be conducted under Level 2.

**3.**  Required Initial Disclosures. Pursuant Rule 194 of the Tex. R. Civ. P., Defendant is required
to disclose within thirty (30) days of after filing general appearance; '.. A party that is first
served or otherwise joined after general appearance must male the initial disclosures within
thirty (30) days after being served or joined..' the information described in Rule 194. of the
Tex. R. Civ. P.

### III. PARTIES

4. Plaintiff, Andrew Roach is an individual residing in Harris County, Texas.

5. Defendant(s), Columbia Debt Recovery LLC (Doing Business As 'Genesis'), is a limited
   liability company organized under the governing laws of the State of Washington and has it's
   headquarters at 906 SE Everett Mall Way, Suite 301, Everett, WA 98208, United States.
   Defendant may be served with process by serving its registered agent, Corporation Service
   Company, located at 300 Deschutes Way SW, Ste 208 Mc-CSC1, Tumwater, WA 98501, and/
   or wherever any authorized agent may be found.

6. In the event any parties are misnamed or are not included herein, it is Plaintiff's contention
   that such was a "misidentification", "misnomer", and/ or such parties were "alter egos" of
   parties named herein. Alternatively, Plaintiff contends that such "corporate veils" should be
   pierced to hold such parties properly included in the interest of justice.

### IV. JURISDICTION AND VENUE

7. This Court has personal jurisdiction, both specific and general, over Defendant and
   Defendant is amenable to service by a Texas Court. Additionally, venue is proper in Harris
   County Texas because it is the county in which all or substantial part of the events and
   omissions giving rise to Plaintiff's claims occurred in Harris County, Texas.

### V. STATEMENT OF MATERIAL FACTS

8. On or about January 2025, Defendant began reporting an alleged debt account to one or more
   consumer reporting agencies under Plaintiff's name without providing any evidence of a
   valid creditor-debtor relationship.

9. On April 1, 2025, Plaintiff served Defendant with a Formal Cease and Desist Letter and Demand for Verification and Validation of Debt pursuant to applicable federal laws including 15 U.S.C. § 1692g(b) and 15 U.S.C. § 1681e(b). Said notice was delivered via certified USPS and registered electronic mail. A copy of the Formal Notice that was served on the Defendant's is attached hereto, **Exhibit-A.**

10. In response, on April 30, 2025, Defendant mailed to Plaintiff a copy of a contract between "Andrew Roach" and a third party, Kennect Phoenix, *not "Columbia Debt Recovery",* and *failed* to provide any evidence that Columbia owned, was assigned, or had any lawful authority to collect on the alleged debt; and or any legal authentication of Plaintiff. A copy o the mailing envelope and the contents of what the Defendants responded to Plaintiff's Exhibit-A with on April 30, 2025, are attached hereto as, **Exhibit-B.**

11. Despite this, Defendant continued reporting the collection account monthly through the date of this Petition and continuing subsequent hereinafter, without correction, verification, or deletion. Plaintiff's redacted credit report as of June 1, 2025, attached hereto as **Exhibit-C.**

12. Defendant failed to provide required documentation **under state and federal law,** thereby exposing Plaintiff to false credit reporting, reputational harm, and denial of financial opportunities; attached hereto as, **Exhibit-D,** Plaintiff's sworn testimony that the Exhibit(c) attached hereto are all a true and correct copy of the documents.

13. Moreover, in direct response to Plaintiff's Formal Cease and Desist and Verification Demand dated April 1, 2025, Defendant, on or about April 30, 2025, mailed to Plaintiff a purported contract executed between Plaintiff, **"Andrew Roach",** and an unrelated third party, **"Kennect Phoenix".** Critically, this instrument made *no reference* **whatsoever to Defendant, Columbia Debt Recovery, LLC,** *nor* did it reflect any assignment, sale, or

lawful transfer of interest authorizing Defendant to collect or report on the alleged obligation; *nor* did it provide any sworn verification or authentication identifying Plaintiff as legally obligated to **Columbia Debt Recovery.** *(emphasis added).* **Exhibit-C.**

14. Notwithstanding the absence of such foundational documentation, Defendant **continued to report** the subject account as a derogatory collection tradeline to one or more consumer reporting agencies on a **recurring monthly basis** from **January 2025 through the present,** and upon information and belief, intends to persist in such reporting unless enjoined.

15. Defendant's continued failure to comply with Plaintiff's Formal Cease and Desist Letter—specifically, its refusal to provide the requisite legal documentation establishing ownership, assignment, or lawful authority to collect the alleged debt—constitutes a deliberate and deceptive act. Instead of complying with federal and state verification mandates, Defendant responded by producing documentation identifying an entirely separate legal entity, **Kennect Phoenix,** and subsequently sought to induce Plaintiff into performance under that unrelated agreement. This misrepresentation was sent directly to Plaintiff's legal address in **Harris County, Texas,** thereby invoking the jurisdiction of this Court.

16. As a direct and proximate result of Defendant's unlawful misreporting, and its continued refusal to verify, correct, or delete the disputed tradeline in accordance with federal and state law, **Plaintiff was denied a substantial and time-sensitive business opportunity** on or about **May 1, 2025.** Specifically, Plaintiff sought to engage in the **acquisition, sale, or transfer of a corporate entity,** the value of which exceeded **$117,000.00,** but was ultimately declined by third-party investor(s) or an investment group upon review of Plaintiff's credit profile. Investor(s) and Investment Group(s), Jane Doe and John Doe, (hereinafter referred to as **"Interested Parties")** redacted sworn testimony is attached hereto as Exhibit-E, testifying that the "Collection(s)" accounted reported to Plaintiff's credit report file by Defendant(s), dissolve any and all acquisition of Ariv Holdings LLC. Interested Parties

swore in **Exhibit-E** to their intentions of executing such acquisition of but not limited to Ariv Holdings LLC in the amount of $117,000.00 USD and accompanied investment portfolio effective July 1, 2025, but such representation made by Defendants deterred such. **Exhibit-E.**

**17.** Said denial was expressly based on the negative and inaccurate credit data furnished by Defendant to one or more consumer reporting agencies. The collapse of this transaction constitutes a **material, quantifiable, and foreseeable injury** to Plaintiff's financial standing, business credibility, and overall market position, directly traceable to Defendant's statutory violations and tortious conduct. Such investor(s) and investment group(s) intend to provide sworn testimony in this Cause.

**18.** Plaintiff has thus suffered egregious and ongoing damages arising from Defendant's unlawful conduct, including lost business opportunities, reputational harm, and financial destabilization. **Supporting documentation** substantiating the value and terms of the declined transaction, and the correspondence relating to the denial by the investment party or parties, **will be filed under seal** in accordance with **Texas Rule of Civil Procedure 76a** to preserve confidentiality and proprietary interest. **Exhibit-E. Exhibit-A,B,C, and D.**

# VI. CAUSES OF ACTION

## COUNT I – TEXAS DEBT COLLECTION ACT § 392.001

**19.** Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section V. Statement of Material Facts. Texas Debt Collection Act (TDCA), Tex. Fin. Code § 392.001 et seq.

**20.** This cause of action arises under the Texas Debt Collection Act (TDCA), codified at Tex. Fin. Code §§ 392.001 et seq., which prohibits debt collectors from using false, misleading, or abusive means to collect consumer debts. Plaintiff is a "consumer" under § 392.001(1), and Defendant is a "debt collector" under § 392.001(6). **Exhibit-A. Exhibit-B.**

**21.** Defendant knowingly violated multiple provisions of the TDCA, including but not limited to:

    a. § 392.202, by failing to conduct an investigation and correct or delete inaccurate tradeline information after receipt of Plaintiff's written dispute on April 1, 2025;

    b. § 392.304(a)(8), by misrepresenting the ownership, character, amount, and legal status of the alleged debt;

    c. § 392.304(a)(19), by employing false and deceptive practices in attempting to collect a debt it did not own, and could not lawfully enforce;

**22.** Defendant did not produce any valid assignment, bill of sale, or other competent legal documentation evidencing its ownership or authority to collect the alleged debt. Instead, it submitted a contract involving a third party, Kennect Phoenix, in which Defendant is not named. This constitutes a per se violation of the Act and demonstrates deceptive conduct.

23. As a proximate result of Defendant's conduct, Plaintiff suffered economic harm, loss of a business transaction exceeding $117,000, reputational damage, and mental anguish. Plaintiff seeks actual damages, statutory damages, injunctive relief, attorneys' fees, and costs of court under Tex. Fin. Code § 392.403(a)(2), § 392.403(b). *(emphasis added)*. **Exhibit-A and E.**

24. Plaintiff seeks judgment of this Court for actual damages, consequential damages, punitive damages, exemplary damages, prejudgment interest, and costs of Court.

## COUNT II- TEXAS DECEPTIVE TRADE PRACTICES ACT (DTPA) § 17.41

25. Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section V. Statement of Material Facts. Texas Deceptive Trade Practices Act (DTPA) § 17.41 et seq.

26. Plaintiff is a "consumer" under the Texas DTPA, having sought services related to credit and debt collection for personal purposes. Defendant's actions, as set forth in Section V, constitute false, misleading, and deceptive acts under Tex. Bus. & Com. Code § 17.46(b), including: (1) Misrepresenting the existence of a valid debt; (2) Falsely claiming to possess the legal authority to collect the debt; (3) Reporting inaccurate credit information despite statutory disputes. **Exhibit-A. Exhibit-B.**

27. Defendant's conduct violates the DTPA through incorporation of the TDCA under Tex. Fin. Code § 392.404. Plaintiff seeks actual damages, treble damages upon proof of knowing violations, and attorneys' fees. **Exhibit-A. Exhibit-B.**

## COUNT III- FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681 es seq

**28.** Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section V. Statement of Material Facts. Fair Credit Reporting Act 15 U.S.C. § 1681 et seq.

**29.** Defendant violated the FCRA by: (1) Furnishing inaccurate information after being notified of a dispute, in violation of 15 U.S.C. § 1681s-2(b); (2) Failing to conduct a reasonable investigation or to delete inaccurate tradelines after Plaintiff's formal notice on April 1, 2025, in violation of § 1681i; (3) Reporting false data without verifying legal ownership of the debt, in violation of § 1681e(b). **Exhibit-A. Exhibit-B.**

**30.** As a result, Plaintiff sustained actual damages, including denial of a $117,000 business transaction. Plaintiff seeks actual damages, statutory damages, punitive damages (for willful violations), and attorney's fees under 15 U.S.C. §§ 1681n and 1681o. **Exhibit-E.**

## COUNT IV- FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. § 1692 et seq.

**31.** Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section V. Statement of Material Facts. FDCPA 15 U.S.C. § 1692 et seq.

**32.** Defendant is a "debt collector" under 15 U.S.C. § 1692a(6), and its conduct violated the FDCPA as follows: (1) Using false representations to collect a debt under § 1692e(2)(A); (2) Collection collection efforts without validation of the debt after Plaintiff's written dispute, in violation of § 1692g(b); (3) Attempting to collect a debt it did not own and could not substantiate, violating § 1692f. **Exhibit-A. Exhibit-B.**

**33.** Plaintiff is entitled to actual damages, statutory damages up to $1,000, and attorney's fees and costs under 15 U.S.C. § 1692k.

## COUNT V- FRAUD MISREPRESENTATION

**34.** Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section

III. Statement of Material Facts. Fraud Misrepresentation. *Italian Cowboy Partners, Ltd. v.*

*Prudential Ins. Co. of America*, 341 S.W.3d 323, 337 (Tex. 2011), *Aquaplex, Inc. v. Rancho*

*La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (per curiam). ***SPEP Aircraft Holdings,***

***LLC et al. v. Bombardier Aerospace Corporation***, Cause No. DC-12-14739, in the 44th

Judicial District Court of Dallas County, Texas. ***Bombardier Aerospace Corporation v.***

***SPEP Aircraft Holdings, LLC, et al.,*** Cause No. 05-16-00086-CV, Fifth Court of Appeals,

Dallas, Texas. To establish fraud under Texas law, Plaintiff must show: (1) a material

misrepresentation, (2) made with knowledge of its falsity or recklessness, (3) with intent to

induce reliance, (4) actual and justifiable reliance by Plaintiff, and (5) injury resulting from

that reliance. **Exhibit-A. Exhibit-B.**

**35.** Defendant Columbia Debt Recovery, LLC made an affirmative material misrepresentation by

transmitting to Plaintiff a written communication, purporting to verify the existence and

validity of a debt allegedly owed by Plaintiff. In this communication, Defendant produced an

instrument—namely, a purported contract between Plaintiff and a third party, Kennect

Phoenix—representing it as proof of indebtedness to Columbia. However, Columbia was not

a party to that contract, nor did the document contain any reference to Columbia, nor any

assignment or bill of sale evidencing legal authority to enforce or collect on the alleged

obligation. This submission was intended to induce Plaintiff to believe that Columbia was a

valid and lawful creditor. **Exhibit-D.**

**36.** At the time this representation was made, Defendant knew or should have known that the information it was providing was false, incomplete, and misleading. Defendant either possessed no legal documentation to support its claim of ownership of the alleged debt or knowingly omitted the material fact that no such transfer or assignment ever occurred. By presenting a third-party contract as though it substantiated its own collection rights, Defendant acted with at minimum a reckless disregard for the truth, if not with actual knowledge of the falsity of its claim. **Exhibit-A. Exhibit-B. Exhibit-D.**

**37.** Defendant intended for Plaintiff to rely on this false representation to deter or delay legal action and to continue collection efforts under the false pretense of creditor status. Plaintiff justifiably relied on this misrepresentation by deferring immediate litigation and by undertaking further attempts to administratively resolve the dispute. At the time, Plaintiff had no access to documentation establishing the falsity of Columbia's claim and reasonably interpreted the response as indicative of a genuine, enforceable debt. As a result of the Plaintiff relying on the materials provided by Columbia Debt Recovery, Plaintiff has initiated this lawsuit to address such misrepresentations or representations made by Defendant.

**38.** As a direct and proximate result of Defendant's fraudulent misrepresentation, Plaintiff sustained actual and consequential damages. These include reputational harm, emotional distress, financial loss, and the loss of a significant business transaction exceeding \$117,000. The misrepresentation of debt ownership and the continued reporting of inaccurate credit information materially impaired Plaintiff's creditworthiness and contributed to Plaintiff's exclusion from an investment opportunity that was both time-sensitive and financially significant. **Exhibit-C. Exhibit-E.**

**39.** Under Texas law, fraud of this nature supports an award of actual damages, consequential damages, and exemplary damages under Tex. Civ. Prac. & Rem. Code § 41.003(a), as Defendant's conduct was knowing, intentional, and fraudulent. The record, as pleaded and to be further supported by documentary evidence and witness testimony, shows a calculated effort by Defendant to mislead and manipulate Plaintiff in violation of established legal duties. Accordingly, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff on this count, and award all such legal and equitable relief as is just and proper.

## COUNT VI- FRAUD NON-DISCLOSURE

**40.** Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section V. Statement of Material Facts. Fraud Non-Disclosure. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of America*, 341 S.W.3d 323, 337 (Tex. 2011), *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (per curiam). *SPEP Aircraft Holdings, LLC et al. v. Bombardier Aerospace Corporation*, Cause No. DC-12-14739, in the 44th Judicial District Court of Dallas County, Texas. *Bombardier Aerospace Corporation v. SPEP Aircraft Holdings, LLC, et al.,* Cause No. 05-16-00086-CV, Fifth Court of Appeals, Dallas, Texas.

**41.** Under Texas law, fraud by non-disclosure arises where: (1) the defendant failed to disclose material facts, (2) the defendant had a duty to disclose, (3) the facts were known to the defendant, (4) the plaintiff did not know of the facts, (5) the defendant intended to induce the plaintiff to act or refrain from acting, and (6) the plaintiff relied and suffered damages.

42. When a party voluntarily makes a partial disclosure or communicates in a manner intended to induce reliance, a **duty to disclose the whole truth** arises. See *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001). **Exhibit-A. Exhibit-B.**

43. Here, Defendant Columbia Debt Recovery, LLC, had both a **common law and statutory duty** to disclose whether it owned, was assigned, or had any legal authority to collect on the alleged debt when it received a formal **written dispute and demand for verification** from Plaintiff pursuant to **15 U.S.C. § 1692g(b)** of the **Fair Debt Collection Practices Act (FDCPA)** and **15 U.S.C. § 1681i** and **§ 1681s-2(b)** of the **Fair Credit Reporting Act (FCRA)**.

    a. **15 U.S.C. § 1692g(b)** requires that upon receipt of a consumer's written dispute, a debt collector "shall cease collection... until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor."

    b. **15 U.S.C. § 1681s-2(b)** mandates that, after notice of a dispute, the furnisher of credit information must "conduct an investigation with respect to the disputed information," "review all relevant information provided by the consumer reporting agency," and "report the results of the investigation to the consumer reporting agency."

    c. **Tex. Fin. Code § 392.202(a)** provides that a consumer may dispute the accuracy of a debt and request correction; subsection (b) imposes a duty on the debt collector to investigate and notify the consumer of results within 30 days.

44. In response to Plaintiff's formal notice dated April 1, 2025, Defendant produced a contract between Plaintiff and a third-party entity, **Kennect Phoenix**, which neither referenced

Columbia Debt Recovery, LLC, nor contained any assignment, bill of sale, or legal transfer of interest. Defendant failed to disclose that it lacked privity of contract and had no valid creditor status — facts which were material and exclusively within Defendant's knowledge.

**45.** Despite the absence of ownership or legal authority to collect, Defendant continued to report the alleged debt to one or more consumer reporting agencies, thereby inducing Plaintiff to refrain from further legal action or additional dispute filings, and causing harm including lost business opportunity exceeding $117,000 and reputational injury. **Exhibit-E. Exhibit-B.**

**46.** This nondisclosure was knowing and intentional. By providing partial documentation without full disclosure of its lack of legal standing or debt ownership, Defendant triggered a duty to disclose the whole truth under Texas law. See *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997). *SPEP Aircraft Holdings, LLC et al. v. Bombardier Aerospace Corporation*, Cause No. DC-12-14739, in the 44th Judicial District Court of Dallas County, Texas. *Bombardier Aerospace Corporation v. SPEP Aircraft Holdings, LLC, et al.,* Cause No. 05-16-00086-CV, Fifth Court of Appeals, Dallas, Texas. **Exhibit-C. Exhibit-B.**

**47.** Plaintiff respectfully requests judgment against Defendant for actual damages, consequential damages, punitive and exemplary damages, pre- and post-judgment interest, and all costs of court. **Exhibit-A. Exhibit-B. Exhibit-C. Exhibit-D. Exhibit-E.**

**48.** WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully avers that the foregoing causes of action—each independently and collectively—establish Defendant's knowing, willful, and unlawful conduct under Texas and federal law, including but not limited to the Texas Debt Collection Act, Texas Deceptive Trade Practices Act, Fair Credit Reporting Act, Fair Debt Collection Practices Act, and Texas common law principles of fraud and non-disclosure.

## IV. DAMAGES

**49.** As a result of Defendants actions and omissions as set forth herein, Plaintiffs sustained the following damages, for which Plaintiffs seek judgment against Defendants:

    a. Actual damages in the amount of $117,000.00

    b. Statutory Damages;

    c. Exemplary Punitive damages;

    d. Pre-judgment penalty and post judgment interest; and

    e. Reasonable expenses and costs of court.

## V. EXEMPLARY DAMAGES

**50.** Additionally, Plaintiff would show that Defendants actions were intentional, fraudulent, malicious, and in bad faith, justifying the imposition of exemplary damages against Defendants.

## VI. CONDITIONS PRECEDENT SATISFIED

**51.** Plaintiff has fully or substantially performed all acts necessary to perfect and establish all claims and causes of action asserted in this lawsuit.

**52.** All conditions precedent to Plaintiff's right to recover on any of the claims and causes of action asserted in this lawsuit have been discharged, satisfied or fully performed.

## VII. RULE 47 STATEMENT

**53.** Pursuant to Rule 47(b) of the Texas Rules of Civil Procedure, damages are within he jurisdictional limits of this Court. Further, Plaintiff is required by Rule 47(c) to state the dollar amount of damages that represent Plaintiff's harms and losses due to Defendant's conduct. The legislative history of this requirement indicates that it is for record-keeping

purposes, and statistical purposes only, for lawsuits filed in the State of Texas. Plaintiff's counsel states that Plaintiff seeks monetary relief, of which the maximum harms, losses, and damages of any type are less than $200,000 at this time. The amount of monetary relief actually accessed by the Honorable Judge, however, will ultimately be determined by the fact-finder after hearing all the evidence presented.

## VIII. NON-JURY TRIAL

**54.** The Plaintiff hereby requests a non-jury trial, trial by Honorable Judge pursuant to Rule 216 of Texas Rules of Civil Procedure. Furthermore, Plaintiff respectfully reserves their right to a jury trial in this matter should such be deemed appropriate at a latter stage.

## IX. PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs respectfully pray that Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendants as follows:

a) Upon trial, judgment against Defendants for the full amount of Plaintiffs' actual damages (past, future, special, direct) and Statutory damages as found by the trier of facts;

b) Exemplary Punitive damages as found by the trier of facts;

c) Prejudgment and post-judgment interest at the highest lawful rates in Harris County, Texas.

d) All costs of court;

e) Any and all further relief to which Plaintiff may be entitled at law or in equity.

Respectfully Submitted,

*Andrew Roach*

Andrew Roach, Plaintiff, Pro Se,
2917 Lake Forest Dr, Upper Marlboro, MD 20774
P: 424-420-5550 / drewroach37@gmail.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a correct, true and full copy of the foregoing has been served on all Parties, in

this Cause, in this action.

Respectfully Submitted,

*Andrew Roach*

Andrew Roach, Plaintiff, Pro Se,

2917 Lake Forest Dr, Upper Marlboro, MD 20774

P: 424-420-5550 / drewroach37@gmail.com

To Whom It May Concern,                                          *April 1, 2025*

**Columbia Debt Recovery**
906 SE Everett Mall Way, #301,

Everett, WA 98208 United States

**TransUnion LLC**
P.O. Box 2000
Chester, PA 19016

**Equifax Information Services LLC**
P.O. Box 740256
Atlanta, GA 30374

**Experian Information Solutions, Inc.**
P.O. Box 4500
Allen, TX 75013

### FORMAL DEMAND TO CEASE AND DESIST AND PRODUCTION OF SWORN DOCUMENTS

1. To the above styled and named parties: This letter serves as a **formal Cease and Desist Notice** and **Demand for Production of Verified Documentation** under applicable **federal statutes and regulatory frameworks**, sent via certified mail and registered email to you by **Andrew Roach,** hereinafter referred to as ("Plaintiff" "Roach" "Consumer"), write to dispute the validity and legality of information being reported to credit reporting agencies by **Columbia Debt Recovery hereinafter referred to as but not limited to ("Columbia" "Defendant" "CDR"),** and to demand that all unlawful and inaccurate activity **cease immediately** pending legal action.

2. These discrepancies are not only material but reflect inconsistencies that violate FCRA's requirement for **maximum possible accuracy** under 15 U.S.C. § 1681e(b). The consumer has not authorized such reporting, and any activity related to this account is **hereby disputed in whole and in part.** *Fair Credit Reporting Act* (15 U.S.C. § 1681 et seq.), the *Fair Credit Billing Act* (15 U.S.C. § 1666), the *Fair Debt Collection Practices Act* (15 U.S.C. § 1692), and *Federal Trade Commission* (FTC) regulations, *Fair Credit Reporting Act,* FCRA, *Fair Credit Billing Act,* FCBA, U.S. Code Title 15, 16.81 (a)(b)(c)(d) i.ii/ U.S. Code Title 1692 (b)(d), governing consumer reporting and billing disputes.

**DEMAND FOR SWORN VERIFICATION & PRODUCTION**

Pursuant to 15 U.S.C. § 1692g(b) and related federal regulations, you are **hereby ordered to provide** the following documentation **within thirty (30) calendar days** of receipt of this notice:

a. **The Original Instrument of Indebtedness** bearing the original **wet-ink** signature of *alleged Debtor* (Andrew Roach) and *alleged Creditor* (COLUMBIA DEBT RECOVERY).

b. A full and complete **Statement of Work (SOW), Account Terms, and Conditions** *alleged* to have been agreed upon;

c. **Sworn and notarized** verification of each debt, itemized transaction history, and billing records;

d. Documentation evidencing the **lawful acquisition and use of the consumer's Personally Identifiable Information (PII)** under **15 U.S.C. § 1681b** and **15 U.S.C. § 6801.**

e. Additionally, I request confirmation that no PII (including my Social Security Number, Passport, or Military ID) has been accessed, disseminated, or sold to any unauthorized parties.

## CEASE AND DESIST FROM REPORTING INACCURATE INFORMATION AND VIOLATING FAIR CREDIT REPORTING ACT, FEDERAL TRADE COMMISSION

You are formally instructed to **immediately cease and desist** from disseminating, reporting, or verifying any information related to this tradeline to any third party—including but not limited to **TransUnion, Equifax, Experian, LexisNexis**, and all other consumer data aggregators—unless and until you provide documented, verifiable sworn evidence of:

- A **lawful permissible purpose,** and
- A **valid, executed agreement** creating a legal debt obligation.

Failure to comply constitutes a knowing and willful violation of federal law and will expose your organization to **civil liability,** including statutory damages, attorney's fees, and injunctive relief under **15 U.S.C. §§ 1681n, 1681o, and 1666(e).**

As required by the FCRA and FCBA, please update your records to reflect my **true and correct personal and legal information,** and remove any unauthorized or incorrect data not expressly listed below:

- **Full Legal Name:** Andrew D. Roach
- **Residential Address:** 355 N. Central Ave, Apt 1201A, Phoenix, AZ 85004

- **Legal Service Address:** 2900 N. Braeswood Blvd, Apt 2411, Houston, TX 77025
- **Date of Birth:** 07/15/1995

## NOTICE OF PENDING LEGAL ACTION, MAY 1ST, 2025

If the above-mentioned records are *not produced within the thirty (30) days* prescribed by law, legal action will be initiated without further notice in **Harris County, Texas**, which maintains jurisdiction over the Plaintiff and relevant parties. Be advised this letter constitutes legal notice and will be maintained as an official record of the Plaintiff's efforts to resolve this dispute administratively and in good faith. All Legal Correspondence should be provided or delivered to:

- 2900 N. Braeswood Blvd, Apt 2411, Houston, TX 77025

**Plaintiff disputes the entire balance in whole and/ or in part. Plaintiff demands production, validation, and**

[See below. Kindly be advised this communication from active Legal Counsel/ Notarization.]

**Best Regards,**

ANDREW ROACH
Notary Public, State of Texas
Comm. Expires 11-02-2027
Notary ID 134630531

 PO BOX 3630
EVERETT, WA 98213

SEATTLE WA 980
30 APR 2025 AM 4

quadient
FIRST-CLASS MAIL
IMI
$000.69
04/29/2025 ZIP 98209
043M30265883
US POSTAGE

77025-237111

AMA

APARTMENT LEASE CONTRACT

NAA

© 2021 National Apartment Association, Inc. - 9/2021, Arizona
Blue Moon eSignature Services Document ID: 34666653

**APARTMENT LEASE CONTRACT** 

Date of Lease Contract: **November 18, 2022**
(when the Lease Contract is filled out)

*This is a binding document. Read carefully before signing.*

## Moving In — General Information

**1. PARTIES.** This Lease Contract (sometimes referred to as the "lease") is between *you*, the resident(s) (list all people signing the Lease Contract):

**Andrew Ronch**

and *us*, the owner: **AP 355 N. Central Property, LLC**

*(name of apartment community or title holder).* You've agreed to rent Apartment No. **1201A** at **Kennct Phoenix**

*(street address)* in **Phoenix** *(city)*, Arizona, **85004** *(zip code)* (the "apartment" or the "premises") for use as a private residence only. The terms "you" and "your" refer to all residents listed above. The terms "we," "us," and "our" refer to the owner listed above (or any of owner's successors' in interest or assigns). Written or electronic notice to or from our managers constitutes notice to or from us. If anyone else has guaranteed performance of this Lease Contract, a separate Lease Contract Guaranty for each guarantor is attached.

**2. OCCUPANTS.** The apartment will be occupied only by you and *(list all other occupants not signing the Lease Contract):*

**No Additional Occupants**

No one else may occupy the apartment. Persons not listed above must not stay in the apartment for more than **3** consecutive days without our prior written consent, and no more than twice that many days in any one month. *If the previous space isn't filled in, two days per month is the limit.*

**3. LEASE TERM.** The initial term of the Lease Contract begins on the **22nd** day of **November**, **2022**, and ends at 11:59 pm the **22nd** day of **September**, **2023**.

Renewal. This Lease Contract will automatically renew month-to-month unless either party gives at least **60** days written notice of termination or intent to move-out as required by paragraph 44 (Move-Out Notice). If the number of days isn't filled in, at least 30 days notice is required.

**4. SECURITY DEPOSIT.** Unless modified by addenda, the total security deposit at the time of execution of this Lease Contract for all residents in the apartment is $ **0.00** refundable deposit and $ **0.00** non-refundable deposit, due on or before the date this Lease Contract is signed. The above non-refundable security deposit is for the following purposes:

**n/a**

All of the above deposits together do not exceed one and one-half times the monthly rent. See paragraphs 48 (Security Deposit

Deductions and Other Charges) and 49 (Deposit Return, Surrender and Abandonment) for security deposit return information.

☒ During the term of this Lease Contract Management may use Resident's refundable security deposit in accordance with any applicable provisions of the property management agreement. At the conclusion of the tenancy Resident's security deposit shall be refunded to Resident consistent with Arizona law.

☒ The Security Deposit is held by the property owner. However, in the event you vacate your apartment, all Security Deposit refunds will be processed by Management on behalf of the property owner in accordance with the terms of your lease and applicable law.

**5. KEYS.** You will be provided **0** apartment key(s), **1** mailbox key(s), **1** FOB(s), and/or **0** other access device(s) for access to the building and amenities at no additional cost at move-in. If the key, FOB, or other access device is lost or becomes damaged during your tenancy or is not returned or is returned damaged when you move out, you will be responsible for the costs for the replacement and/or repair of the same.

**6. RENT AND CHARGES.** Unless modified by addenda, your base rent will be $ **1412.25** per month ("base rent"). Your base rent and other monthly charges identified in "Description of Rent Elements" below are referred to as "rent" throughout the remainder of this Lease Contract and are payable in advance and without demand:

☒ at the on-site manager's office, or
☒ at our online payment site, or
☒ at **355 N Central Ave, Phoenix AZ 85004**

**DESCRIPTION OF RENT ELEMENTS:**

| | | |
|---|---|---|
| Monthly Stated Base Rent | $ | 1412.25 |
| Monthly Discount/Concession (represents a reduction in Monthly Base Rent) | $ | 0.00 |
| Rental Tax | $ | 32.48 |
| Animal Rent (includes applicable tax) | $ | 0 |
| Garage/Carport Rent (includes applicable tax) | $ | 0.00 |
| Storage Unit Rent (includes applicable tax) | $ | 0.00 |
| Parking Space Rent (includes applicable tax) | $ | 0.00 |
| Additional Rent (Other) | | |
| • **n/a** | $ | 0.00 |
| • **n/a** | $ | 0.00 |
| • **n/a** | $ | 0.00 |

**TOTAL RENT DUE AND PAYABLE MONTHLY:** $ **1444.73**

Prorated rent of $ **423.69** is due for the remainder of *[check one]:* ☒ 1st month or ☐ 2nd month, on _____.

Otherwise, you must pay your rent on or before the 1st day of each month (due date) with no grace period. Cash is unacceptable without our prior written permission. You must not withhold or offset rent unless authorized by statute. We may, at our option, require at any time that you pay all rent and other sums in cash, certified or cashier's check, money order, or one monthly check rather than multiple checks. At our discretion, we may convert any and all checks to ACH for the purposes of collecting payment. Rent is not considered accepted if the payment/ACH is rejected, does not clear, or is stopped for any reason. If you don't pay all rent on or before the **5th** day of the month, you'll pay a late charge. Your late charge will be *(check one):* ☒ a flat rate of $ **50.00** or ☐ **1** % of your total monthly rent payment to be charged on the **5th** day thereafter that rent and other charges under this lease are unpaid. You'll also pay a charge of $ **25.00** for each returned check or rejected electronic payment, plus a late charge. If you don't pay rent on time, you'll be delinquent and all remedies under this Lease Contract will be authorized. We'll also have all other remedies for such violation. Resident is responsible for all rental taxes, and will pay any increases in all rental taxes upon 30 days written notice from landlord.

If a municipality that levies a transaction privilege tax on residential rent changes the percentage of that tax, then we, upon thirty days'

© 2021, National Apartment Association, Inc. - 9/2021, Arizona
☑ Blue Moon eSignature Services Document ID: 346566363

written notice to you, may adjust the amount of rent due to equal the difference caused by the new percentage amount of the tax. The adjustment to rent shall not occur before the date upon which the new tax is effective. All payment obligations under this Lease Contract shall constitute rent under this Lease Contract.

**REPLACEMENT COSTS**
(If not paid immediately, these charges shall be due and payable with the next monthly rent:)

| | |
|---|---|
| Replacement Access Fob | $ _75.00_ |
| Replacement Remote | $ _75.00_ |
| Replacement Keys | $ _25.00_ |
| Other: _Mailbox Key_ | $ _25.00_ |
| Other: _Pool Pass Residential_ | $ _25.00_ |
| Other: _Pool Pass Guest (2)_ | $ _50.00_ |

**7. UTILITIES.** We'll pay for the following items, if checked:
☐ water ☐ gas ☐ electricity ☐ master antenna
☐ wastewater ☐ trash ☐ cable TV
☐ other _n/a_

You'll pay for all other utilities, related deposits, and any charges, fees, or services on such utilities. You must not allow utilities to be disconnected for any reason—including disconnection for not paying your bills—until the lease term or renewal period ends. Cable channels that are provided may be changed during the Lease Contract term if the change applies to all residents. Utilities may be used only for normal household purposes and must not be wasted. If your electricity is ever interrupted, you must use only battery-powered lighting. If any utilities are submetered for the apartment, or prorated by an allocation formula, we will attach an addendum to this Lease Contract in compliance with state agency rules or city ordinance. If you fail to transfer all utilities for which you are responsible under this Lease Contract into your name, we may give you 10 days notice of default as described in the "Other Default" section in Paragraph 32 (Default by Resident), and if you have failed to transfer the utilities into your name at the end of that 10-day period, we may disconnect utilities without further notice to you.

**8. INSURANCE.** We do not maintain insurance to cover your personal property or personal injury. We are not responsible to any resident, guest, or occupant for damage or loss of personal property or personal injury from (including but not limited to) fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, hurricane, negligence of other residents, occupants, or invited/uninvited guests or vandalism unless otherwise required by law.

In addition, we urge all Tenants, and particularly those residing in coastal areas, areas near rivers, and areas prone to flooding, to obtain flood insurance. Renter's insurance may not cover damage to your property due to flooding. A flood insurance resource which may be available includes the National Flood Insurance Program managed by the Federal Emergency Management Agency (FEMA).

We ☒ require ☐ do not require you to get your own insurance for losses to your personal property or injuries due to theft, fire, water damage, pipe leaks and the like.

If renter's insurance is required, you shall maintain at all times during the Term of this Lease, at your sole expense, a renter's insurance policy, or its equivalent, issued by a licensed insurance company in a minimum policy coverage amount of $ _100000.00_ , and you shall provide us with proof of such insurance to our satisfaction.

If no box is checked, renter's insurance is not required.

Additionally, you are (check one) ☒ required to purchase personal liability insurance ☐ not required to purchase personal liability insurance. If no box is checked, personal liability insurance is not required. If required, failure to maintain personal liability insurance throughout your tenancy, including any renewal periods and/or lease extensions, may be an incurable breach of this Lease Contract and may result in the termination of tenancy and eviction and/or any other remedies as provided by this Lease Contract or state law.

You acknowledge that no portion of the rent paid by you under this agreement will be applied to the owner's structural fire insurance and that you are in no way a co-insured under any such policy, and that, in order to reduce the cost of insurance, the Owner has chosen to purchase fire and extended coverage insurance for the property for which the above rental agreement applies, with a deductible in the amount of $ _25000.00_ . If you or any member of your household, guest or invitee causes damages to the premises in an amount that is less than the amount of this insurance deductible, you agree to indemnify and reimburse the Owner for the amount of such damages, and that you may be liable for costs in excess of the deductible under any subrogation clause of the said policy. It is recommended that you secure insurance to protect your interest in the event of such a loss.

**9. LOCKS AND LATCHES.** Keyed lock(s) will be rekeyed after the prior resident moves out. The rekeying will be done before you move into your apartment.

You may at any time ask us to change or rekey locks or latches during the Lease Term. We must comply with those requests, but you must pay for them, unless otherwise provided by law.

Payment for Rekeying, Repairs, Etc. You must pay for all repairs or replacements arising from misuse or damage to devices by you or your occupants, or guests during your occupancy. You may be required to pay in advance if we notify you within a reasonable time after your request that you are more than 30 days delinquent in reimbursing us for repairing or replacing a device which was misused or damaged by you, your guest or an occupant; or if you have requested that we repair or change or rekey the same device during the 30 days preceding your request and we have complied with your request. Otherwise, you must pay immediately after the work is completed.

**10. SPECIAL PROVISIONS.** The following special provisions and any addenda or written rules furnished to you at or before signing will become a part of this Lease Contract and will supersede any conflicting provisions of this printed Lease Contract form.

_See Additional Special Provisions_
_____
_____
_____
_____

See any additional special provisions.

**11. REIMBURSEMENT.** You must promptly reimburse us for loss, damage, government fines, or cost of repairs or service in the apartment community due to a violation of the Lease Contract or rules, improper use, or negligence by you or your guests or occupants. Unless the damage or wastewater stoppage is due to our negligence, we're not liable for—and you must pay for—repairs, replacement costs, and damage to the following that result from your or your invitees, guests, or occupants' negligence or intentional acts: (1) damage to doors, windows, or screens; (2) damage from windows or doors left open; and (3) damage from wastewater stoppages caused by improper objects in lines exclusively serving your apartment. We may require payment at any time, including advance payment of repairs for which you're liable. Delay in demanding sums you owe is not a waiver.

**12. PROPERTY LEFT IN APARTMENT.**

Removal after Surrender. Upon termination of your tenancy, you agree to return all keys and physically vacate the apartment and remove all of your personal property. If you fail to remove your personal property at the time you return possession to the landlord and return all keys, we may throw away, give away, or otherwise dispose of any personal property left in the apartment unless an agreement in writing is otherwise negotiated.

Removal after Abandonment, Judicial Eviction or Other Means. When we retake possession of your unit, whether following abandonment, judicial eviction, or any other method other than your voluntary surrender of the apartment unit, we may store any personal possessions you've left in the abandoned unit. We will notify you of the location of your stored property by certified mail, return receipt requested to your last known address and to any other known addresses.

We will store your personal property for 14 calendar days after our notification to you of your abandonment. After this time, we may sell the property, retain the proceeds, and apply them towards the outstanding delinquencies. We will mail you any excess proceeds to your last known address. However, if we determine that the value of the property is less than it would cost to store and move said personal property, we may throw away, give away to charity, or otherwise dispose of some or all of the property. Any animal that is left in the apartment may be transported, at our discretion, to a shelter or boarding facility. In such an event, we will maintain records of the name and location of the facility to which the animal was removed. In addition, we may dispose of perishable items or those items that are either contaminated or a biohazard as we deem fit.

If you request access to your personal property and offer to pay for the storage and/or removal costs in writing, we will provide access to your personal property within five days of receipt of your offer and upon delivery of the payment of those costs.

**13. FAILING TO PAY FIRST MONTH'S RENT.** If you don't pay the first month's rent when or before the Lease Contract begins, all future rent will be automatically accelerated without notice and immediately due. We also may end your right of occupancy and recover damages, future rent, attorney's fees, court costs, and other lawful charges. Our rights and remedies under paragraph 32 (Default by Resident) apply to acceleration under this paragraph.

**14. RENT INCREASES AND LEASE CONTRACT CHANGES.** No rent increases or Lease Contract changes, except as allowed by the terms of paragraph 6 (Rent and Charges) and elsewhere in this Lease Contract, are allowed before the initial Lease Contract term ends, except for changes allowed by any special provisions in paragraph 10 (Special Provisions), by a written addendum or amendment signed by you and us, or by reasonable changes of apartment rules allowed under paragraph 18 (Community Policies or Rules). If, at least 5 days before the advance notice deadline referred to in paragraph 3 (Lease Term), we give you written notice of rent increases or lease changes effective when the lease term or renewal period ends, this Lease Contract will automatically continue month-to-month with the increased rent or lease changes. The new modified Lease Contract will begin on the date stated in the notice (without necessity of your signature) unless you give us written move-out notice under paragraph 44 (Move-Out Notice).

**15. DELAY OF OCCUPANCY.** If occupancy is or will be delayed for construction, repairs, cleaning, or a previous resident's holding over, we're not responsible for the delay. The Lease Contract will remain in force subject to: (1) abatement of rent on a daily basis during delay; and (2) your right to terminate as set forth below. Termination notice must be in writing. After termination, you are entitled only to refund of deposit(s) and any rent paid. Rent abatement or Lease Contract termination does not apply if delay is for cleaning or repairs that don't prevent you from occupying the apartment.

If there is a delay, you may terminate or exercise other remedies up to the date when the apartment is ready for occupancy, but not later, by the following methods: (1) You may terminate the Lease Contract upon 5 days advanced written notice; OR (2) You may maintain an action for possession of the dwelling in accordance with state law.

**16. AD VALOREM TAXES/FEES AND CHARGES - ADDITIONAL RENT.** Unless otherwise prohibited by law, if, during the term of this Agreement, any locality, city, state, or Federal Government imposes upon Us, any fee, charge, or tax, which is related to or charged by the number of occupants, or by the apartment unit itself, such that we are charged a fee, charge, or tax, based upon your use or occupancy of the apartment, we may add this charge as Additional Rent, during the term of the Lease Contract, with thirty (30) days advance written notice to you. After this written notice (the amount or approximate amount of the charge, will be included), you agree to pay, as Additional Rent, the amount of the charge, tax or fee imposed upon us, as a result of your occupancy. (As examples, these charges can include, but are not limited to: any charges we receive for any zoning violation, sound, noise or litter charge; any charge under any nuisance or chronic nuisance type statute, 911 or other life safety, per person, or per unit charge or tax and any utility bill unpaid by you, which is then assessed to us for payment.

**17. DISCLOSURE RIGHTS.** If someone requests information on you or your rental history for law-enforcement, governmental, or business purposes, we may provide it.

**18. COMMUNITY POLICIES OR RULES.** You and all guests and occupants must comply with any written apartment rules and community policies, including instructions for care of our property. Our rules are considered part of this Lease Contract. We may make reasonable changes to written rules, upon 30 days written notice, if they are distributed and applicable to all units in the apartment community and do not change dollar amounts on page 1 of this Lease Contract.

**Amenities.** Amenities and their use are not guaranteed and may be closed, temporarily or permanently, at the sole and absolute discretion of the owner based on the business needs of the apartment or in response to any of the categories listed in Paragraph 41 (Force Majeure), without notice, obligation or recompense of any nature to Resident.

**19. LIMITATIONS ON CONDUCT.** The apartment and other areas reserved for your private use must be kept clean and free of trash, garbage, and other debris. Trash must be disposed of at least weekly in appropriate receptacles in accordance with local ordinances. Passageways may be used only for entry or exit. You agree to keep all passageways and common areas free of obstructions such as trash, storage items, and all forms of personal property. No person shall ride or allow bikes, skateboards, or other similar objects in the passageways. Any swimming pools, saunas, spas, tanning beds, exercise rooms, storerooms, laundry rooms, and similar areas must be used with care in accordance with apartment rules and posted signs. Glass containers are prohibited in all common areas. You, your occupants, or guests may not anywhere in the apartment community: use candles or use kerosene lamps or kerosene heaters without our prior written approval; cook on balconies or outside; or solicit business or contributions. Conducting any kind of business (including child care services) in your apartment or in the apartment community is prohibited—except that any lawful business conducted "at home" by computer, mail, or telephone is permissible if customers, clients, patients, or other business associates do not come to your apartment for business purposes. We may regulate: (1) the use of patios, balconies, and porches; (2) the conduct of furniture movers and delivery persons; and (3) recreational activities in common areas. You'll be liable to us for damage caused by you or any guests or occupants.

We may exclude from the apartment community guests or others who, in our judgment, have been violating the law, violating this Lease Contract or any apartment rules, or disturbing other residents, neighbors, visitors, or owner representatives. We may also exclude from any outside area or common area a person who refuses to show photo identification or refuses to identify himself or herself as a resident, occupant, or guest of a specific resident in the community.

You agree to notify us if you or any occupants are convicted of any felony, or misdemeanor involving a controlled substance, violence to another person, or destruction of property. You also agree to notify us if you or any occupant registers as a sex offender in any state. Informing us of criminal convictions or sex offender registry does not waive our right to evict you.

**20. PROHIBITED CONDUCT.** You, your occupants or guests, or the guests of any occupants, may not engage in the following activities: behaving in a loud or obnoxious manner; disturbing or threatening the rights, comfort, health, safety, or convenience of others (including our agents and employees) in or near the apartment community; disrupting our business operations; manufacturing, delivering; possessing with intent to deliver, or otherwise possessing a controlled substance or drug paraphernalia; engaging in or threatening violence; possessing a weapon prohibited by state law; discharging a firearm in the apartment community; displaying or possessing a gun, knife, or other weapon in the common area in a way that may alarm others; storing anything in closets having gas appliances; tampering with utilities or telecommunications; bringing hazardous materials into the apartment community; or injuring our reputation by making bad faith allegations against us to others.

**21. PARKING.** We may regulate the time, manner, and place of parking cars, trucks, motorcycles, bicycles, boats, trailers, and recreational vehicles by anyone. We may have unauthorized or illegally parked vehicles towed under an appropriate statute. A vehicle is unauthorized or illegally parked in the apartment community if it:

(1) has a flat tire or other condition rendering it inoperable; or
(2) is on jacks, blocks or has wheel(s) missing; or
(3) has no current license plate or no current registration and/or inspection sticker; or
(4) takes up more than one parking space; or
(5) belongs to a resident or occupant who has surrendered or abandoned the apartment; or
(6) is parked in a marked handicap space without the legally required handicap insignia; or
(7) is parked in space marked for manager, staff, or guest at the office; or
(8) blocks another vehicle from exiting; or
(9) is parked in a fire lane or designated "no parking" area; or
(10) is parked in a space marked for other resident(s) or unit(s); or
(11) is parked on the grass, sidewalk, or patio; or
(12) blocks garbage trucks from access to a dumpster; or
(13) belongs to a resident and is parked in a visitor or retail parking space.

Blue Moon eSignature Services Document ID: 346566363

**22. RELEASE OF RESIDENT.** Unless you're entitled to terminate your tenancy under paragraphs 10 (Special Provisions); 15 (Delay of Occupancy), 31 (Responsibilities of Owner), or 44 (Move-Out Notice), you won't be released from this Lease Contract for any reason—including but not limited to voluntary or involuntary school withdrawal or transfer, voluntary or involuntary job transfer, marriage, separation, divorce, reconciliation, loss of co-residents, loss of employment, bad health, or death.

**23. MILITARY PERSONNEL CLAUSE.** All parties to this Lease Contract agree to comply with any federal law, including, but not limited to the Service Member's Civil Relief Act, or any applicable state law(s), if you are seeking to terminate this Lease Contract and/or subsequent renewals and/or Lease Contract extensions under the rights granted by such laws.

**24. RESIDENT SAFETY AND PROPERTY LOSS.** You and all occupants and guests must exercise due care for your own and others' safety and security, especially in the use of smoke detectors and carbon monoxide detectors, keyed deadbolt locks, keyless bolting devices, window latches, and access control devices.

**Smoke Detectors and Carbon Monoxide Detectors.** We'll furnish smoke detectors and carbon monoxide detectors only if required by statute, and we'll test them and provide working batteries when you first take possession. After that, you must test the smoke detectors and the carbon monoxide detectors on a regular basis, and pay for and replace batteries as needed, unless the law provides otherwise. We may replace dead or missing batteries at your expense, without prior notice to you. You must immediately report smoke-detector and carbon monoxide detector malfunctions to us. Neither you nor others may disable neither the smoke detectors nor the carbon monoxide detectors. If you damage or disable the smoke detector or carbon monoxide detector or remove a battery without replacing it with a working battery, you may be liable to us under state statute for $100 plus one month's rent, actual damages, and attorney's fees. If you disable or damage the smoke detector or the carbon monoxide detector, or fail to replace a dead battery or report malfunctions to us, you will be liable to us and others for any loss, damage, or fines from fire, smoke, or water.

**Casualty Loss.** We're not liable to any resident, guest, or occupant for personal injury or damage or loss of personal property from any cause, including but not limited to: fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, or vandalism unless otherwise required by law. During freezing weather, you must ensure that the temperature in the apartment is sufficient to make sure that the pipes do not freeze (the appropriate temperature will depend upon weather conditions and the size and layout of your unit). If the pipes freeze or any other damage is caused by your failure to properly maintain the heat in your apartment, you'll be liable for damage to our and other's property. If you ask our representatives to perform services not contemplated in this Lease Contract, you will indemnify us and hold us harmless from all liability for these services.

**Crime or Emergency.** Dial 911 or immediately call local medical emergency, fire, or police personnel in case of accident, fire, smoke, or suspected criminal activity, or other emergency involving imminent harm. You should then contact our representative. We're not obliged to furnish security personnel, security lighting, security gates or fences, or other forms of security. If we provide any access control devices or security measures upon the property, they are not a guarantee to prevent crime or to reduce the risk of crime on the property. You agree that no access control or security measures can eliminate all crime and that you will not rely upon any provided access control or security measures as a warranty or guarantee of any kind. We're not responsible for obtaining criminal-history checks on any residents, occupants, guests, or contractors in the apartment community. If you or any occupant or guest is affected by a crime, you must make a written report to our representative and to the appropriate local law-enforcement agency. You also must furnish us with the law-enforcement agency's incident report number upon request.

**25. CONDITION OF THE PREMISES AND ALTERATIONS.** You accept the apartment, fixtures, and furniture as is, except for conditions materially affecting the health or safety of ordinary persons. We disclaim all implied warranties. You'll be given an Inventory and Condition form on or before move-in. You must note on the form all defects or damage and return it to our representative. Otherwise, everything will be considered to be in a clean, safe, and good working condition.

You must use customary diligence in maintaining the apartment and not damaging or littering the common areas. Unless authorized by statute or by us in writing, you must not perform any repairs, painting, wallpapering, carpeting, electrical changes, or otherwise alter our property. No holes or stickers are allowed inside or outside the apartment. But we'll permit a reasonable number of small nail holes for hanging pictures on sheetrock walls and in grooves of wood-paneled walls, unless our rules state otherwise. No water furniture, washing machines, additional phone or TV-cable outlets, alarm systems, or lock changes, additions, or rekeying is permitted unless statutorily allowed or we've consented in writing. You may install a satellite dish or antenna provided you sign our satellite dish or antenna lease addendum which complies with reasonable restrictions allowed by federal law. You agree not to alter, damage, or remove our property, including alarm systems, smoke detectors and carbon monoxide detectors, furniture, telephone and cable TV wiring, screens, locks, and access control devices. When you move in, we'll supply light bulbs for fixtures we furnish, including exterior fixtures operated from inside the apartment; after that, you'll replace them at your expense with bulbs of the same type and wattage. Your improvements to the apartment (whether or not we consent) become ours unless we agree otherwise in writing.

**26. REQUESTS, REPAIRS, AND MALFUNCTIONS.** IF YOU OR ANY OCCUPANT NEEDS TO SEND A NOTICE OR REQUEST—FOR EXAMPLE, FOR REPAIRS, INSTALLATIONS, SERVICES, OR SECURITY-RELATED MATTERS—IT MUST BE SUBMITTED THROUGH EITHER THE ONLINE TENANT/MAINTENANCE PORTAL, OR SIGNED AND IN WRITING AND DELIVERED TO OUR DESIGNATED REPRESENTATIVE (except in case of fire, smoke, gas, explosion, overflowing sewage, uncontrollable running water, electrical shorts, or crime in progress). Our written notes on your oral request do not constitute a written request from you.

Our complying with or responding to any oral request regarding security or non-security matters doesn't waive the strict requirement for written notices under this Lease Contract. You must promptly notify us in writing of: water leaks; electrical problems; malfunctioning lights; broken or missing locks or latches; and other conditions that pose a hazard to property, health, or safety. We may change or install utility lines or equipment serving the apartment if the work is done reasonably without substantially increasing your utility costs. We may turn off equipment and interrupt utilities as needed to avoid property damage or to perform work. If utilities malfunction or are damaged by fire, water, or similar cause, you must notify our representative immediately. If air conditioning or other equipment malfunctions, you must notify our representative as soon as possible on a business day. We'll act with customary diligence to make repairs and reconnections. Rent will not abate in whole or in part.

If we believe that fire or catastrophic damage is substantial, or that performance of needed repairs poses a danger to you, we may terminate your tenancy within a reasonable time by giving you written notice. If your tenancy is so terminated, we'll refund prorated rent and all deposits, less lawful deductions.

**27. ANIMALS.** Unless otherwise provided under federal, state, or local law, no animals (including mammals, reptiles, birds, fish, rodents, and insects) are allowed, even temporarily, anywhere in the apartment or apartment Community unless we've so authorized in writing. You must remove an illegal or unauthorized animal within 24 hours of notice from us, or you will be considered in default of this Lease Contract. If we allow an animal as a pet, you must execute a separate animal addendum which may require additional deposits, rents, fees or other charges. An animal deposit is considered a general security deposit. We will authorize an assistance animal for a disabled person. When allowed by applicable laws, before we authorize an assistance animal, if the disability is not readily apparent, we may require a written statement from a qualified professional verifying the disability-related need for the assistance animal. If we authorize an assistance animal, we may require you to execute a separate animal and/or assistance animal addendum. Animal deposits, additional rents, fees or other charges will not be required for an assistance animal needed due to disability, including an emotional support or service animal, as authorized under federal, state, or local law. You must not feed stray or wild animals.

If you or any guest or occupant violates animal restrictions (with or without your knowledge), you'll be subject to charges, damages, eviction, and other remedies provided in this Lease Contract. If an animal has been in the apartment at any time during your term of occupancy (with or without our consent), we'll charge you for deflexing, deodorizing, and shampooing. Initial and daily animal-violation charges and animal-removal charges are liquidated damages for our time, inconvenience, and overhead (except for attorney's fees and litigation costs) in enforcing animal restrictions and rules. We may remove an unauthorized animal by (1) leaving, in a conspicuous place in the apartment, a 24-hour written notice of intent to remove the animal, and (2) following the procedures of paragraph 28 (When We May Enter). We may keep or kennel the

© 2021, National Apartment Association, Inc. - 9/2021, Arizona

✓ Blue Moon eSignature Services Document ID: 346566363

animal or turn it over to a humane society or local authority. When keeping or kenneling an animal, we won't be liable for loss, harm, sickness, or death of the animal unless due to our negligence. We'll return the animal to you upon request if it has not already been turned over to a humane society or local authority. You must pay for the animal's reasonable care and kenneling charges. We have no lien on the animal for any purpose.

**28. WHEN WE MAY ENTER.** Except in case of emergency or when it is impractical to do so, landlord will give at least 2-day advance written notice of any entry into an apartment. This notice may be hand delivered to someone in the apartment, or may be sent certified or registered mail. If notice is sent by mail, it is deemed received 5 days after mailing or the day the person receives the mail, whichever occurs first. Notice to us of a service or maintenance request automatically grants us the authority to enter the apartment at all reasonable times for the purpose of that request. We have the right to enter in case of emergencies and, subject to notice requirements, in cases where entry is for: responding to our request; making repairs or replacements; estimating repair or refurbishing costs; performing pest control; doing preventive maintenance; changing filters; testing or replacing smoke-detector batteries or carbon monoxide detector batteries; retrieving unreturned tools, equipment or appliances; preventing waste of utilities; exercising our contractual lien; leaving notices; delivering, installing, reconnecting, or replacing appliances, furniture, equipment, or access control devices; removing or rekeying unauthorized access control devices; removing unauthorized window coverings; stopping excessive noise; removing

health or safety hazards (including hazardous materials); or items prohibited under our rules; removing perishable foodstuffs if your electricity is disconnected; removing unauthorized animals; cutting off electricity according to statute; retrieving property owned or leased by former residents; inspecting when immediate danger to person or property is reasonably suspected; allowing persons to enter as you authorized in your rental application (if you die, are incarcerated, etc.); allowing entry by a law officer with a search or arrest warrant, or in hot pursuit; showing apartment to prospective residents (after move-out or vacate notice has been given); or showing apartment to government inspectors for the limited purpose of determining housing and fire ordinance compliance by us and to lenders, appraisers, contractors, prospective buyers, or insurance agents.

**29. JOINT AND SEVERAL RESPONSIBILITY.** Each resident is jointly and severally liable for all Lease Contract obligations. If you or any guest or occupant violates the Lease Contract or rules, all residents are considered to have violated the Lease Contract. Our requests and notices (including sale notices) to any resident constitute notice to all residents and occupants. Notices and requests from any resident or occupant (including notices of tenancy termination, repair requests, and entry permissions) constitute notice from all residents. In eviction suits, each resident is considered the agent of all other residents in the apartment for service of process. Security-deposit refunds and deduction itemizations of multiple residents will comply with paragraph 49 (Deposit Return, Surrender and Abandonment).

## Replacements

**30. REPLACEMENTS AND SUBLETTING.** Replacing a resident, subletting, assignment, or granting a right or license to occupy is allowed only when we expressly consent in writing. If departing or remaining residents find a replacement resident acceptable to us before moving out and we expressly consent, in writing, to the replacement, subletting, assignment, or granting a right or any license to occupy, then:

(1) a reasonable administrative (paperwork) and/or transfer fee will be due, and a rekeying fee will be due if rekeying is requested or required; and

(2) the departing and remaining residents will remain liable for all lease obligations for the rest of the original lease term.

**Procedures for Replacement.** If we approve a replacement resident, then, at our option: (1) the replacement resident must sign this Lease Contract with or without an increase in the total security deposit; or (2) the remaining and replacement residents must sign an entirely new Lease Contract. Unless we agree otherwise in writing, your security deposit will automatically transfer to the replacement resident as of the date we approve. The departing resident will no longer have a right to occupancy or a security deposit refund, but will remain liable for the remainder of the original Lease Contract term unless we agree otherwise in writing—even if a new Lease Contract is signed.

## Responsibilities of Owner and Resident

**31. RESPONSIBILITIES OF OWNER.** We'll act with customary diligence to:

(1) keep common areas reasonably clean, subject to paragraph 25 (Conditions of the Premises and Alterations);

(2) maintain fixtures, furniture, hot water, heating and A/C equipment;

(3) comply with applicable federal, state, and local laws regarding safety, sanitation, and fair housing; and

(4) make all reasonable repairs, subject to your obligation to pay for damages for which you are liable.

If we violate any of the above, you may terminate your tenancy and exercise other remedies under state statute only as follows:

(a) You must make a written request for repair or remedy of the condition. Your request must involve a material breach of the Lease Contract, and it must include a description of all needed repairs or actions;

(b) after receiving the request, we have a reasonable time to repair, considering the nature of the problem and the reasonable availability of materials, labor, and utilities; and

(c) if repairs involving a material noncompliance have not been completed within 10 days, or within 5 days if the repairs materially affect your health or safety, you may terminate your tenancy and exercise other statutory remedies.

**32. DEFAULT BY RESIDENT.** You'll be in default if you or any guest or occupant violates any terms of this Lease Contract including but not limited to the following violations: (1) you don't pay rent or other amounts that you owe when due; (2) you or any guest or occupant violates the apartment rules, or fire, safety, health, or criminal laws, regardless of whether or where arrest or conviction occurs; (3) you abandon the apartment; (4) you give incorrect or false answers in a rental application; (5) you or any occupant is arrested, convicted, or given deferred adjudication for a felony offense involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia under state statute; (6) any illegal drugs or paraphernalia are found in your apartment; (7) you or any guest or

occupant engages in any of the prohibited conduct described in paragraph 20 (Prohibited Conduct); or (8) you or any occupant, in bad faith, makes an invalid complaint to an official or employee of a utility company or the government.

**Lease Renewal When A Breach or Default Has Occurred.** In the event that you enter into a subsequent Lease prior to the expiration of this Lease and you breach or otherwise commit a default under this Lease, We may, at our sole and absolute discretion, terminate the subsequent Lease, even if the subsequent Lease term has yet to commence. We may terminate said subsequent Lease by sending you written notice of our desire to terminate said subsequent Lease.

**Eviction.** *Failure to Maintain Unit.* If you default in your obligations to maintain the apartment unit and that default materially affects the health and safety of you or other residents, we may give you 5 days written notice of tenancy termination, and will in that notice describe your acts or omissions that constitute the breach of the Lease Contract. If you cure these breaches within the 5-day deadline, your tenancy will not terminate. Otherwise, we may file for eviction immediately. If there are further incidences of similar types of breaches for which you have been given previous notice, we may file for eviction 10 days after written notification to you of an additional noncompliance of the same or similar nature as the previous noncompliance.

**Irreparable Default.** If your default is material and irreparable, including but not limited to discharging a weapon, homicide, prostitution, criminal street gang activity, or other statutorily proscribed violations, we may deliver you written notice of immediate tenancy termination and file for eviction immediately.

**Nonpayment of Rent.** If you default for nonpayment of rent, and fail to bring rent current within 5 days after we deliver written notice to you of our intent to terminate your tenancy if rent is not paid within that time, we may terminate your tenancy by filing an eviction action. Accepting money at any time does not waive our right to damages, past or future rent, or other sums owed under the Lease Contract, and accepting partial payment of rent does not

waive our right to continue with eviction proceedings. We are not required to accept partial payment, but if we do so, you agree to sign a waiver agreement in which you agree to make scheduled payments and agree that we have waived none of our enforcement rights by accepting partial payment.

*Other Default.* If you otherwise default in a manner not described above in this eviction subsection, we may deliver written notice to you that your tenancy will terminate not sooner than 10 days after the receipt of our notice if your breach is not remedied within 10 days. If you fail to cure the breaches outlined in our notice within this 10-day period, we may file for eviction immediately.

**Acceleration.** All monthly rent for the rest of the Lease Contract term or renewal period will be accelerated automatically without notice or demand (before or after acceleration) and will be immediately due and delinquent if, without our written consent: (1) you move out, remove property in preparing to move out, or give oral or written notice (by you or any occupant) of intent to move out before the Lease Contract term or renewal period ends; and (2) you've not paid all rent for the entire Lease Contract term or renewal period. Such conduct is considered a default for which we need not give you notice. Remaining rent also will be accelerated if you're judicially evicted or move out when we demand because you've defaulted. Acceleration is subject to our mitigation obligations below.

**Holdover.** You or any occupant, invitee, or guest must not hold over beyond the date contained in your move-out notice or our notice to vacate (or beyond a different move-out date agreed to by the parties in writing). If holdover occurs, then (1) we may immediately file suit for possession; (2) you will be liable for 2 month's rent or

twice our actual damages, whichever is greater; and (3) at our option, we may extend the lease term—for up to 1 month from the date of notice of lease extension—by delivering written notice to you or your apartment while you continue to holdover.

**Other Remedies.** We may report unpaid amounts to credit agencies. If you default and move out early, you will pay us any amounts stated to be rental discounts in paragraph 10 (Special Provisions), in addition to other sums due. Upon your default, we have all other legal remedies, including tenancy termination and lockout under state statute. Unless a party is seeking exemplary, punitive, sentimental or personal-injury damages, the prevailing party may recover from the non-prevailing party attorney's fees and all other litigation costs. Late charges are liquidated damages for our time, inconvenience, and overhead in collecting late rent (but are not for attorney's fees and litigation costs). All unpaid amounts bear 18% interest per year from due date, compounded annually. You must pay all collection-agency fees if you fail to pay all sums due within 10 days after we mail you a letter demanding payment and stating that collection agency fees will be added if you don't pay all sums by that deadline.

**Remedies Cumulative.** Any remedies set forth herein shall be cumulative, in addition to, and not in limitation of, any other remedies available to Landlord under any applicable law.

**Mitigation of Damages.** If you move out early, you'll be subject to all other remedies. We'll exercise customary diligence to relet and mitigate damages. We'll credit all subsequent rent that we actually receive from subsequent residents against your liability for past-due and future rent and other sums due.

General Clauses

**33. ENTIRE AGREEMENT.** Neither we nor any of our representatives have made any oral promises, representations, or agreements. This Lease Contract is the entire agreement between you and us.

**34. NO AUTHORITY TO AMEND UNLESS IN WRITING.** Our representatives (including management personnel, employees, and agents) have no authority to waive, amend, or terminate this Lease Contract or any part of it, unless in writing, and no authority to make promises, representations, or agreements that impose security duties or other obligations on us or our representatives unless in writing.

**35. NO WAIVER.** No action or omission of our representative will be considered a waiver of any subsequent violation, default, or time or place of performance. Our not-enforcing or belatedly enforcing written-notice requirements, rental due dates, acceleration, liens, or other rights isn't a waiver any circumstances.

**36. NOTICE.** Except when notice or demand is required by statute, you waive any notice and demand for performance from us if you default. Written notice to or from our managers constitutes notice to or from us. Any person giving a notice under this Lease Contract should retain a copy of the memo or letter that was given. All notices must be signed.

**37. MISCELLANEOUS.**
- A. Exercising one remedy won't constitute an election or waiver of other remedies.
- B. Unless prohibited by law or the respective insurance policies, insurance subrogation is waived by all parties.
- C. All remedies are cumulative.
- D. No employee, agent, or management company is personally liable for any of our contractual, statutory, or other obligations merely by virtue of acting on our behalf.
- E. This Lease Contract binds subsequent owners.
- F. Neither an invalid clause nor the omission of initials on any page invalidates this Lease Contract.
- G. All provisions regarding our non-liability and conduct apply to our employees, agents, and management companies.
- H. This Lease Contract is subordinate or superior to existing and future recorded mortgages, at lender's option.
- I. All lease obligations must be performed in the county where the apartment is located.
- J. All discretionary rights reserved for us within this Lease Contract or any accompanying addenda are at our sole and absolute discretion.

**38. WAIVER OF JURY TRIAL.** To minimize legal expenses and, to the extent allowed by law, you and we agree that a trial of any lawsuit based on statute common law, and/or related to this Lease Contract shall be to a judge and not a jury.

**39. CONTACTING YOU.** By signing this lease, you are agreeing that we, our representative(s) or agent(s) may contact you. You agree that we may contact you using any contact information relating to your lease including any number (i) you have provided to us (ii) from which you called us, or (iii) which we obtained and through which we reasonably believe we can reach you. You agree we may use any means to contact you. This may include calls made to your cellular telephone using an automatic telephone dialing system, artificial or prerecorded voice messages, text messages, mail, e-mail, and calls to your phone or Voice over Internet Protocol (VoIP) service, or any other data or voice transmission technology. You agree to promptly notify us if you change any contact information you provide to us. You are responsible for any service provider charges as a result of us contacting you.

**40. OBLIGATION TO VACATE.** If we provide you with a notice to vacate, or if you provide us with a written notice to vacate or intent to move-out in accordance with paragraph 3 (Lease Term), and we accept such written notice, then you are required to vacate the Apartment and remove all of your personal property therefrom at the expiration of the Lease term, or by the date set forth in the notice to vacate, whichever date is earlier, without further notice or demand from us.

**41. FORCE MAJEURE.** If we are prevented from completing performances of any obligations hereunder by an act of God, strikes, epidemics, war, acts of terrorism, riots, flood, fire, hurricane, tornado, sabotage, or other occurrence which is beyond the control of the parties, then we shall be excused from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

Furthermore, if such an event damages the property to materially affect its habitability by some or all residents, we reserve the right to vacate any and all leases and you agree to excuse us from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

**42. PAYMENTS.** Payment of all sums is an independent covenant. At our option and without notice, we may apply money received (other than sale proceeds under paragraph 12 (Property Left in Apartment) or utility payments subject to governmental regulations) first to any of your unpaid obligations, then to current rent—regardless of notations on checks or money orders and regardless of when the obligations arose. All sums other than rent are due upon our demand. After the due date, we do not have to accept the rent or any other payments.

**43. ASSOCIATION MEMBERSHIP.** We represent that either: (1) we or: (2) the management company that represents us, is at the time of signing this Lease Contract or a renewal of this Lease Contract, a member of both the National Apartment Association and any affiliated state and local apartment (multi-housing) associations for the area where the apartment is located.

☑ Blue Moon eSignature Services Document ID: 346566363

**44.MOVE-OUT NOTICE.** Before moving out, either at the end of the lease term, any extension of the lease term, or prior to the end of the lease term, you must give our representative advance written notice of your intention to vacate as required by paragraph 3 (Lease Term). If you move out prior to the end of the lease term, your notice does not act as a release of liability for the full term of the Lease Contract. You will still be liable for the entire Lease Contract term if you move out early under paragraph 22 (Release of Resident) except if you are able to terminate your tenancy under the statutory rights explained under paragraph 22 (Release of Resident), or any other applicable laws. All notices to vacate must be in writing and must provide the date by which you intend to vacate. If the notice does not comply with the time requirements of paragraph 3 (Lease Term), even if you move by the last date in the lease term, you will be responsible for an additional month's rent. If you fail to vacate by the date set forth in your notice, you will automatically and immediately become a holdover tenant pursuant to state law, and we will have all remedies available under this Lease Contract and state law.

**45.MOVE-OUT PROCEDURES.** The move-out date can't be changed unless we and you both agree in writing. You won't move out before the Lease Contract term or renewal period ends unless all rent for the entire Lease Contract term or renewal period is paid in full. Early move-out may result in acceleration of future rent under paragraph 32 (Default by Resident). You're prohibited by law from applying any security deposit to rent. You won't stay beyond the date you are supposed to move out. All residents, guests, and occupants must abandon the apartment before the 30-day period for deposit refund begins. You must give us and the U.S. Postal Service, in writing, each resident's forwarding address.

**46.CLEANING.** You must thoroughly clean the apartment, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. You must follow move-out cleaning instructions if they have been provided. If you don't clean adequately, you'll be liable for reasonable cleaning charges.

**47.MOVE-OUT INSPECTION.** You should meet with our representative for a move-out inspection. Our representative has no authority to bind or limit us regarding deductions for repairs, damages, or charges. Any statements or estimates by us or our representative are subject to our correction, modification, or disapproval before final refunding or accounting. You may be present at move-out inspection if you notify us in advance in writing of your request.

**48.SECURITY DEPOSIT DEDUCTIONS AND OTHER CHARGES.** You'll be liable for the following charges, if applicable: unpaid rent; unpaid utilities; unreimbursed service charges; repairs or damages caused by negligence, carelessness, accident, or abuse, including stickers, scratches, tears, burns, stains, or unapproved holes; replacement cost of our property that was in or attached to the apartment and is missing; replacing dead or missing smoke-detector batteries or carbon monoxide detector batteries; utilities for repairs or cleaning; trips to let in company representatives to remove your telephone or TV cable services or rental items (if you so request or

have moved out); trips to open the apartment when you or any guest or occupant is missing a key; unreturned keys; missing or burned-out light bulbs; removing or rekeying unauthorized access control devices or alarm systems; packing, removing, or storing property removed or stored under paragraph 12 (Property Left in Apartment); removing illegally parked vehicles; special trips for trash removal caused by parked vehicles blocking dumpsters; false security-alarm charges unless due to our negligence; animal-related charges under paragraph 27 (Animals); government fees or fines against us for violation (by you, your occupants, or guests) of local ordinances relating to smoke detectors and carbon monoxide detectors, false alarms, recycling, or other matters; late-payment and returned-check charges; a charge (not to exceed $100) for owner/manager's time and inconvenience in our lawful removal of an animal or in any valid eviction proceeding against you, plus attorney's fees, court costs, and filing fees actually paid; and other sums due under this Lease Contract.

You'll be liable to us for: (1) charges for replacing all keys and access devices referenced in paragraph 5 (Keys) if you fail to return them on or before your actual move-out date; and (2) accelerated rent if you have violated paragraph 32 (Default by Resident).

**49.DEPOSIT RETURN, SURRENDER, AND ABANDONMENT.** Deposit Return and Forwarding Address. You are required to provide us written notice of your forwarding address, on or before termination of this Lease Contract. We'll mail you, to the forwarding address you provide, your security deposit refund (less lawful deductions) and an itemized accounting of any deductions no later than 14 business days after the termination of your tenancy, surrender or abandonment, and return of possession and demand by you. If you fail to provide us with your forwarding address in writing, as required above, we will process the unclaimed security deposit in accordance with state law.

Surrender. You have *surrendered* the apartment when: (1) the move-out date has passed and no one is living in the apartment in our reasonable judgment; or (2) all apartment keys and access devices listed in paragraph 5 (Keys) have been turned in where rent is paid—whichever date occurs first. An apartment is also "surrendered" 10 days after the death of a sole resident.

Abandonment. Surrender, abandonment, and judicial eviction end your right of possession for all purposes and gives us the immediate right to: clean up, make repairs in, and relet the apartment; determine any security deposit deductions; and remove property left in the apartment in accordance with state law. Surrender, abandonment, and judicial eviction affect your rights to property left in the apartment (paragraph 12 - Property Left in Apartment), but do not affect our mitigation obligations (paragraph 32 - Default by Resident).

Once these conditions precedent occur, we may retake the apartment pursuant to A.R.S. § 33-1370 by (1) mailing to you a notice of abandonment via certified U.S. mail with return receipt requested to the apartment and to any other known address, (2) posting the notice of abandonment upon the front door of the apartment for a five day period, and (3) entering the apartment at the end of the five-day period.

**50.SEVERABILITY.** If any provision of this Lease Contract is invalid or unenforceable under applicable law, such provision shall be ineffective to the extent of such invalidity or unenforceability only without invalidating or otherwise affecting the remainder of this Lease Contract. The court shall interpret the lease and provisions herein in a manner such as to uphold the valid portions of this Lease Contract while preserving the intent of the parties.

**51.ORIGINALS AND ATTACHMENTS.** This Lease Contract has been executed in multiple originals, with original signatures. We will provide you with a copy of the Lease Contract. Your copy of the Lease Contract may be in paper format, in an electronic format at your request, or sent via e-mail if we have communicated by e-mail about this Lease. Our rules and community policies, if any, will be attached to the Lease Contract and provided to you at signing. When an inventory and condition form is completed, you should retain a copy, and we should retain a copy. Any addenda or amendments you sign as a part of executing this Lease Contract are binding and hereby incorporated into and made part of the Lease Contract between you and us. This Lease is the entire agreement between you and us. You acknowledge that you are NOT relying on any oral representations.

A copy or scan of this Lease Contract and related addenda, amendments, and agreements may be used for any purpose and shall be treated as an original.

| You are legally bound by this document. Read it carefully before signing. | |
|---|---|
| **Resident or Residents** *(all sign below)* | **Date Signed** |
| *Andrew Roach* | 11/18/2022 |
| | |
| | |
| | |
| | |
| **Owner or Owner's Representative** *(signing on behalf of owner)* | **Date Signed** |
| *Ryan Gillen* | 11/18/2022 |

# Move Out Statement

| Code | t0002856 | Property | phxprop | Lease From | 11/22/2022 |
|------|----------|----------|---------|------------|------------|
| Name | Andrew Roach | Unit | 1201A | Lease To | 10/21/2023 |
| Address | Kenect.Phoenix | Status | Past | Move In | 11/22/2022 |
| | 355 N Central | Rent | 1,412.25 | Move Out | 05/04/2023 |
| City | Phoenix, AZ 85004 | | | Notice | 05/04/2023 |
| Telephone | (H)-(424) 420-5550 | | | | |

| Date | Description | Charge | Payment | Balance | Chg/Rec |
|------|-------------|--------|---------|---------|---------|
| | Balance as of 5/01/2023 | | | 3,271.76 | |
| 05/01/2023 | :Tax Market Rent (05/2023) | 32.48 | 0.00 | 3,304.24 | 100848 |
| 05/01/2023 | Market Rent (05/2023) | 1,412.25 | 0.00 | 4,716.49 | 100849 |
| 05/04/2023 | :Tax Market Rent (05/2023) 4 days | -28.29 | 0.00 | 4,688.20 | 119266 |
| 05/04/2023 | Market-Rent-(05/2023) Credit 27 days | -1,230.02 | 0 00 | 3,458.18 | 119267 |
| 05/04/2023 | :Tax Market Rent (06/2023) 0 days | -32.48 | 0.00 | 3,425.70 | 119268 |
| 05/04/2023 | Market Rent (06/2023) Credit 30 days | -1,412.25 | 0.00 | 2,013.45 | 119269 |
| 05/06/2023 | Late Charges | 50.00 | 0.00 | 2,063.45 | 102424 |
| 05/07/2023. | Sales Tax | 1.15 | 0.00 | 2,064.60 | 102461 |
| 06/01/2023. | :Tax Market Rent (06/2023) | 32.48 | 0.00 | 2,097.08 | 104983 |
| 06/01/2023 | Market Rent (06/2023) | 1,412.25 | 0.00 | 3,509.33 | 104984 |
| 06/06/2023 | Late Charges | 50.00 | 0.00 | 3,559.33 | 106699 |
| 06/08/2023 | Sales Tax | 1.15 | 0.00 | 3,560.48 | 106781 |

## Columbia Debt Recovery LLC DBA Genesis
## State Disclosures

**TO ALL CONSUMERS – Notice about Electronic Check Conversion:** When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day we receive your payment and you will not receive your check back from your financial institution. Also, you authorize us to represent a check as an electronic fund transfer from your account if your payment is returned unpaid.

**Please be aware of the following rights. This list does not contain a complete list of the rights consumers have under state and federal law.**

**California Residents:** The state Rosenthal Fair Debt Collection Practices Act, and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or http://www.ftc.gov/.

As required by law, you are hereby notified that a negative credit agency report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

## CALIFORNIA COLLECTIONS LICENSE NUMBER: 10771-99

**Colorado Residents:** The Colorado office of Columbia Debt Recovery is located at 27 North Willerup, Suite B, Montrose, CO 81401, telephone (970) 249-7514. FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE WWW.COAG.GOV/CAR. A consumer has the right to request in writing that a debt collector or collection agency cease further communication with the consumer. A written request to cease communication will not prohibit the debt collector or collection agency from taking any other action authorized by law to collect the debt.

**Minnesota Residents:** This collection agency is licensed by the Minnesota Department of Commerce.

**Maine Residents:** Hours of Operation: M-F 8:00am – 5:00pm PDT; Call toll free (866) 863-9194.

**New York:** Debt collectors, in accordance with the Fair Debt Collection Practices Act, 15 U.S.C.
§ 1692 et seq., are prohibited from engaging in abusive, deceptive, and unfair debt collection efforts, including but not limited to: the use or threat of violence; (ii) the use of obscene or profane language; and (iii) repeated phone calls made with the intent to annoy, abuse, or harass. If a creditor or debt collector receives a money judgment against you in court, state and federal laws may prevent the following types of income from being taken to pay the debt:1. Supplemental security income, (SSI); 2. Social security; 3. Public assistance (welfare); 4. Spousal support, maintenance (alimony) or child support; 5. Unemployment benefits; 6. Disability benefits; 7. Workers' compensation benefits; 8. Public or private pensions;9. Veterans' benefits; 10. Federal student loans, federal student grants, and federal work study funds; and11. Ninety percent of your wages or salary earned in the last sixty days.

**New York City Borough Residents:** Department of Consumer Affairs, City of New York, License # 2095802-DCA. Please contact Hayden Hunter at (866) 863-9194 If you have questions. Para un agente de habla hispana, llame al (877)397-9337 Please see https://www1.nyc.gov/site/dca/index.page for a translation of commonly used debt collection terms in your preferred language.

**North Carolina Residents:** North Carolina Department of Insurance Permit # 119507065 & # 519352683

**Utah Residents:** As required by Utah law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

APRIL 25, 2025

PR1-Account #:0010131188

ROACH,ANDREW DAVID
2900 N BREASWOOD BLVD APT2411
HOUSTON TX 77025

ORIGINAL CREDITOR: KENECT PHOENIX
PLACED FOR COLLECTIONS ON: 01/10/24

| | |
|---|---|
| Original Balance: | $3560.48 |
| Current Principal: | $3560.48 |
| Interest Due: | $459.45 |
| Total Due: | $4019.93 |

ANDREW DAVID ROACH

In reference to your recent request, please find enclosed validation of debt
with KENECT PHOENIX

Should you have any further questions, please contact the undersigned below
or you may email documentation to Compliance@genesiscred.com for review.

Sincerely,

COLUMBIA DEBT RECOVERY LLC DBA GENESIS
(866) 863-9194

This is a communication from a debt collector. This is an attempt to collect
a debt. Any information will be used for that purpose. As of the date of this
letter you owe the amount stated above. Your account bears interest at 010.00
percent per annum. Because interest and other charges vary from day to day,
please contact us to learn the exact amount you owe as of the date of your
payment.

CAUSE NO. ___ 2025 JUN 10 AH 9: 16

**ANDREW ROACH,** § HON. COURT ____ ᵗʰ,

*PLAINTIFFS* §

**V.** § **DISTRICT COURT**

**COLUMBIA DEBT RECOVERY,** §

*DEFENDANT* § **HARRIS COUNTY, TEXAS.**

## AFFIDAVIT OF LAST KNOWN ADDRESS OF DEFENDANT(S)

## AND NON-MILTARY STATUS

**BEFORE ME,** the undersigned authority, duly authorized to administer oaths and take acknowledgments, personally appeared, Andrew Roach, who after by me first duly sworn, deposes, and says:

1. I, Andrew Roach, am over the age of eighteen (18) years old, and having personal knowledge of the facts set forth herein, and am competent to testify to the following facts and matters:

2. Plaintiff filed this above styled and numbered Cause with the Harris County District Court of Texas which retains appropriate jurisdiction over this Cause of Action(s) contained and asserted in Plaintiff's Original Petition to this Hon. Court.

3. Columbia Debt Recovery LLC (Doing Business As, 'Genesis') is a Limited Liability Corporation under the governing laws of the State of Washington, USA, with a principal address at 906 SE Everett Mall Way, Suite 301, Everett, WA 98208, with a registration expiration date set for January 31, 2026.

4. Columbia Debt Recovery LLC (Doing Business As, 'Genesis' retains a 'Registered Agent Name': CORPORATION SERVICE COMPANY with the following addresses:
   a. **Street Address:** 300 DESCHUTES WAY SW STE 208 MC-CSC1, TUMWATER, WA, 98501, UNITED STATES.
   b. **Mailing Address:** 300 DESCHUTES WAY SW STE 208 MC-CSC1, TUMWATER, WA, 98501, UNITED STATES.

5. Columbia Debt Recovery LLC (Doing Business As 'Genesis'), is not of military status, governmental entity, or individual but rather a limited liability company under the laws of the State of Washington, as affirmed by the State of Washington Secretary of State. This status was expressly acknowledged and affirmed herein by Plaintiff through diligent governmental record search and verifications. Columbia Debt Recovery LLC, UBI Number: 604 074 740.

**Further Affiant Sayeth Naught.** *[Signature Page Follows]*



*Andrew Roach*



ANDREW ROACH
Notary Public, State of Texas
Comm. Expires 11-02-2027
Notary ID 134630531

*Duly Sworn and Subscribed before me on <u>May 27, 2025.</u>*

*Notary*

ALIA AL QAISSY
Notary ID #132724408
My Commission Expires
February 28, 2029

*State of Texas,*

*County of Harris*

*Personally known to me.*

*Respectfully Submitted.*

**Andrew Roach**

Andrew Roach, Plaintiff, Pro Se,

2917 Lake Forest Dr, Upper Marlboro, MD 20774

P: 424-420-5550 / drewroach37@gmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a correct, true and full copy of the foregoing has been personally served on Defendant(s) and or Defendant(s) authorized Counsel, in Cause 202369852, in this action.

*Respectfully Submitted,*

*Andrew Roach*

Andrew Roach; Plaintiff, Pro Se,

2917 Lake Forest Dr, Upper Marlboro, MD 20774

P: 424-420-5550 / drewroach37@gmail.com

# BUSINESS INFORMATION

Business Name:
**COLUMBIA DEBT RECOVERY, LLC**

UBI Number:
**604 074 740**

Business Type:
**WA LIMITED LIABILITY COMPANY**

Business Status:
**ACTIVE**

Principal Office Street Address:
**906 SE EVERETT MALL WAY, SUITE 301, EVERETT, WA, 98208, UNITED STATES**

Principal Office Mailing Address:
**906 SE EVERETT MALL WAY, SUITE 301, EVERETT, WA, 98208, UNITED STATES**

Expiration Date:
**01/31/2026**

Jurisdiction:
**UNITED STATES, WASHINGTON**

Formation/ Registration Date:
**01/10/2017**

Period of Duration:
**PERPETUAL**

Inactive Date:

Nature of Business:
**DEBT COLLECTION AGENCY**

# REGISTERED AGENT INFORMATION

Registered Agent Name:
**CORPORATION SERVICE COMPANY**

Street Address:
**300 DESCHUTES WAY SW STE 208 MC-CSC1, TUMWATER, WA, 98501, UNITED STATES**

Mailing Address:
**300 DESCHUTES WAY SW STE 208 MC-CSC1, TUMWATER, WA, 98501, UNITED STATES**

# GOVERNORS

| Title | Governors Type | Entity Name | First Name | Last Name |
| --- | --- | --- | --- | --- |
| GOVERNOR | INDIVIDUAL | | WILLIAM P. | WODJAK |

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DIVISION OF TEXAS

HOUSTON DIVISION

|  |  |
|---|---|
| **ANDREW ROACH,** | ) |
| *PLAINTIFFS* | ) |
|  | ) |
|  | ) CIVIL ACTION NO. <u>4:25-CV-03221</u> |
| **V.** | ) |
| **COLUMBIA DEBT RECOVERY,** | ) |
| <u>*DEFENDANT*</u> | ) |

# C


## our file number 10131188 Roach v. Columbia Debt Recovery 2025-38552
2 messages

**Peter Fish** <Peter.Fish@genesiscred.com>
To: "drewroach37@gmail.com" <drewroach37@gmail.com>
Cc: David Kaminski <kaminskid@cmtlaw.com>

Thu, Jul 10, 2025 at 10:07 AM

Mr. Roach:

I am in-house counsel for Columbia Debt Recovery in the above matter. I'm copying my outside counsel as well.

I'm requesting an extension on this matter in hopes of resolving this case.

Please advise if you approve.

Thanks ,


**Peter N. Fish, Esq. | Legal Defense Counsel**

**Columbia Debt Recovery LLC dba Genesis**
PO Box 3630

Everett, WA 98213
Office: (425) 250-8936 | Email: Peter.Fish@genesiscred.com
www.genesiscred.com


Attorney is licensed in New Jersey & Pennsylvania



This communication is from a debt collector attempting to collect a debt. Any information obtained will be used for that purpose. IMPORTANT CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files, or previous e-mail messages attached to it may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is prohibited. If you have received this transmission in error, please immediately notify us by reply e-mail. Thank you.

---

**Dr. Andrew Roach** <drewroach37@gmail.com>                                    Thu, Jul 10, 2025 at 10:29 AM
To: Peter Fish <Peter.Fish@genesiscred.com>
Cc: David Kaminski <kaminskid@cmtlaw.com>

Greetings Counselor Fish,

First and foremost, it' Dr. Roach; respectfully. Secondly, everyone on this email thread possesses a J.D. so we can be direct on this matter. If you would like to amicably resolve this matter, kindly advise on your proposal; if any. Furthermore, **I will oppose any extension** on this matter and respond if necessary in subsequent filings. Appreciate your time.

Best Regards,

-Dr. Andrew Roach Sr.
[Quoted text hidden]



# CSC

## Notice of Service of Process

**Primary Contact:** William P Wodjak
Columbia Debt Recovery, LLC
906 SE Everett Mall Way
Ste 301
Everett, WA 98208-3744

| | |
|---|---|
| **Entity:** | Columbia Debt Recovery, LLC<br>Entity ID Number 3900695 |
| **Entity Served:** | Columbia Debt Recovery LLC |
| **Title of Action:** | Andrew Roach vs. Columbia Debt Recovery |
| **Matter Name/ID:** | Andrew Roach vs. Columbia Debt Recovery (17468853) |
| **Document(s) Type:** | Petition |
| **Nature of Action:** | Violation of State/Federal Act |
| **Court/Agency:** | Harris County District Court, TX |
| **Case/Reference No:** | 202538552 |
| **Jurisdiction Served:** | Washington |
| **Date Served on CSC:** | 06/13/2025 |
| **Answer or Appearance Due:** | Other/NA |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Andrew Roach<br>424-420-5550 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674 (888) 690-2882 I sop@cscglobal.com

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DIVISION OF TEXAS

HOUSTON DIVISION

|  |  |  |
|---|---|---|
| ANDREW ROACH, | ) | |
| *PLAINTIFFS* | ) | |
| | ) | |
| | ) | CIVIL ACTION NO. <u>4:25-CV-03221</u> |
| V. | ) | |
| COLUMBIA DEBT RECOVERY, | ) | |
| *DEFENDANT* | ) | |

# D

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DIVISION OF TEXAS
### HOUSTON DIVISION

|  |  |
|---|---|
| **ANDREW ROACH,** | ) |
| *PLAINTIFFS* | ) |
|  | ) **CIVIL ACTION NO. <u>4:25-CV-03221</u>** |
| **V.** | ) |
| **COLUMBIA DEBT RECOVERY,** | ) |
| *DEFENDANT* | ) |

## <u>NOTICE OF VOLUNTARILY NON-SUIT WITHOUT PREJUDICE JULY 10TH, 2025</u>

**COMES NOW,** Plaintiff ANDREW ROACH, by and through the undersigned, pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i) and Tex. R. of Civ. P 162, and hereby files this Notice of Voluntary Non-Suit Without Prejudice as to all federal claims, specifically COUNTS III and COUNTS IV, asserted in Plaintiff's State Court (125th District Court of Harris County Texas), Original Petition that was removed to this Court subsequent to the Defendant Defaulting in said Court; Defendant Columbia Debt Recovery LLC d/b/a Genesis ("Defendant").

1. Plaintiff originally filed suit in the 125th Judicial District Court of Harris County, Texas, under Cause No. 202538552, on June 2, 2025. Defendant's meritless assertion that the action was filed on October 15, 2024, reflects their willful and intentional actions to commit fraud and in this case fraud upon the court, subsequent to their Default status under Texas law.

2. On June 13, 2025, Defendant was properly served via the Thurston County Sheriff's Office upon its Registered Agent (Corporation Service Company), with a sworn return of service filed of record on June 26, 2025.

3. Pursuant to Tex. R. Civ. P. 99(b), Defendant's response deadline was 10:00 a.m. on July 7, 2025. As of the date of this filing, Defendant has not filed any responsive pleading in state court, nor in this federal action, prior to its untimely removal.

4. On July 11, 2025, four (4) days after the expiration of its state court deadline, Defendant filed a Notice of Removal to this Court (ECF No. 1), improperly seeking to invoke federal jurisdiction to evade a matured default under Texas law.

5. Pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, Plaintiff voluntarily dismisses without prejudice all federal causes of action alleged in the Original Petition, COUNTS III AND COUNTS IV, specifically.

6. AS OF THE TIME OF THIS FILING, HAS NO Answer or Motion for Summary Judgment has been filed by Defendant in this above styled and numbered Cause or with the Harris County District Court 125th in which the Defendant is in DEFAULT.

7. In tandem, Rule 41(a)(1)(A)(i) provides that a plaintiff may voluntarily dismiss an action without court order by notice filed before the opposing party serves either an answer or motion for summary judgment.

8. Because Defendant failed to respond within the time allowed by Tex. R. Civ. P. 99(b) and default is now matured, Defendant's removal is procedurally and substantively improper. The attempt to revive lapsed procedural rights through removal is disfavored.

9. Accordingly, this voluntary dismissal of federal claims eliminates all federal jurisdictional hooks. The case is now comprised solely of state-law claims, and should be immediately remanded under 28 U.S.C. § 1447(c).

10. Furthermore, Defendant's removal was filed after default and is being used as a procedural tactic to evade consequences under Texas law, the costs incurred as a result of this removal, including those associated with preparing the Motion to Remand, should be taxed to Defendant under 28 U.S.C. § 1447(c).

11. Moreover, under Texas law, because Defendant failed to timely appear and is in default, Plaintiff respectfully requests the Court include in any remand order that Defendant shall bear all court costs and default consequences remain intact upon remand. Exhibit-A, B, C, D,

## I. PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff ANDREW ROACH, by and through the undersigned, respectfully notifies the Court of his voluntary dismissal without prejudice of all federal claims (COUNT III AND IV), requests that the Court remand this case to the 125th Judicial District Court of Harris County, Texas, and further orders that Defendant bear all costs associated with the improper removal. Plaintiff further prays for all relief to which he is justly entitled in law or equity

*Respectfully Submitted,*

/s/ *Andrew Roach*

Andrew Roach, Plaintiff, Pro Se,

2917 Lake Forest Dr, Upper Marlboro, MD 20774

P: 424-420-5550 / drewroach37@gmail.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a correct, true and full copy of the foregoing Notice has been served on Defendant(s) and Defendant(s) Counsel, in this action via the e-filing system.

*Respectfully Submitted,*

/s/. *Andrew Roach*

Andrew Roach, Plaintiff, Pro Se,

2917 Lake Forest Dr, Upper Marlboro, MD 20774

P: 424-420-5550 / drewroach37@gmail.com

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DIVISION OF TEXAS
### HOUSTON DIVISION

|  |  |
|---|---|
| **ANDREW ROACH,** | ) |
| *PLAINTIFFS* | ) |
|  | ) |
|  | ) CIVIL ACTION NO. <u>4:25-CV-03221</u> |
| **V.** | ) |
| **COLUMBIA DEBT RECOVERY,** | ) |
| *DEFENDANT* | ) |



**A**

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Andrew Roach, Pro Se Plaintiff

**DEFENDANTS**
Columbia Debt Recovery, LLC

**(b)** County of Residence of First Listed Plaintiff   Harris County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Snohomish County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
2917 Lake Forest Dr
Upper Marlboro, MD 20774
Tel: 424-420-5550

Attorneys *(If Known)*
Keith Wier, Law Offices of Keith Wier, PLLC
15150 Preston Road, Suite 300
Dallas, Texas 75248

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

|   |   |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|   | PTF | DEF |   | PTF | DEF |
|---|-----|-----|---|-----|-----|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☒ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | ☐ 950 Constitutionality of State Statutes |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☐ 1 Original Proceeding | ☒ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
the Fair Debt Collection Practices Act ("FDCPA"), 15 USC 1692, et seq.

Brief description of cause:
Plaintiff alleges violations of the FDCPA and other relevant state statutes for Defendants attempts to collect a debt from Plaintiff.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
117,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
July 10, 2025

SIGNATURE OF ATTORNEY OF RECORD
*Keith Wier*

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related cases, if any. If there are related cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DIVISION OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| **ANDREW ROACH,** | ) |
| *PLAINTIFFS* | ) |
|  | ) |
|  | ) CIVIL ACTION NO. <u>4:25-CV-03221</u> |
| **V.** | ) |
| **COLUMBIA DEBT RECOVERY,** | ) |
| <u>*DEFENDANT*</u> | ) |

# B

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DIVISION OF TEXAS
HOUSTON DIVISION

Andrew Roach,                          )
                                       )
          Plaintiffs,                  )
                                       )
     v.                                )
                                       )     **CIVIL ACTION NO. _____**
Columbia Debt Recovery,                )
                                       )
          Defendant.                   )
                                       )
_____        )

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. § 1446(a), Defendant

COLUMBIA DEBT RECOVERY, LLC ("Defendant") hereby removes to this Court

the civil action described below, as it involves a federal question.

1.     On October 15, 2024, Plaintiff ANDREW ROACH("Plaintiff") filed a

civil action in the State Court of Texas, Court 125, Harris County, entitled *ANDREW*

*ROACH v. COLUMBIA DEBT RECOVERY, LLC,* Case No.. 2025-38552 A true and

correct copy of Plaintiff's Complaint is attached hereto as Exhibit A.

2.     Plaintiff's Complaint was served on Defendant by personal service on

June 13, 2025. Exhibit A. A copy of the State court docket sheet is  labeled as

Exhibit B.

3.      Therefore, this Notice of Removal is timely filed pursuant to 28 U.S.C.

§ 1446(b) within the 30-day removal period.

4.      This action involves a federal question in that it arises under the Fair

Debt Collection Practices Act, 15 U.S.C. § 1692 et seq ("FDCPA") and the Fair

Credit Reporting Act, 15 U.S.C. 1681et seq.  It is therefore an action of which this

Court has original jurisdiction under 28 U.S.C. § 1331 and may be removed to this

Court by Defendant pursuant to the provisions of 28 U.S.C. § 1441(a).  In this regard,

Plaintiff alleges violations under the FDCPA against Defendant. (See Exhibit A.)

5.      Venue is proper in this district under 28 U.S.C. §1441(a) because this

district and division embrace the place where the removed action has been pending.

6.      Plaintiff's Complaint includes a demand for a jury trial.

7.      Defendant will promptly file a copy of this Notice of Removal with the

clerk of the State Court where the action has been pending.

Dated:  July 10, 2025              Respectfully submitted,

                                   /s/ Keith Wier_____
                                   Keith Wier
                                   Law Offices of Keith Wier, PLLC
                                   15150 Preston Road, Suite 300
                                   Dallas, Texas 75248
                                   T:  (214) 540-6690
                                   Email:  kwier@keithwierlaw.com

{00216895;1}

## CERTIFICATE OF SERVICE

I, Keith Wier certify that on July 10, 2025, I electronically filed the foregoing

document with the Clerk of the Court by using the CM/ECF system, which will send

a notice of electronic filing to all attorneys of record.

Furthermore, I have provided notice of this filing to Plaintiff in the manner

specified below.

Email: drewroach37@gmail.com

/s/   **Keith Wier**
Keith Wier

# *Andrew Roach v. Columbia Debt Recovery, LLC*

# Exhibit "A"



**CSC**

**Notice of Service of Process**

null / ALL
Transmittal Number: 31632278
Date Processed: 06/15/2025

| | |
|---|---|
| **Primary Contact:** | William P Wodjak<br>Columbia Debt Recovery, LLC<br>906 SE Everett Mall Way<br>Ste 301<br>Everett, WA 98208-3744 |
| **Entity:** | Columbia Debt Recovery, LLC<br>Entity ID Number 3900695 |
| **Entity Served:** | Columbia Debt Recovery LLC |
| **Title of Action:** | Andrew Roach vs. Columbia Debt Recovery |
| **Matter Name/ID:** | Andrew Roach vs. Columbia Debt Recovery (17468853) |
| **Document(s) Type:** | Petition |
| **Nature of Action:** | Violation of State/Federal Act |
| **Court/Agency:** | Harris County District Court, TX |
| **Case/Reference No:** | 202538552 |
| **Jurisdiction Served:** | Washington |
| **Date Served on CSC:** | 06/13/2025 |
| **Answer or Appearance Due:** | Other/NA |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Andrew Roach<br>424-420-5550 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

THURSTON COUNTY 38552
CAUSE NO. 2025 CITY

2025 JUN 10 AM 9: 14

RECEIVED

ANDREW ROACH,                                          §        HONORABLE COURT /25ᵗʰ,

*PLAINTIFFS*

V.                                                                    §        DISTRICT COURT

COLUMBIA DEBT RECOVERY,                       §

*DEFENDANT*                                             §        HARRIS COUNTY, TEXAS.

## PLAINTIFF'S ORIGINAL PETITION

### TO THE HONORABLE JUDGE OF SAID COURT:

.COMES NOW, Andrew Roach, (hereinafter referred to as "Plaintiff"), files this

Original Petition complaining of Columbia Debt Recovery LLC (Doing Business As, 'Genesis')

(hereinafter referred to as "Defendant"), and for cause of action(s) would respectfully show unto

the Court as follows:

### I.      STATEMENT OF RELIEF SOUGHT

1. Plaintiff seeks monetary relief within the jurisdictional limits of this court.

### II.     DISCOVERY CONTROL PLAN

2. Pursuant to Rule 190.3 and 190.4 of the Texas Rules of Civil Procedure, discovery is

   intended to be conducted under Level 2.

3. Required Initial Disclosures. Pursuant Rule 194 of the Tex. R. Civ. P., Defendant is required

   to disclose within thirty (30) days of after filing general appearance; '.. A party that is first

   served or otherwise joined after general appearance must male the initial disclosures within

   thirty (30) days after being served or joined..' the information described in Rule 194. of the

   Tex. R. Civ. P.

### III.    PARTIES

4.  Plaintiff, Andrew Roach is an individual residing in Harris County, Texas.

5.  Defendant(s), Columbia Debt Recovery LLC (Doing Business As 'Genesis'), is a limited liability company organized under the governing laws of the State of Washington and has it's headquarters at 906 SE Everett Mall Way, Suite 301, Everett, WA 98208, United States. Defendant may be served with process by serving its registered agent, Corporation Service Company, located at 300 Deschutes Way SW, Ste 208 Mc-CSC1, Tumwater, WA 98501, and/ or wherever any authorized agent may be found.

6.  In the event any parties are misnamed or are not included herein, it is Plaintiff's contention that such was a "misidentification", "misnomer", and/ or  such parties were "alter egos" of parties named herein. Alternatively, Plaintiff contends that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice.

### IV.    JURISDICTION AND VENUE

7.  This Court has personal jurisdiction, both specific and general, over Defendant and Defendant is amenable to service by a Texas Court. Additionally, venue is proper in Harris County Texas because it is the county in which all or substantial part of the events and omissions giving rise to Plaintiff's claims occurred in Harris County, Texas.

### V.    STATEMENT OF MATERIAL FACTS

8.  On or about January 2025, Defendant began reporting an alleged debt account to one or more consumer reporting agencies under Plaintiff's name without providing any evidence of a valid creditor-debtor relationship.

9. On April 1, 2025, Plaintiff served Defendant with a Formal Cease and Desist Letter and Demand for Verification and Validation of Debt pursuant to applicable federal laws including 15 U.S.C. § 1692g(b) and 15 U.S.C. § 1681e(b). Said notice was delivered via certified USPS and registered electronic mail. A copy of the Formal Notice that was served on the Defendant's is attached hereto, **Exhibit-A.**

10. In response, on April 30, 2025, Defendant mailed to Plaintiff a copy of a contract between "Andrew Roach" and a third party, Kennect Phoenix, *not "Columbia Debt Recovery",* and *failed* to provide any evidence that Columbia owned, was assigned, or had any lawful authority to collect on the alleged debt; and or any legal authentication of Plaintiff. A copy o the mailing envelope and the contents of what the Defendants responded to Plaintiff's Exhibit-A with on April 30, 2025, are attached hereto as, **Exhibit-B.**

11. Despite this, Defendant continued reporting the collection account monthly through the date of this Petition and continuing subsequent hereinafter, without correction, verification, or deletion. Plaintiff's redacted credit report as of June 1, 2025, attached hereto as **Exhibit-C.**

12. Defendant failed to provide required documentation **under state and federal law**, thereby exposing Plaintiff to false credit reporting, reputational harm, and denial of financial opportunities; attached hereto as, **Exhibit-D,** Plaintiff's sworn testimony that the Exhibit(c) attached hereto are all a true and correct copy of the documents.

13. Moreover, in direct response to Plaintiff's Formal Cease and Desist and Verification Demand dated April 1, 2025, Defendant, on or about April 30, 2025, mailed to Plaintiff a purported contract executed between Plaintiff, **"Andrew Roach",** and an unrelated third party, **"Kennect Phoenix".** Critically, this instrument made *no reference* **whatsoever to Defendant, Columbia Debt Recovery, LLC,** *nor* did it reflect any assignment, sale, or

lawful transfer of interest authorizing Defendant to collect or report on the alleged obligation; ***nor*** did it provide any sworn verification or authentication identifying Plaintiff as legally obligated to **Columbia Debt Recovery**. *(emphasis added).* **Exhibit-C.**

14. Notwithstanding the absence of such foundational documentation, Defendant **continued to report** the subject account as a derogatory collection tradeline to one or more consumer reporting agencies on a **recurring monthly basis** from **January 2025 through the present,** and upon information and belief, intends to persist in such reporting unless enjoined.

15. Defendant's continued failure to comply with Plaintiff's Formal Cease and Desist Letter—specifically, its refusal to provide the requisite legal documentation establishing ownership, assignment, or lawful authority to collect the alleged debt—constitutes a deliberate and deceptive act. Instead of complying with federal and state verification mandates, Defendant responded by producing documentation identifying an entirely separate legal entity, **Kennect Phoenix,** and subsequently sought to induce Plaintiff into performance under that unrelated agreement. This misrepresentation was sent directly to Plaintiff's legal address in **Harris County, Texas,** thereby invoking the jurisdiction of this Court.

16. As a direct and proximate result of Defendant's unlawful misreporting, and its continued refusal to verify, correct, or delete the disputed tradeline in accordance with federal and state law, **Plaintiff was denied a substantial and time-sensitive business opportunity** on or about **May 1, 2025.** Specifically, Plaintiff sought to engage in the **acquisition, sale, or transfer of a corporate entity,** the value of which exceeded **$117,000.00,** but was ultimately declined by third-party investor(s) or an investment group upon review of Plaintiff's credit profile. Investor(s) and Investment Group(s), Jane Doe and John Doe, (hereinafter referred to as **"Interested Parties")** redacted sworn testimony is attached hereto as Exhibit-E, testifying that the "Collection(s)" accounted reported to Plaintiff's credit report file by Defendant(s), dissolve any and all acquisition of Ariv Holdings LLC. Interested Parties

swore in **Exhibit-E** to their intentions of executing such acquisition of but not limited to Ariv

Holdings LLC in the amount of $117,000.00 USD and accompanied investment portfolio effective

July 1, 2025, but such representation made by Defendants deterred such. **Exhibit-E.**

**17.** Said denial was expressly based on the negative and inaccurate credit data furnished by Defendant to

one or more consumer reporting agencies. The collapse of this transaction constitutes a **material,**

**quantifiable, and foreseeable injury** to Plaintiff's financial standing, business credibility, and

overall market position, directly traceable to Defendant's statutory violations and tortious conduct.

Such investor(s) and investment group(s) intend to provide sworn testimony in this Cause.

**18.** Plaintiff has thus suffered egregious and ongoing damages arising from Defendant's unlawful

conduct, including lost business opportunities, reputational harm, and financial

destabilization. **Supporting documentation** substantiating the value and terms of the

declined transaction, and the correspondence relating to the denial by the investment party or

parties, **will be filed under seal** in accordance with **Texas Rule of Civil Procedure 76a** to

preserve confidentiality and proprietary interest. **Exhibit-E. Exhibit-A,B,C, and D.**

## VI. CAUSES OF ACTION

### COUNT I – TEXAS DEBT COLLECTION ACT § 392.001

**19.** Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section

V. Statement of Material Facts. Texas Debt Collection Act (TDCA), Tex. Fin. Code §

392.001 et seq.

**20.** This cause of action arises under the Texas Debt Collection Act (TDCA), codified at Tex.

Fin. Code §§ 392.001 et seq., which prohibits debt collectors from using false, misleading, or

abusive means to collect consumer debts. Plaintiff is a "consumer" under § 392.001(1), and

Defendant is a "debt collector" under § 392.001(6). **Exhibit-A. Exhibit-B.**

**21.** Defendant knowingly violated multiple provisions of the TDCA, including but not limited to:

    a.  § 392.202, by failing to conduct an investigation and correct or delete inaccurate

       tradeline information after receipt of Plaintiff's written dispute on April 1, 2025;

    b.  § 392.304(a)(8), by misrepresenting the ownership, character, amount, and legal

       status of the alleged debt;

    c.  § 392.304(a)(19), by employing false and deceptive practices in attempting to collect

       a debt it did not own, and could not lawfully enforce;

**22.** Defendant did not produce any valid assignment, bill of sale, or other competent legal

documentation evidencing its ownership or authority to collect the alleged debt. Instead, it

submitted a contract involving a third party, Kennect Phoenix, in which Defendant is not

named. This constitutes a per se violation of the Act and demonstrates deceptive conduct.

**23.** As a proximate result of Defendant's conduct, Plaintiff suffered economic harm, loss of a

business transaction exceeding $117,000, reputational damage, and mental anguish. Plaintiff

seeks actual damages, statutory damages, injunctive relief, attorneys' fees, and costs of court

under Tex. Fin. Code § 392.403(a)(2), § 392.403(b). *(emphasis added).* **Exhibit-A and E.**

**24.** Plaintiff seeks judgment of this Court for actual damages, consequential damages, punitive

damages, exemplary damages, prejudgment interest, and costs of Court.

### COUNT II- TEXAS DECEPTIVE TRADE PRACTICES ACT (DTPA) § 17.41

**25.** Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section

V. Statement of Material Facts. Texas Deceptive Trade Practices Act (DTPA) § 17.41 et seq.

**26.** Plaintiff is a "consumer" under the Texas DTPA, having sought services related to credit and

debt collection for personal purposes. Defendant's actions, as set forth in Section V, constitute

false, misleading, and deceptive acts under Tex. Bus. & Com. Code § 17.46(b), including: (1)

Misrepresenting the existence of a valid debt; (2) Falsely claiming to possess the legal

authority to collect the debt; (3) Reporting inaccurate credit information despite statutory

disputes. **Exhibit-A. Exhibit-B.**

**27.** Defendant's conduct violates the DTPA through incorporation of the TDCA under Tex. Fin.

Code § 392.404. Plaintiff seeks actual damages, treble damages upon proof of knowing

violations, and attorneys' fees. **Exhibit-A. Exhibit-B.**

## COUNT III- FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681 es seq

**28.** Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section V. Statement of Material Facts. Fair Credit Reporting Act 15 U.S.C. § 1681 et seq.

**29.** Defendant violated the FCRA by: (1) Furnishing inaccurate information after being notified of a dispute, in violation of 15 U.S.C. § 1681s-2(b); (2) Failing to conduct a reasonable investigation or to delete inaccurate tradelines after Plaintiff's formal notice on April 1, 2025, in violation of § 1681i; (3) Reporting false data without verifying legal ownership of the debt, in violation of § 1681e(b). **Exhibit-A. Exhibit-B.**

**30.** As a result, Plaintiff sustained actual damages, including denial of a $117,000 business transaction. Plaintiff seeks actual damages, statutory damages, punitive damages (for willful violations), and attorney's fees under 15 U.S.C. §§ 1681n and 1681o. **Exhibit-E.**

## COUNT IV- FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. § 1692 et seq.

**31.** Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section V. Statement of Material Facts. FDCPA 15 U.S.C. § 1692 et seq.

**32.** Defendant is a "debt collector" under 15 U.S.C. § 1692a(6), and its conduct violated the FDCPA as follows: (1) Using false representations to collect a debt under § 1692e(2)(A); (2) Collection collection efforts without validation of the debt after Plaintiff's written dispute, in violation of § 1692g(b); (3) Attempting to collect a debt it did not own and could not substantiate, violating § 1692f. **Exhibit-A. Exhibit-B.**

**33.** Plaintiff is entitled to actual damages, statutory damages up to $1,000, and attorney's fees and costs under 15 U.S.C. § 1692k.

## COUNT V- FRAUD MISREPRESENTATION

**34.** Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section

III. Statement of Material Facts. Fraud Misrepresentation. *Italian Cowboy Partners, Ltd. v.*

*Prudential Ins. Co. of America*, 341 S.W.3d 323, 337 (Tex. 2011), *Aquaplex, Inc. v. Rancho*

*La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (per curiam). ***SPEP Aircraft Holdings,***

***LLC et al. v. Bombardier Aerospace Corporation***, Cause No. DC-12-14739, in the 44th

Judicial District Court of Dallas County, Texas. ***Bombardier Aerospace Corporation v.***

***SPEP Aircraft Holdings, LLC, et al.,*** Cause No. 05-16-00086-CV, Fifth Court of Appeals,

Dallas, Texas. To establish fraud under Texas law, Plaintiff must show: (1) a material

misrepresentation, (2) made with knowledge of its falsity or recklessness, (3) with intent to

induce reliance, (4) actual and justifiable reliance by Plaintiff, and (5) injury resulting from

that reliance. **Exhibit-A. Exhibit-B.**

**35.** Defendant Columbia Debt Recovery, LLC made an affirmative material misrepresentation by

transmitting to Plaintiff a written communication, purporting to verify the existence and

validity of a debt allegedly owed by Plaintiff. In this communication, Defendant produced an

instrument—namely, a purported contract between Plaintiff and a third party, Kennect

Phoenix—representing it as proof of indebtedness to Columbia. However, Columbia was not

a party to that contract, nor did the document contain any reference to Columbia, nor any

assignment or bill of sale evidencing legal authority to enforce or collect on the alleged

obligation. This submission was intended to induce Plaintiff to believe that Columbia was a

valid and lawful creditor. **Exhibit-D.**

**36.** At the time this representation was made, Defendant knew or should have known that the information it was providing was false, incomplete, and misleading. Defendant either possessed no legal documentation to support its claim of ownership of the alleged debt or knowingly omitted the material fact that no such transfer or assignment ever occurred. By presenting a third-party contract as though it substantiated its own collection rights, Defendant acted with at minimum a reckless disregard for the truth, if not with actual knowledge of the falsity of its claim. **Exhibit-A. Exhibit-B. Exhibit-D.**

**37.** Defendant intended for Plaintiff to rely on this false representation to deter or delay legal action and to continue collection efforts under the false pretense of creditor status. Plaintiff justifiably relied on this misrepresentation by deferring immediate litigation and by undertaking further attempts to administratively resolve the dispute. At the time, Plaintiff had no access to documentation establishing the falsity of Columbia's claim and reasonably interpreted the response as indicative of a genuine, enforceable debt. As a result of the Plaintiff relying on the materials provided by Columbia Debt Recovery, Plaintiff has initiated this lawsuit to address such misrepresentations or representations made by Defendant.

**38.** As a direct and proximate result of Defendant's fraudulent misrepresentation, Plaintiff sustained actual and consequential damages. These include reputational harm, emotional distress, financial loss, and the loss of a significant business transaction exceeding $117,000. The misrepresentation of debt ownership and the continued reporting of inaccurate credit information materially impaired Plaintiff's creditworthiness and contributed to Plaintiff's exclusion from an investment opportunity that was both time-sensitive and financially significant. **Exhibit-C. Exhibit-E.**

**39.** Under Texas law, fraud of this nature supports an award of actual damages, consequential

damages, and exemplary damages under Tex. Civ. Prac. & Rem. Code § 41.003(a), as

Defendant's conduct was knowing, intentional, and fraudulent. The record, as pleaded and to

be further supported by documentary evidence and witness testimony, shows a calculated

effort by Defendant to mislead and manipulate Plaintiff in violation of established legal

duties. Accordingly, Plaintiff respectfully requests that this Court enter judgment in favor of

Plaintiff on this count, and award all such legal and equitable relief as is just and proper.

## COUNT VI- FRAUD NON-DISCLOSURE

**40.** Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section

V. Statement of Material Facts. Fraud Non-Disclosure. *Italian Cowboy Partners, Ltd. v.*

*Prudential Ins. Co. of America*, 341 S.W.3d 323, 337 (Tex. 2011), *Aquaplex, Inc. v. Rancho*

*La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (per curiam). ***SPEP Aircraft Holdings,***

***LLC et al. v. Bombardier Aerospace Corporation***, Cause No. DC-12-14739, in the 44th

Judicial District Court of Dallas County, Texas. ***Bombardier Aerospace Corporation v.***

***SPEP Aircraft Holdings, LLC, et al.,*** Cause No. 05-16-00086-CV, Fifth Court of Appeals,

Dallas, Texas.

**41.** Under Texas law, fraud by non-disclosure arises where: (1) the defendant failed to disclose

material facts, (2) the defendant had a duty to disclose, (3) the facts were known to the

defendant, (4) the plaintiff did not know of the facts, (5) the defendant intended to induce the

plaintiff to act or refrain from acting, and (6) the plaintiff relied and suffered damages.

42. When a party voluntarily makes a partial disclosure or communicates in a manner intended to induce reliance, a **duty to disclose the whole truth** arises. See *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001). **Exhibit-A. Exhibit-B.**

43. Here, Defendant Columbia Debt Recovery, LLC, had both a **common law and statutory duty** to disclose whether it owned, was assigned, or had any legal authority to collect on the alleged debt when it received a formal **written dispute and demand for verification** from Plaintiff pursuant to **15 U.S.C. § 1692g(b)** of the **Fair Debt Collection Practices Act (FDCPA)** and **15 U.S.C. § 1681i** and **§ 1681s-2(b)** of the **Fair Credit Reporting Act (FCRA).**

    a. **15 U.S.C. § 1692g(b)** requires that upon receipt of a consumer's written dispute, a debt collector "shall cease collection... until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor."

    b. **15 U.S.C. § 1681s-2(b)** mandates that, after notice of a dispute, the furnisher of credit information must "conduct an investigation with respect to the disputed information," "review all relevant information provided by the consumer reporting agency," and "report the results of the investigation to the consumer reporting agency."

    c. **Tex. Fin. Code § 392.202(a)** provides that a consumer may dispute the accuracy of a debt and request correction; subsection (b) imposes a duty on the debt collector to investigate and notify the consumer of results within 30 days.

44. In response to Plaintiff's formal notice dated April 1, 2025, Defendant produced a contract between Plaintiff and a third-party entity, **Kennect Phoenix**, which neither referenced

Columbia Debt Recovery, LLC, nor contained any assignment, bill of sale, or legal transfer of interest. Defendant failed to disclose that it lacked privity of contract and had no valid creditor status — facts which were material and exclusively within Defendant's knowledge.

45. Despite the absence of ownership or legal authority to collect, Defendant continued to report the alleged debt to one or more consumer reporting agencies, thereby inducing Plaintiff to refrain from further legal action or additional dispute filings, and causing harm including lost business opportunity exceeding $117,000 and reputational injury. **Exhibit-E. Exhibit-B.**

46. This nondisclosure was knowing and intentional. By providing partial documentation without full disclosure of its lack of legal standing or debt ownership, Defendant triggered a duty to disclose the whole truth under Texas law. See *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997). *SPEP Aircraft Holdings, LLC et al. v. Bombardier Aerospace Corporation*, Cause No. DC-12-14739, in the 44th Judicial District Court of Dallas County, Texas. *Bombardier Aerospace Corporation v. SPEP Aircraft Holdings, LLC, et al.*, Cause No. 05-16-00086-CV, Fifth Court of Appeals, Dallas, Texas. **Exhibit-C. Exhibit-B.**

47. Plaintiff respectfully requests judgment against Defendant for actual damages, consequential damages, punitive and exemplary damages, pre- and post-judgment interest, and all costs of court. **Exhibit-A. Exhibit-B. Exhibit-C. Exhibit-D. Exhibit-E.**

48. WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully avers that the foregoing causes of action—each independently and collectively—establish Defendant's knowing, willful, and unlawful conduct under Texas and federal law, including but not limited to the Texas Debt Collection Act, Texas Deceptive Trade Practices Act, Fair Credit Reporting Act, Fair Debt Collection Practices Act, and Texas common law principles of fraud and non-disclosure.

## IV.   DAMAGES

**49.** As a result of Defendants actions and omissions as set forth herein, Plaintiffs sustained the

following damages, for which Plaintiffs seek judgment against Defendants:

   a.   Actual damages in the amount of $117,000.00

   b.   Statutory Damages;

   c.   Exemplary Punitive damages;

   d.   Pre-judgment penalty and post judgment interest; and

   e.   Reasonable expenses and costs of court.

## V. EXEMPLARY DAMAGES

**50.** Additionally, Plaintiff would show that Defendants actions were intentional, fraudulent,

malicious, and in bad faith, justifying the imposition of exemplary damages against

Defendants.

## VI. CONDITIONS PRECEDENT SATISFIED

**51.** Plaintiff has fully or substantially performed all acts necessary to perfect and establish all

claims and causes of action asserted in this lawsuit.

**52.** All conditions precedent to Plaintiff's right to recover on any of the claims and causes of

action asserted in this lawsuit have been discharged, satisfied or fully performed.

## VII. RULE 47 STATEMENT

**53.** Pursuant to Rule 47(b) of the Texas Rules of Civil Procedure, damages are within he

jurisdictional limits of this Court. Further, Plaintiff is required by Rule 47(c) to state the

dollar amount of damages that represent Plaintiff's harms and losses due to Defendant's

conduct. The legislative history of this requirement indicates that it is for record-keeping

purposes, and statistical purposes only, for lawsuits filed in the State of Texas. Plaintiff's

counsel states that Plaintiff seeks monetary relief, of which the maximum harms, losses, and

damages of any type are less than $200,000 at this time. The amount of monetary relief

actually accessed by the Honorable Judge, however, will ultimately be determined by the

fact-finder after hearing all the evidence presented.

## VIII. NON-JURY TRIAL

**54.** The Plaintiff hereby requests a non-jury trial, trial by Honorable Judge pursuant to Rule 216

of Texas Rules of Civil Procedure. Furthermore, Plaintiff respectfully reserves their right to a

jury trial in this matter should such be deemed appropriate at a latter stage.

## IX. PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs respectfully pray that Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendants as follows:

a) Upon trial, judgment against Defendants for the full amount of Plaintiffs' actual damages (past, future, special, direct) and Statutory damages as found by the trier of facts;

b) Exemplary Punitive damages as found by the trier of facts;

c) Prejudgment and post-judgment interest at the highest lawful rates in Harris County, Texas.

d) All costs of court;

e) Any and all further relief to which Plaintiff may be entitled at law or in equity.

Respectfully Submitted,

*Andrew Roach*

Andrew Roach, Plaintiff, Pro Se,
2917 Lake Forest Dr, Upper Marlboro, MD 20774
P: 424-420-5550 / drewroach37@gmail.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a correct, true and full copy of the foregoing has been served on all Parties, in this Cause, in this action.

Respectfully Submitted,

*Andrew Roach*

Andrew Roach, Plaintiff, Pro Se,

2917 Lake Forest Dr, Upper Marlboro, MD 20774

P: 424-420-5550 / drewroach37@gmail.com

To Whom It May Concern,                                                              *April 1, 2025*

**Columbia Debt Recovery**
906 SE Everett Mall Way, #301,

Everett, WA 98208 United States

**TransUnion LLC**
P.O. Box 2000
Chester, PA 19016

**Equifax Information Services LLC**
P.O. Box 740256
Atlanta, GA 30374

**Experian Information Solutions, Inc.**
P.O. Box 4500
Allen, TX 75013

### FORMAL DEMAND TO CEASE AND DESIST AND PRODUCTION OF SWORN DOCUMENTS

1. To the above styled and named parties: This letter serves as a **formal Cease and Desist Notice** and **Demand for Production of Verified Documentation** under applicable **federal statutes and regulatory frameworks**, sent via certified mail and registered email to you by **Andrew Roach**, hereinafter referred to as ("Plaintiff" "Roach" "Consumer"), write to dispute the validity and legality of information being reported to credit reporting agencies by **Columbia Debt Recovery hereinafter referred to as but not limited to ("Columbia" "Defendant" "CDR"),** and to demand that all unlawful and inaccurate activity **cease immediately** pending legal action.

2. These discrepancies are not only material but reflect inconsistencies that violate FCRA's requirement for **maximum possible accuracy** under **15 U.S.C. § 1681e(b)**. The consumer has not authorized such reporting, and any activity related to this account is **hereby disputed in whole and in part.** *Fair Credit Reporting Act* (15 U.S.C. § 1681 et seq.), the *Fair Credit Billing Act* (15 U.S.C. § 1666), the *Fair Debt Collection Practices Act* (15 U.S.C. § 1692), and *Federal Trade Commission* (FTC) regulations, *Fair Credit Reporting Act*, FCRA, *Fair Credit Billing Act*, FCBA, U.S. Code Title 15, 16.81 (a)(b)(c)(d) i.ii/ U.S. Code Title 1692 (b)(d), governing consumer reporting and billing disputes.

## DEMAND FOR SWORN VERIFICATION & PRODUCTION

Pursuant to 15 U.S.C. § 1692g(b) and related federal regulations, you are **hereby ordered to provide** the following documentation **within thirty (30) calendar days** of receipt of this notice:

a. **The Original Instrument of Indebtedness** bearing the original **wet-ink** signature of *alleged Debtor* (Andrew Roach) and *alleged Creditor* (COLUMBIA DEBT RECOVERY).

b. A full and complete **Statement of Work (SOW), Account Terms, and Conditions** *alleged* to have been agreed upon;

c. **Sworn and notarized verification** of each debt, itemized transaction history, and billing records;

d. Documentation evidencing the **lawful acquisition and use** of the consumer's **Personally Identifiable Information (PII)** under **15 U.S.C. § 1681b** and **15 U.S.C. § 6801.**

e. Additionally, I request confirmation that no PII (including my Social Security Number, Passport, or Military ID) has been accessed, disseminated, or sold to any unauthorized parties.

## CEASE AND DESIST FROM REPORTING INACCURATE INFORMATION AND VIOLATING FAIR CREDIT REPORTING ACT, FEDERAL TRADE COMMISSION

You are formally instructed to **immediately cease and desist** from disseminating, reporting, or verifying any information related to this tradeline to any third party—including but not limited to **TransUnion, Equifax, Experian, LexisNexis**, and all other consumer data aggregators—unless and until you provide documented, verifiable sworn evidence of:

- A **lawful permissible purpose**, and
- A **valid, executed agreement** creating a legal debt obligation.

Failure to comply constitutes a knowing and willful violation of federal law and will expose your organization to **civil liability**, including statutory damages, attorney's fees, and injunctive relief under **15 U.S.C. §§ 1681n, 1681o, and 1666(e).**

As required by the FCRA and FCBA, please update your records to reflect my **true and correct personal and legal information,** and remove any unauthorized or incorrect data not expressly listed below:

- **Full Legal Name:** Andrew D. Roach
- **Residential Address:** 355 N. Central Ave, Apt 1201A, Phoenix, AZ 85004

- **Legal Service Address:** 2900 N. Braeswood Blvd, Apt 2411, Houston, TX 77025
- **Date of Birth:** 07/15/1995

### NOTICE OF PENDING LEGAL ACTION, MAY 1ST, 2025

If the above-mentioned records are **_not produced within the thirty (30) days_** prescribed by law, **legal action will be initiated without further notice** in **Harris County, Texas**, which maintains jurisdiction over the Plaintiff and relevant parties. Be advised this letter constitutes legal notice and will be maintained as an official record of the Plaintiff's efforts to resolve this dispute administratively and in good faith. All Legal Correspondence should be provided or delivered to:

- 2900 N. Braeswood Blvd, Apt 2411, Houston, TX 77025

**Plaintiff disputes the entire balance in whole and/or in part. Plaintiff demands production, validation, and**

**[See below. Kindly be advised this communication from active Legal Counsel/ Notarization]**

**Best Regards,**

ANDREW ROACH
Notary Public, State of Texas
Comm. Expires 11-02-2027
Notary ID 134630531

 AMA

APARTMENT LEASE CONTRACT

NAA

PO BOX 3630
EVERETT, WA 98213

SEATTLE WA 980
30 APR 2025 AM 4

US POSTAGE
quadient
FIRST-CLASS MAIL
IMI
$000.69 º
04/29/2025 ZIP 98209
043M30266863

77025-237111

...ng document. Read carefully before signing.

...r Charges) and 49 (Deposit Return, Surrender ...ter security deposit return information.

...of this Lease Contract Management may use ...able security deposit in accordance with any ...ms of the property management agreement. ...on of the tenancy. Resident's security deposit ...el to Resident consistent with Arizona law.

...posit is held by the property owner. However, ...u vacate your apartment, all Security Deposit ...e processed by Management on behalf of the ...in accordance with the terms of your lease and

...provided __0__ apartment key(s), __1__ ...1__ FOB(s); and/or __0__ other access ...to the building and amenities at no additional ...the key, FOB, or other access device is lost or ...during your tenancy or is not returned or is ...when you move out, you will be responsible for ...placement and/or repair of the same.

...ES. Unless modified by addenda, your base ...12.25__ per month ("base rent"). Your base ...thly charges identified in "Description of Rent. ...referred to as "rent" throughout the remainder ...tract and are payable in advance and without

...anager's office; or ...ayment site, or ...ntral Ave, Phoenix AZ 85004

...RENT ELEMENTS)

| | |
|---|---|
| ...e Rent | $ 1412.25 |
| Concession | |
| ...tion to Monthly Base Rent) | $ 0.00 |
| | $ 32.48 |
| ...des applicable tax) | $ 0 |
| ...st (includes applicable tax) | $ 0.00 |
| ...includes applicable tax) | $ 0.00 |
| ...(includes applicable tax) | $ 0.00 |
| ...her) | |
| | $ 0.00 |
| | $ 0.00 |
| | $ 0.00 |
| ...E AND PAYABLE MONTHLY: | $ 1444.73 |

__423.68__ is due for the remainder of [check ...er ☐ 2nd month, on ______

...ust pay your rent on or before the 1st day of each ...with no grace period. Cash is unacceptable without ...permission. You must not withhold or offset rent ...by statute. We may, at our option, require at any ...rent and other sums in cash, certified or cashier's ...ler, or one monthly check rather than multiple ...cretion, we may convert any and all checks to ACH ...of collecting payment. Rent is not considered ...ment/ACH is rejected, does not clear, or is stopped ...you don't pay all rent on or before the __5th__ ...you'll pay a late charge. Your late charge will be ...lat rate of $__50.00__ or ☐ __1__ % of ...y rent payment to be charged on the __5th__ day ...nt and other charges under this lease are unpaid. ...harge of $__25.00__ for each returned check ...onic payment, plus a late charge. If you don't pay ...ll be delinquent and all remedies under this Lease ...authorized. We'll also have all other remedies for ...esident is responsible for all rental taxes, and will ...s to all rental taxes upon 30 days written notice

...hat levies a transaction privilege tax on residential ...percentage of that tax, then we, upon thirty days'

**AMA**

**APARTMENT LEASE CONTRACT**

 **NAA**

Date of Lease Contract: _____ **November 18, 2022** _____
(when the Lease Contract is filled out)

*This is a binding document. Read carefully before signing.*

### Moving In — General Information

**1. PARTIES.** This Lease Contract (sometimes referred to as the "lease") is between *you*, the resident(s) (list all people signing the Lease Contract):

**Andrew Roach**

_____

_____

_____

_____

_____

_____

and *us*, the owner: **AP 355 N. Central Property, LLC**

_____

_____

_____

*(name of apartment community or title holder)*. You've agreed to rent
Apartment No. _____ **1201A** _____ at **Kenect**
**Phoenix** _____

*(street address)* In _____ **Phoenix** _____
*(city)*, Arizona, _____ **85004** _____ *(zip code)* (the "apartment" or the "premises") for use as a private residence only. The terms "you" and "your" refer to all residents listed above (or any of owner's successors in interest or assigns). Written or electronic notice to or from our managers constitutes notice to or from us. If anyone else has guaranteed performance of this Lease Contract, a separate Lease Contract Guaranty for each guarantor is attached.

**2. OCCUPANTS.** The apartment will be occupied only by you and *(list all other occupants not signing the Lease Contract)*:

**No Additional Occupants**

_____

_____

_____

_____

_____

_____

_____

No one else may occupy the apartment. Persons not listed above must not stay in the apartment for more than ___**3**___ consecutive days without our prior written consent, and no more than twice that many days in any one month. *If the previous space isn't filled in, two days per month is the limit.*

**3. LEASE TERM.** The initial term of the Lease Contract begins on the __**22nd**__ day of ___**November**___, __**2022**__, and ends at 11:59 pm the __**22nd**__ day of ___**September**___, __**2023**__.

**Renewal.** This Lease Contract will automatically renew month-to-month unless either party gives at least ___**60**___ days written notice of termination or intent to move-out as required by paragraph 44 (Move-Out Notice). If the number of days isn't filled in, at least 30 days notice is required.

**4. SECURITY DEPOSIT.** Unless modified by addenda, the total security deposit at the time of execution of this Lease Contract for all residents in the apartment is $ ___**0.00**___ refundable deposit and $ ___**0.00**___ non-refundable deposit, due on or before the date this Lease Contract is signed. The above non-refundable security deposit is for the following purposes:

**n/a** _____

All of the above deposits together do not exceed one and one-half times the monthly rent. See paragraphs 48 (Security Deposit

Deductions and Other Charges) and 49 (Deposit Return, Surrender and Abandonment) for security deposit return information.

☒ During the term of this Lease Contract Management may use Resident's refundable security deposit in accordance with any applicable provisions of the property management agreement. At the conclusion of the tenancy Resident's security deposit shall be refunded to Resident consistent with Arizona law.

☒ The Security Deposit is held by the property owner. However, in the event you vacate your apartment, all Security Deposit refunds will be processed by Management on behalf of the property owner in accordance with the terms of your lease and applicable law.

**5. KEYS.** You will be provided ___**0**___ apartment key(s), ___**1**___ mailbox key(s), ___**1**___ FOB(s), and/or ___**0**___ other access device(s) for access to the building and amenities at no additional cost at move-in. If the key, FOB, or other access device is lost or becomes damaged during your tenancy or is not returned or is returned damaged when you move out, you will be responsible for the costs for the replacement and/or repair of the same.

**6. RENT AND CHARGES.** Unless modified by addenda, your base rent will be $ ___**1412.25**___ per month ("base rent"). Your base rent and other monthly charges identified in "Description of Rent Elements" below are referred to as "rent" throughout the remainder of this Lease Contract and are payable in advance and without demand:

☒ at the on-site manager's office, or
☒ at our online payment site, or
☒ at **355 N Central Ave, Phoenix AZ 85004**

**DESCRIPTION OF RENT ELEMENTS:**

| | | |
|---|---|---|
| Monthly Stated Base Rent | $ | **1412.25** |
| Monthly Discount/Concession (represents a reduction in Monthly Base Rent) | $ | **0.00** |
| Rental Tax | $ | **32.48** |
| Animal Rent (includes applicable tax) | $ | **0** |
| Garage/Carport Rent (includes applicable tax) | $ | **0.00** |
| Storage Unit Rent (includes applicable tax) | $ | **0.00** |
| Parking Space Rent (includes applicable tax) | $ | **0.00** |
| Additional Rent (Other) | | |
| • **n/a** | $ | **0.00** |
| • **n/a** | $ | **0.00** |
| • **n/a** | $ | **0.00** |

**TOTAL RENT DUE AND PAYABLE MONTHLY:** $ ___**1444.73**___

Prorated rent of $ ___**423.68**___ is due for the remainder of *(check one)*: ☒ 1st month or ☐ 2nd month, on _____

Otherwise, you must pay your rent on or before the 1st day of each month (due date) with no grace period. Cash is unacceptable without our prior written permission. Rent must not withhold or offset rent unless authorized by statute. We may, at our option, require at any time that you pay all rent and other sums in cash, certified or cashier's check, money order, or one monthly check rather than multiple checks. At our discretion, we may convert any and all checks to ACH for the purposes of collecting payment. Rent is not considered accepted if the payment/ACH is rejected, does not clear, or is stopped for any reason. If you don't pay all rent on or before the ___**5th**___ day of the month, you'll pay a late charge. Your late charge will be *(check one)*: ☒ a flat rate of $ ___**50.00**___ or ☐ ___**1**___ % of your total monthly rent payment to be charged on the ___**5th**___ day thereafter that rent and other charges under this lease are unpaid. You'll also pay a charge of $ ___**25.00**___ for each returned check or rejected electronic payment, plus a late charge. If you don't pay rent on time, you'll be delinquent and all remedies under this Lease Contract will be authorized. We'll also have all other remedies for such violation. Resident is responsible for all rental taxes, and will pay any increases in all rental taxes upon 30 days written notice from landlord.

If a municipality that levies a transaction privilege tax on residential rent changes the percentage of that tax, then we, upon thirty days'

© 2021, National Apartment Association, Inc. - 9/2021, Arizona
☑ Blue Moon eSignature Services Document ID: 346566363

written notice to you, may adjust the amount of rent due to equal the difference caused by the new percentage amount of the tax. The adjustment to rent shall not occur before the date upon which the new tax is effective. All payment obligations under this Lease Contract shall constitute rent under this Lease Contract.

**REPLACEMENT COSTS**
(If not paid immediately, these charges shall be due and payable with the next monthly rent):

| | |
|---|---|
| Replacement Access Fob | $_____75.00 |
| Replacement Remote | $_____75.00 |
| Replacement Keys | $_____25.00 |
| Other: **Mailbox Key** | $_____25.00 |
| Other: **Pool Pass Residential** | $_____25.00 |
| Other: **Pool Pass Guest (2)** | $_____50.00 |

7. **UTILITIES.** We'll pay for the following items, if checked:
☐ water  ☐ gas  ☐ electricity  ☐ masterantenna
☐ wastewater  ☐ trash  ☐ cable TV
☐ other **n/a**

You'll pay for all other utilities, related deposits, and any charges, fees, or services on such utilities. You must not allow utilities to be disconnected for any reason—including disconnection for not paying your bills—until the lease term or renewal period ends. Cable channels that are provided may be changed during the Lease Contract term if the change applies to all residents. Utilities may be used only for normal household purposes and must not be wasted. If your electricity is ever interrupted, you must use only battery-powered lighting. If any utilities are submetered for the apartment, or prorated by an allocation formula, we will attach an addendum to this Lease Contract in compliance with state agency rules or city ordinance. If you fail to transfer all utilities for which you are responsible under this Lease Contract into your name, we may give you 10 days notice of default as described in the "Other Default" section in Paragraph 32 (Default by Resident), and if you have failed to transfer the utilities into your name at the end of that 10-day period, we may disconnect utilities without further notice to you.

8. **INSURANCE.** We do not maintain insurance to cover your personal property or personal injury. We are not responsible to any resident, guest, or occupant for damage or loss of personal property or personal injury from (including but not limited to) fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, hurricane, negligence of other residents, occupants, or invited/uninvited guests or vandalism unless otherwise required by law.

In addition, we urge all Tenants, and particularly those residing in coastal areas, areas near rivers, and areas prone to flooding, to obtain flood insurance. Renter's insurance may not cover damage to your property due to flooding. A flood insurance resource which may be available includes the National Flood Insurance Program managed by the Federal Emergency Management Agency (FEMA).

We ☒ require ☐ do not require you to get your own insurance for losses to your personal property or injuries due to theft, fire, water damage, pipe leaks and the like.

If renter's insurance is required, you shall maintain at all times during the Term of this Lease, at your sole expense, a renter's insurance policy, or its equivalent, issued by a licensed insurance company in a minimum policy coverage amount of $___100000.00___, and you shall provide us with proof of such insurance to our satisfaction.

If no box is checked, renter's insurance is not required.

Additionally, you are [check one] ☒ required to purchase personal liability insurance ☐ not required to purchase personal liability insurance. If no box is checked, personal liability insurance is not required. If required, failure to maintain personal liability insurance throughout your tenancy, including any renewal periods and/or lease extensions, may be an incurable breach of this Lease Contract and may result in the termination of tenancy and eviction and/or any other remedies as provided by this Lease Contract or state law.

You acknowledge that no portion of the rent paid by you under this agreement will be applied to the owner's structural fire insurance and that you are in no way a co-insured under any such policy, and that, in order to reduce the cost of insurance, the Owner has chosen to purchase fire and extended coverage insurance for the property for which the above rental agreement applies, with a deductible in the amount of $___25000.00___. If you or any member of your household, guest or invitee causes damages to the premises in an amount that is less than the amount of this insurance deductible, you agree to indemnify and reimburse the Owner for the amount of such damages, and that you may be liable for costs in excess of the deductible under any subrogation clause of the said policy. It is recommended that you secure insurance to protect your interest in the event of such a loss.

9. **LOCKS AND LATCHES.** Keyed lock(s) will be rekeyed after the prior resident moves out. The rekeying will be done before you move into your apartment.

You may at any time ask us to change or rekey locks or latches during the Lease Term. We must comply with those requests, but you must pay for them, unless otherwise provided by law.

Payment for Rekeying, Repairs, Etc. You must pay for all repairs or replacements arising from misuse or damage to devices by you or your occupants, or guests during your occupancy. You may be required to pay in advance if we notify you within a reasonable time after your request that you are more than 30 days delinquent in reimbursing us for repairing or replacing a device which was misused or damaged by you, your guest or an occupant; or if you have requested that we repair or change or rekey the same device during the 30 days preceding your request and we have complied with your request. Otherwise, you must pay immediately after the work is completed.

10. **SPECIAL PROVISIONS.** The following special provisions and any addenda or written rules furnished to you at or before signing will become a part of this Lease Contract and will supersede any conflicting provisions of this printed Lease Contract form.

**See Additional Special Provisions**

_____
_____
_____
_____

See any additional special provisions.

11. **REIMBURSEMENT.** You must promptly reimburse us for loss, damage, government fines, or cost of repairs or service in the apartment community due to a violation of the Lease Contract or rules, improper use, or negligence by you or your guests or occupants. Unless the damage or wastewater stoppage is due to our negligence, we're not liable for—and you must pay for—repairs, replacement costs, and damage to the following that result from your or your invitees, guests, or occupants' negligence or intentional acts: (1) damage to doors, windows or screens; (2) damage from windows or doors left open; and (3) damage from wastewater stoppages caused by improper objects in lines exclusively serving your apartment. We may require payment at any time, including advance payment of repairs for which you're liable. Delay in demanding sums you owe is not a waiver.

12. **PROPERTY LEFT IN APARTMENT.**
Removal after Surrender. Upon termination of your tenancy, you agree to return all keys and physically vacate the apartment and remove all of your personal property. If you fail to remove your personal property at the time you return possession to the landlord and return all keys, we may throw away, give away, or otherwise dispose of any personal property left in the apartment unless an agreement in writing is otherwise negotiated.

Removal after Abandonment, Judicial Eviction or Other Means. When we retake possession of your unit, whether following abandonment, judicial eviction, or any other method other than your voluntary surrender of the apartment unit, we may store any personal possessions you've left in the abandoned unit. We will notify you of the location of your stored property by certified mail, return receipt requested to your last known address and to any other known addresses.

We will store your personal property for 14 calendar days after our notification to you of your abandonment. After this time, we may sell the property, retain the proceeds, and apply them towards the outstanding delinquencies. We will mail you any excess proceeds to your last known address. However, if we determine that the value of the property is less than it would cost to store and move said personal property, we may throw away, give away to charity, or otherwise dispose of some or all of the property. Any animal that is left in the apartment may be transported, at our discretion, to a shelter or boarding facility. In such an event, we will maintain records of the name and location of the facility to which the animal was removed. In addition, we may dispose of perishable items or those items that are either contaminated or a biohazard as we deem fit.

© 2021, National Apartment Association, Inc. • 9/2021, Arizona

☑ Blue Moon eSignature Services Document ID: 346566363

If you request access to your personal property and offer to pay for the storage and/or removal costs in writing, we will provide access to your personal property within five days of receipt of your offer and upon delivery of the payment of those costs.

**13. FAILING TO PAY FIRST MONTH'S RENT.** If you don't pay the first month's rent when or before the Lease Contract begins, all future rent will be automatically accelerated without notice and immediately due. We also may end your right of occupancy and recover damages, future rent, attorney's fees, court costs, and other lawful charges. Our rights and remedies under paragraph 32 (Default by Resident) apply to acceleration under this paragraph.

**14. RENT INCREASES AND LEASE CONTRACT CHANGES.** No rent increases or Lease Contract changes, except as allowed by the terms of paragraph 6 (Rent and Charges) and elsewhere in this Lease Contract, are allowed before the initial Lease Contract term ends, except for changes allowed by any special provisions in paragraph 10 (Special Provisions), by a written addendum or amendment signed by you and us, or by reasonable changes of apartment rules allowed under paragraph 18 (Community Policies or Rules). If, at least 5 days before the advance notice deadline referred to in paragraph 3 (Lease Term), we give you written notice of rent increases or lease changes effective when the lease term or renewal period ends, this Lease Contract will automatically continue month-to-month with the increased rent or lease changes. The new modified Lease Contract will begin on the date stated in the notice (without necessity of your signature) unless you give us written move-out notice under paragraph 44 (Move-Out Notice).

**15. DELAY OF OCCUPANCY.** If occupancy is or will be delayed for construction, repairs, cleaning, or a previous resident's holding over, we're not responsible for the delay. The Lease Contract will remain in force subject to: (1) abatement of rent on a daily basis during delay; and (2) your right to terminate as set forth below. Termination notice must be in writing. After termination, you are entitled only to refund of deposit(s) and any rent paid. Rent abatement or Lease Contract termination does not apply if delay is for cleaning or repairs that don't prevent you from occupying the apartment.

If there is a delay, you may terminate or exercise other remedies up to the date when the apartment is ready for occupancy, but not later, by the following methods: (1) You may terminate the Lease Contract upon 5 days advanced written notice; OR (2) You may maintain an action for possession of the dwelling in accordance with state law.

**16. AD VALOREM TAXES/FEES AND CHARGES - ADDITIONAL RENT.** Unless otherwise prohibited by law, if, during the term of this Agreement, any locality, city, state, or Federal Government imposes upon Us, any fee, charge, or tax, which is related to or charged by the number of occupants, or by the apartment unit itself, such that we are charged a fee, charge, or tax, based upon your use or occupancy of the apartment, we may add this charge as Additional Rent, during the term of the Lease Contract, with thirty (30) days advance written notice to you. After this written notice (the amount or approximate amount of the charge, will be included), you agree to pay, as Additional Rent, the amount of the charge, tax or fee imposed upon us, as a result of your occupancy. As examples, these charges can include, but are not limited to: any charges we receive for any zoning violation, sound, noise or litter charge; any charge under any nuisance or chronic nuisance type statute, 911 or other life safety, per person, or per unit charge or tax and any utility bill unpaid by you, which is then assessed to us for payment.

░░░░░░░░░░░ **While You're Living in the Apartment** ░░░░░░░░░░░

**17. DISCLOSURE RIGHTS.** If someone requests information on you or your rental history for law-enforcement, governmental, or business purposes, we may provide it.

**18. COMMUNITY POLICIES OR RULES.** You and all guests and occupants must comply with any written apartment rules and community policies, including instructions for care of our property. Our rules are considered part of this Lease Contract. We may make reasonable changes to written rules, upon 30 days written notice, if they are distributed and applicable to all units in the apartment community and do not change dollar amounts on page 1 of this Lease Contract.

**Amenities.** Amenities and their use are not guaranteed and may be closed, temporarily or permanently, at the sole and absolute discretion of the owner based on the business needs of the community or in response to any of the categories listed in Paragraph 41 (Force Majeure), without notice, obligation or recompense of any nature to Resident.

**19. LIMITATIONS ON CONDUCT.** The apartment and other areas reserved for your private use must be kept clean and free of trash, garbage, and other debris. Trash must be disposed of at least weekly in appropriate receptacles in accordance with local ordinances. Passageways may be used only for entry or exit. You agree to keep all passageways and common areas free of obstructions such as trash, storage items, and all forms of personal property. No person shall ride or allow bikes, skateboards, or other similar objects in the passageways. Any swimming pools, saunas, spas, tanning beds, exercise rooms, storerooms, laundry rooms, and similar areas must be used with care in accordance with apartment rules and posted signs. Glass containers are prohibited in all common areas. You, your occupants, or guests may not anywhere in the apartment community: use candles or use kerosene lamps or kerosene heaters without our prior written approval; cook on balconies or outside; or solicit business or contributions. Conducting any kind of business (including child care services) in your apartment or in the apartment community is prohibited--except that any lawful business conducted "at home" by computer, mail, or telephone is permissible if customers, clients, patients, or other business associates do not come to your apartment for business purposes. We may regulate: (1) the use of patios, balconies, and porches; (2) the conduct of furniture movers and delivery persons; and (3) recreational activities in common areas. You'll be liable to us for damage caused by you or any guests or occupants.

We may exclude from the apartment community guests or others who, in our judgment, have been violating the law, violating this Lease Contract or any apartment rules, or disturbing other residents, neighbors, visitors, or owner representatives. We may also exclude from any outside area or common area a person who refuses to

show photo identification or refuses to identify himself or herself as a resident, occupant, or guest of a specific resident in the community.

You agree to notify us if you or any occupants are convicted of any felony, or misdemeanor involving a controlled substance; violence to another person or destruction of property. You also agree to notify us if you or any occupant registers as a sex offender in any state. Informing us of criminal convictions or sex offender registry does not waive our right to evict you.

**20. PROHIBITED CONDUCT.** You, your occupants or guests, or the guests of any occupants, may not engage in the following activities: behaving in a loud or obnoxious manner; disturbing or threatening the rights, comfort, health, safety, or convenience of others (including our agents and employees) in or near the apartment community; disrupting our business operations; manufacturing, delivering, possessing with intent to deliver, or otherwise possessing a controlled substance or drug paraphernalia; engaging in or threatening violence; possessing a weapon prohibited by state law; discharging a firearm in the apartment community; displaying or possessing a gun, knife, or other weapon in the common area in a way that may alarm others; storing anything in closets having gas appliances; tampering with utilities or telecommunications; bringing hazardous materials into the apartment community; or injuring our reputation by making bad faith allegations against us to others.

**21. PARKING.** We may regulate the time, manner, and place of parking cars, trucks, motorcycles, bicycles, boats, trailers, and recreational vehicles by anyone. We may have unauthorized or illegally parked vehicles towed under an appropriate statute. A vehicle is unauthorized or illegally parked in the apartment community if it:

(1) has a flat tire or other condition rendering it inoperable; or
(2) is on jacks, blocks or has wheel(s) missing; or
(3) has no current license plate or no current registration and/or inspection sticker; or
(4) takes up more than one parking space; or
(5) belongs to a resident or occupant who has surrendered or abandoned the apartment; or
(6) is parked in a marked handicap space without the legally required handicap insignia; or
(7) is parked in space marked for manager, staff, or guest at the office; or
(8) blocks another vehicle from exiting; or
(9) is parked in a fire lane or designated "no parking" area; or
(10) is parked in a space marked for other resident(s) or unit(s); or
(11) is parked on the grass, sidewalk, or patio; or
(12) blocks garbage trucks from access to a dumpster; or
(13) belongs to a resident and is parked in a visitor or retail parking space.

☑ Blue Moon eSignature Services Document ID: 346566363

**22. RELEASE OF RESIDENT.** Unless you're entitled to terminate your tenancy under paragraphs 10 (Special Provisions); 15 (Delay of Occupancy), 31 (Responsibilities of Owner), or 44 (Move-Out Notice), you won't be released from this Lease Contract for any reason—including but not limited to voluntary or involuntary school withdrawal or transfer, voluntary or involuntary job transfer, marriage, separation, divorce, reconciliation, loss of co-residents, loss of employment, bad health, or death.

**23. MILITARY PERSONNEL CLAUSE.** All parties to this Lease Contract agree to comply with any federal law, including, but not limited to the Service Member's Civil Relief Act, or any applicable state law(s), if you are seeking to terminate this Lease Contract and/or subsequent renewals and/or Lease Contract extensions under the rights granted by such laws.

**24. RESIDENT SAFETY AND PROPERTY LOSS.** You and all occupants and guests must exercise due care for your own and others' safety and security, especially in the use of smoke detectors and carbon monoxide detectors, keyed deadbolt locks, keyless bolting devices, window latches, and access control devices.

**Smoke Detectors and Carbon Monoxide Detectors.** We'll furnish smoke detectors and carbon monoxide detectors only if required by statute, and we'll test them and provide working batteries when you first take possession. After that, you must test the smoke detectors and the carbon monoxide detectors on a regular basis, and pay for and replace batteries as needed, unless the law provides otherwise. We may replace dead or missing batteries at your expense, without prior notice to you. You must immediately report smoke-detector and carbon monoxide detector malfunctions to us. Neither you nor others may disable neither the smoke detectors nor the carbon monoxide detectors. If you damage or disable the smoke detector or carbon monoxide detector or remove a battery without replacing it with a working battery, you may be liable to us under state statute for $100 plus one month's rent, actual damages, and attorney's fees. If you disable or damage the smoke detector or the carbon monoxide detector, or fail to replace a dead battery or report malfunctions to us, you will be liable to us and others for any loss, damage, or fines from fire, smoke, or water.

**Casualty Loss.** We're not liable to any resident, guest, or occupant for personal injury or damage or loss of personal property from any cause, including but not limited to: fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, or vandalism unless otherwise required by law. During freezing weather, you must ensure that the temperature in the apartment is sufficient to make sure that the pipes do not freeze (the appropriate temperature will depend upon weather conditions and the size and layout of your unit). If the pipes freeze or any other damage is caused by your failure to properly maintain the heat in your apartment, you'll be liable for damage to our and other's property. If you ask our representatives to perform services not contemplated in this Lease Contract, you will indemnify us and hold us harmless from all liability for these services.

**Crime or Emergency.** Dial 911 or immediately call local medical emergency, fire, or police personnel in case of accident, fire, smoke, or suspected criminal activity, or other emergency involving imminent harm. You should then contact our representative. We're not obliged to furnish security personnel, security lighting, security gates or fences, or other forms of security. If we provide any access control devices or security measures upon the property, they are not a guarantee to prevent crime or to reduce the risk of crime on the property. You agree that no access control or security measures can eliminate all crime and that you will not rely upon any provided access control or security measures as a warranty or guarantee of any kind. We're not responsible for obtaining criminal-history checks on any residents, occupants, guests, or contractors in the apartment community. If you or any occupant or guest is affected by a crime, you must make a written report to our representative and to the appropriate local law-enforcement agency. You also must furnish us with the law-enforcement agency's incident report number upon request.

**25. CONDITION OF THE PREMISES AND ALTERATIONS.** You accept the apartment, fixtures, and furniture as is, except for conditions materially affecting the health or safety of ordinary persons. We disclaim all implied warranties. You'll be given an Inventory and Condition form on or before move-in. You must note on the form all defects or damage and return it to our representative. Otherwise, everything will be considered to be in a clean, safe, and good working condition.

You must use customary diligence in maintaining the apartment and not damaging or littering the common areas. Unless authorized by statute or by us in writing, you must not perform any repairs, painting, wallpapering, carpeting, electrical changes, or otherwise

alter our property. No holes or stickers are allowed inside or outside the apartment. But we'll permit a reasonable number of small nail holes for hanging pictures on sheetrock walls and in grooves of wood-paneled walls, unless our rules state otherwise. No water furniture, washing machines, additional phone or TV-cable outlets, alarm systems, or lock changes, additions, or rekeying is permitted unless statutorily allowed or we've consented in writing. You may install a satellite dish or antenna provided you sign our satellite dish or antenna lease addendum which complies with reasonable restrictions allowed by federal law. You agree not to alter, damage, or remove our property, including alarm systems, smoke detectors and carbon monoxide detectors, furniture, telephone and cable TV wiring, screens, locks, and access control devices. When you move in, we'll supply light bulbs for fixtures we furnish, including exterior fixtures operated from inside the apartment; after that, you'll replace them at your expense with bulbs of the same type and wattage. Your improvements to the apartment (whether or not we consent) become ours unless we agree otherwise in writing.

**26. REQUESTS, REPAIRS, AND MALFUNCTIONS.** IF YOU OR ANY OCCUPANT NEEDS TO SEND A NOTICE OR REQUEST—FOR EXAMPLE, FOR REPAIRS, INSTALLATIONS, SERVICES, OR SECURITY-RELATED MATTERS—IT MUST BE SUBMITTED THROUGH EITHER THE ONLINE TENANT/MAINTENANCE PORTAL, OR SIGNED AND IN WRITING AND DELIVERED TO OUR DESIGNATED REPRESENTATIVE (except in case of fire, smoke, gas, explosion, overflowing sewage, uncontrollable running water, electrical shorts, or crime in progress). Our written notes on your oral request do not constitute a written request from you.

Our complying with or responding to any oral request regarding security or non-security matters doesn't waive the strict requirement for written notices under this Lease Contract. You must promptly notify us in writing of: water leaks; electrical problems; malfunctioning lights; broken or missing locks or latches; and other conditions that pose a hazard to property, health, or safety. We may change or install utility lines or equipment serving the apartment if the work is done reasonably without substantially increasing your utility costs. We may turn off equipment and interrupt utilities as needed to avoid property damage or to perform work. If utilities malfunction or are damaged by fire, water, or similar cause, you must notify our representative immediately. If air conditioning or other equipment malfunctions, you must notify our representative as soon as possible on a business day. We'll act with customary diligence to make repairs and reconnections. Rent will not abate in whole or in part.

If we believe that fire or catastrophic damage is substantial, or that performance of needed repairs poses a danger to you, we may terminate your tenancy within a reasonable time by giving you written notice. If your tenancy is so terminated, we'll refund prorated rent and all deposits, less lawful deductions.

**27. ANIMALS.** Unless otherwise provided under federal, state, or local law, no animals (including mammals, reptiles, birds, fish, rodents, and insects) are allowed, even temporarily, anywhere in the apartment or apartment community unless we've so authorized in writing. You must remove an illegal or unauthorized animal within 24 hours of notice from us, or you will be considered in default of this Lease Contract. If we allow an animal as a pet, you must execute a separate animal addendum which may require additional deposits, rents, fees or other charges. An animal deposit is considered a general security deposit. We will authorize an assistance animal for a disabled person. When allowed by applicable laws, before we authorize an assistance animal, if the disability is not readily apparent, we may require a written statement from a qualified professional verifying the disability-related need for the assistance animal. If we authorize an assistance animal, we may require you to execute a separate animal and/or assistance animal addendum. Animal deposits, additional rents, fees or other charges will not be required for an assistance animal needed due to disability, including an emotional support or service animal, as authorized under federal, state, or local law. You must not feed stray or wild animals.

If you or any guest or occupant violates animal restrictions (with or without your knowledge), you'll be subject to charges, damages, eviction, and other remedies provided in this Lease Contract. If an animal has been in the apartment at any time during your term of occupancy (with or without our consent), we'll charge you for defleaing, deodorizing, and shampooing. Initial and daily animal-violation charges and animal-removal charges are liquidated damages for our time, inconvenience, and overhead (except for attorney's fees and litigation costs) in enforcing animal restrictions and rules. We may remove an unauthorized animal by (1) leaving, in a conspicuous place in the apartment, a 24-hour written notice of intent to remove the animal, and (2) following the procedures of paragraph 28 (When We May Enter). We may keep or kennel the

☑ Blue Moon eSignature Services Document ID: 346566363

animal or turn it over to a humane society or local authority. When keeping or kenneling an animal, we won't be liable for loss, harm, sickness, or death of the animal unless due to our negligence. We'll return the animal to you upon request if it has not already been turned over to a humane society or local authority. You must pay for the animal's reasonable care and kenneling charges. We have no lien on the animal for any purpose.

**28. WHEN WE MAY ENTER.** Except in case of emergency or when it is impractical to do so, landlord will give at least 2-day advance written notice of any entry into an apartment. This notice may be hand delivered to someone in the apartment, or may be sent certified or registered mail. If notice is sent by mail, it is deemed received 5 days after mailing or the day the person receives the mail, whichever occurs first. Notice to us of a service or maintenance request automatically grants us the authority to enter the apartment at all reasonable times for the purpose of that request. We have the right to enter in cases of emergencies and, subject to notice requirements, in cases where entry is for: responding to our request; making repairs or replacements; estimating repair or refurbishing costs; performing pest control; doing preventive maintenance; changing filters; testing or replacing smoke-detector batteries or carbon monoxide detector batteries; retrieving unreturned tools, equipment or appliances; preventing waste of utilities; exercising our contractual lien; leaving notices; delivering, installing, reconnecting, or replacing appliances, furniture, equipment, or access control devices; removing or rekeying unauthorized access control devices; removing unauthorized window coverings; stopping excessive noise; removing

health or safety hazards (including hazardous materials); or items prohibited under our rules; removing perishable foodstuffs if your electricity is disconnected; removing unauthorized animals; cutting off electricity according to statute; retrieving property owned or leased by former residents; inspecting when immediate danger to person or property is reasonably suspected; allowing persons to enter as you authorized in your rental application (if you die, are incarcerated, etc.); allowing entry by a law officer with a search or arrest warrant, or in hot pursuit; showing apartment to prospective residents (after move-out or vacate notice has been given); or showing apartment to government inspectors for the limited purpose of determining housing and fire ordinance compliance by us and to lenders, appraisers, contractors, prospective buyers, or insurance agents.

**29. JOINT AND SEVERAL RESPONSIBILITY.** Each resident is jointly and severally liable for all Lease Contract obligations. If you or any guest or occupant violates the Lease Contract or rules, all residents are considered to have violated the Lease Contract. Our requests and notices (including sale notices) to any resident constitute notice to all residents and occupants. Notices and requests from any resident or occupant (including notices of tenancy termination, repair requests, and entry permissions) constitute notice from all residents. In eviction suits, each resident is considered the agent of all other residents in the apartment for service of process. Security-deposit refunds and deduction itemizations of multiple residents will comply with paragraph 49 (Deposit Return, Surrender and Abandonment).

## Replacements

**30. REPLACEMENTS AND SUBLETTING.** Replacing a resident, subletting, assignment, or granting a right or license to occupy is allowed only when we expressly consent in writing. If departing or remaining residents find a replacement resident acceptable to us before moving out and we expressly consent, in writing, to the replacement, subletting, assignment, or granting a right or any license to occupy, then:

(1) a reasonable administrative (paperwork) and/or transfer fee will be due, and a rekeying fee will be due if rekeying is requested or required; and

(2) the departing and remaining residents will remain liable for all lease obligations for the rest of the original lease term.

**Procedures for Replacement.** If we approve a replacement resident, then, at our option: (1) the replacement resident must sign this Lease Contract with or without an increase in the total security deposit; or (2) the remaining and replacement residents must sign an entirely new Lease Contract. Unless we agree otherwise in writing, your security deposit will automatically transfer to the replacement resident as of the date we approve. The departing resident will no longer have a right to occupancy or a security deposit refund, but will remain liable for the remainder of the original Lease Contract term unless we agree otherwise in writing—even if a new Lease Contract is signed.

## Responsibilities of Owner and Resident

**31. RESPONSIBILITIES OF OWNER.** We'll act with customary diligence to:

(1) keep common areas reasonably clean, subject to paragraph 25 (Conditions of the Premises and Alterations);

(2) maintain fixtures, furniture, hot water, heating and A/C equipment;

(3) comply with applicable federal, state, and local laws regarding safety, sanitation, and fair housing; and

(4) make all reasonable repairs, subject to your obligation to pay for, damages for which you are liable.

If we violate any of the above, you may terminate your tenancy and exercise other remedies under state statute only as follows:

(a) You must make a written request for repair or remedy of the condition. Your request must involve a material breach of the Lease Contract, and it must include a description of all needed repairs or actions;

(b) after receiving the request, we have a reasonable time to repair, considering the nature of the problem and the reasonable availability of materials, labor, and utilities; and

(c) if repairs involving a material noncompliance have not been completed within 10 days, or within 5 days if the repairs materially affect your health and safety, you may terminate your tenancy and exercise other statutory remedies.

**32. DEFAULT BY RESIDENT.** You'll be in default if you or any guest or occupant violates any terms of this Lease Contract including but not limited to the following violations: (1) you don't pay rent or other amounts that you owe when due; (2) you or any guest or occupant violates the apartment rules, or fire, safety, health, or criminal laws, regardless of whether or where arrest or conviction occurs; (3) you abandon the apartment; (4) you give incorrect or false answers in a rental application; (5) you or any occupant is arrested, convicted, or given deferred adjudication for a felony offense involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia under state statute; (6) any illegal drugs or paraphernalia are found in your apartment; (7) you or any guest or

occupant engages in any of the prohibited conduct described in paragraph 20 (Prohibited Conduct); or (8) you or any occupant, in bad faith, makes an invalid complaint to an official or employee of a utility company or the government.

**Lease Renewal When A Breach or Default Has Occurred.** In the event that you enter into a subsequent Lease prior to the expiration of this Lease and you breach or otherwise commit a default under this Lease, We may, at our sole and absolute discretion, terminate the subsequent Lease, even if the subsequent Lease term has yet to commence. We may terminate said subsequent Lease by sending you written notice of our desire to terminate said subsequent Lease.

**Eviction.** *Failure to Maintain Unit.* If you default in your obligations to maintain the apartment unit and that default materially affects the health and safety of you or other residents, we may give you 5 days written notice of tenancy termination, and will in that notice describe your acts or omissions that constitute the breach of the Lease Contract. If you cure these breaches within the 5-day deadline, your tenancy will not terminate. Otherwise, we may file for eviction immediately. If there are further incidences of similar types of breaches for which you have been given previous notice, we may file for eviction 10 days after written notification to you of an additional noncompliance of the same or similar nature as the previous noncompliance.

*Irreparable Default.* If your default is material and irreparable, including but not limited to discharging a weapon, homicide, prostitution, criminal street gang activity, or other statutorily proscribed violations, we may deliver you written notice of immediate tenancy termination and file for eviction immediately.

*Nonpayment of Rent.* If you default for nonpayment of rent, and fail to bring rent current within 5 days after we deliver written notice to you of our intent to terminate your tenancy if rent is not paid within that time, we may terminate your tenancy by filing an eviction action. Accepting money at any time does not waive our right to damages, past or future rent, or other sums owed under the Lease Contract, and accepting partial payment of rent does not

☑ Blue Moon eSignature Services Document ID: 346566363

waive our right to continue with eviction proceedings. We are not required to accept partial payment, but if we do so, you agree to sign a waiver agreement in which you agree to make scheduled payments and agree that we have waived none of our enforcement rights by accepting partial payment.

*Other Default.* If you otherwise default in a manner not described above in this eviction subsection, we may deliver written notice to you that your tenancy will terminate not sooner than 10 days after the receipt of our notice if your breach is not remedied within 10 days. If you fail to cure the breaches outlined in our notice within this 10-day period, we may file for eviction immediately.

**Acceleration.** All monthly rent for the rest of the Lease Contract term or renewal period will be accelerated automatically without notice or demand (before or after acceleration) and will be immediately due and delinquent if, without our written consent: (1) you move out, remove property in preparing to move out, or give oral or written notice (by you or any occupant) of intent to move out before the Lease Contract term or renewal period ends; and (2) you've not paid all rent for the entire Lease Contract term or renewal period. Such conduct is considered a default for which we need not give you notice. Remaining rent also will be accelerated if you're judicially evicted or move out when we demand because you've defaulted. Acceleration is subject to our mitigation obligations below.

**Holdover.** You or any occupant, invitee, or guest must not hold over beyond the date contained in your move-out notice or our notice to vacate (or beyond a different move-out date agreed to by the parties in writing). If holdover occurs, then (1) we may immediately file suit for possession; (2) you will be liable for 2 month's rent or twice our actual damages, whichever is greater; and (3) at our option, we may extend the lease term—for up to 1 month from the date of notice of lease extension—by delivering written notice to you or your apartment while you continue to holdover.

**Other Remedies.** We may report unpaid amounts to credit agencies. If you default and move out early, you will pay us any amounts stated to be rental discounts in paragraph 10 (Special Provisions), in addition to other sums due. Upon your default, we have all other legal remedies, including tenancy termination and lockout under state statute. Unless a party is seeking exemplary, punitive, sentimental or personal-injury damages, the prevailing party may recover from the non-prevailing party attorney's fees and all other litigation costs. Late charges are liquidated damages for our time, inconvenience, and overhead in collecting late rent (but are not for attorney's fees and litigation costs). All unpaid amounts bear 18% interest per year from due date, compounded annually. You must pay all collection-agency fees if you fail to pay all sums due within 10 days after we mail you a letter demanding payment and stating that collection agency fees will be added if you don't pay all sums by that deadline.

**Remedies Cumulative.** Any remedies set forth herein shall be cumulative, in addition to, and not in limitation of, any other remedies available to Landlord under any applicable law.

**Mitigation of Damages.** If you move out early, you'll be subject to all other remedies. We'll exercise customary diligence to relet and mitigate damages. We'll credit all subsequent rent that we actually receive from subsequent residents against your liability for past-due and future rent and other sums due.

---

## General Clauses

**33. ENTIRE AGREEMENT.** Neither we nor any of our representatives have made any oral promises, representations, or agreements. This Lease Contract is the entire agreement between you and us.

**34. NO AUTHORITY TO AMEND UNLESS IN WRITING.** Our representatives (including management personnel, employees, and agents) have no authority to waive, amend, or terminate this Lease Contract or any part of it, unless in writing, and no authority to make promises, representations, or agreements that impose security duties or other obligations on us or our representatives unless in writing.

**35. NO WAIVER.** No action or omission of our representative will be considered a waiver of any subsequent violation, default, or time or place of performance. Our not enforcing or belatedly enforcing written-notice requirements, rental due dates, acceleration, liens, or other rights isn't a waiver under any circumstances.

**36. NOTICE.** Except when notice or demand is required by statute, you waive any notice and demand for performance from us if you default. Written notice to or from our managers constitutes notice to or from us. Any person giving a notice under this Lease Contract should retain a copy of the memo or letter that was given. All notices must be signed.

**37. MISCELLANEOUS.**
A. Exercising one remedy won't constitute an election or waiver of other remedies.
B. Unless prohibited by law or the respective insurance policies, insurance subrogation is waived by all parties.
C. All remedies are cumulative.
D. No employee, agent, or management company is personally liable for any of our contractual, statutory, or other obligations merely by virtue of acting on our behalf.
E. This Lease Contract binds subsequent owners.
F. Neither an invalid clause nor the omission of initials on any page invalidates this Lease Contract.
G. All provisions regarding our non-liability and nonduty apply to our employees, agents, and management companies.
H. This Lease Contract is subordinate or superior to existing and future recorded mortgages, at lender's option.
I. All lease obligations must be performed in the county where the apartment is located.
J. All discretionary rights reserved for us within this Lease Contract or any accompanying addenda are at our sole and absolute discretion.

**38. WAIVER OF JURY TRIAL.** To minimize legal expenses and, to the extent allowed by law, you and we agree that a trial of any lawsuit based on statute common law, and/or related to this Lease Contract shall be to a judge and not a jury.

**39. CONTACTING YOU.** By signing this lease, you are agreeing that we, our representative(s) or agent(s) may contact you. You agree that we may contact you using any contact information relating to your lease including any number (i) you have provided to us (ii) from which you called us, or (iii) which we obtained and through which we reasonably believe we can reach you. You agree we may use any means to contact you. This may include calls made to your cellular telephone using an automatic telephone dialing system, artificial or prerecorded voice messages, text messages, mail, e-mail, and calls to your phone or Voice over Internet Protocol (VoIP) service, or any other data or voice transmission technology. You agree to promptly notify us if you change any contact information you provide to us. You are responsible for any service provider charges as a result of us contacting you.

**40. OBLIGATION TO VACATE.** If we provide you with a notice to vacate, or if you provide us with a written notice to vacate or intent to move-out in accordance with paragraph 3 (Lease Term), and we accept such written notice, then you are required to vacate the Apartment and remove all of your personal property therefrom at the expiration of the Lease term, or by the date set forth in the notice to vacate, whichever date is earlier, without further notice or demand from us.

**41. FORCE MAJEURE.** If we are prevented from completing performances of any obligations hereunder by an act of God, strikes, epidemics, war, acts of terrorism, riots, flood, fire, hurricane, tornado, sabotage, or other occurrence which is beyond the control of the parties, then we shall be excused from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

Furthermore, if such an event damages the property to materially affect its habitability by some or all residents, we reserve the right to vacate any and all leases and you agree to excuse us from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

**42. PAYMENTS.** Payment of all sums is an independent covenant. At our option and without notice, we may apply money received (other than sale proceeds under paragraph 12 (Property Left in Apartment) or utility payments subject to governmental regulations) first to any of your unpaid obligations, then to current rent—regardless of notations on checks or money orders and regardless of when the obligations arose. All sums other than rent are due upon our demand. After the due date, we do not have to accept the rent or any other payments.

**43. ASSOCIATION MEMBERSHIP.** We represent that either: (1) we or; (2) the management company that represents us, is at the time of signing this Lease Contract or a renewal of this Lease Contract, a member of both the National Apartment Association and any affiliated state and local apartment (multi-housing) associations for the area where the apartment is located.

☑ Blue Moon eSignature Services Document ID: 346566363

## When Moving Out

**44. MOVE-OUT NOTICE.** Before moving out, either at the end of the lease term, any extension of the lease term, or prior to the end of the lease term, you must give our representative advance written notice of your intention to vacate as required by paragraph 3 (Lease Term). If you move out prior to the end of the lease term, your notice does not act as a release of liability for the full term of the Lease Contract. You will still be liable for the entire Lease Contract term if you move out early under paragraph 22 (Release of Resident) except if you are able to terminate your tenancy under the statutory rights explained under paragraph 22 (Release of Resident), or any other applicable laws. All notices to vacate must be in writing and must provide the date by which you intend to vacate. If the notice does not comply with the time requirements of paragraph 3 (Lease Term), even if you move by the last date in the lease term, you will be responsible for an additional month's rent. If you fail to vacate by the date set forth in your notice, you will automatically and immediately become a holdover tenant pursuant to state law, and we will have all remedies available under this Lease Contract and state law.

**45. MOVE-OUT PROCEDURES.** The move-out date can't be changed unless we and you both agree in writing. You won't move out before the Lease Contract term or renewal period ends unless all rent for the entire Lease Contract term or renewal period is paid in full. Early move-out may result in acceleration of future rent under paragraph 32 (Default by Resident). You're prohibited by law from applying any security deposit to rent. You won't stay beyond the date you are supposed to move out. All residents, guests, and occupants must abandon the apartment before the 30-day period for deposit refund begins. You must give us and the U.S. Postal Service, in writing, each resident's forwarding address.

**46. CLEANING.** You must thoroughly clean the apartment, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. You must follow move-out cleaning instructions if they have been provided. If you don't clean adequately, you'll be liable for reasonable cleaning charges.

**47. MOVE-OUT INSPECTION.** You should meet with our representative for a move-out inspection. Our representative has no authority to bind or limit us regarding deductions for repairs, damages, or charges. Any statements or estimates by us or our representative are subject to our correction, modification, or disapproval before final refunding or accounting. You may be present at move-out inspection if you notify us in advance in writing of your request.

**48. SECURITY DEPOSIT DEDUCTIONS AND OTHER CHARGES.** You'll be liable for the following charges, if applicable: unpaid rent; unpaid utilities; unreimbursed service charges; repairs or damages caused by negligence, carelessness, accident, or abuse, including stickers, scratches, tears, burns, stains, or unapproved holes; replacement cost of our property that was in or attached to the apartment and is missing; replacing dead or missing smoke-detector batteries or carbon monoxide detector batteries; utilities for repairs or cleaning; trips to let in company representatives to remove your telephone or TV cable services or rental items (if you so request or

have moved out); trips to open the apartment when you or any guest or occupant is missing a key; unreturned keys; missing or burned-out light bulbs; removing or rekeying unauthorized access control devices or alarm systems; packing, removing, or storing property removed or stored under paragraph 12 (Property Left in Apartment); removing illegally parked vehicles; special trips for trash removal caused by parked vehicles blocking dumpsters; false security-alarm charges unless due to our negligence; animal-related charges under paragraph 27 (Animals); government fees or fines against us for violation (by you, your occupants, or guests) of local ordinances relating to smoke detectors and carbon monoxide detectors, false alarms, recycling, or other matters; late-payment and returned-check charges; a charge (not to exceed $100) for owner/manager's time and inconvenience in our lawful removal of an animal or in any valid eviction proceeding against you, plus attorney's fees, court costs, and filing fees actually paid; and other sums due under this Lease Contract.

You'll be liable to us for: (1) charges for replacing all keys and access devices referenced in paragraph 5 (Keys) if you fail to return them on or before your actual move-out date; and (2) accelerated rent if you have violated paragraph 32 (Default by Resident).

**49. DEPOSIT RETURN, SURRENDER, AND ABANDONMENT.**
**Deposit Return and Forwarding Address.** You are required to provide us written notice of your forwarding address, on or before termination of this Lease Contract. We'll mail you, to the forwarding address you provide, your security deposit refund (less lawful deductions) and an itemized accounting of any deductions no later than 14 business days after the termination of your tenancy, surrender or abandonment, and return of possession and demand by you. If you fail to provide us with your forwarding address in writing, as required above, we will process the unclaimed security deposit in accordance with state law.

**Surrender.** You have *surrendered* the apartment when: (1) the move-out date has passed and no one is living in the apartment in our reasonable judgment; or (2) all apartment keys and access devices listed in paragraph 5 (Keys) have been turned in where rent is paid—whichever date occurs first. An apartment is also "surrendered" 10 days after the death of a sole resident.

**Abandonment.** Surrender, abandonment, and judicial eviction end your right of possession for all purposes and gives us the immediate right to: clean up, make repairs in, and relet the apartment; determine any security deposit deductions; and remove property left in the apartment in accordance with state law. Surrender, abandonment, and judicial eviction affect your rights to property left in the apartment (paragraph 12 - Property Left in Apartment), but do not affect our mitigation obligations (paragraph 32 - Default by Resident).

Once these conditions precedent occur, we may retake the apartment pursuant to A.R.S. § 33-1370 by (1) mailing to you a notice of abandonment via certified U.S. mail with return receipt requested to the apartment and to any other known address, (2) posting the notice of abandonment upon the front door of the apartment for a five day period, and (3) entering the apartment at the end of the five-day period.

## Severability, Originals and Attachments, and Signatures

**50. SEVERABILITY.** If any provision of this Lease Contract is invalid or unenforceable under applicable law, such provision shall be ineffective to the extent of such invalidity or unenforceability only without invalidating or otherwise affecting the remainder of this Lease Contract. The court shall interpret the lease and provisions herein in a manner such as to uphold the valid portions of this Lease Contract while preserving the intent of the parties.

**51. ORIGINALS AND ATTACHMENTS.** This Lease Contract has been executed in multiple originals, with original signatures. We will provide you with a copy of the Lease Contract. Your copy of the Lease Contract may be in paper format, in an electronic format at your request, or sent via e-mail if we have communicated by e-mail about this Lease. Our rules and community policies, if any, will be attached to the Lease Contract and provided to you at signing. When an Inventory and Condition form is completed, you should retain a copy, and we should retain a copy. Any addenda or amendments you sign as a part of executing this Lease Contract are binding and hereby incorporated into and made part of the Lease Contract between you and us. This lease is the entire agreement between you and us. You acknowledge that you are NOT relying on any oral representations.

A copy or scan of this Lease Contract and related addenda, amendments, and agreements may be used for any purpose and shall be treated as an original.

| You are legally bound by this document. Read it carefully before signing. | |
|---|---|
| **Resident or Residents**<br>*(all sign below)* | **Date Signed** |
| *Andrew Roach* | 11/18/2022 |
| | |
| | |
| | |
| **Owner or Owner's Representative**<br>*(signing on behalf of owner)* | **Date Signed** |
| *Ryan Gillen* | 11/18/2022 |

© 2021, National Apartment Association, Inc. • 9/2021, Arizona

Blue Moon eSignature Services Document ID: 346566363

## Move Out Statement

Date: 09/28/2023

| | | | | | |
|---|---|---|---|---|---|
| Code | t0002856 | Property | phxprop | Lease From | 11/22/2022 |
| Name | Andrew Roach | Unit | 1201A | Lease To | 10/21/2023 |
| Address | Kenect Phoenix | Status | Past | Move In | 11/22/2022 |
| | 355 N Central | Rent | 1,412.25 | Move Out | 05/04/2023 |
| City | Phoenix, AZ 85004 | | | Notice | 05/04/2023 |
| Telephone | (H)-(424) 420-5550 | | | | |

| Date | Description | Charge | Payment | Balance | Chg/Rec |
|---|---|---|---|---|---|
| | Balance as of 5/01/2023 | | | 3,271.76 | |
| 05/01/2023 | :Tax Market Rent (05/2023) | 32.48 | 0.00 | 3,304.24 | 100848 |
| 05/01/2023 | Market Rent (05/2023) | 1,412.25 | 0.00 | 4,716.49 | 100849 |
| 05/04/2023 | :Tax Market Rent (05/2023) 4 days | -28.29 | 0.00 | 4,688.20 | 119266 |
| 05/04/2023 | Market Rent (05/2023) Credit 27 days | -1,230.02 | 0.00 | 3,458.18 | 119267 |
| 05/04/2023 | :Tax Market Rent (06/2023) 0 days | -32.48 | 0.00 | 3,425.70 | 119268 |
| 05/04/2023 | Market Rent (06/2023) Credit 30 days | -1,412.25 | 0.00 | 2,013.45 | 119269 |
| 05/06/2023 | Late Charges | 50.00 | 0.00 | 2,063.45 | 102424 |
| 05/07/2023 | Sales Tax | 1.15 | 0.00 | 2,064.60 | 102461 |
| 06/01/2023 | :Tax Market Rent (06/2023) | 32.48 | 0.00 | 2,097.08 | 104983 |
| 06/01/2023 | Market Rent (06/2023) | 1,412.25 | 0.00 | 3,509.33 | 104984 |
| 06/06/2023 | Late Charges | 50.00 | 0.00 | 3,559.33 | 106659 |
| 06/08/2023 | Sales Tax | 1.15 | 0.00 | 3,560.48 | 106781 |

**Columbia Debt Recovery LLC DBA Genesis**
**State Disclosures**

**TO ALL CONSUMERS – Notice about Electronic Check Conversion:** When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day we receive your payment and you will not receive your check back from your financial institution. Also, you authorize us to represent a check as an electronic fund transfer from your account if your payment is returned unpaid.

**Please be aware of the following rights. This list does not contain a complete list of the rights consumers have under state and federal law.**

**California Residents:** The state Rosenthal Fair Debt Collection Practices Act, and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or http://www.ftc.gov/.

As required by law, you are hereby notified that a negative credit agency report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

CALIFORNIA COLLECTIONS LICENSE NUMBER: 10771-99

**Colorado Residents:** The Colorado office of Columbia Debt Recovery is located at 27 North Willerup, Suite B, Montrose, CO 81401, telephone (970) 249-7514. FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE WWW.COAG.GOV/CAR. A consumer has the right to request in writing that a debt collector or collection agency cease further communication with the consumer. A written request to cease communication will not prohibit the debt collector or collection agency from taking any other action authorized by law to collect the debt.

**Minnesota Residents:** This collection agency is licensed by the Minnesota Department of Commerce.

**Maine Residents:** Hours of Operation: M-F 8:00am – 5:00pm PDT; Call toll free (866) 863-9194.

**New York:** Debt collectors, in accordance with the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., are prohibited from engaging in abusive, deceptive, and unfair debt collection efforts, including but not limited to: the use or threat of violence; (ii) the use of obscene or profane language; and (iii) repeated phone calls made with the intent to annoy, abuse, or harass. If a creditor or debt collector receives a money judgment against you in court, state and federal laws may prevent the following types of income from being taken to pay the debt:1. Supplemental security income, (SSI); 2. Social security; 3. Public assistance (welfare); 4. Spousal support, maintenance (alimony) or child support; 5. Unemployment benefits; 6. Disability benefits; 7. Workers' compensation benefits; 8. Public or private pensions;9. Veterans' benefits; 10. Federal student loans, federal student grants, and federal work study funds; and11. Ninety percent of your wages or salary earned in the last sixty days.

**New York City Borough Residents:** Department of Consumer Affairs, City of New York, License # 2095802-DCA. Please contact Hayden Hunter at (866) 863-9194 if you have questions. Para un agente de habla hispana, llame al (877)397-9337 Please see https://www1.nyc.gov/site/dca/index.page for a translation of commonly used debt collection terms in your preferred language.

**North Carolina Residents:** North Carolina Department of Insurance Permit # 119507065 & # 519352683

**Utah Residents:** As required by Utah law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

COLUMBIA DEBT RECOVERY LLC DBA GENESIS
906 SE EVERETT MALL WAY STE 301 EVERETT, WA 98208-3744
TOLL FREE: 866-863-9194 MONDAY-FRIDAY 8AM TO 5PM PST
SEND WRITTEN DISPUTES TO: PO BOX 3630 EVERETT, WA 98213-8630


APRIL 25, 2025

PR1-Account #:0010131188

ROACH,ANDREW DAVID
2900 N BREASWOOD BLVD APT2411
HOUSTON TX 77025


ORIGINAL CREDITOR: KENECT PHOENIX
PLACED FOR COLLECTIONS ON: 01/10/24


|  |  |
|---|---|
| Original Balance: | $3560.48 |
| Current Principal: | $3560.48 |
| Interest Due: | $459.45 |
| Total Due: | $4019.93 |


ANDREW DAVID ROACH


In reference to your recent request, please find enclosed validation of debt
with KENECT PHOENIX

Should you have any further questions, please contact the undersigned below
or you may email documentation to Compliance@genesiscred.com for review.

Sincerely,

COLUMBIA DEBT RECOVERY LLC DBA GENESIS
(866) 863-9194


This is a communication from a debt collector. This is an attempt to collect
a debt. Any information will be used for that purpose. As of the date of this
letter you owe the amount stated above. Your account bears interest at 010.00
percent per annum. Because interest and other charges vary from day to day,
please contact us to learn the exact amount you owe as of the date of your
payment.

THURSTON COUNTY.
SHERIFF

**CAUSE NO.** 2025 JUN 10 AM 9: 16

|  |  |  |
|---|---|---|
| **ANDREW ROACH,** | RECEIVED § | **HON. COURT** ____ ᵗʰ, |
| *PLAINTIFFS* | § | |
| **V.** | § | **DISTRICT COURT** |
| **COLUMBIA DEBT RECOVERY,** | § | |
| *DEFENDANT* | § | **HARRIS COUNTY, TEXAS.** |

### AFFIDAVIT OF LAST KNOWN ADDRESS OF DEFENDANT(S)

### AND NON-MILITARY STATUS

**BEFORE ME,** the undersigned authority, duly authorized to administer oaths and take acknowledgments, personally appeared, Andrew Roach, who after by me first duly sworn, deposes, and says:

1. I, Andrew Roach, am over the age of eighteen (18) years old, and having personal knowledge of the facts set forth herein, and am competent to testify to the following facts and matters:

2. Plaintiff filed this above styled and numbered Cause with the Harris County District Court of Texas which retains appropriate jurisdiction over this Cause of Action(s) contained and asserted in Plaintiff's Original Petition to this Hon. Court.

3. Columbia Debt Recovery LLC (Doing Business As, 'Genesis') is a Limited Liability Corporation under the governing laws of the State of Washington, USA, with a principal address at 906 SE Everett Mall Way, Suite 301, Everett, WA 98208, with a registration expiration date set for January 31, 2026.

4. Columbia Debt Recovery LLC (Doing Business As, 'Genesis' retains a 'Registered Agent Name': CORPORATION SERVICE COMPANY with the following addresses:
   a. **Street Address:** 300 DESCHUTES WAY SW STE 208 MC-CSC1, TUMWATER, WA, 98501, UNITED STATES.
   b. **Mailing Address:** 300 DESCHUTES WAY SW STE 208 MC-CSC1, TUMWATER, WA, 98501, UNITED STATES.

5. Columbia Debt Recovery LLC (Doing Business As 'Genesis'), is not of military status, governmental entity, or individual but rather a limited liability company under the laws of the State of Washington, as affirmed by the State of Washington Secretary of State. This status was expressly acknowledged and affirmed herein by Plaintiff through diligent governmental record search and verifications. Columbia Debt Recovery LLC, UBI Number: **604 074 740.**

**Further Affiant Sayeth Naught.**                    *[Signature Page Follows]*



**Andrew Roach**



ANDREW ROACH
Notary Public, State of Texas
Comm. Expires 11-02-2027
Notary ID 134630531

*Duly Sworn and Subscribed before me on <u>May 27, 2025.</u>*



*Notary*

ALIA AL QAISSY
Notary ID #132724408
My Commission Expires
February 28, 2029

*State of Texas,*

*County of Harris*

*Personally known to me.*



*Respectfully Submitted.*

**Andrew Roach**

Andrew Roach, Plaintiff, Pro Se,

2917 Lake Forest Dr, Upper Marlboro, MD 20774

P: 424-420-5550 / drewroach37@gmail.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a correct, true and full copy of the foregoing has been personally served on Defendant(s) and or Defendant(s) authorized Counsel, in Cause 202369852, in this action.

*Respectfully Submitted,*

*Andrew Roach*

Andrew Roach; Plaintiff, Pro Se,

2917 Lake Forest Dr, Upper Marlboro, MD 20774

P: 424-420-5550 / drewroach37@gmail.com

# BUSINESS INFORMATION

Business Name:
**COLUMBIA DEBT RECOVERY, LLC**

UBI Number:
**604 074 740**

Business Type:
**WA LIMITED LIABILITY COMPANY**

Business Status:
**ACTIVE**

Principal Office Street Address:
**906 SE EVERETT MALL WAY, SUITE 301, EVERETT, WA, 98208, UNITED STATES**

Principal Office Mailing Address:
**906 SE EVERETT MALL WAY, SUITE 301, EVERETT, WA, 98208, UNITED STATES**

Expiration Date:
**01/31/2026**

Jurisdiction:
**UNITED STATES, WASHINGTON**

Formation/ Registration Date:
**01/10/2017**

Period of Duration:
**PERPETUAL**

Inactive Date:

Nature of Business:
**DEBT COLLECTION AGENCY**

# REGISTERED AGENT INFORMATION

Registered Agent Name:
**CORPORATION SERVICE COMPANY**

Street Address:
**300 DESCHUTES WAY SW STE 208 MC-CSC1, TUMWATER, WA, 98501, UNITED STATES**

Mailing Address:
**300 DESCHUTES WAY SW STE 208 MC-CSC1, TUMWATER, WA, 98501, UNITED STATES**

# GOVERNORS

| Title | Governors Type | Entity Name | First Name | Last Name |
|-------|----------------|-------------|------------|-----------|
| GOVERNOR | INDIVIDUAL | | WILLIAM P. | WODJAK |

*Andrew Roach v. Columbia Debt Recovery, LLC*

# Exhibit "B"

**HCDistrictclerk.com**     ROACH, ANDREW vs. COLUMBIA DEBT RECOVERY     7/10/2025
(DBA GENESIS)
Cause: 202538552        CDI: 7        Court: 125

## JUDGMENT/EVENTS

| Date | Description | Order Signed | Post Jdgm | Pgs | Volume /Page | Filing Attorney | Person Filing |
|------|-------------|--------------|-----------|-----|--------------|-----------------|---------------|
| 6/2/2025 | ORIGINAL PETITION | | | 0 | | | ROACH, ANDREW |

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DIVISION OF TEXAS

HOUSTON DIVISION

|  |  |
|---|---|
| | ) |
| **ANDREW ROACH,** | ) |
| *PLAINTIFFS* | ) |
| | ) CIVIL ACTION NO. <u>4:25-CV-03221</u> |
| **V.** | ) |
| **COLUMBIA DEBT RECOVERY,** | ) |
| *DEFENDANT* | ) |

# C

COPY OF PLEADING PROVIDED BY PLTD

6/26/2025 3:13 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 102486209
By: Jasmine Garner
Filed: 6/26/2025 3:13 PM

CAUSE NO. 202538552
RECEIPT NO. 32934    0.00    ATY
TR # 74490452

PLAINTIFF: ROACH, ANDREW
     vs.
DEFENDANT: COLUMBIA DEBT RECOVERY (DBA GENESIS) 2025 JUN 10 AM 9: 15

In The 125th
Judicial District Court
of Harris County, Texas
125TH DISTRICT COURT
Houston, TX

CITATION

THE STATE OF TEXAS
County of Harris

TO: COLUMBIA DEBT RECOVERY (DBA GENESIS) (LIMITED LIABILITY COMPANY) MAY
BE SERVED BY SERVING ITS REGISTERED AGENT CORPORATION SERVICE COMPANY
OR WHEREVER ANY OTHER DULY AUTHORIZED OFFICER OR AGENT MAY BE FOUND
300 DESCHUTES WAY SW STE 208 MC-CSCI TUMWATER WA 98501

Attached is a copy of PLAINTIFF'S ORIGINAL PETITION

This instrument was filed on the 2nd day of June, 2025, in the above cited cause number
and court. The instrument attached describes the claim against you.

YOU HAVE BEEN SUED. You may employ an attorney. If you or your attorney do not file a
written answer with the District Clerk who issued this citation by 10:00 a.m on the Monday
next following the expiration of 20 days after you were served this citation and petition,
a default judgment may be taken against you. In addition to filing a written answer with the
clerk, you may be required to make initial disclosures to the other parties of this suit. These
disclosures generally must be made no later than 30 days after you file your answer with the
clerk. Find out more at TexasLawHelp.org.

TO OFFICER SERVING:

This citation was issued on 5th day of June, 2025 under my hand and
seal of said Court.

Issued at request of:
ROACH, ANDREW
2917 LAKE FOREST DR
UPPER MARLBORO, MD 20774
Tel: (424) 420-5550
Bar No.: 1

MARILYN BURGESS, District Clerk
Harris County, Texas
201 Caroline, Houston, Texas 77002
(P.O. Box 4651, Houston, Texas 77210)

Generated By: LAWSON, CHANDRA K 2ZD//12869306

OFFICER/AUTHORIZED PERSON RETURN

Came to hand at 0913 o'clock A.M., on the 10th day of June, 2025.
Executed at (address) 300 Deschutes Way SW Ste 208 in
Thurston County at 1045 o'clock A.M., on the 13th day of June,
2025, by delivering to Ellen Jones/Customer Representative defendant, in person, a
true copy of this Citation together with the accompanying 1 copy(ies) of the
Citation, petition 202538552 Petition
attached thereto and I endorsed on said copy of the Citation the date of delivery.
To certify which I affix my hand officially this 13th day of June, 2025.

FEE: $ 100.00

Thurston County Sheriffs Office
of Thurston County, Texas WA

By R Russell
              Deputy

_____
Affiant

Deputy Ryan Russell , known to me to be the person whose
name appears on the foregoing return, personally appeared. After being by me duly sworn,
he/she stated that this citation was executed by him/her in the exact manner recited on the

SWORN TO AND SUBSCRIBED BEFORE ME, on this 13 day of June, 2025.

_____
Notary Public

KARI A KNIGGE
APPOINTMENT EXPIRES
JANUARY 01, 2028
NOTARY PUBLIC
STATE OF WASHINGTON

COPY OF PLEADING PROVIDED BY PLTD

CAUSE NO. 202538552
RECEIPT NO. 32934          0.00      ATY
************          TB # 74490452

PLAINTIFF: ROACH, ANDREW
          vs.
DEFENDANT: COLUMBIA DEBT RECOVERY (DBA GENESIS)

In The   125th
Judicial District Court
of Harris County, Texas
125TH DISTRICT COURT
Houston, TX

2025 JUN 1 10

CITATION

RECEIVED

THE STATE OF TEXAS
County of Harris

TO: COLUMBIA DEBT RECOVERY (DBA GENESIS) (LIMITED LIABILITY COMPANY) MAY
    BE SERVED BY SERVING ITS REGISTERED AGENT CORPORATION SERVICE COMPANY
    OR WHEREVER ANY OTHER DULY AUTHORIZED OFFICER OR AGENT MAY BE FOUND
    300  DESCHUTES WAY SW STE 208 MC-CSCI   TUMWATER  WA  98501

    Attached is a copy of PLAINTIFF'S ORIGINAL PETITION

This instrument was filed on the 2nd day of June, 2025, in the above cited cause number
and court. The instrument attached describes the claim against you.

    YOU HAVE BEEN SUED, You may employ an attorney. If you or your attorney do not file a
written answer with the District Clerk who issued this citation by 10:00 a.m on the Monday
next following the expiration of 20 days after you were served this citation and petition,
a default judgment may be taken against you. In addition to filing a written answer with the
clerk, you may be required to make initial disclosures to the other parties of this suit. These
disclosures generally must be made no later than 30 days after you file your answer with the
clerk. Find out more at TexasLawHelp.org.

TO OFFICER SERVING:

    This citation was issued on 5th day of June, 2025, under my hand and
seal of said Court.

Issued at request of:
ROACH, ANDREW
2917  LAKE FOREST DR
UPPER MARLBORO, MD  20774
Tel: (424) 420-5550
Bar No.: 1

MARILYN BURGESS, District Clerk
Harris County, Texas
201 Caroline, Houston, Texas 77002
(P.O. Box 4651, Houston, Texas 77210)

Generated By: LAWSON, CHANDRA K  22D//12869306

OFFICER/AUTHORIZED PERSON RETURN

Came to hand at _____ o'clock _____.M., on the _____ day of _____, _____.

Executed at (address) _____ in

_____ County at _____ o'clock ____.M., on the _____ day of _____,

_____, by delivering to _____ defendant, in person, a

true copy of this Citation together with the accompanying _____ copy(ies) of the

_____ Petition

attached thereto and I endorsed on said copy of the Citation the date of delivery.
To certify which I affix my hand officially this _____ day of _____, _____.

FEE: $_____          _____

                          _____ of _____County, Texas

                        By _____
_____
        Affiant                         Deputy

On this day, _____, known to me to be the person whose
signature appears on the foregoing return, personally appeared. After being by me duly sworn,
he/she stated that this citation was executed by him/her in the exact manner recited on the
return.

SWORN TO AND SUBSCRIBED BEFORE ME, on this _____ day of _____, _____.

                          _____
                                  Notary Public

N.1PT.CITR.P                    *74490452*

2025 JUN 10 AM 9: 18

| | | |
|---|---|---|
| **ANDREW ROACH,** | § | HONORABLE COURT _125th_, |
| *PLAINTIFFS* | § | |
| | § | |
| **V.** | § | **DISTRICT COURT.** |
| **COLUMBIA DEBT RECOVERY,** | § | |
| *DEFENDANT* | § | **HARRIS COUNTY, TEXAS.** |

RECEIVED

## PLAINTIFF'S ORIGINAL PETITION

### TO THE HONORABLE JUDGE OF SAID COURT:

**COMES NOW**, Andrew Roach, (hereinafter referred to as "Plaintiff"), files this Original Petition complaining of Columbia Debt Recovery LLC (Doing Business As, 'Genesis') (hereinafter referred to as "Defendant"), and for cause of action(s) would respectfully show unto the Court as follows:

## I.     STATEMENT OF RELIEF SOUGHT

1. Plaintiff seeks monetary relief within the jurisdictional limits of this court.

## II.     DISCOVERY CONTROL PLAN

2. Pursuant to Rule 190.3 and 190.4 of the Texas Rules of Civil Procedure, discovery is intended to be conducted under Level 2.

3. Required Initial Disclosures. Pursuant Rule 194 of the Tex. R. Civ. P., Defendant is required to disclose within thirty (30) days of after filing general appearance; '.. A party that is first served or otherwise joined after general appearance must male the initial disclosures within thirty (30) days after being served or joined..' the information described in Rule 194. of the Tex. R. Civ. P.

### III. **PARTIES**

4. Plaintiff, Andrew Roach is an individual residing in Harris County, Texas.

5. Defendant(s), Columbia Debt Recovery LLC (Doing Business As 'Genesis'), is a limited liability company organized under the governing laws of the State of Washington and has it's headquarters at 906 SE Everett Mall Way, Suite 301, Everett, WA 98208, United States. Defendant may be served with process by serving its registered agent, Corporation Service Company, located at 300 Deschutes Way SW, Ste 208 Mc-CSC1, Tumwater, WA 98501, and/ or wherever any authorized agent may be found.

6. In the event any parties are misnamed or are not included herein, it is Plaintiff's contention that such was a "misidentification", "misnomer", and/ or such parties were "alter egos" of parties named herein. Alternatively, Plaintiff contends that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice.

### IV. **JURISDICTION AND VENUE**

7. This Court has personal jurisdiction, both specific and general, over Defendant and Defendant is amenable to service by a Texas Court. Additionally, venue is proper in Harris County Texas because it is the county in which all or substantial part of the events and omissions giving rise to Plaintiff's claims occurred in Harris County, Texas.

### V. **STATEMENT OF MATERIAL FACTS**

8. On or about January 2025, Defendant began reporting an alleged debt account to one or more consumer reporting agencies under Plaintiff's name without providing any evidence of a valid creditor-debtor relationship.

9. On April 1, 2025, Plaintiff served Defendant with a Formal Cease and Desist Letter and Demand for Verification and Validation of Debt pursuant to applicable federal laws including 15 U.S.C. § 1692g(b) and 15 U.S.C. § 1681e(b). Said notice was delivered via certified USPS and registered electronic mail. A copy of the Formal Notice that was served on the Defendant's is attached hereto, **Exhibit-A.**

10. In response, on April 30, 2025, Defendant mailed to Plaintiff a copy of a contract between "Andrew Roach" and a third party, Kennect Phoenix, *not "Columbia Debt Recovery",* and *failed* to provide any evidence that Columbia owned, was assigned, or had any lawful authority to collect on the alleged debt; and or any legal authentication of Plaintiff. A copy o the mailing envelope and the contents of what the Defendants responded to Plaintiff's Exhibit-A with on April 30, 2025, are attached hereto as, **Exhibit-B.**

11. Despite this, Defendant continued reporting the collection account monthly through the date of this Petition and continuing subsequent hereinafter, without correction, verification, or deletion. Plaintiff's redacted credit report as of June 1, 2025, attached hereto as **Exhibit-C.**

12. Defendant failed to provide required documentation **under state and federal law,** thereby exposing Plaintiff to false credit reporting, reputational harm, and denial of financial opportunities; attached hereto as, **Exhibit-D,** Plaintiff's sworn testimony that the Exhibit(c) attached hereto are all a true and correct copy of the documents.

13. Moreover, in direct response to Plaintiff's Formal Cease and Desist and Verification Demand dated April 1, 2025, Defendant, on or about April 30, 2025, mailed to Plaintiff a purported contract executed between Plaintiff, **"Andrew Roach",** and an unrelated third party, **"Kennect Phoenix".** Critically, this instrument made *no reference* **whatsoever to Defendant, Columbia Debt Recovery, LLC,** *nor* did it reflect any assignment, sale, or

lawful transfer of interest authorizing Defendant to collect or report on the alleged obligation; ***nor*** did it provide any sworn verification or authentication identifying Plaintiff as legally obligated to **Columbia Debt Recovery.** *(emphasis added).* **Exhibit-C.**

**14.** Notwithstanding the absence of such foundational documentation, Defendant **continued to report** the subject account as a derogatory collection tradeline to one or more consumer reporting agencies on a **recurring monthly basis** from **January 2025 through the present**, and upon information and belief, intends to persist in such reporting unless enjoined.

**15.** Defendant's continued failure to comply with Plaintiff's Formal Cease and Desist Letter—specifically, its refusal to provide the requisite legal documentation establishing ownership, assignment, or lawful authority to collect the alleged debt—constitutes a deliberate and deceptive act. Instead of complying with federal and state verification mandates, Defendant responded by producing documentation identifying an entirely separate legal entity, **Kennect Phoenix,** and subsequently sought to induce Plaintiff into performance under that unrelated agreement. This misrepresentation was sent directly to Plaintiff's legal address in **Harris County, Texas,** thereby invoking the jurisdiction of this Court.

**16.** As a direct and proximate result of Defendant's unlawful misreporting, and its continued refusal to verify, correct, or delete the disputed tradeline in accordance with federal and state law, **Plaintiff was denied a substantial and time-sensitive business opportunity** on or about **May 1, 2025.** Specifically, Plaintiff sought to engage in the **acquisition, sale, or transfer of a corporate entity,** the value of which exceeded **$117,000.00,** but was ultimately declined by third-party investor(s) or an investment group upon review of Plaintiff's credit profile. Investor(s) and Investment Group(s), Jane Doe and John Doe, (hereinafter referred to as **"Interested Parties"**) redacted sworn testimony is attached hereto as Exhibit-E, testifying that the "Collection(s)" accounted reported to Plaintiff's credit report file by Defendant(s), dissolve any and all acquisition of Ariv Holdings LLC. Interested Parties

swore in **Exhibit-E** to their intentions of executing such acquisition of but not limited to Ariv

Holdings LLC in the amount of $117,000.00 USD and accompanied investment portfolio effective

July 1, 2025, but such representation made by Defendants deterred such. **Exhibit-E.**

17. Said denial was expressly based on the negative and inaccurate credit data furnished by Defendant to

one or more consumer reporting agencies. The collapse of this transaction constitutes a **material,**

**quantifiable, and foreseeable injury** to Plaintiff's financial standing, business credibility, and

overall market position, directly traceable to Defendant's statutory violations and tortious conduct.

Such investor(s) and investment group(s) intend to provide sworn testimony in this Cause.

18. Plaintiff has thus suffered egregious and ongoing damages arising from Defendant's unlawful

conduct, including lost business opportunities, reputational harm, and financial

destabilization. **Supporting documentation** substantiating the value and terms of the

declined transaction, and the correspondence relating to the denial by the investment party or

parties, **will be filed under seal** in accordance with **Texas Rule of Civil Procedure 76a** to

preserve confidentiality and proprietary interest. **Exhibit-E. Exhibit-A,B,C, and D.**

Unofficial Copy Office of Marilyn Burgess District Clerk

# VI. CAUSES OF ACTION

## COUNT I – TEXAS DEBT COLLECTION ACT § 392.001

**19.** Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section V. Statement of Material Facts. Texas Debt Collection Act (TDCA), Tex. Fin. Code § 392.001 et seq.

**20.** This cause of action arises under the Texas Debt Collection Act (TDCA), codified at Tex. Fin. Code §§ 392.001 et seq., which prohibits debt collectors from using false, misleading, or abusive means to collect consumer debts. Plaintiff is a "consumer" under § 392.001(1), and Defendant is a "debt collector" under § 392.001(6). **Exhibit-A. Exhibit-B.**

**21.** Defendant knowingly violated multiple provisions of the TDCA, including but not limited to:

    a. § 392.202, by failing to conduct an investigation and correct or delete inaccurate tradeline information after receipt of Plaintiff's written dispute on April 1, 2025;

    b. § 392.304(a)(8), by misrepresenting the ownership, character, amount, and legal status of the alleged debt;

    c. § 392.304(a)(19), by employing false and deceptive practices in attempting to collect a debt it did not own, and could not lawfully enforce;

**22.** Defendant did not produce any valid assignment, bill of sale, or other competent legal documentation evidencing its ownership or authority to collect the alleged debt. Instead, it submitted a contract involving a third party, Kennect Phoenix, in which Defendant is not named. This constitutes a per se violation of the Act and demonstrates deceptive conduct.

**23.** As a proximate result of Defendant's conduct, Plaintiff suffered economic harm, loss of a business transaction exceeding $117,000, reputational damage, and mental anguish. Plaintiff seeks actual damages, statutory damages, injunctive relief, attorneys' fees, and costs of court under Tex. Fin. Code § 392.403(a)(2), § 392.403(b). *(emphasis added).* **Exhibit-A and E.**

**24.** Plaintiff seeks judgment of this Court for actual damages, consequential damages, punitive damages, exemplary damages, prejudgment interest, and costs of Court.

## <u>COUNT II- TEXAS DECEPTIVE TRADE PRACTICES ACT (DTPA) § 17.41</u>

**25.** Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section V. Statement of Material Facts. Texas Deceptive Trade Practices Act (DTPA) § 17.41 et seq.

**26.** Plaintiff is a "consumer" under the Texas DTPA, having sought services related to credit and debt collection for personal purposes. Defendant's actions, as set forth in Section V, constitute false, misleading, and deceptive acts under Tex. Bus. & Com. Code § 17.46(b), including: (1) Misrepresenting the existence of a valid debt; (2) Falsely claiming to possess the legal authority to collect the debt; (3) Reporting inaccurate credit information despite statutory disputes. **Exhibit-A. Exhibit-B.**

**27.** Defendant's conduct violates the DTPA through incorporation of the TDCA under Tex. Fin. Code § 392.404. Plaintiff seeks actual damages, treble damages upon proof of knowing violations, and attorneys' fees. **Exhibit-A. Exhibit-B.**

## COUNT III- FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681 es seq

**28.** Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section

V. Statement of Material Facts. Fair Credit Reporting Act 15 U.S.C. § 1681 et seq.

**29.** Defendant violated the FCRA by: (1) Furnishing inaccurate information after being notified

of a dispute, in violation of 15 U.S.C. § 1681s-2(b); (2) Failing to conduct a reasonable

investigation or to delete inaccurate tradelines after Plaintiff's formal notice on April 1, 2025,

in violation of § 1681i; (3) Reporting false data without verifying legal ownership of the

debt, in violation of § 1681e(b). **Exhibit-A. Exhibit-B.**

**30.** As a result, Plaintiff sustained actual damages, including denial of a $117,000 business

transaction. Plaintiff seeks actual damages, statutory damages, punitive damages (for willful

violations), and attorney's fees under 15 U.S.C. §§ 1681n and 1681o. **Exhibit-E.**

## COUNT IV- FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. § 1692 et seq.

**31.** Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section

V. Statement of Material Facts. FDCPA 15 U.S.C. § 1692 et seq.

**32.** Defendant is a "debt collector" under 15 U.S.C. § 1692a(6), and its conduct violated the

FDCPA as follows: (1) Using false representations to collect a debt under § 1692e(2)(A); (2)

Collection collection efforts without validation of the debt after Plaintiff's written dispute, in

violation of § 1692g(b); (3) Attempting to collect a debt it did not own and could not

substantiate, violating § 1692f. **Exhibit-A. Exhibit-B.**

**33.** Plaintiff is entitled to actual damages, statutory damages up to $1,000, and attorney's fees

and costs under 15 U.S.C. § 1692k.

## COUNT V- FRAUD MISREPRESENTATION

**34.** Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section

III. Statement of Material Facts. Fraud Misrepresentation. *Italian Cowboy Partners, Ltd. v.*

*Prudential Ins. Co. of America*, 341 S.W.3d 323, 337 (Tex. 2011), *Aquaplex, Inc. v. Rancho*

*La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (per curiam). ***SPEP Aircraft Holdings,***

***LLC et al. v. Bombardier Aerospace Corporation***, Cause No. DC-12-14739, in the 44th

Judicial District Court of Dallas County, Texas. ***Bombardier Aerospace Corporation v.***

***SPEP Aircraft Holdings, LLC, et al.,*** Cause No. 05-16-00086-CV, Fifth Court of Appeals,

Dallas, Texas. To establish fraud under Texas law, Plaintiff must show: (1) a material

misrepresentation, (2) made with knowledge of its falsity or recklessness, (3) with intent to

induce reliance, (4) actual and justifiable reliance by Plaintiff, and (5) injury resulting from

that reliance. **Exhibit-A. Exhibit-B.**

**35.** Defendant Columbia Debt Recovery LLC made an affirmative material misrepresentation by

transmitting to Plaintiff a written communication, purporting to verify the existence and

validity of a debt allegedly owed by Plaintiff. In this communication, Defendant produced an

instrument—namely, a purported contract between Plaintiff and a third party, Kennect

Phoenix—representing it as proof of indebtedness to Columbia. However, Columbia was not

a party to that contract, nor did the document contain any reference to Columbia, nor any

assignment or bill of sale evidencing legal authority to enforce or collect on the alleged

obligation. This submission was intended to induce Plaintiff to believe that Columbia was a

valid and lawful creditor. **Exhibit-D.**

**36.** At the time this representation was made, Defendant knew or should have known that the information it was providing was false, incomplete, and misleading. Defendant either possessed no legal documentation to support its claim of ownership of the alleged debt or knowingly omitted the material fact that no such transfer or assignment ever occurred. By presenting a third-party contract as though it substantiated its own collection rights, Defendant acted with at minimum a reckless disregard for the truth, if not with actual knowledge of the falsity of its claim. **Exhibit-A. Exhibit-B. Exhibit-D.**

**37.** Defendant intended for Plaintiff to rely on this false representation to deter or delay legal action and to continue collection efforts under the false pretense of creditor status. Plaintiff justifiably relied on this misrepresentation by deferring immediate litigation and by undertaking further attempts to administratively resolve the dispute. At the time, Plaintiff had no access to documentation establishing the falsity of Columbia's claim and reasonably interpreted the response as indicative of a genuine, enforceable debt. As a result of the Plaintiff relying on the materials provided by Columbia Debt Recovery, Plaintiff has initiated this lawsuit to address such misrepresentations or representations made by Defendant.

**38.** As a direct and proximate result of Defendant's fraudulent misrepresentation, Plaintiff sustained actual and consequential damages. These include reputational harm, emotional distress, financial loss, and the loss of a significant business transaction exceeding $117,000. The misrepresentation of debt ownership and the continued reporting of inaccurate credit information materially impaired Plaintiff's creditworthiness and contributed to Plaintiff's exclusion from an investment opportunity that was both time-sensitive and financially significant. **Exhibit-C. Exhibit-E.**

**39.** Under Texas law, fraud of this nature supports an award of actual damages, consequential

damages, and exemplary damages under Tex. Civ. Prac. & Rem. Code § 41.003(a), as

Defendant's conduct was knowing, intentional, and fraudulent. The record, as pleaded and to

be further supported by documentary evidence and witness testimony, shows a calculated

effort by Defendant to mislead and manipulate Plaintiff in violation of established legal

duties. Accordingly, Plaintiff respectfully requests that this Court enter judgment in favor of

Plaintiff on this count, and award all such legal and equitable relief as is just and proper.

## COUNT VI- FRAUD NON-DISCLOSURE

**40.** Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section

V. Statement of Material Facts. Fraud Non-Disclosure. *Italian Cowboy Partners, Ltd. v.*

*Prudential Ins. Co. of America*, 341 S.W.3d 323, 337 (Tex. 2011), *Aquaplex, Inc. v. Rancho*

*La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (per curiam). ***SPEP Aircraft Holdings,***

***LLC et al. v. Bombardier Aerospace Corporation***, Cause No. DC-12-14739, in the 44th

Judicial District Court of Dallas County, Texas. ***Bombardier Aerospace Corporation v.***

***SPEP Aircraft Holdings, LLC, et al.,*** Cause No. 05-16-00086-CV, Fifth Court of Appeals,

Dallas, Texas.

**41.** Under Texas law, fraud by non-disclosure arises where: (1) the defendant failed to disclose

material facts, (2) the defendant had a duty to disclose, (3) the facts were known to the

defendant, (4) the plaintiff did not know of the facts, (5) the defendant intended to induce the

plaintiff to act or refrain from acting, and (6) the plaintiff relied and suffered damages.

42. When a party voluntarily makes a partial disclosure or communicates in a manner intended to induce reliance, a **duty to disclose the whole truth** arises. See *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001). **Exhibit-A. Exhibit-B.**

43. Here, Defendant Columbia Debt Recovery, LLC, had both a **common law and statutory duty** to disclose whether it owned, was assigned, or had any legal authority to collect on the alleged debt when it received a formal **written dispute and demand for verification** from Plaintiff pursuant to **15 U.S.C. § 1692g(b)** of the **Fair Debt Collection Practices Act (FDCPA)** and **15 U.S.C. § 1681i** and **§ 1681s-2(b)** of the **Fair Credit Reporting Act (FCRA)**.

    a. **15 U.S.C. § 1692g(b)** requires that upon receipt of a consumer's written dispute, a debt collector "shall cease collection until the debt collector obtains verification of the debt or a copy of a judgment or the name and address of the original creditor."

    b. **15 U.S.C. § 1681s-2(b)** mandates that, after notice of a dispute, the furnisher of credit information must "conduct an investigation with respect to the disputed information," "review all relevant information provided by the consumer reporting agency," and "report the results of the investigation to the consumer reporting agency."

    c. **Tex. Fin. Code § 392.202(a)** provides that a consumer may dispute the accuracy of a debt and request correction; subsection (b) imposes a duty on the debt collector to investigate and notify the consumer of results within 30 days.

44. In response to Plaintiff's formal notice dated April 1, 2025, Defendant produced a contract between Plaintiff and a third-party entity, **Kennect Phoenix**, which neither referenced

Columbia Debt Recovery, LLC, nor contained any assignment, bill of sale, or legal transfer of interest. Defendant failed to disclose that it lacked privity of contract and had no valid creditor status — facts which were material and exclusively within Defendant's knowledge.

**45.** Despite the absence of ownership or legal authority to collect, Defendant continued to report the alleged debt to one or more consumer reporting agencies, thereby inducing Plaintiff to refrain from further legal action or additional dispute filings, and causing harm including lost business opportunity exceeding $117,000 and reputational injury. **Exhibit-E. Exhibit-B.**

**46.** This nondisclosure was knowing and intentional. By providing partial documentation without full disclosure of its lack of legal standing or debt ownership, Defendant triggered a duty to disclose the whole truth under Texas law. See *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997). ***SPEP Aircraft Holdings, LLC et al. v. Bombardier Aerospace Corporation***, Cause No. DC-12-14739, in the 44th Judicial District Court of Dallas County, Texas. ***Bombardier Aerospace Corporation v. SPEP Aircraft Holdings, LLC, et al.,*** Cause No. 05-16-00086-CV, Fifth Court of Appeals, Dallas, Texas. **Exhibit-C. Exhibit-B.**

**47.** Plaintiff respectfully requests judgment against Defendant for actual damages, consequential damages, punitive and exemplary damages, pre- and post-judgment interest, and all costs of court. **Exhibit-A. Exhibit-B. Exhibit-C. Exhibit-D. Exhibit-E.**

**48.** WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully avers that the foregoing causes of action—each independently and collectively—establish Defendant's knowing, willful, and unlawful conduct under Texas and federal law, including but not limited to the Texas Debt Collection Act, Texas Deceptive Trade Practices Act, Fair Credit Reporting Act, Fair Debt Collection Practices Act, and Texas common law principles of fraud and non-disclosure.

## IV.   **DAMAGES**

**49.** As a result of Defendants actions and omissions as set forth herein, Plaintiffs sustained the

following damages, for which Plaintiffs seek judgment against Defendants:

    a.   Actual damages in the amount of $117,000.00

    b.   Statutory Damages;

    c.   Exemplary Punitive damages;

    d.   Pre-judgment penalty and post judgment interest; and

    e.   Reasonable expenses and costs of court.

## V.  **EXEMPLARY DAMAGES**

**50.** Additionally, Plaintiff would show that Defendants actions were intentional, fraudulent,

malicious, and in bad faith, justifying the imposition of exemplary damages against

Defendants.

## VI. **CONDITIONS PRECEDENT SATISFIED**

**51.** Plaintiff has fully or substantially performed all acts necessary to perfect and establish all

claims and causes of action asserted in this lawsuit.

**52.** All conditions precedent to Plaintiff's right to recover on any of the claims and causes of

action asserted in this lawsuit have been discharged, satisfied or fully performed.

## VII. **RULE 47 STATEMENT**

**53.** Pursuant to Rule 47(b) of the Texas Rules of Civil Procedure, damages are within he

jurisdictional limits of this Court. Further, Plaintiff is required by Rule 47(c) to state the

dollar amount of damages that represent Plaintiff's harms and losses due to Defendant's

conduct. The legislative history of this requirement indicates that it is for record-keeping

purposes, and statistical purposes only, for lawsuits filed in the State of Texas. Plaintiff's counsel states that Plaintiff seeks monetary relief, of which the maximum harms, losses, and damages of any type are less than $200,000 at this time. The amount of monetary relief actually accessed by the Honorable Judge, however, will ultimately be determined by the fact-finder after hearing all the evidence presented.

## VIII. NON-JURY TRIAL

**54.** The Plaintiff hereby requests a non-jury trial, trial by Honorable Judge pursuant to Rule 216 of Texas Rules of Civil Procedure. Furthermore, Plaintiff respectfully reserves their right to a jury trial in this matter should such be deemed appropriate at a latter stage.

## IX. PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs respectfully pray that Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendants as follows:

a) Upon trial, judgment against Defendants for the full amount of Plaintiffs' actual damages (past, future, special, direct) and Statutory damages as found by the trier of facts;

b) Exemplary Punitive damages as found by the trier of facts;

c) Prejudgment and post-judgment interest at the highest lawful rates in Harris County, Texas.

d) All costs of court;

e) Any and all further relief to which Plaintiff may be entitled at law or in equity.

Respectfully Submitted,

*Andrew Roach*

Andrew Roach, Plaintiff, Pro Se,
2917 Lake Forest Dr, Upper Marlboro, MD 20774
P: 424-420-5550 / drewroach37@gmail.com

Unofficial Copy Office of Marilyn Burgess District Clerk

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a correct, true and full copy of the foregoing has been served on all Parties, in

this Cause, in this action.

Respectfully Submitted,

**Andrew Roach**

Andrew Roach, Plaintiff, Pro Se,

2917 Lake Forest Dr, Upper Marlboro, MD 20774

P: 424-420-5550, andrewroach37@gmail.com

Unofficial Copy Office of Marilyn Burgess District Clerk

**CAUSE NO.** _____

| | | |
|---|---|---|
| **ANDREW ROACH,** | § | **HON. COURT** _____th, |
| *PLAINTIFFS* | § | |
| **V.** | § | **DISTRICT COURT** |
| **COLUMBIA DEBT RECOVERY,** | § | |
| *DEFENDANT* | § | **HARRIS COUNTY, TEXAS.** |

<u>**AFFIDAVIT OF LAST KNOWN ADDRESS OF DEFENDANT(S)**</u>

<u>**AND NON-MILITARY STATUS**</u>

**BEFORE ME,** the undersigned authority, duly authorized to administer oaths and take acknowledgments, personally appeared, Andrew Roach, who after by me first duly sworn, deposes, and says:

1. I, Andrew Roach, am over the age of eighteen (18) years old, and having personal knowledge of the facts set forth herein, and am competent to testify to the following facts and matters:

2. Plaintiff filed this above styled and numbered Cause with the Harris County District Court of Texas which retains appropriate jurisdiction over this Cause of Action(s) contained and asserted in Plaintiff's Original Petition to this Hon. Court.

3. Columbia Debt Recovery LLC (Doing Business As, 'Genesis') is a Limited Liability Corporation under the governing laws of the State of Washington, USA, with a principal address at 906 SE Everett Mall Way, Suite 301, Everett, WA 98208, with a registration expiration date set for January 31, 2026.

4. Columbia Debt Recovery LLC (Doing Business As, 'Genesis' retains a 'Registered Agent Name': CORPORATION SERVICE COMPANY with the following addresses:
   a. **Street Address:** 300 DESCHUTES WAY SW STE 208 MC-CSC1, TUMWATER, WA, 98501, UNITED STATES.
   b. **Mailing Address:** 300 DESCHUTES WAY SW STE 208 MC-CSC1, TUMWATER, WA, 98501, UNITED STATES.

5. Columbia Debt Recovery LLC (Doing Business As 'Genesis'), is not of military status, governmental entity, or individual but rather a limited liability company under the laws of the State of Washington, as affirmed by the State of Washington Secretary of State. This status was expressly acknowledged and affirmed herein by Plaintiff through diligent governmental record search and verifications. Columbia Debt Recovery LLC, UBl Number: **604 074 740.**

**Further Affiant Sayeth Naught.**                    *[Signature Page Follows]*



ANDREW ROACH
Notary Public, State of Texas
Comm. Expires 11-02-2027
Notary ID 134630531

*Andrew Roach*

*Duly Sworn and Subscribed before me on* <u>May 27, 2025.</u>



*Notary*

ALIA AL QAISSY
Notary ID #132724408
My Commission Expires
February 26, 2029

*State of Texas,*

*County of Harris*

*Personally known to me.*



*Respectfully Submitted.*

*Andrew Roach*

Andrew Roach, Plaintiff, Pro Se,

2917 Lake Forest Dr, Upper Marlboro, MD 20774

P: 424-420-5550 / drewroach37@gmail.com

Unofficial Copy Office of Marilyn Burgess District Clerk

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a correct, true and full copy of the foregoing has been personally served on Defendant(s) and or Defendant(s) authorized Counsel, in Cause 202369852, in this action.

*Respectfully Submitted:*

**Andrew Roach**

Andrew Roach, Plaintiff, Pro Se,

2917 Lake Forest Dr, Upper Marlboro, MD 20774

P: 424-420-5550 / drewroach37@gmail.com

# BUSINESS INFORMATION

Business Name:
**COLUMBIA DEBT RECOVERY, LLC**

UBI Number:
**604 074 740**

Business Type:
**WA LIMITED LIABILITY COMPANY**

Business Status:
**ACTIVE**

Principal Office Street Address:
**906 SE EVERETT MALL WAY, SUITE 301, EVERETT, WA, 98208, UNITED STATES**

Principal Office Mailing Address:
**906 SE EVERETT MALL WAY, SUITE 301, EVERETT, WA, 98208, UNITED STATES**

Expiration Date:
**01/31/2026**

Jurisdiction:
**UNITED STATES, WASHINGTON**

Formation/ Registration Date:
**01/10/2017**

Period of Duration:
**PERPETUAL**

Inactive Date:

Nature of Business:
**DEBT COLLECTION AGENCY**

# REGISTERED AGENT INFORMATION

Registered Agent Name:
**CORPORATION SERVICE COMPANY**

Street Address:
**300 DESCHUTES WAY SW STE 208 MC-CSC1, TUMWATER, WA, 98501, UNITED STATES**

Mailing Address:
**300 DESCHUTES WAY SW STE 208 MC-CSC1, TUMWATER, WA, 98501, UNITED STATES**

# GOVERNORS

| Title | Governors Type | Entity Name | First Name | Last Name |
|---|---|---|---|---|
| GOVERNOR | INDIVIDUAL | | WILLIAM P. | WODJAK |

Unofficial Copy - Office of Marilyn Burgess District Clerk

Number: **00083642**

# THURSTON COUNTY SHERIFF RECEIPT

PLNTF

ANDREW ROACH

DFNDT.

COLUMBIA DEBT RECOVERY

ATTORNEY.
ANDREW ROACH
ADDRESS
2900 BRAESWOOD BLVD APT 2411
HOUSTON, TX 77025-

PH NO.:
(424) 420-5550
PROCESS:

PLAINTIFFS ORIGINAL PETITION, AFFFIDAVIT OF LAST KNOWN ADDRESS

CAUSE NO.:
2025-38552
DATE SERVED BY:

PERSONAL SERVICE:
YES
SERVE ON:

**PERSONALLY TO:**
COLUMBIA DEBT RECOVERY LLC C/O CORPORATION SERVICE COMPANY

3000 DESCHUTES WAY SW STE 208 MC-CSC1
TUMWATER, WA 98501

SERVED/NOT FOUND:

| | |
|---|---|
| Notary | |
| Service | 60 — |
| Return | |
| Mileage | |
| Deed/Redemption | |
| Wnt Fees | |
| Wnt Served | |
| Wnt Mileage | |
| Refund | |
| Total | 60 |

DEPUTY

RECEIPT DATE: 6/10/2025

# Thurston County Sheriff's Office
## 2000 Lakeridge Dr. SW
## Olympia, WA  98502
## (360) 786-5500

# RECEIPT

| Receipt Number | Received From | Service | Qty. | Fee Each | Fee Ext. |
|---|---|---|---|---|---|
| 00083642 | Andrew Roach | | | | |
| | | Summons/Complaint/Small Claim (1)- | 1 | $60.00 | $60.00 |
| | | | | Total Fees | $60.00 |
| | | | | Amount Received | $60.00 |
| | | | | Paid By | Money Order |
| | | | | Money Order Reference # | 38194464385 |

Unofficial Copy Office of Marilyn Burgess District Clerk

Tuesday, June 10, 2025 10:49:10 AM          civil          Page 1 of 1

| | | |
|---|---|---|
| **ANDREW ROACH,** | § | **HON. COURT 125th,** |
| *PLAINTIFFS* | § | |
| **V.** | § | **DISTRICT COURT** |
| **COLUMBIA DEBT RECOVERY,** | § | |
| *DEFENDANT* | § | **HARRIS COUNTY, TEXAS.** |

# EXHIBITS A THROUGH E
# SERVED WITH ORIGINAL PETITION
# AND E-FILED UNDER SENSITIVE DATA.
# SEE COURT RECORD FOR REFERENCE.

Respectfully Submitted,

/s/ *Andrew Roach*

Andrew Roach, *Plaintiff, Pro Se,*

2917 Lake Forest Dr, Upper Marlboro, MD 20774

P: 424-420-5550 / drewroach37@gmail.com

Unofficial Copy Office of Marilyn Burgess District Clerk

**CERTIFICATE OF SERVICE**

    **I HEREBY CERTIFY** that a correct, true and full copy of the foregoing has been served on all Parties, in this Cause, in this action.

<div align="right">

Respectfully Submitted,

/s/ *Andrew Roach*

Andrew Roach, *Plaintiff, Pro Se,*

2917 Lake Forest Dr, Upper Marlboro, MD 20774

P: 424-420-5551 andrewroach37@gmail.com

</div>

Unofficial Copy Office of Marilyn Burgess District Clerk

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 102486209
Filing Code Description: No Fee Documents
Filing Description: Citation Return Executed
Status as of 6/26/2025 3:20 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Andrew Roach | | drewroach37@gmail.com | 6/26/2025 3:13:53 PM | SENT |

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DIVISION OF TEXAS

HOUSTON DIVISION

|  |  |
|---|---|
| **ANDREW ROACH,** | ) |
| *PLAINTIFFS* | ) |
|  | ) CIVIL ACTION NO. <u>4:25-CV-03221</u> |
| **V.** | ) |
| **COLUMBIA DEBT RECOVERY,** | ) |
| *DEFENDANT* | ) |

# D

# 2025-38552 / Court: 125

## CAUSE NO. _____

| | | |
|---|---|---|
| **ANDREW ROACH,** | § | **HONORABLE COURT** _____ th, |
| *PLAINTIFFS* | § | |
| **V.** | § | **DISTRICT COURT** |
| **COLUMBIA DEBT RECOVERY,** | § | |
| *DEFENDANT* | § | **HARRIS COUNTY, TEXAS.** |

### PLAINTIFF'S ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW,** Andrew Roach, (hereinafter referred to as "Plaintiff"), files this

Original Petition complaining of Columbia Debt Recovery LLC (Doing Business As, 'Genesis')

(hereinafter referred to as "Defendant"), and for cause of action(s) would respectfully show unto

the Court as follows:

## I.    STATEMENT OF RELIEF SOUGHT

1. Plaintiff seeks monetary relief within the jurisdictional limits of this court.

## II.    DISCOVERY CONTROL PLAN

2. Pursuant to Rule 190.3 and 190.4 of the Texas Rules of Civil Procedure, discovery is

   intended to be conducted under Level 2.

3. Required Initial Disclosures. Pursuant Rule 194 of the Tex. R. Civ. P., Defendant is required

   to disclose within thirty (30) days of after filing general appearance; '.. A party that is first

   served or otherwise joined after general appearance must male the initial disclosures within

   thirty (30) days after being served or joined..' the information described in Rule 194. of the

   Tex. R. Civ. P.

### III.   PARTIES

4.  Plaintiff, Andrew Roach is an individual residing in Harris County, Texas.

5.  Defendant(s), Columbia Debt Recovery LLC (Doing Business As 'Genesis'), is a limited liability company organized under the governing laws of the State of Washington and has it's headquarters at 906 SE Everett Mall Way, Suite 301, Everett, WA 98208, United States. Defendant may be served with process by serving its registered agent Corporation Service Company, located at 300 Deschutes Way SW, Ste 208 Mc-CSC1, Tumwater, WA 98501, and/ or wherever any authorized agent may be found.

6.  In the event any parties are misnamed or are not included herein, it is Plaintiff's contention that such was a "misidentification", "misnomer", and/ or such parties were "alter egos" of parties named herein. Alternatively, Plaintiff contends that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice.

### IV.   JURISDICTION AND VENUE

7.  This Court has personal jurisdiction, both specific and general, over Defendant and Defendant is amenable to service by a Texas Court. Additionally, venue is proper in Harris County Texas because it is the county in which all or substantial part of the events and omissions giving rise to Plaintiff's claims occurred in Harris County, Texas.

### V.   STATEMENT OF MATERIAL FACTS

8.  On or about January 2025, Defendant began reporting an alleged debt account to one or more consumer reporting agencies under Plaintiff's name without providing any evidence of a valid creditor-debtor relationship.

9. On April 1, 2025, Plaintiff served Defendant with a Formal Cease and Desist Letter and Demand for Verification and Validation of Debt pursuant to applicable federal laws including 15 U.S.C. § 1692g(b) and 15 U.S.C. § 1681e(b). Said notice was delivered via certified USPS and registered electronic mail. A copy of the Formal Notice that was served on the Defendant's is attached hereto, **Exhibit-A.**

10. In response, on April 30, 2025, Defendant mailed to Plaintiff a copy of a contract between "Andrew Roach" and a third party, Kennect Phoenix, *not "Columbia Debt Recovery",* and *failed* to provide any evidence that Columbia owned, was assigned, or had any lawful authority to collect on the alleged debt; and or any legal authentication of Plaintiff. A copy o the mailing envelope and the contents of what the Defendants responded to Plaintiff's Exhibit-A with on April 30, 2025, are attached hereto as, **Exhibit-B.**

11. Despite this, Defendant continued reporting the collection account monthly through the date of this Petition and continuing subsequent hereinafter, without correction, verification, or deletion. Plaintiff's redacted credit report as of June 1, 2025, attached hereto as **Exhibit-C.**

12. Defendant failed to provide required documentation **under state and federal law**, thereby exposing Plaintiff to false credit reporting, reputational harm, and denial of financial opportunities; attached hereto as, **Exhibit-D,** Plaintiff's sworn testimony that the Exhibit(c) attached hereto are all a true and correct copy of the documents.

13. Moreover, in direct response to Plaintiff's Formal Cease and Desist and Verification Demand dated April 1, 2025, Defendant, on or about April 30, 2025, mailed to Plaintiff a purported contract executed between Plaintiff, **"Andrew Roach",** and an unrelated third party, **"Kennect Phoenix"**. Critically, this instrument made *no reference* **whatsoever to Defendant, Columbia Debt Recovery, LLC,** *nor* did it reflect any assignment, sale, or

lawful transfer of interest authorizing Defendant to collect or report on the alleged obligation; *nor* did it provide any sworn verification or authentication identifying Plaintiff as legally obligated to **Columbia Debt Recovery.** *(emphasis added).* **Exhibit-C.**

14. Notwithstanding the absence of such foundational documentation, Defendant **continued to report** the subject account as a derogatory collection tradeline to one or more consumer reporting agencies on a **recurring monthly basis from January 2025 through the present**, and upon information and belief, intends to persist in such reporting unless enjoined.

15. Defendant's continued failure to comply with Plaintiff's Formal Cease and Desist Letter—specifically, its refusal to provide the requisite legal documentation establishing ownership, assignment, or lawful authority to collect the alleged debt—constitutes a deliberate and deceptive act. Instead of complying with federal and state verification mandates, Defendant responded by producing documentation identifying an entirely separate legal entity, **Kennect Phoenix**, and subsequently sought to induce Plaintiff into performance under that unrelated agreement. This misrepresentation was sent directly to Plaintiff's legal address in **Harris County, Texas,** thereby invoking the jurisdiction of this Court.

16. As a direct and proximate result of Defendant's unlawful misreporting, and its continued refusal to verify, correct, or delete the disputed tradeline in accordance with federal and state law, **Plaintiff was denied a substantial and time-sensitive business opportunity** on or about **May 1, 2025**. Specifically, Plaintiff sought to engage in the **acquisition, sale, or transfer of a corporate entity**, the value of which exceeded **$117,000.00**, but was ultimately declined by third-party investor(s) or an investment group upon review of Plaintiff's credit profile. Investor(s) and Investment Group(s), Jane Doe and John Doe, (hereinafter referred to as **"Interested Parties"**) redacted sworn testimony is attached hereto as Exhibit-E, testifying that the "Collection(s)" accounted reported to Plaintiff's credit report file by Defendant(s), dissolve any and all acquisition of Ariv Holdings LLC. Interested Parties

swore in **Exhibit-E** to their intentions of executing such acquisition of but not limited to Ariv Holdings LLC in the amount of $117,000.00 USD and accompanied investment portfolio effective July 1, 2025, but such representation made by Defendants deterred such. **Exhibit-E.**

17. Said denial was expressly based on the negative and inaccurate credit data furnished by Defendant to one or more consumer reporting agencies. The collapse of this transaction constitutes a **material, quantifiable, and foreseeable injury** to Plaintiff's financial standing, business credibility, and overall market position, directly traceable to Defendant's statutory violations and tortious conduct. Such investor(s) and investment group(s) intend to provide sworn testimony in this Cause.

18. Plaintiff has thus suffered egregious and ongoing damages arising from Defendant's unlawful conduct, including lost business opportunities, reputational harm, and financial destabilization. **Supporting documentation** substantiating the value and terms of the declined transaction, and the correspondence relating to the denial by the investment party or parties, **will be filed under seal** in accordance with **Texas Rule of Civil Procedure 76a** to preserve confidentiality and proprietary interest. **Exhibit-E. Exhibit-A,B,C, and D.**

# VI. CAUSES OF ACTION

## COUNT I – TEXAS DEBT COLLECTION ACT § 392.001

**19.** Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section

V. Statement of Material Facts. Texas Debt Collection Act (TDCA), Tex. Fin. Code §

392.001 et seq.

**20.** This cause of action arises under the Texas Debt Collection Act (TDCA), codified at Tex.

Fin. Code §§ 392.001 et seq., which prohibits debt collectors from using false, misleading, or

abusive means to collect consumer debts. Plaintiff is a "consumer" under § 392.001(1), and

Defendant is a "debt collector" under § 392.001(6). **Exhibit-A. Exhibit-B.**

**21.** Defendant knowingly violated multiple provisions of the TDCA, including but not limited to:

    a.  § 392.202, by failing to conduct an investigation and correct or delete inaccurate

        tradeline information after receipt of Plaintiff's written dispute on April 1, 2025;

    b.  § 392.304(a)(8), by misrepresenting the ownership, character, amount, and legal

        status of the alleged debt;

    c.  § 392.304(a)(19), by employing false and deceptive practices in attempting to collect

        a debt it did not own, and could not lawfully enforce;

**22.** Defendant did not produce any valid assignment, bill of sale, or other competent legal

documentation evidencing its ownership or authority to collect the alleged debt. Instead, it

submitted a contract involving a third party, Kennect Phoenix, in which Defendant is not

named. This constitutes a per se violation of the Act and demonstrates deceptive conduct.

23. As a proximate result of Defendant's conduct, Plaintiff suffered economic harm, loss of a business transaction exceeding $117,000, reputational damage, and mental anguish. Plaintiff seeks actual damages, statutory damages, injunctive relief, attorneys' fees, and costs of court under Tex. Fin. Code § 392.403(a)(2), § 392.403(b). *(emphasis added).* **Exhibit-A and E.**

24. Plaintiff seeks judgment of this Court for actual damages, consequential damages, punitive damages, exemplary damages, prejudgment interest, and costs of Court.

## COUNT II- TEXAS DECEPTIVE TRADE PRACTICES ACT (DTPA) § 17.41

25. Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section V. Statement of Material Facts. Texas Deceptive Trade Practices Act (DTPA) § 17.41 et seq.

26. Plaintiff is a "consumer" under the Texas DTPA, having sought services related to credit and debt collection for personal purposes. Defendant's actions, as set forth in Section V, constitute false, misleading, and deceptive acts under Tex. Bus. & Com. Code § 17.46(b), including: (1) Misrepresenting the existence of a valid debt; (2) Falsely claiming to possess the legal authority to collect the debt; (3) Reporting inaccurate credit information despite statutory disputes. **Exhibit-A. Exhibit-B.**

27. Defendant's conduct violates the DTPA through incorporation of the TDCA under Tex. Fin. Code § 392.404. Plaintiff seeks actual damages, treble damages upon proof of knowing violations, and attorneys' fees. **Exhibit-A. Exhibit-B.**

## COUNT III- FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681 es seq

**28.** Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section

V. Statement of Material Facts. Fair Credit Reporting Act 15 U.S.C. § 1681 et seq.

**29.** Defendant violated the FCRA by: (1) Furnishing inaccurate information after being notified

of a dispute, in violation of 15 U.S.C. § 1681s-2(b); (2) Failing to conduct a reasonable

investigation or to delete inaccurate tradelines after Plaintiff's formal notice on April 1, 2025,

in violation of § 1681i; (3) Reporting false data without verifying legal ownership of the

debt, in violation of § 1681e(b). **Exhibit-A. Exhibit-B.**

**30.** As a result, Plaintiff sustained actual damages, including denial of a $117,000 business

transaction. Plaintiff seeks actual damages, statutory damages, punitive damages (for willful

violations), and attorney's fees under 15 U.S.C. §§ 1681n and 1681o. **Exhibit-E.**

## COUNT IV- FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. § 1692 et seq.

**31.** Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section

V. Statement of Material Facts. FDCPA 15 U.S.C. § 1692 et seq.

**32.** Defendant is a "debt collector" under 15 U.S.C. § 1692a(6), and its conduct violated the

FDCPA as follows: (1) Using false representations to collect a debt under § 1692e(2)(A); (2)

Collection collection efforts without validation of the debt after Plaintiff's written dispute, in

violation of § 1692g(b); (3) Attempting to collect a debt it did not own and could not

substantiate, violating § 1692f. **Exhibit-A. Exhibit-B.**

**33.** Plaintiff is entitled to actual damages, statutory damages up to $1,000, and attorney's fees

and costs under 15 U.S.C. § 1692k.

## COUNT V- FRAUD MISREPRESENTATION

**34.** Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section
III. Statement of Material Facts. Fraud Misrepresentation. *Italian Cowboy Partners, Ltd. v.
Prudential Ins. Co. of America*, 341 S.W.3d 323, 337 (Tex. 2011), *Aquaplex, Inc. v. Rancho
La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (per curiam). ***SPEP Aircraft Holdings,
LLC et al. v. Bombardier Aerospace Corporation***, Cause No. DC-12-14739, in the 44th
Judicial District Court of Dallas County, Texas. ***Bombardier Aerospace Corporation v.
SPEP Aircraft Holdings, LLC, et al.,*** Cause No. 05-16-00086-CV, Fifth Court of Appeals,
Dallas, Texas. To establish fraud under Texas law, Plaintiff must show: (1) a material
misrepresentation, (2) made with knowledge of its falsity or recklessness, (3) with intent to
induce reliance, (4) actual and justifiable reliance by Plaintiff, and (5) injury resulting from
that reliance. **Exhibit-A. Exhibit-B.**

**35.** Defendant Columbia Debt Recovery, LLC made an affirmative material misrepresentation by
transmitting to Plaintiff a written communication, purporting to verify the existence and
validity of a debt allegedly owed by Plaintiff. In this communication, Defendant produced an
instrument—namely, a purported contract between Plaintiff and a third party, Kennect
Phoenix—representing it as proof of indebtedness to Columbia. However, Columbia was not
a party to that contract, nor did the document contain any reference to Columbia, nor any
assignment or bill of sale evidencing legal authority to enforce or collect on the alleged
obligation. This submission was intended to induce Plaintiff to believe that Columbia was a
valid and lawful creditor. **Exhibit-D.**

**36.** At the time this representation was made, Defendant knew or should have known that the information it was providing was false, incomplete, and misleading. Defendant either possessed no legal documentation to support its claim of ownership of the alleged debt or knowingly omitted the material fact that no such transfer or assignment ever occurred. By presenting a third-party contract as though it substantiated its own collection rights, Defendant acted with at minimum a reckless disregard for the truth, if not with actual knowledge of the falsity of its claim. **Exhibit-A. Exhibit-B. Exhibit-D.**

**37.** Defendant intended for Plaintiff to rely on this false representation to deter or delay legal action and to continue collection efforts under the false pretense of creditor status. Plaintiff justifiably relied on this misrepresentation by deferring immediate litigation and by undertaking further attempts to administratively resolve the dispute. At the time, Plaintiff had no access to documentation establishing the falsity of Columbia's claim and reasonably interpreted the response as indicative of a genuine, enforceable debt. As a result of the Plaintiff relying on the materials provided by Columbia Debt Recovery, Plaintiff has initiated this lawsuit to address such misrepresentations or representations made by Defendant.

**38.** As a direct and proximate result of Defendant's fraudulent misrepresentation, Plaintiff sustained actual and consequential damages. These include reputational harm, emotional distress, financial loss, and the loss of a significant business transaction exceeding $117,000. The misrepresentation of debt ownership and the continued reporting of inaccurate credit information materially impaired Plaintiff's creditworthiness and contributed to Plaintiff's exclusion from an investment opportunity that was both time-sensitive and financially significant. **Exhibit-C. Exhibit-E.**

**39.** Under Texas law, fraud of this nature supports an award of actual damages, consequential damages, and exemplary damages under Tex. Civ. Prac. & Rem. Code § 41.003(a), as Defendant's conduct was knowing, intentional, and fraudulent. The record, as pleaded and to be further supported by documentary evidence and witness testimony, shows a calculated effort by Defendant to mislead and manipulate Plaintiff in violation of established legal duties. Accordingly, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff on this count, and award all such legal and equitable relief as is just and proper.

## COUNT VI- FRAUD NON-DISCLOSURE

**40.** Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section V. Statement of Material Facts. Fraud Non-Disclosure. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of America*, 341 S.W.3d 323, 337 (Tex. 2011), *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (per curiam). ***SPEP Aircraft Holdings, LLC et al. v. Bombardier Aerospace Corporation***, Cause No. DC-12-14739, in the 44th Judicial District Court of Dallas County, Texas. ***Bombardier Aerospace Corporation v. SPEP Aircraft Holdings, LLC, et al.***, Cause No. 05-16-00086-CV, Fifth Court of Appeals, Dallas, Texas.

**41.** Under Texas law, fraud by non-disclosure arises where: (1) the defendant failed to disclose material facts, (2) the defendant had a duty to disclose, (3) the facts were known to the defendant, (4) the plaintiff did not know of the facts, (5) the defendant intended to induce the plaintiff to act or refrain from acting, and (6) the plaintiff relied and suffered damages.

**42.** When a party voluntarily makes a partial disclosure or communicates in a manner intended to induce reliance, a **duty to disclose the whole truth** arises. See *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001). **Exhibit-A. Exhibit-B.**

**43.** Here, Defendant Columbia Debt Recovery, LLC, had both a **common law and statutory duty** to disclose whether it owned, was assigned, or had any legal authority to collect on the alleged debt when it received a formal **written dispute and demand for verification** from Plaintiff pursuant to **15 U.S.C. § 1692g(b)** of the **Fair Debt Collection Practices Act (FDCPA)** and **15 U.S.C. § 1681i** and **§ 1681s-2(b)** of the **Fair Credit Reporting Act (FCRA)**.

   a. **15 U.S.C. § 1692g(b)** requires that upon receipt of a consumer's written dispute, a debt collector "shall cease collection... until the debt collector obtains verification of the debt or a copy of a judgment or the name and address of the original creditor."

   b. **15 U.S.C. § 1681s-2(b)** mandates that, after notice of a dispute, the furnisher of credit information must "conduct an investigation with respect to the disputed information," "review all relevant information provided by the consumer reporting agency," and "report the results of the investigation to the consumer reporting agency."

   c. **Tex. Fin. Code § 392.202(a)** provides that a consumer may dispute the accuracy of a debt and request correction; subsection (b) imposes a duty on the debt collector to investigate and notify the consumer of results within 30 days.

**44.** In response to Plaintiff's formal notice dated April 1, 2025, Defendant produced a contract between Plaintiff and a third-party entity, **Kennect Phoenix**, which neither referenced

Columbia Debt Recovery, LLC, nor contained any assignment, bill of sale, or legal transfer

of interest. Defendant failed to disclose that it lacked privity of contract and had no valid

creditor status — facts which were material and exclusively within Defendant's knowledge.

**45.** Despite the absence of ownership or legal authority to collect, Defendant continued to report

the alleged debt to one or more consumer reporting agencies, thereby inducing Plaintiff to

refrain from further legal action or additional dispute filings, and causing harm including lost

business opportunity exceeding $117,000 and reputational injury. **Exhibit-E. Exhibit-B.**

**46.** This nondisclosure was knowing and intentional. By providing partial documentation without

full disclosure of its lack of legal standing or debt ownership, Defendant triggered a duty to

disclose the whole truth under Texas law. See *Schlumberger Tech. Corp. v. Swanson*, 959

S.W.2d 171, 181 (Tex. 1997). ***SPEP Aircraft Holdings, LLC et al. v. Bombardier Aerospace***

***Corporation***, Cause No. DC-12-14739, in the 44th Judicial District Court of Dallas County,

Texas. ***Bombardier Aerospace Corporation v. SPEP Aircraft Holdings, LLC, et al.,*** Cause

No. 05-16-00086-CV, Fifth Court of Appeals, Dallas, Texas. **Exhibit-C. Exhibit-B.**

**47.** Plaintiff respectfully requests judgment against Defendant for actual damages, consequential

damages, punitive and exemplary damages, pre- and post-judgment interest, and all costs of

court. **Exhibit-A. Exhibit-B. Exhibit-C. Exhibit-D. Exhibit-E.**

**48.** WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully avers that the foregoing

causes of action—each independently and collectively—establish Defendant's knowing,

willful, and unlawful conduct under Texas and federal law, including but not limited to the

Texas Debt Collection Act, Texas Deceptive Trade Practices Act, Fair Credit Reporting Act,

Fair Debt Collection Practices Act, and Texas common law principles of fraud and

non-disclosure.

## IV.    DAMAGES

**49.** As a result of Defendants actions and omissions as set forth herein, Plaintiffs sustained the

following damages, for which Plaintiffs seek judgment against Defendants:

    a.   Actual damages in the amount of $117,000.00

    b.   Statutory Damages;

    c.   Exemplary Punitive damages;

    d.   Pre-judgment penalty and post judgment interest; and

    e.   Reasonable expenses and costs of court.

## V. EXEMPLARY DAMAGES

**50.** Additionally, Plaintiff would show that Defendants actions were intentional, fraudulent,

malicious, and in bad faith, justifying the imposition of exemplary damages against

Defendants.

## VI. CONDITIONS PRECEDENT SATISFIED

**51.** Plaintiff has fully or substantially performed all acts necessary to perfect and establish all

claims and causes of action asserted in this lawsuit.

**52.** All conditions precedent to Plaintiff's right to recover on any of the claims and causes of

action asserted in this lawsuit have been discharged, satisfied or fully performed.

## VII. RULE 47 STATEMENT

**53.** Pursuant to Rule 47(b) of the Texas Rules of Civil Procedure, damages are within he

jurisdictional limits of this Court. Further, Plaintiff is required by Rule 47(c) to state the

dollar amount of damages that represent Plaintiff's harms and losses due to Defendant's

conduct. The legislative history of this requirement indicates that it is for record-keeping

purposes, and statistical purposes only, for lawsuits filed in the State of Texas. Plaintiff's counsel states that Plaintiff seeks monetary relief, of which the maximum harms, losses, and damages of any type are less than $200,000 at this time. The amount of monetary relief actually accessed by the Honorable Judge, however, will ultimately be determined by the fact-finder after hearing all the evidence presented.

## VIII. NON-JURY TRIAL

**54.** The Plaintiff hereby requests a non-jury trial, trial by Honorable Judge pursuant to Rule 216 of Texas Rules of Civil Procedure. Furthermore, Plaintiff respectfully reserves their right to a jury trial in this matter should such be deemed appropriate at a latter stage.

## IX. PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs respectfully pray that Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendants as follows:

a) Upon trial, judgment against Defendants for the full amount of Plaintiffs' actual damages (past, future, special, direct) and Statutory damages as found by the trier of facts;

b) Exemplary Punitive damages as found by the trier of facts;

c) Prejudgment and post-judgment interest at the highest lawful rates in Harris County, Texas.

d) All costs of court;

e) Any and all further relief to which Plaintiff may be entitled at law or in equity.

Respectfully Submitted,

/s/ **Andrew Roach**

Andrew Roach, Plaintiff, Pro Se,

2917 Lake Forest Dr, Upper Marlboro, MD 20774

P: 424-420-5550 / drewroach17@gmail.com

Unofficial Copy Office of Marilyn Burgess District Clerk

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a correct, true and full copy of the foregoing has been served on all Parties, in

this Cause, in this action.

Respectfully Submitted,

/s/ ***Andrew Roach***

Andrew Roach, Plaintiff, Pro Se,

2917 Lake Forest Dr, Upper Marlboro, MD 20774

P: 424-420-5550 roachxroach32@gmail.com

Unofficial Copy Office of Marilyn Burgess District Clerk

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 101485070
Filing Code Description: Petition
Filing Description: Plaintiff's Original Petition
Status as of 6/2/2025 10:08 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Andrew Roach | | drewroach37@gmail.com | 6/2/2025 10:03:35 AM | NOT SENT |

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DIVISION OF TEXAS

HOUSTON DIVISION

|  |  |
|---|---|
| ANDREW ROACH, | ) |
| *PLAINTIFFS* | ) |
|  | ) CIVIL ACTION NO. <u>4:25-CV-03221</u> |
| V. | ) |
| COLUMBIA DEBT RECOVERY, | ) |
| *DEFENDANT* | ) |



**E**

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DIVISION OF TEXAS
### HOUSTON DIVISION

|                                  |   |                                  |
|----------------------------------|---|----------------------------------|
| **ANDREW ROACH,**                | ) |                                  |
| *PLAINTIFFS*                     | ) |                                  |
|                                  | ) | **) CIVIL ACTION NO. 4:25-CV-03221** |
| **V.**                           | ) |                                  |
| **COLUMBIA DEBT RECOVERY,**      | ) |                                  |
| *DEFENDANT*                      | ) |                                  |

## PLAINTIFF'S AMENDED ORIGINAL PETITION

### TO THE HONORABLE JUDGE OF SAID COURT:

**COMES NOW,** Andrew Roach, (hereinafter referred to as "Plaintiff"), files this

Amended Original Petition complaining of Columbia Debt Recovery LLC (Doing Business As,

'Genesis') (hereinafter referred to as "Defendant"). Defendant Columbia Debt Recovery LLC is

in DEFAULT under Tex. R. Civ. P. and NO Answer or pleading has been filed at the time of this

filing; and for cause of action(s) would respectfully show unto the Court as follows:

### I.    STATEMENT OF RELIEF SOUGHT

1. Plaintiff seeks monetary relief within the jurisdictional limits of this court.

### II.    DISCOVERY CONTROL PLAN

2. Pursuant to Rule 190.3 and 190.4 of the Texas Rules of Civil Procedure, discovery is
   intended to be conducted under Level 2.

3. Required Initial Disclosures. Pursuant Rule 194 of the Tex. R. Civ. P., Defendant is required
   to disclose within thirty (30) days of after filing general appearance; '.. A party that is first

served or otherwise joined after general appearance must male the initial disclosures within thirty (30) days after being served or joined..' the information described in Rule 194. of the Tex. R. Civ. P.

## III.    PARTIES

4.  Plaintiff, Andrew Roach is an individual residing in Harris County, Texas.

5.  Defendant(s), Columbia Debt Recovery LLC (Doing Business As 'Genesis'), is a limited liability company organized under the governing laws of the State of Washington and has it's headquarters at 906 SE Everett Mall Way, Suite 301, Everett, WA 98208, United States. Defendant may be served with process by serving its registered agent, Corporation Service Company, located at 300 Deschutes Way SW, Ste 208 Mc-CSC1, Tumwater, WA 98501, and/ or wherever any authorized agent may be found.

6.  In the event any parties are misnamed or are not included herein, it is Plaintiff's contention that such was a "misidentification", "misnomer", and/ or such parties were "alter egos" of parties named herein. Alternatively, Plaintiff contends that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice.

## IV.    JURISDICTION AND VENUE

7.  This Court has personal jurisdiction, both specific and general, over Defendant and Defendant is amenable to service by a Texas Court. Additionally, venue is proper in Harris County Texas because it is the county in which all or substantial part of the events and omissions giving rise to Plaintiff's claims occurred in Harris County, Texas.

## V.    STATEMENT OF MATERIAL FACTS

8. On or about January 2025, Defendant began reporting an alleged debt account to one or more consumer reporting agencies under Plaintiff's name without providing any evidence of a valid creditor-debtor relationship.

9. On April 1, 2025, Plaintiff served Defendant with a Formal Cease and Desist Letter and Demand for Verification and Validation of Debt pursuant to applicable federal laws including 15 U.S.C. § 1692g(b) and 15 U.S.C. § 1681e(b). Said notice was delivered via certified USPS and registered electronic mail. A copy of the Formal Notice that was served on the Defendant's is attached hereto, **Exhibit-A.**

10. In response, on April 30, 2025, Defendant mailed to Plaintiff a copy of a contract between "Andrew Roach" and a third party, Kennect Phoenix, ***not "Columbia Debt Recovery",*** and ***failed*** to provide any evidence that Columbia owned, was assigned, or had any lawful authority to collect on the alleged debt; and or any legal authentication of Plaintiff. A copy o the mailing envelope and the contents of what the Defendants responded to Plaintiff's Exhibit-A with on April 30, 2025, are attached hereto as, **Exhibit-B.**

11. Despite this, Defendant continued reporting the collection account monthly through the date of this Petition and continuing subsequent hereinafter, without correction, verification, or deletion. Plaintiff's redacted credit report as of June 1, 2025, attached hereto as **Exhibit-C.**

12. Defendant failed to provide required documentation **under state and federal law**, thereby exposing Plaintiff to false credit reporting, reputational harm, and denial of financial opportunities; attached hereto as, **Exhibit-D,** Plaintiff's sworn testimony that the Exhibit(c) attached hereto are all a true and correct copy of the documents.

**13.** Moreover, in direct response to Plaintiff's Formal Cease and Desist and Verification Demand dated April 1, 2025, Defendant, on or about April 30, 2025, mailed to Plaintiff a purported contract executed between Plaintiff, **"Andrew Roach",** and an unrelated third party, **"Kennect Phoenix"**. Critically, this instrument made *no reference* **whatsoever to Defendant, Columbia Debt Recovery, LLC,** *nor* did it reflect any assignment, sale, or lawful transfer of interest authorizing Defendant to collect or report on the alleged obligation; *nor* did it provide any sworn verification or authentication identifying Plaintiff as legally obligated to **Columbia Debt Recovery.** *(emphasis added).* **Exhibit-C.**

**14.** Notwithstanding the absence of such foundational documentation, Defendant **continued to report** the subject account as a derogatory collection tradeline to one or more consumer reporting agencies on a **recurring monthly basis** from **January 2025 through the present,** and upon information and belief, intends to persist in such reporting unless enjoined.

**15.** Defendant's continued failure to comply with Plaintiff's Formal Cease and Desist Letter—specifically, its refusal to provide the requisite legal documentation establishing ownership, assignment, or lawful authority to collect the alleged debt—constitutes a deliberate and deceptive act. Instead of complying with federal and state verification mandates, Defendant responded by producing documentation identifying an entirely separate legal entity, **Kennect Phoenix,** and subsequently sought to induce Plaintiff into performance under that unrelated agreement. This misrepresentation was sent directly to Plaintiff's legal address in **Harris County, Texas,** thereby invoking the jurisdiction of this Court.

**16.** As a direct and proximate result of Defendant's unlawful misreporting, and its continued refusal to verify, correct, or delete the disputed tradeline in accordance with federal and state law, **Plaintiff was denied a substantial and time-sensitive business opportunity** on or about **May 1, 2025.** Specifically, Plaintiff sought to engage in the **acquisition, sale, or transfer of a corporate entity,** the

value of which exceeded **$117,000.00**, but was ultimately declined by third-party investor(s) or an investment group upon review of Plaintiff's credit profile. Investor(s) and Investment Group(s), Jane Doe and John Doe, (hereinafter referred to as **"Interested Parties"**) redacted sworn testimony is attached hereto as Exhibit-E, testifying that the "Collection(s)" accounted reported to Plaintiff's credit report file by Defendant(s), dissolve any and all acquisition of Ariv Holdings LLC. Interested Parties swore in **Exhibit-E** to their intentions of executing such acquisition of but not limited to Ariv Holdings LLC in the amount of $117,000.00 USD and accompanied investment portfolio effective July 1, 2025, but such representation made by Defendants deterred such. **Exhibit-E.**

**17.** Said denial was expressly based on the negative and inaccurate credit data furnished by Defendant to one or more consumer reporting agencies. The collapse of this transaction constitutes a **material, quantifiable, and foreseeable injury** to Plaintiff's financial standing, business credibility, and overall market position, directly traceable to Defendant's statutory violations and tortious conduct. Such investor(s) and investment group(s) intend to provide sworn testimony in this Cause.

**18.** Plaintiff has thus suffered egregious and ongoing damages arising from Defendant's unlawful conduct, including lost business opportunities, reputational harm, and financial destabilization. **Supporting documentation** substantiating the value and terms of the declined transaction, and the correspondence relating to the denial by the investment party or parties, **will be filed under seal** in accordance with **Texas Rule of Civil Procedure 76a** to preserve confidentiality and proprietary interest. **Exhibit-E. Exhibit-A,B,C, and D.**

## VI. CAUSES OF ACTION

## COUNT I – TEXAS DEBT COLLECTION ACT § 392.001

**19.** Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section V. Statement of Material Facts. Texas Debt Collection Act (TDCA), Tex. Fin. Code § 392.001 et seq.

**20.** This cause of action arises under the Texas Debt Collection Act (TDCA), codified at Tex. Fin. Code §§ 392.001 et seq., which prohibits debt collectors from using false, misleading, or abusive means to collect consumer debts. Plaintiff is a "consumer" under § 392.001(1), and Defendant is a "debt collector" under § 392.001(6). **Exhibit-A. Exhibit-B.**

**21.** Defendant knowingly violated multiple provisions of the TDCA, including but not limited to:

    a.  § 392.202, by failing to conduct an investigation and correct or delete inaccurate tradeline information after receipt of Plaintiff's written dispute on April 1, 2025;

    b.  § 392.304(a)(8), by misrepresenting the ownership, character, amount, and legal status of the alleged debt;

    c.  § 392.304(a)(19), by employing false and deceptive practices in attempting to collect a debt it did not own, and could not lawfully enforce;

**22.** Defendant did not produce any valid assignment, bill of sale, or other competent legal documentation evidencing its ownership or authority to collect the alleged debt. Instead, it submitted a contract involving a third party, Kennect Phoenix, in which Defendant is not named. This constitutes a per se violation of the Act and demonstrates deceptive conduct.

**23.** As a proximate result of Defendant's conduct, Plaintiff suffered economic harm, loss of a business transaction exceeding \$117,000, reputational damage, and mental anguish. Plaintiff seeks actual damages, statutory damages, injunctive relief, attorneys' fees, and costs of court under Tex. Fin. Code § 392.403(a)(2), § 392.403(b). *(emphasis added).* **Exhibit-A and E.**

**24.** Plaintiff seeks judgment of this Court for actual damages, consequential damages, punitive damages, exemplary damages, prejudgment interest, and costs of Court.

## COUNT II- TEXAS DECEPTIVE TRADE PRACTICES ACT (DTPA) § 17.41

**25.** Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section V. Statement of Material Facts. Texas Deceptive Trade Practices Act (DTPA) § 17.41 et seq.

**26.** Plaintiff is a "consumer" under the Texas DTPA, having sought services related to credit and debt collection for personal purposes. Defendant's actions, as set forth in Section V, constitute false, misleading, and deceptive acts under Tex. Bus. & Com. Code § 17.46(b), including: (1) Misrepresenting the existence of a valid debt; (2) Falsely claiming to possess the legal authority to collect the debt; (3) Reporting inaccurate credit information despite statutory disputes. **Exhibit-A. Exhibit-B.**

**27.** Defendant's conduct violates the DTPA through incorporation of the TDCA under Tex. Fin. Code § 392.404. Plaintiff seeks actual damages, treble damages upon proof of knowing violations, and attorneys' fees. **Exhibit-A. Exhibit-B.**

## COUNT III- FRAUD MISREPRESENTATION

**28.** Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section

III. Statement of Material Facts. Fraud Misrepresentation. *Italian Cowboy Partners, Ltd. v.*

*Prudential Ins. Co. of America*, 341 S.W.3d 323, 337 (Tex. 2011), *Aquaplex, Inc. v. Rancho*

*La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (per curiam). ***SPEP Aircraft Holdings,***

***LLC et al. v. Bombardier Aerospace Corporation***, Cause No. DC-12-14739, in the 44th

Judicial District Court of Dallas County, Texas. ***Bombardier Aerospace Corporation v.***

***SPEP Aircraft Holdings, LLC, et al.,*** Cause No. 05-16-00086-CV, Fifth Court of Appeals,

Dallas, Texas. To establish fraud under Texas law, Plaintiff must show: (1) a material

misrepresentation, (2) made with knowledge of its falsity or recklessness, (3) with intent to

induce reliance, (4) actual and justifiable reliance by Plaintiff, and (5) injury resulting from

that reliance. **Exhibit-A. Exhibit-B.**

**29.** Defendant Columbia Debt Recovery, LLC made an affirmative material misrepresentation by

transmitting to Plaintiff a written communication, purporting to verify the existence and

validity of a debt allegedly owed by Plaintiff. In this communication, Defendant produced an

instrument—namely, a purported contract between Plaintiff and a third party, Kennect

Phoenix—representing it as proof of indebtedness to Columbia. However, Columbia was not

a party to that contract, nor did the document contain any reference to Columbia, nor any

assignment or bill of sale evidencing legal authority to enforce or collect on the alleged

obligation. This submission was intended to induce Plaintiff to believe that Columbia was a

valid and lawful creditor. **Exhibit-D.**

**30.** At the time this representation was made, Defendant knew or should have known that the information it was providing was false, incomplete, and misleading. Defendant either possessed no legal documentation to support its claim of ownership of the alleged debt or knowingly omitted the material fact that no such transfer or assignment ever occurred. By presenting a third-party contract as though it substantiated its own collection rights, Defendant acted with at minimum a reckless disregard for the truth, if not with actual knowledge of the falsity of its claim. **Exhibit-A. Exhibit-B. Exhibit-D.**

**31.** Defendant intended for Plaintiff to rely on this false representation to deter or delay legal action and to continue collection efforts under the false pretense of creditor status. Plaintiff justifiably relied on this misrepresentation by deferring immediate litigation and by undertaking further attempts to administratively resolve the dispute. At the time, Plaintiff had no access to documentation establishing the falsity of Columbia's claim and reasonably interpreted the response as indicative of a genuine, enforceable debt. As a result of the Plaintiff relying on the materials provided by Columbia Debt Recovery, Plaintiff has initiated this lawsuit to address such misrepresentations or representations made by Defendant.

**32.** As a direct and proximate result of Defendant's fraudulent misrepresentation, Plaintiff sustained actual and consequential damages. These include reputational harm, emotional distress, financial loss, and the loss of a significant business transaction exceeding $117,000. The misrepresentation of debt ownership and the continued reporting of inaccurate credit information materially impaired Plaintiff's creditworthiness and contributed to Plaintiff's exclusion from an investment opportunity that was both time-sensitive and financially significant. **Exhibit-C. Exhibit-E.**

**33.** Under Texas law, fraud of this nature supports an award of actual damages, consequential damages, and exemplary damages under Tex. Civ. Prac. & Rem. Code § 41.003(a), as Defendant's conduct was knowing, intentional, and fraudulent. The record, as pleaded and to be further supported by documentary evidence and witness testimony, shows a calculated effort by Defendant to mislead and manipulate Plaintiff in violation of established legal duties. Accordingly, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff on this count, and award all such legal and equitable relief as is just and proper.

## COUNT IV- FRAUD NON-DISCLOSURE

**34.** Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section V. Statement of Material Facts. Fraud Non-Disclosure. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of America*, 341 S.W.3d 323, 337 (Tex. 2011), *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (per curiam). ***SPEP Aircraft Holdings, LLC et al. v. Bombardier Aerospace Corporation***, Cause No. DC-12-14739, in the 44th Judicial District Court of Dallas County, Texas. ***Bombardier Aerospace Corporation v. SPEP Aircraft Holdings, LLC, et al.,*** Cause No. 05-16-00086-CV, Fifth Court of Appeals, Dallas, Texas.

**35.** Under Texas law, fraud by non-disclosure arises where: (1) the defendant failed to disclose material facts, (2) the defendant had a duty to disclose, (3) the facts were known to the defendant, (4) the plaintiff did not know of the facts, (5) the defendant intended to induce the plaintiff to act or refrain from acting, and (6) the plaintiff relied and suffered damages.

**36.** When a party voluntarily makes a partial disclosure or communicates in a manner intended to induce reliance, a **duty to disclose the whole truth** arises. See *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001). **Exhibit-A. Exhibit-B.**

**37.** Here, Defendant Columbia Debt Recovery, LLC, had both a **common law and statutory duty** to disclose whether it owned, was assigned, or had any legal authority to collect on the alleged debt when it received a formal **written dispute and demand for verification** from Plaintiff pursuant to **15 U.S.C. § 1692g(b)** of the **Fair Debt Collection Practices Act (FDCPA)** and **15 U.S.C. § 1681i** and **§ 1681s-2(b)** of the **Fair Credit Reporting Act (FCRA)**.

    a. **15 U.S.C. § 1692g(b)** requires that upon receipt of a consumer's written dispute, a debt collector "shall cease collection… until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor."

    b. **15 U.S.C. § 1681s-2(b)** mandates that, after notice of a dispute, the furnisher of credit information must "conduct an investigation with respect to the disputed information," "review all relevant information provided by the consumer reporting agency," and "report the results of the investigation to the consumer reporting agency."

    c. **Tex. Fin. Code § 392.202(a)** provides that a consumer may dispute the accuracy of a debt and request correction; subsection (b) imposes a duty on the debt collector to investigate and notify the consumer of results within 30 days.

**38.** In response to Plaintiff's formal notice dated April 1, 2025, Defendant produced a contract between Plaintiff and a third-party entity, **Kennect Phoenix**, which neither referenced

Columbia Debt Recovery, LLC, nor contained any assignment, bill of sale, or legal transfer of interest. Defendant failed to disclose that it lacked privity of contract and had no valid creditor status — facts which were material and exclusively within Defendant's knowledge.

**39.** Despite the absence of ownership or legal authority to collect, Defendant continued to report the alleged debt to one or more consumer reporting agencies, thereby inducing Plaintiff to refrain from further legal action or additional dispute filings, and causing harm including lost business opportunity exceeding $117,000 and reputational injury. **Exhibit-E. Exhibit-B.**

**40.** This nondisclosure was knowing and intentional. By providing partial documentation without full disclosure of its lack of legal standing or debt ownership, Defendant triggered a duty to disclose the whole truth under Texas law. See *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997). ***SPEP Aircraft Holdings, LLC et al. v. Bombardier Aerospace Corporation***, Cause No. DC-12-14739, in the 44th Judicial District Court of Dallas County, Texas. ***Bombardier Aerospace Corporation v. SPEP Aircraft Holdings, LLC, et al.,*** Cause No. 05-16-00086-CV, Fifth Court of Appeals, Dallas, Texas. **Exhibit-C. Exhibit-B.**

**41.** Plaintiff respectfully requests judgment against Defendant for actual damages, consequential damages, punitive and exemplary damages, pre- and post-judgment interest, and all costs of court. **Exhibit-A. Exhibit-B. Exhibit-C. Exhibit-D. Exhibit-E.**

**42.** WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully avers that the foregoing causes of action—each independently and collectively—establish Defendant's knowing, willful, and unlawful conduct under Texas and federal law, including but not limited to the Texas Debt Collection Act, Texas Deceptive Trade Practices Act, Fair Credit Reporting Act, Fair Debt Collection Practices Act, and Texas common law principles of fraud and non-disclosure.

## IV.  DAMAGES

**43.** As a result of Defendants actions and omissions as set forth herein, Plaintiffs sustained the

following damages, for which Plaintiffs seek judgment against Defendants:

    a.  Actual damages in the amount of $117,000.00

    b.  Statutory Damages;

    c.  Exemplary Punitive damages;

    d.  Pre-judgment penalty and post judgment interest; and

    e.  Reasonable expenses and costs of court.

## V. **EXEMPLARY DAMAGES**

**44.** Additionally, Plaintiff would show that Defendants actions were intentional, fraudulent,

malicious, and in bad faith, justifying the imposition of exemplary damages against

Defendants.

## VI. **CONDITIONS PRECEDENT SATISFIED**

**45.** Plaintiff has fully or substantially performed all acts necessary to perfect and establish all

claims and causes of action asserted in this lawsuit.

**46.** All conditions precedent to Plaintiff's right to recover on any of the claims and causes of

action asserted in this lawsuit have been discharged, satisfied or fully performed.

## VII. **RULE 47 STATEMENT**

**47.** Pursuant to Rule 47(b) of the Texas Rules of Civil Procedure, damages are within he

jurisdictional limits of this Court. Further, Plaintiff is required by Rule 47(c) to state the

dollar amount of damages that represent Plaintiff's harms and losses due to Defendant's

conduct. The legislative history of this requirement indicates that it is for record-keeping

purposes, and statistical purposes only, for lawsuits filed in the State of Texas. Plaintiff's counsel states that Plaintiff seeks monetary relief, of which the maximum harms, losses, and damages of any type are less than $200,000 at this time. The amount of monetary relief actually accessed by the Honorable Judge, however, will ultimately be determined by the fact-finder after hearing all the evidence presented.

## VIII. NON-JURY TRIAL

**48.** The Plaintiff hereby requests a non-jury trial, trial by Honorable Judge pursuant to Rule 216 of Texas Rules of Civil Procedure. Furthermore, Plaintiff respectfully reserves their right to a jury trial in this matter should such be deemed appropriate at a latter stage.

## IX. PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs respectfully pray that Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendants as follows:

a) Upon trial, judgment against Defendants for the full amount of Plaintiffs' actual damages (past, future, special, direct) and Statutory damages as found by the trier of facts;

b) Exemplary Punitive damages as found by the trier of facts;

c) Prejudgment and post-judgment interest at the highest lawful rates in Harris County, Texas.

d) All costs of court;

e) Any and all further relief to which Plaintiff may be entitled at law or in equity.

Respectfully Submitted,

/S/. **Andrew Roach**

Andrew Roach, Plaintiff, Pro Se,
2917 Lake Forest Dr, Upper Marlboro, MD 20774
P: 424-420-5550 / drewroach37@gmail.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a correct, true and full copy of the foregoing has been served on all Parties, in this Cause, in this action.

Respectfully Submitted,

/S/. ___*Andrew Roach*___

Andrew Roach, Plaintiff, Pro Se,

2917 Lake Forest Dr, Upper Marlboro, MD 20774

P: 424-420-5550 / drewroach37@gmail.com

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DIVISION OF TEXAS

HOUSTON DIVISION

|  |  |
|---|---|
| **ANDREW ROACH,** | ) |
| *PLAINTIFFS* | ) |
|  | ) **CIVIL ACTION NO. <u>4:25-CV-03221</u>** |
| **V.** | ) |
| **COLUMBIA DEBT RECOVERY,** | ) |
| *DEFENDANT* | ) |

# F

# 2025-38552 / Court: 125

## CAUSE NO. _____

| | | |
|---|---|---|
| **ANDREW ROACH,** | § | **HONORABLE COURT _____<sup>th</sup>,** |
| *PLAINTIFFS* | § | |
| **V.** | § | **DISTRICT COURT** |
| **COLUMBIA DEBT RECOVERY,** | § | |
| *DEFENDANT* | § | **HARRIS COUNTY, TEXAS.** |

### PLAINTIFF'S ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW,** Andrew Roach, (hereinafter referred to as "Plaintiff"), files this Original Petition complaining of Columbia Debt Recovery LLC (Doing Business As, 'Genesis') (hereinafter referred to as "Defendant"), and for cause of action(s) would respectfully show unto the Court as follows:

### I.   STATEMENT OF RELIEF SOUGHT

1.  Plaintiff seeks monetary relief within the jurisdictional limits of this court.

### II.   DISCOVERY CONTROL PLAN

2.  Pursuant to Rule 190.3 and 190.4 of the Texas Rules of Civil Procedure, discovery is intended to be conducted under Level 2.

3.  Required Initial Disclosures. Pursuant Rule 194 of the Tex. R. Civ. P., Defendant is required to disclose within thirty (30) days of after filing general appearance; '.. A party that is first served or otherwise joined after general appearance must male the initial disclosures within thirty (30) days after being served or joined..' the information described in Rule 194. of the Tex. R. Civ. P.

### III.     PARTIES

4. Plaintiff, Andrew Roach is an individual residing in Harris County, Texas.

5. Defendant(s), Columbia Debt Recovery LLC (Doing Business As 'Genesis'), is a limited liability company organized under the governing laws of the State of Washington and has it's headquarters at 906 SE Everett Mall Way, Suite 301, Everett, WA 98208, United States. Defendant may be served with process by serving its registered agent Corporation Service Company, located at 300 Deschutes Way SW, Ste 208 Mc-CSC1, Tumwater, WA 98501, and/ or wherever any authorized agent may be found.

6. In the event any parties are misnamed or are not included herein, it is Plaintiff's contention that such was a "misidentification", "misnomer", and/ or such parties were "alter egos" of parties named herein. Alternatively, Plaintiff contends that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice.

### IV.     JURISDICTION AND VENUE

7. This Court has personal jurisdiction, both specific and general, over Defendant and Defendant is amenable to service by a Texas Court. Additionally, venue is proper in Harris County Texas because it is the county in which all or substantial part of the events and omissions giving rise to Plaintiff's claims occurred in Harris County, Texas.

### V.     STATEMENT OF MATERIAL FACTS

8. On or about January 2025, Defendant began reporting an alleged debt account to one or more consumer reporting agencies under Plaintiff's name without providing any evidence of a valid creditor-debtor relationship.

9. On April 1, 2025, Plaintiff served Defendant with a Formal Cease and Desist Letter and
   Demand for Verification and Validation of Debt pursuant to applicable federal laws including
   15 U.S.C. § 1692g(b) and 15 U.S.C. § 1681e(b). Said notice was delivered via certified
   USPS and registered electronic mail. A copy of the Formal Notice that was served on the
   Defendant's is attached hereto, **Exhibit-A.**

10. In response, on April 30, 2025, Defendant mailed to Plaintiff a copy of a contract between
    "Andrew Roach" and a third party, Kennect Phoenix, *not "Columbia Debt Recovery",* and
    *failed* to provide any evidence that Columbia owned, was assigned, or had any lawful
    authority to collect on the alleged debt; and or any legal authentication of Plaintiff. A copy o
    the mailing envelope and the contents of what the Defendants responded to Plaintiff's
    Exhibit-A with on April 30, 2025, are attached hereto as, **Exhibit-B.**

11. Despite this, Defendant continued reporting the collection account monthly through the date
    of this Petition and continuing subsequent hereinafter, without correction, verification, or
    deletion. Plaintiff's redacted credit report as of June 1, 2025, attached hereto as **Exhibit-C.**

12. Defendant failed to provide required documentation **under state and federal law**, thereby
    exposing Plaintiff to false credit reporting, reputational harm, and denial of financial
    opportunities; attached hereto as, **Exhibit-D,** Plaintiff's sworn testimony that the Exhibit(c)
    attached hereto are all a true and correct copy of the documents.

13. Moreover, in direct response to Plaintiff's Formal Cease and Desist and Verification Demand
    dated April 1, 2025, Defendant, on or about April 30, 2025, mailed to Plaintiff a purported
    contract executed between Plaintiff, **"Andrew Roach",** and an unrelated third party,
    **"Kennect Phoenix".** Critically, this instrument made *no reference* **whatsoever to
    Defendant, Columbia Debt Recovery, LLC,** *nor* did it reflect any assignment, sale, or

lawful transfer of interest authorizing Defendant to collect or report on the alleged obligation; *nor* did it provide any sworn verification or authentication identifying Plaintiff as legally obligated to **Columbia Debt Recovery.** *(emphasis added).* **Exhibit-C.**

14. Notwithstanding the absence of such foundational documentation, Defendant **continued to report** the subject account as a derogatory collection tradeline to one or more consumer reporting agencies on a **recurring monthly basis from January 2025 through the present**, and upon information and belief, intends to persist in such reporting unless enjoined.

15. Defendant's continued failure to comply with Plaintiff's Formal Cease and Desist Letter—specifically, its refusal to provide the requisite legal documentation establishing ownership, assignment, or lawful authority to collect the alleged debt—constitutes a deliberate and deceptive act. Instead of complying with federal and state verification mandates, Defendant responded by producing documentation identifying an entirely separate legal entity, **Kennect Phoenix**, and subsequently sought to induce Plaintiff into performance under that unrelated agreement. This misrepresentation was sent directly to Plaintiff's legal address in **Harris County, Texas**, thereby invoking the jurisdiction of this Court.

16. As a direct and proximate result of Defendant's unlawful misreporting, and its continued refusal to verify, correct, or delete the disputed tradeline in accordance with federal and state law, **Plaintiff was denied a substantial and time-sensitive business opportunity** on or about **May 1, 2025**. Specifically, Plaintiff sought to engage in the **acquisition, sale, or transfer of a corporate entity**, the value of which exceeded **$117,000.00**, but was ultimately declined by third-party investor(s) or an investment group upon review of Plaintiff's credit profile. Investor(s) and Investment Group(s), Jane Doe and John Doe, (hereinafter referred to as **"Interested Parties"**) redacted sworn testimony is attached hereto as Exhibit-E, testifying that the "Collection(s)" accounted reported to Plaintiff's credit report file by Defendant(s), dissolve any and all acquisition of Ariv Holdings LLC. Interested Parties

swore in **Exhibit-E** to their intentions of executing such acquisition of but not limited to Ariv Holdings LLC in the amount of $117,000.00 USD and accompanied investment portfolio effective July 1, 2025, but such representation made by Defendants deterred such. **Exhibit-E.**

17. Said denial was expressly based on the negative and inaccurate credit data furnished by Defendant to one or more consumer reporting agencies. The collapse of this transaction constitutes a **material, quantifiable, and foreseeable injury** to Plaintiff's financial standing, business credibility, and overall market position, directly traceable to Defendant's statutory violations and tortious conduct. Such investor(s) and investment group(s) intend to provide sworn testimony in this Cause.

18. Plaintiff has thus suffered egregious and ongoing damages arising from Defendant's unlawful conduct, including lost business opportunities, reputational harm, and financial destabilization. **Supporting documentation** substantiating the value and terms of the declined transaction, and the correspondence relating to the denial by the investment party or parties, **will be filed under seal** in accordance with **Texas Rule of Civil Procedure 76a** to preserve confidentiality and proprietary interest. **Exhibit-E. Exhibit-A,B,C, and D.**

# VI. CAUSES OF ACTION

## COUNT I – TEXAS DEBT COLLECTION ACT § 392.001

**19.** Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section V. Statement of Material Facts. Texas Debt Collection Act (TDCA), Tex. Fin. Code § 392.001 et seq.

**20.** This cause of action arises under the Texas Debt Collection Act (TDCA), codified at Tex. Fin. Code §§ 392.001 et seq., which prohibits debt collectors from using false, misleading, or abusive means to collect consumer debts. Plaintiff is a "consumer" under § 392.001(1), and Defendant is a "debt collector" under § 392.001(6). **Exhibit-A. Exhibit-B.**

**21.** Defendant knowingly violated multiple provisions of the TDCA, including but not limited to:

   a. § 392.202, by failing to conduct an investigation and correct or delete inaccurate tradeline information after receipt of Plaintiff's written dispute on April 1, 2025;

   b. § 392.304(a)(8), by misrepresenting the ownership, character, amount, and legal status of the alleged debt;

   c. § 392.304(a)(19), by employing false and deceptive practices in attempting to collect a debt it did not own, and could not lawfully enforce;

**22.** Defendant did not produce any valid assignment, bill of sale, or other competent legal documentation evidencing its ownership or authority to collect the alleged debt. Instead, it submitted a contract involving a third party, Kennect Phoenix, in which Defendant is not named. This constitutes a per se violation of the Act and demonstrates deceptive conduct.

**23.** As a proximate result of Defendant's conduct, Plaintiff suffered economic harm, loss of a

business transaction exceeding $117,000, reputational damage, and mental anguish. Plaintiff

seeks actual damages, statutory damages, injunctive relief, attorneys' fees, and costs of court

under Tex. Fin. Code § 392.403(a)(2), § 392.403(b). *(emphasis added).* **Exhibit-A and E.**

**24.** Plaintiff seeks judgment of this Court for actual damages, consequential damages, punitive

damages, exemplary damages, prejudgment interest, and costs of Court.

## COUNT II- TEXAS DECEPTIVE TRADE PRACTICES ACT (DTPA) § 17.41

**25.** Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section

V. Statement of Material Facts. Texas Deceptive Trade Practices Act (DTPA) § 17.41 et seq.

**26.** Plaintiff is a "consumer" under the Texas DTPA, having sought services related to credit and

debt collection for personal purposes. Defendant's actions, as set forth in Section V, constitute

false, misleading, and deceptive acts under Tex. Bus. & Com. Code § 17.46(b), including: (1)

Misrepresenting the existence of a valid debt; (2) Falsely claiming to possess the legal

authority to collect the debt; (3) Reporting inaccurate credit information despite statutory

disputes. **Exhibit-A. Exhibit-B.**

**27.** Defendant's conduct violates the DTPA through incorporation of the TDCA under Tex. Fin.

Code § 392.404. Plaintiff seeks actual damages, treble damages upon proof of knowing

violations, and attorneys' fees. **Exhibit-A. Exhibit-B.**

## COUNT III- FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681 es seq

**28.** Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section

V. Statement of Material Facts. Fair Credit Reporting Act 15 U.S.C. § 1681 et seq.

**29.** Defendant violated the FCRA by: (1) Furnishing inaccurate information after being notified

of a dispute, in violation of 15 U.S.C. § 1681s-2(b); (2) Failing to conduct a reasonable

investigation or to delete inaccurate tradelines after Plaintiff's formal notice on April 1, 2025,

in violation of § 1681i; (3) Reporting false data without verifying legal ownership of the

debt, in violation of § 1681e(b). **Exhibit-A. Exhibit-B.**

**30.** As a result, Plaintiff sustained actual damages, including denial of a $117,000 business

transaction. Plaintiff seeks actual damages, statutory damages, punitive damages (for willful

violations), and attorney's fees under 15 U.S.C. §§ 1681n and 1681o. **Exhibit-E.**

## COUNT IV- FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. § 1692 et seq.

**31.** Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section

V. Statement of Material Facts. FDCPA 15 U.S.C. § 1692 et seq.

**32.** Defendant is a "debt collector" under 15 U.S.C. § 1692a(6), and its conduct violated the

FDCPA as follows: (1) Using false representations to collect a debt under § 1692e(2)(A); (2)

Collection efforts without validation of the debt after Plaintiff's written dispute, in

violation of § 1692g(b); (3) Attempting to collect a debt it did not own and could not

substantiate, violating § 1692f. **Exhibit-A. Exhibit-B.**

**33.** Plaintiff is entitled to actual damages, statutory damages up to $1,000, and attorney's fees

and costs under 15 U.S.C. § 1692k.

## COUNT V- FRAUD MISREPRESENTATION

**34.** Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section III. Statement of Material Facts. Fraud Misrepresentation. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of America*, 341 S.W.3d 323, 337 (Tex. 2011), *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (per curiam). ***SPEP Aircraft Holdings, LLC et al. v. Bombardier Aerospace Corporation***, Cause No. DC-12-14739, in the 44th Judicial District Court of Dallas County, Texas. ***Bombardier Aerospace Corporation v. SPEP Aircraft Holdings, LLC, et al.,*** Cause No. 05-16-00086-CV, Fifth Court of Appeals, Dallas, Texas. To establish fraud under Texas law, Plaintiff must show: (1) a material misrepresentation, (2) made with knowledge of its falsity or recklessness, (3) with intent to induce reliance, (4) actual and justifiable reliance by Plaintiff, and (5) injury resulting from that reliance. **Exhibit-A, Exhibit-B.**

**35.** Defendant Columbia Debt Recovery, LLC made an affirmative material misrepresentation by transmitting to Plaintiff a written communication, purporting to verify the existence and validity of a debt allegedly owed by Plaintiff. In this communication, Defendant produced an instrument—namely, a purported contract between Plaintiff and a third party, Kennect Phoenix—representing it as proof of indebtedness to Columbia. However, Columbia was not a party to that contract, nor did the document contain any reference to Columbia, nor any assignment or bill of sale evidencing legal authority to enforce or collect on the alleged obligation. This submission was intended to induce Plaintiff to believe that Columbia was a valid and lawful creditor. **Exhibit-D.**

**36.** At the time this representation was made, Defendant knew or should have known that the information it was providing was false, incomplete, and misleading. Defendant either possessed no legal documentation to support its claim of ownership of the alleged debt or knowingly omitted the material fact that no such transfer or assignment ever occurred. By presenting a third-party contract as though it substantiated its own collection rights, Defendant acted with at minimum a reckless disregard for the truth, if not with actual knowledge of the falsity of its claim. **Exhibit-A. Exhibit-B. Exhibit-D.**

**37.** Defendant intended for Plaintiff to rely on this false representation to deter or delay legal action and to continue collection efforts under the false pretense of creditor status. Plaintiff justifiably relied on this misrepresentation by deferring immediate litigation and by undertaking further attempts to administratively resolve the dispute. At the time, Plaintiff had no access to documentation establishing the falsity of Columbia's claim and reasonably interpreted the response as indicative of a genuine, enforceable debt. As a result of the Plaintiff relying on the materials provided by Columbia Debt Recovery, Plaintiff has initiated this lawsuit to address such misrepresentations or representations made by Defendant.

**38.** As a direct and proximate result of Defendant's fraudulent misrepresentation, Plaintiff sustained actual and consequential damages. These include reputational harm, emotional distress, financial loss, and the loss of a significant business transaction exceeding $117,000. The misrepresentation of debt ownership and the continued reporting of inaccurate credit information materially impaired Plaintiff's creditworthiness and contributed to Plaintiff's exclusion from an investment opportunity that was both time-sensitive and financially significant. **Exhibit-C. Exhibit-E.**

**39.** Under Texas law, fraud of this nature supports an award of actual damages, consequential damages, and exemplary damages under Tex. Civ. Prac. & Rem. Code § 41.003(a), as Defendant's conduct was knowing, intentional, and fraudulent. The record, as pleaded and to be further supported by documentary evidence and witness testimony, shows a calculated effort by Defendant to mislead and manipulate Plaintiff in violation of established legal duties. Accordingly, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff on this count, and award all such legal and equitable relief as is just and proper.

## COUNT VI- FRAUD NON-DISCLOSURE

**40.** Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section V. Statement of Material Facts. Fraud Non-Disclosure. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of America*, 341 S.W.3d 323, 337 (Tex. 2011), *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (per curiam). ***SPEP Aircraft Holdings, LLC et al. v. Bombardier Aerospace Corporation***, Cause No. DC-12-14739, in the 44th Judicial District Court of Dallas County, Texas. ***Bombardier Aerospace Corporation v. SPEP Aircraft Holdings, LLC, et al.,*** Cause No. 05-16-00086-CV, Fifth Court of Appeals, Dallas, Texas.

**41.** Under Texas law, fraud by non-disclosure arises where: (1) the defendant failed to disclose material facts, (2) the defendant had a duty to disclose, (3) the facts were known to the defendant, (4) the plaintiff did not know of the facts, (5) the defendant intended to induce the plaintiff to act or refrain from acting, and (6) the plaintiff relied and suffered damages.

**42.** When a party voluntarily makes a partial disclosure or communicates in a manner intended to induce reliance, a **duty to disclose the whole truth** arises. See *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001). **Exhibit-A. Exhibit-B.**

**43.** Here, Defendant Columbia Debt Recovery, LLC, had both a **common law and statutory duty** to disclose whether it owned, was assigned, or had any legal authority to collect on the alleged debt when it received a formal **written dispute and demand for verification** from Plaintiff pursuant to **15 U.S.C. § 1692g(b)** of the **Fair Debt Collection Practices Act (FDCPA)** and **15 U.S.C. § 1681i** and **§ 1681s-2(b)** of the **Fair Credit Reporting Act (FCRA)**.

    a. **15 U.S.C. § 1692g(b)** requires that upon receipt of a consumer's written dispute, a debt collector "shall cease collection... until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor."

    b. **15 U.S.C. § 1681s-2(b)** mandates that, after notice of a dispute, the furnisher of credit information must "conduct an investigation with respect to the disputed information," "review all relevant information provided by the consumer reporting agency," and "report the results of the investigation to the consumer reporting agency."

    c. **Tex. Fin. Code § 392.202(a)** provides that a consumer may dispute the accuracy of a debt and request correction; subsection (b) imposes a duty on the debt collector to investigate and notify the consumer of results within 30 days.

**44.** In response to Plaintiff's formal notice dated April 1, 2025, Defendant produced a contract between Plaintiff and a third-party entity, **Kennect Phoenix**, which neither referenced

Columbia Debt Recovery, LLC, nor contained any assignment, bill of sale, or legal transfer of interest. Defendant failed to disclose that it lacked privity of contract and had no valid creditor status — facts which were material and exclusively within Defendant's knowledge.

**45.** Despite the absence of ownership or legal authority to collect, Defendant continued to report the alleged debt to one or more consumer reporting agencies, thereby inducing Plaintiff to refrain from further legal action or additional dispute filings, and causing harm including lost business opportunity exceeding $117,000 and reputational injury. **Exhibit-E. Exhibit-B.**

**46.** This nondisclosure was knowing and intentional. By providing partial documentation without full disclosure of its lack of legal standing or debt ownership, Defendant triggered a duty to disclose the whole truth under Texas law. See *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997). *SPEP Aircraft Holdings, LLC et al. v. Bombardier Aerospace Corporation*, Cause No. DC-12-14739, in the 44th Judicial District Court of Dallas County, Texas. *Bombardier Aerospace Corporation v. SPEP Aircraft Holdings, LLC, et al.,* Cause No. 05-16-00086-CV, Fifth Court of Appeals, Dallas, Texas. **Exhibit-C. Exhibit-B.**

**47.** Plaintiff respectfully requests judgment against Defendant for actual damages, consequential damages, punitive and exemplary damages, pre- and post-judgment interest, and all costs of court. **Exhibit-A. Exhibit-B. Exhibit-C. Exhibit-D. Exhibit-E.**

**48.** WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully avers that the foregoing causes of action—each independently and collectively—establish Defendant's knowing, willful, and unlawful conduct under Texas and federal law, including but not limited to the Texas Debt Collection Act, Texas Deceptive Trade Practices Act, Fair Credit Reporting Act, Fair Debt Collection Practices Act, and Texas common law principles of fraud and non-disclosure.

## IV.    DAMAGES

**49.** As a result of Defendants actions and omissions as set forth herein, Plaintiffs sustained the

following damages, for which Plaintiffs seek judgment against Defendants:

    a.    Actual damages in the amount of $117,000.00

    b.    Statutory Damages;

    c.    Exemplary Punitive damages;

    d.    Pre-judgment penalty and post judgment interest; and

    e.    Reasonable expenses and costs of court.

## V.   EXEMPLARY DAMAGES

**50.** Additionally, Plaintiff would show that Defendants actions were intentional, fraudulent,

malicious, and in bad faith, justifying the imposition of exemplary damages against

Defendants.

## VI. CONDITIONS PRECEDENT SATISFIED

**51.** Plaintiff has fully or substantially performed all acts necessary to perfect and establish all

claims and causes of action asserted in this lawsuit.

**52.** All conditions precedent to Plaintiff's right to recover on any of the claims and causes of

action asserted in this lawsuit have been discharged, satisfied or fully performed.

## VII. RULE 47 STATEMENT

**53.** Pursuant to Rule 47(b) of the Texas Rules of Civil Procedure, damages are within he

jurisdictional limits of this Court. Further, Plaintiff is required by Rule 47(c) to state the

dollar amount of damages that represent Plaintiff's harms and losses due to Defendant's

conduct. The legislative history of this requirement indicates that it is for record-keeping

purposes, and statistical purposes only, for lawsuits filed in the State of Texas. Plaintiff's counsel states that Plaintiff seeks monetary relief, of which the maximum harms, losses, and damages of any type are less than $200,000 at this time. The amount of monetary relief actually accessed by the Honorable Judge, however, will ultimately be determined by the fact-finder after hearing all the evidence presented.

## VIII. NON-JURY TRIAL

54. The Plaintiff hereby requests a non-jury trial, trial by Honorable Judge pursuant to Rule 216 of Texas Rules of Civil Procedure. Furthermore, Plaintiff respectfully reserves their right to a jury trial in this matter should such be deemed appropriate at a latter stage.

## IX. PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs respectfully pray that Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendants as follows:

a) Upon trial, judgment against Defendants for the full amount of Plaintiffs' actual damages (past, future, special, direct) and Statutory damages as found by the trier of facts;

b) Exemplary Punitive damages as found by the trier of facts;

c) Prejudgment and post-judgment interest at the highest lawful rates in Harris County, Texas.

d) All costs of court;

e) Any and all further relief to which Plaintiff may be entitled at law or in equity.

Respectfully Submitted,

/s/ *Andrew Roach*

Andrew Roach, Plaintiff, Pro Se,

2917 Lake Forest Dr, Upper Marlboro, MD 20774

P: 424-420-5550 / dreamroach17@gmail.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a correct, true and full copy of the foregoing has been served on all Parties, in

this Cause, in this action.

Respectfully Submitted,

/s/  **_Andrew Roach_**

Andrew Roach, Plaintiff, Pro-Se,

2917 Lake Forest Dr. Upper Marlboro, MD 20774

P: 424-420-5550 andrewroach17@gmail.com

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 101485070
Filing Code Description: Petition
Filing Description: Plaintiff's Original Petition
Status as of 6/2/2025 10:08 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Andrew Roach | | drewroach37@gmail.com | 6/2/2025 10:03:35 AM | NOT SENT |

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DIVISION OF TEXAS

HOUSTON DIVISION

|  |  |
|---|---|
| ANDREW ROACH, | ) |
| *PLAINTIFFS* | ) |
|  | ) |
|  | ) CIVIL ACTION NO. <u>4:25-CV-03221</u> |
| V. | ) |
| COLUMBIA DEBT RECOVERY, | ) |
| *<u>DEFENDANT</u>* | ) |

# G

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DIVISION OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **Andrew Roach,**      ) | |
|             ) | |
|     **Plaintiffs,**    ) | |
|             ) | |
| **v.**             ) | |
|             ) | **CIVIL ACTION NO.** _____ |
| **Columbia Debt Recovery,**  ) | |
|             ) | |
|     **Defendant.**   ) | |
|             ) | |
| _____ ) | |

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. § 1446(a), Defendant COLUMBIA DEBT RECOVERY, LLC ("Defendant") hereby removes to this Court the civil action described below, as it involves a federal question.

1.    On October 15, 2024, Plaintiff ANDREW ROACH("Plaintiff") filed a civil action in the State Court of Texas, Court 125, Harris County, entitled *ANDREW ROACH v. COLUMBIA DEBT RECOVERY, LLC,* Case No.. 2025-38552 A true and correct copy of Plaintiff's Complaint is attached hereto as Exhibit A.

2.    Plaintiff's Complaint was served on Defendant by personal service on June 13, 2025. Exhibit A. A copy of the State court docket sheet is labeled as Exhibit B.

3.    Therefore, this Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b) within the 30-day removal period.

4.    This action involves a federal question in that it arises under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq ("FDCPA") and the Fair Credit Reporting Act, 15 U.S.C. 1681et seq. It is therefore an action of which this Court has original jurisdiction under 28 U.S.C. § 1331 and may be removed to this Court by Defendant pursuant to the provisions of 28 U.S.C. § 1441(a). In this regard, Plaintiff alleges violations under the FDCPA against Defendant. (See Exhibit A.)

5.    Venue is proper in this district under 28 U.S.C. §1441(a) because this district and division embrace the place where the removed action has been pending.

6.    Plaintiff's Complaint includes a demand for a jury trial.

7.    Defendant will promptly file a copy of this Notice of Removal with the clerk of the State Court where the action has been pending.

Dated:  July 10, 2025                    Respectfully submitted,

                                         /s/ Keith Wier
                                         Keith Wier
                                         Law Offices of Keith Wier, PLLC
                                         15150 Preston Road, Suite 300
                                         Dallas, Texas 75248
                                         T:  (214) 540-6690
                                         Email:  kwier@keithwierlaw.com

## CERTIFICATE OF SERVICE

I, Keith Wier certify that on July 10, 2025, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all attorneys of record.

Furthermore, I have provided notice of this filing to Plaintiff in the manner specified below.

Email: drewroach37@gmail.com

**/s/   Keith Wier**
Keith Wier

*Andrew Roach v. Columbia Debt Recovery, LLC*

# Exhibit "A"

{00050364;1}



**CSC**

# Notice of Service of Process

null / ALL
Transmittal Number: 31632278
Date Processed: 06/15/2025

| | |
|---|---|
| Primary Contact: | William P Wodjak<br>Columbia Debt Recovery, LLC<br>906 SE Everett Mall Way<br>Ste 301<br>Everett, WA 98208-3744 |

| | |
|---|---|
| Entity: | Columbia Debt Recovery, LLC<br>Entity ID Number  3900695 |
| Entity Served: | Columbia Debt Recovery LLC |
| Title of Action: | Andrew Roach vs. Columbia Debt Recovery |
| Matter Name/ID: | Andrew Roach vs. Columbia Debt Recovery  (17468853) |
| Document(s) Type: | Petition |
| Nature of Action: | Violation of State/Federal Act |
| Court/Agency: | Harris County District Court, TX |
| Case/Reference No: | 202538552 |
| Jurisdiction Served: | Washington |
| Date Served on CSC: | 06/13/2025 |
| Answer or Appearance Due: | Other/NA |
| Originally Served On: | CSC |
| How Served: | Personal Service |
| Sender Information: | Andrew Roach<br>424-420-5550 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674  (888) 690-2882  |  sop@cscglobal.com

THURSTON COUNTY 38552
**CAUSE NO.**

2025 JUN 10 AM 9: 14

RECEIVED

| | | |
|---|---|---|
| **ANDREW ROACH,** | § | **HONORABLE COURT** /25ᵗʰ, |
| *PLAINTIFFS* | | |
| **V.** | § | **DISTRICT COURT** |
| **COLUMBIA DEBT RECOVERY,** | § | |
| *DEFENDANT* | § | **HARRIS COUNTY, TEXAS.** |

## PLAINTIFF'S ORIGINAL PETITION

### TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Andrew Roach, (hereinafter referred to as "Plaintiff"), files this Original Petition complaining of Columbia Debt Recovery LLC (Doing Business As, 'Genesis') (hereinafter referred to as "Defendant"), and for cause of action(s) would respectfully show unto the Court as follows:

### I.    STATEMENT OF RELIEF SOUGHT

1. Plaintiff seeks monetary relief within the jurisdictional limits of this court.

### II.    DISCOVERY CONTROL PLAN

2. Pursuant to Rule 190.3 and 190.4 of the Texas Rules of Civil Procedure, discovery is intended to be conducted under Level 2.

3. Required Initial Disclosures. Pursuant Rule 194 of the Tex. R. Civ. P., Defendant is required to disclose within thirty (30) days of after filing general appearance; '.. A party that is first served or otherwise joined after general appearance must male the initial disclosures within thirty (30) days after being served or joined..' the information described in Rule 194. of the Tex. R. Civ. P.

### III.    PARTIES

4.  Plaintiff, Andrew Roach is an individual residing in Harris County, Texas.

5.  Defendant(s), Columbia Debt Recovery LLC (Doing Business As 'Genesis'), is a limited
    liability company organized under the governing laws of the State of Washington and has it's
    headquarters at 906 SE Everett Mall Way, Suite 301, Everett, WA 98208, United States.
    Defendant may be served with process by serving its registered agent, Corporation Service
    Company, located at 300 Deschutes Way SW, Ste 208 Mc-CSC1, Tumwater, WA 98501, and/
    or wherever any authorized agent may be found.

6.  In the event any parties are misnamed or are not included herein, it is Plaintiff's contention
    that such was a "misidentification", "misnomer", and/ or  such parties were "alter egos" of
    parties named herein. Alternatively, Plaintiff contends that such "corporate veils" should be
    pierced to hold such parties properly included in the interest of justice.

### IV.    JURISDICTION AND VENUE

7.  This Court has personal jurisdiction, both specific and general, over Defendant and
    Defendant is amenable to service by a Texas Court. Additionally, venue is proper in Harris
    County Texas because it is the county in which all or substantial part of the events and
    omissions giving rise to Plaintiff's claims occurred in Harris County, Texas.

### V.    STATEMENT OF MATERIAL FACTS

8.  On or about January 2025, Defendant began reporting an alleged debt account to one or more
    consumer reporting agencies under Plaintiff's name without providing any evidence of a
    valid creditor-debtor relationship.

9.  On April 1, 2025, Plaintiff served Defendant with a Formal Cease and Desist Letter and Demand for Verification and Validation of Debt pursuant to applicable federal laws including 15 U.S.C. § 1692g(b) and 15 U.S.C. § 1681e(b). Said notice was delivered via certified USPS and registered electronic mail. A copy of the Formal Notice that was served on the Defendant's is attached hereto, **Exhibit-A.**

10. In response, on April 30, 2025, Defendant mailed to Plaintiff a copy of a contract between "Andrew Roach" and a third party, Kennect Phoenix, *not "Columbia Debt Recovery",* and *failed* to provide any evidence that Columbia owned, was assigned, or had any lawful authority to collect on the alleged debt; and or any legal authentication of Plaintiff. A copy o the mailing envelope and the contents of what the Defendants responded to Plaintiff's Exhibit-A with on April 30, 2025, are attached hereto as, **Exhibit-B.**

11. Despite this, Defendant continued reporting the collection account monthly through the date of this Petition and continuing subsequent hereinafter, without correction, verification, or deletion. Plaintiff's redacted credit report as of June 1, 2025, attached hereto as **Exhibit-C.**

12. Defendant failed to provide required documentation **under state and federal law,** thereby exposing Plaintiff to false credit reporting, reputational harm, and denial of financial opportunities; attached hereto as, **Exhibit-D,** Plaintiff's sworn testimony that the Exhibit(c) attached hereto are all a true and correct copy of the documents.

13. Moreover, in direct response to Plaintiff's Formal Cease and Desist and Verification Demand dated April 1, 2025, Defendant, on or about April 30, 2025, mailed to Plaintiff a purported contract executed between Plaintiff, **"Andrew Roach",** and an unrelated third party, **"Kennect Phoenix".** Critically, this instrument made *no reference* **whatsoever to Defendant, Columbia Debt Recovery, LLC,** *nor* did it reflect any assignment, sale, or

lawful transfer of interest authorizing Defendant to collect or report on the alleged obligation; *nor* did it provide any sworn verification or authentication identifying Plaintiff as legally obligated to **Columbia Debt Recovery.** *(emphasis added).* **Exhibit-C.**

14. Notwithstanding the absence of such foundational documentation, Defendant **continued to report** the subject account as a derogatory collection tradeline to one or more consumer reporting agencies on a **recurring monthly basis** from **January 2025 through the present,** and upon information and belief, intends to persist in such reporting unless enjoined.

15. Defendant's continued failure to comply with Plaintiff's Formal Cease and Desist Letter—specifically, its refusal to provide the requisite legal documentation establishing ownership, assignment, or lawful authority to collect the alleged debt—constitutes a deliberate and deceptive act. Instead of complying with federal and state verification mandates, Defendant responded by producing documentation identifying an entirely separate legal entity, **Kennect Phoenix,** and subsequently sought to induce Plaintiff into performance under that unrelated agreement. This misrepresentation was sent directly to Plaintiff's legal address in **Harris County, Texas,** thereby invoking the jurisdiction of this Court.

16. As a direct and proximate result of Defendant's unlawful misreporting, and its continued refusal to verify, correct, or delete the disputed tradeline in accordance with federal and state law, **Plaintiff was denied a substantial and time-sensitive business opportunity** on or about May 1, 2025. Specifically, Plaintiff sought to engage in the **acquisition, sale, or transfer of a corporate entity,** the value of which exceeded **$117,000.00,** but was ultimately declined by third-party investor(s) or an investment group upon review of Plaintiff's credit profile. Investor(s) and Investment Group(s), Jane Doe and John Doe, (hereinafter referred to as **"Interested Parties")** redacted sworn testimony is attached hereto as Exhibit-E, testifying that the "Collection(s)" accounted reported to Plaintiff's credit report file by Defendant(s), dissolve any and all acquisition of Ariv Holdings LLC. Interested Parties

swore in **Exhibit-E** to their intentions of executing such acquisition of but not limited to Ariv

Holdings LLC in the amount of $117,000.00 USD and accompanied investment portfolio effective

July 1, 2025, but such representation made by Defendants deterred such. **Exhibit-E.**

**17.** Said denial was expressly based on the negative and inaccurate credit data furnished by Defendant to

one or more consumer reporting agencies. The collapse of this transaction constitutes a **material,**

**quantifiable, and foreseeable injury** to Plaintiff's financial standing, business credibility, and

overall market position, directly traceable to Defendant's statutory violations and tortious conduct.

Such investor(s) and investment group(s) intend to provide sworn testimony in this Cause.

**18.** Plaintiff has thus suffered egregious and ongoing damages arising from Defendant's unlawful

conduct, including lost business opportunities, reputational harm, and financial

destabilization. **Supporting documentation** substantiating the value and terms of the

declined transaction, and the correspondence relating to the denial by the investment party or

parties, **will be filed under seal** in accordance with **Texas Rule of Civil Procedure 76a** to

preserve confidentiality and proprietary interest. **Exhibit-E. Exhibit-A,B,C, and D.**

## VI. CAUSES OF ACTION

### COUNT I – TEXAS DEBT COLLECTION ACT § 392.001

**19.** Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section V. Statement of Material Facts. Texas Debt Collection Act (TDCA), Tex. Fin. Code § 392.001 et seq.

**20.** This cause of action arises under the Texas Debt Collection Act (TDCA), codified at Tex. Fin. Code §§ 392.001 et seq., which prohibits debt collectors from using false, misleading, or abusive means to collect consumer debts. Plaintiff is a "consumer" under § 392.001(1), and Defendant is a "debt collector" under § 392.001(6). **Exhibit-A. Exhibit-B.**

**21.** Defendant knowingly violated multiple provisions of the TDCA, including but not limited to:

    a. § 392.202, by failing to conduct an investigation and correct or delete inaccurate tradeline information after receipt of Plaintiff's written dispute on April 1, 2025;

    b. § 392.304(a)(8), by misrepresenting the ownership, character, amount, and legal status of the alleged debt;

    c. § 392.304(a)(19), by employing false and deceptive practices in attempting to collect a debt it did not own, and could not lawfully enforce;

**22.** Defendant did not produce any valid assignment, bill of sale, or other competent legal documentation evidencing its ownership or authority to collect the alleged debt. Instead, it submitted a contract involving a third party, Kennect Phoenix, in which Defendant is not named. This constitutes a per se violation of the Act and demonstrates deceptive conduct.

23. As a proximate result of Defendant's conduct, Plaintiff suffered economic harm, loss of a business transaction exceeding $117,000, reputational damage, and mental anguish. Plaintiff seeks actual damages, statutory damages, injunctive relief, attorneys' fees, and costs of court under Tex. Fin. Code § 392.403(a)(2), § 392.403(b). *(emphasis added).* **Exhibit-A and E.**

24. Plaintiff seeks judgment of this Court for actual damages, consequential damages, punitive damages, exemplary damages, prejudgment interest, and costs of Court.

## COUNT II- TEXAS DECEPTIVE TRADE PRACTICES ACT (DTPA) § 17.41

25. Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section V. Statement of Material Facts. Texas Deceptive Trade Practices Act (DTPA) § 17.41 et seq.

26. Plaintiff is a "consumer" under the Texas DTPA, having sought services related to credit and debt collection for personal purposes. Defendant's actions, as set forth in Section V, constitute false, misleading, and deceptive acts under Tex. Bus. & Com. Code § 17.46(b), including: (1) Misrepresenting the existence of a valid debt; (2) Falsely claiming to possess the legal authority to collect the debt; (3) Reporting inaccurate credit information despite statutory disputes. **Exhibit-A. Exhibit-B.**

27. Defendant's conduct violates the DTPA through incorporation of the TDCA under Tex. Fin. Code § 392.404. Plaintiff seeks actual damages, treble damages upon proof of knowing violations, and attorneys' fees. **Exhibit-A. Exhibit-B.**

## COUNT III- FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681 es seq

**28.** Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section

V. Statement of Material Facts. Fair Credit Reporting Act 15 U.S.C. § 1681 et seq.

**29.** Defendant violated the FCRA by: (1) Furnishing inaccurate information after being notified

of a dispute, in violation of 15 U.S.C. § 1681s-2(b); (2) Failing to conduct a reasonable

investigation or to delete inaccurate tradelines after Plaintiff's formal notice on April 1, 2025,

in violation of § 1681i; (3) Reporting false data without verifying legal ownership of the

debt, in violation of § 1681e(b). **Exhibit-A. Exhibit-B.**

**30.** As a result, Plaintiff sustained actual damages, including denial of a $117,000 business

transaction. Plaintiff seeks actual damages, statutory damages, punitive damages (for willful

violations), and attorney's fees under 15 U.S.C. §§ 1681n and 1681o. **Exhibit-E.**

## COUNT IV- FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. § 1692 et seq.

**31.** Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section

V. Statement of Material Facts. FDCPA 15 U.S.C. § 1692 et seq.

**32.** Defendant is a "debt collector" under 15 U.S.C. § 1692a(6), and its conduct violated the

FDCPA as follows: (1) Using false representations to collect a debt under § 1692e(2)(A); (2)

Collection collection efforts without validation of the debt after Plaintiff's written dispute, in

violation of § 1692g(b); (3) Attempting to collect a debt it did not own and could not

substantiate, violating § 1692f. **Exhibit-A. Exhibit-B.**

**33.** Plaintiff is entitled to actual damages, statutory damages up to $1,000, and attorney's fees

and costs under 15 U.S.C. § 1692k.

## COUNT V- FRAUD MISREPRESENTATION

**34.** Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section

III. Statement of Material Facts. Fraud Misrepresentation. *Italian Cowboy Partners, Ltd. v.*

*Prudential Ins. Co. of America*, 341 S.W.3d 323, 337 (Tex. 2011), *Aquaplex, Inc. v. Rancho*

*La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (per curiam). ***SPEP Aircraft Holdings,***

***LLC et al. v. Bombardier Aerospace Corporation***, Cause No. DC-12-14739, in the 44th

Judicial District Court of Dallas County, Texas. ***Bombardier Aerospace Corporation v.***

***SPEP Aircraft Holdings, LLC, et al.,*** Cause No. 05-16-00086-CV, Fifth Court of Appeals,

Dallas, Texas. To establish fraud under Texas law, Plaintiff must show: (1) a material

misrepresentation, (2) made with knowledge of its falsity or recklessness, (3) with intent to

induce reliance, (4) actual and justifiable reliance by Plaintiff, and (5) injury resulting from

that reliance. **Exhibit-A. Exhibit-B.**

**35.** Defendant Columbia Debt Recovery, LLC made an affirmative material misrepresentation by

transmitting to Plaintiff a written communication, purporting to verify the existence and

validity of a debt allegedly owed by Plaintiff. In this communication, Defendant produced an

instrument—namely, a purported contract between Plaintiff and a third party, Kennect

Phoenix—representing it as proof of indebtedness to Columbia. However, Columbia was not

a party to that contract, nor did the document contain any reference to Columbia, nor any

assignment or bill of sale evidencing legal authority to enforce or collect on the alleged

obligation. This submission was intended to induce Plaintiff to believe that Columbia was a

valid and lawful creditor. **Exhibit-D.**

**36.** At the time this representation was made, Defendant knew or should have known that the information it was providing was false, incomplete, and misleading. Defendant either possessed no legal documentation to support its claim of ownership of the alleged debt or knowingly omitted the material fact that no such transfer or assignment ever occurred. By presenting a third-party contract as though it substantiated its own collection rights, Defendant acted with at minimum a reckless disregard for the truth, if not with actual knowledge of the falsity of its claim. **Exhibit-A. Exhibit-B. Exhibit-D.**

**37.** Defendant intended for Plaintiff to rely on this false representation to deter or delay legal action and to continue collection efforts under the false pretense of creditor status. Plaintiff justifiably relied on this misrepresentation by deferring immediate litigation and by undertaking further attempts to administratively resolve the dispute. At the time, Plaintiff had no access to documentation establishing the falsity of Columbia's claim and reasonably interpreted the response as indicative of a genuine, enforceable debt. As a result of the Plaintiff relying on the materials provided by Columbia Debt Recovery, Plaintiff has initiated this lawsuit to address such misrepresentations or representations made by Defendant.

**38.** As a direct and proximate result of Defendant's fraudulent misrepresentation, Plaintiff sustained actual and consequential damages. These include reputational harm, emotional distress, financial loss, and the loss of a significant business transaction exceeding $117,000. The misrepresentation of debt ownership and the continued reporting of inaccurate credit information materially impaired Plaintiff's creditworthiness and contributed to Plaintiff's exclusion from an investment opportunity that was both time-sensitive and financially significant. **Exhibit-C. Exhibit-E.**

**39.** Under Texas law, fraud of this nature supports an award of actual damages, consequential damages, and exemplary damages under Tex. Civ. Prac. & Rem. Code § 41.003(a), as Defendant's conduct was knowing, intentional, and fraudulent. The record, as pleaded and to be further supported by documentary evidence and witness testimony, shows a calculated effort by Defendant to mislead and manipulate Plaintiff in violation of established legal duties. Accordingly, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff on this count, and award all such legal and equitable relief as is just and proper.

## COUNT VI- FRAUD NON-DISCLOSURE

**40.** Plaintiff fully incorporates herein verbatim by reference as originally stated herein, Section V. Statement of Material Facts. Fraud Non-Disclosure. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of America*, 341 S.W.3d 323, 337 (Tex. 2011), *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (per curiam). ***SPEP Aircraft Holdings, LLC et al. v. Bombardier Aerospace Corporation***, Cause No. DC-12-14739, in the 44th Judicial District Court of Dallas County, Texas. ***Bombardier Aerospace Corporation v. SPEP Aircraft Holdings, LLC, et al.,*** Cause No. 05-16-00086-CV, Fifth Court of Appeals, Dallas, Texas.

**41.** Under Texas law, fraud by non-disclosure arises where: (1) the defendant failed to disclose material facts, (2) the defendant had a duty to disclose, (3) the facts were known to the defendant, (4) the plaintiff did not know of the facts, (5) the defendant intended to induce the plaintiff to act or refrain from acting, and (6) the plaintiff relied and suffered damages.

42. When a party voluntarily makes a partial disclosure or communicates in a manner intended to induce reliance, a **duty to disclose the whole truth** arises. See *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001). **Exhibit-A. Exhibit-B.**

43. Here, Defendant Columbia Debt Recovery, LLC, had both a **common law and statutory duty** to disclose whether it owned, was assigned, or had any legal authority to collect on the alleged debt when it received a formal **written dispute and demand for verification** from Plaintiff pursuant to **15 U.S.C. § 1692g(b)** of the **Fair Debt Collection Practices Act (FDCPA)** and **15 U.S.C. § 1681i and § 1681s-2(b)** of the **Fair Credit Reporting Act (FCRA)**.

    a. **15 U.S.C. § 1692g(b)** requires that upon receipt of a consumer's written dispute, a debt collector "shall cease collection... until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor."

    b. **15 U.S.C. § 1681s-2(b)** mandates that, after notice of a dispute, the furnisher of credit information must "conduct an investigation with respect to the disputed information," "review all relevant information provided by the consumer reporting agency," and "report the results of the investigation to the consumer reporting agency."

    c. **Tex. Fin. Code § 392.202(a)** provides that a consumer may dispute the accuracy of a debt and request correction; subsection (b) imposes a duty on the debt collector to investigate and notify the consumer of results within 30 days.

44. In response to Plaintiff's formal notice dated April 1, 2025, Defendant produced a contract between Plaintiff and a third-party entity, **Kennect Phoenix**, which neither referenced

Columbia Debt Recovery, LLC, nor contained any assignment, bill of sale, or legal transfer of interest. Defendant failed to disclose that it lacked privity of contract and had no valid creditor status — facts which were material and exclusively within Defendant's knowledge.

45. Despite the absence of ownership or legal authority to collect, Defendant continued to report the alleged debt to one or more consumer reporting agencies, thereby inducing Plaintiff to refrain from further legal action or additional dispute filings, and causing harm including lost business opportunity exceeding $117,000 and reputational injury. **Exhibit-E. Exhibit-B.**

46. This nondisclosure was knowing and intentional. By providing partial documentation without full disclosure of its lack of legal standing or debt ownership, Defendant triggered a duty to disclose the whole truth under Texas law. See *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997). ***SPEP Aircraft Holdings, LLC et al. v. Bombardier Aerospace Corporation***, Cause No. DC-12-14739, in the 44th Judicial District Court of Dallas County, Texas. ***Bombardier Aerospace Corporation v. SPEP Aircraft Holdings, LLC, et al.***, Cause No. 05-16-00086-CV, Fifth Court of Appeals, Dallas, Texas. **Exhibit-C. Exhibit-B.**

47. Plaintiff respectfully requests judgment against Defendant for actual damages, consequential damages, punitive and exemplary damages, pre- and post-judgment interest, and all costs of court. **Exhibit-A. Exhibit-B. Exhibit-C. Exhibit-D. Exhibit-E.**

48. WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully avers that the foregoing causes of action—each independently and collectively—establish Defendant's knowing, willful, and unlawful conduct under Texas and federal law, including but not limited to the Texas Debt Collection Act, Texas Deceptive Trade Practices Act, Fair Credit Reporting Act, Fair Debt Collection Practices Act, and Texas common law principles of fraud and non-disclosure.

## IV.   DAMAGES

**49.** As a result of Defendants actions and omissions as set forth herein, Plaintiffs sustained the

following damages, for which Plaintiffs seek judgment against Defendants:

    a.   Actual damages in the amount of $117,000.00

    b.   Statutory Damages;

    c.   Exemplary Punitive damages;

    d.   Pre-judgment penalty and post judgment interest; and

    e.   Reasonable expenses and costs of court.

## V.   EXEMPLARY DAMAGES

**50.** Additionally, Plaintiff would show that Defendants actions were intentional, fraudulent,

malicious, and in bad faith, justifying the imposition of exemplary damages against

Defendants.

## VI.   CONDITIONS PRECEDENT SATISFIED

**51.** Plaintiff has fully or substantially performed all acts necessary to perfect and establish all

claims and causes of action asserted in this lawsuit.

**52.** All conditions precedent to Plaintiff's right to recover on any of the claims and causes of

action asserted in this lawsuit have been discharged, satisfied or fully performed.

## VII.   RULE 47 STATEMENT

**53.** Pursuant to Rule 47(b) of the Texas Rules of Civil Procedure, damages are within he

jurisdictional limits of this Court. Further, Plaintiff is required by Rule 47(c) to state the

dollar amount of damages that represent Plaintiff's harms and losses due to Defendant's

conduct. The legislative history of this requirement indicates that it is for record-keeping

purposes, and statistical purposes only, for lawsuits filed in the State of Texas. Plaintiff's

counsel states that Plaintiff seeks monetary relief, of which the maximum harms, losses, and

damages of any type are less than $200,000 at this time. The amount of monetary relief

actually accessed by the Honorable Judge, however, will ultimately be determined by the

fact-finder after hearing all the evidence presented.

## VIII. NON-JURY TRIAL

**54.** The Plaintiff hereby requests a non-jury trial, trial by Honorable Judge pursuant to Rule 216

of Texas Rules of Civil Procedure. Furthermore, Plaintiff respectfully reserves their right to a

jury trial in this matter should such be deemed appropriate at a latter stage.

## IX. PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs respectfully pray that Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendants as follows:

a) Upon trial, judgment against Defendants for the full amount of Plaintiffs' actual damages

   (past, future, special, direct) and Statutory damages as found by the trier of facts;

b) Exemplary Punitive damages as found by the trier of facts;

c) Prejudgment and post-judgment interest at the highest lawful rates in Harris County,

   Texas.

d) All costs of court;

e) Any and all further relief to which Plaintiff may be entitled at law or in equity.

Respectfully Submitted,

*Andrew Roach*

Andrew Roach, Plaintiff, Pro Se,

2917 Lake Forest Dr, Upper Marlboro, MD 20774

P: 424-420-5550 / drewroach37@gmail.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a correct, true and full copy of the foregoing has been served on all Parties, in

this Cause, in this action.

Respectfully Submitted,

*Andrew Roach*

Andrew Roach, Plaintiff, Pro Se,

2917 Lake Forest Dr, Upper Marlboro, MD 20774

P: 424-420-5550 / drewroach37@gmail.com

To Whom It May Concern,                                                **April 1, 2025**

**Columbia Debt Recovery**
906 SE Everett Mall Way, #301,

Everett, WA 98208 United States

**TransUnion LLC**
P.O. Box 2000
Chester, PA 19016

**Equifax Information Services LLC**
P.O. Box 740256
Atlanta, GA 30374

**Experian Information Solutions, Inc.**
P.O. Box 4500
Allen, TX 75013

<u>**FORMAL DEMAND TO CEASE AND DESIST AND PRODUCTION OF SWORN DOCUMENTS**</u>

1. To the above styled and named parties: This letter serves as a **formal Cease and Desist Notice** and **Demand for Production of Verified Documentation** under applicable **federal statutes and regulatory frameworks**, sent via certified mail and registered email to you by **Andrew Roach**, hereinafter referred to as ("Plaintiff" "Roach" "Consumer"), write to dispute the validity and legality of information being reported to credit reporting agencies by **Columbia Debt Recovery hereinafter referred to as but not limited to ("Columbia" "Defendant" "CDR"),** and to demand that all unlawful and inaccurate activity cease **immediately** pending legal action.

2. These discrepancies are not only material but reflect inconsistencies that violate FCRA's requirement for **maximum possible accuracy** under **15 U.S.C. § 1681e(b)**. The consumer has not authorized such reporting, and any activity related to this account is **hereby disputed in whole and in part.** *Fair Credit Reporting Act* (15 U.S.C. § 1681 et seq.), the *Fair Credit Billing Act* (15 U.S.C. § 1666), the *Fair Debt Collection Practices Act* (15 U.S.C. § 1692), and *Federal Trade Commission* (FTC) regulations, *Fair Credit Reporting Act*, FCRA, *Fair Credit Billing Act*, FCBA, U.S. Code Title 15, 16.81 (a)(b)(c)(d) i.ii/ U.S. Code Title 1692 (b)(d), governing consumer reporting and billing disputes.

**DEMAND FOR SWORN VERIFICATION & PRODUCTION**

Pursuant to **15 U.S.C. § 1692g(b)** and related federal regulations, you are **hereby ordered to provide** the following documentation **within thirty (30) calendar days** of receipt of this notice:

a. **The Original Instrument of Indebtedness** bearing the original **wet-ink** signature of *alleged Debtor* (Andrew Roach) and *alleged Creditor* (COLUMBIA DEBT RECOVERY).

b. A full and complete **Statement of Work (SOW), Account Terms, and Conditions** *alleged* to have been agreed upon;

c. **Sworn and notarized verification of each debt**, itemized transaction history, and billing records;

d. Documentation evidencing the **lawful acquisition and use** of the consumer's **Personally Identifiable Information (PII)** under **15 U.S.C. § 1681b** and **15 U.S.C. § 6801.**

e. Additionally, I request confirmation that no PII (including my Social Security Number, Passport, or Military ID) has been accessed, disseminated, or sold to any unauthorized parties.

**CEASE AND DESIST FROM REPORTING INACCURATE INFORMATION AND VIOLATING FAIR CREDIT REPORTING ACT, FEDERAL TRADE COMMISSION**

You are formally instructed to **immediately cease and desist** from disseminating, reporting, or verifying any information related to this tradeline to any third party—including but not limited to **TransUnion, Equifax, Experian, LexisNexis**, and all other consumer data aggregators—unless and until you provide documented, verifiable sworn evidence of:

- A **lawful permissible purpose**, and
- A **valid, executed agreement** creating a legal debt obligation.

Failure to comply constitutes a knowing and willful violation of federal law and will expose your organization to **civil liability**, including statutory damages, attorney's fees, and injunctive relief under **15 U.S.C. §§ 1681n, 1681o, and 1666(e).**

As required by the FCRA and FCBA, please update your records to reflect my **true and correct personal and legal information**, and remove any unauthorized or incorrect data not expressly listed below:

- **Full Legal Name:** Andrew D. Roach
- **Residential Address:** 355 N. Central Ave, Apt 1201A, Phoenix, AZ 85004

- **Legal Service Address:** 2900 N. Braeswood Blvd, Apt 2411, Houston, TX 77025
- **Date of Birth:** 07/15/1995

### NOTICE OF PENDING LEGAL ACTION. MAY 1ST. 2025

If the above-mentioned records are *not produced within the thirty (30) days* prescribed by law, **legal action will be initiated without further notice** in **Harris County, Texas,** which maintains jurisdiction over the Plaintiff and relevant parties. Be advised this letter constitutes legal notice and will be maintained as an official record of the Plaintiff's efforts to resolve this dispute administratively and in good faith. All Legal Correspondence should be provided or delivered to:

- 2900 N. Braeswood Blvd, Apt 2411, Houston, TX 77025

**Plaintiff disputes the entire balance in whole and/ or in part. Plaintiff demands production, validation, and**

[See below. Kindly be advised this communication from active Legal Counsel/ Notarization.]

**Best Regards,**

ANDREW ROACH
Notary Public, State of Texas
Comm. Expires 11-02-2027
Notary ID 134630531

 AMA

US POSTAGE
quadient
FIRST-CLASS MAIL
IMI
$000.69
04/29/2025 ZIP 98209
043M30266363

SEATTLE WA 980
30 APR 2025 AM 4

PO BOX 3630
EVERETT, WA 98213

77025-237111

APARTMENT LEASE CONTRACT

NAA

...ng document. Read carefully before signing.

...r Charges) and 49 (Deposit Return; Surrender
...ke security deposit return information.

...of this Lease Contract Management may use
...able security deposit in accordance with any
...ms of the property management agreement.
...n of the tenancy. Resident's security deposit
...l to Resident consistent with Arizona law.

...posit is held by the property owner. However,
...u vacate your apartment, all Security Deposit
...e processed by Management on behalf of the
...in accordance with the terms of your lease and

...provided 0 apartment key(s), 1
1 FOB(s), and/or 0 other access
to the building and amenities at no additional
the key, FOB, or other access device is lost or
during your tenancy or is not returned or is
when you move out, you will be responsible for
...placement and/or repair of the same.

...ES. Unless modified by addenda, your base
12.25 per month ("base rent"). Your base
...thly charges identified in "Description of Rent
...e referred to as "rent" throughout the remainder
...ract and are payable in advance and without

...anager's office, or
...ayment site, or
...ntral Ave., Phoenix AZ 85004

...RENT ELEMENTS:

| | |
|---|---|
| ...e Rent | $ 1412.25 |
| Concession | |
| ...tion to Monthly Base Rent) | $ 0.00 |
| | $ 32.48 |
| ...des applicable tax) | $ 0 |
| ...nt (includes applicable tax) | $ 0.00 |
| ...includes applicable tax) | $ 0.00 |
| ...s (includes applicable tax) | $ 0.00 |
| ...ther) | |
| | $ 0.00 |
| | $ 0.00 |
| | $ 0.00 |
| ...E AND PAYABLE MONTHLY: | $ 1444.73 |

423.68 is due for the remainder of [check
...or ☐ 2nd month, on

...ust pay your rent on or before the 1st day of each
...with no grace period. Cash is unacceptable without
...permission. You must not withhold or offset rent
...d by statute. We may, at our option, require at any
...ll rent and other sums in cash, certified or cashier's
...fer, or one monthly check rather than multiple
...pretion, we may convert any and all checks to ACH
of collecting payment. Rent is not considered
...ment/ACH is rejected, does not clear, or is stopped
...you don't pay all rent on or before the 5th
you'll pay a late charge. Your late charge will be
...at rate of $ 50.00 or ☐ 1 % of
...y rent payment to be charged on the 5th day
...nt and other charges under this lease are unpaid.
...harge of $ 25.00 for each returned check
...onic payment, plus a late charge. If you don't pay
...ll be delinquent and all remedies under this Lease
...uthorized. We'll also have all other remedies for
...sident is responsible for all rental taxes, and will
...s in all rental taxes upon 30 days written notice

...hat levies a transaction privilege tax on residential
...percentage of that tax, then we, upon thirty days'

© 2021, National Apartment Association, Inc. - 9/2021, Arizona

Blue Moon eSignature Services Document ID: 346666363

**AMA**    **APARTMENT LEASE CONTRACT**     **NAA**

Date of Lease Contract: __November 18, 2022__
(when the Lease Contract is filled out)    *This is a binding document. Read carefully before signing.*

**Moving In—General Information**

**1. PARTIES.** This Lease Contract (sometimes referred to as the "lease") is between *you*, the resident(s) (list all people signing the Lease Contract):

__Andrew Roach__

and *us*, the owner: __AP 355 N. Central Property, LLC__

*(name of apartment community or title holder)*. You've agreed to rent Apartment No. __1201A__ at __Kenect Phoenix__

*(street address)* in __Phoenix__
*(city)*, Arizona, __85004__ *(zip code)* (the "apartment" or the "premises") for use as a private residence only. The terms "you" and "your" refer to all residents listed above. The terms "we," "us," and "our" refer to the owner listed above (or any of owner's successors' in interest or assigns). Written or electronic notice to or from our managers constitutes notice to or from us. If anyone else has guaranteed performance of this Lease Contract, a separate Lease Contract Guaranty for each guarantor is attached.

**2. OCCUPANTS.** The apartment will be occupied only by you and *(list all other occupants not signing the Lease Contract)*:

__No Additional Occupants__

No one else may occupy the apartment. Persons not listed above must not stay in the apartment for more than __3__ consecutive days without our prior written consent, and no more than twice that many days in any one month. *If the previous space isn't filled in, two days per month is the limit.*

**3. LEASE TERM.** The initial term of the Lease Contract begins on the __22nd__ day of __November__, __2022__, and ends at 11:59 pm the __22nd__ day of __September__, __2023__.

**Renewal.** This Lease Contract will automatically renew month-to-month unless either party gives at least __60__ days written notice of termination or intent to move-out as required by paragraph 44 (Move-Out Notice). If the number of days isn't filled in, at least 30 days notice is required.

**4. SECURITY DEPOSIT.** Unless modified by addenda, the total security deposit at the time of execution of this Lease Contract for all residents in the apartment is $ __0.00__ refundable deposit and $ __0.00__ non-refundable deposit, due on or before the date this Lease Contract is signed. The above non-refundable security deposit is for the following purposes:

__n/a__

All of the above deposits together do not exceed one and one-half times the monthly rent. See paragraphs 4B (Security Deposit

Deductions and Other Charges) and 49 (Deposit Return, Surrender and Abandonment) for security deposit return information.

☒ During the term of this Lease Contract Management may use Resident's refundable security deposit in accordance with any applicable provisions of the property management agreement. At the conclusion of the tenancy Resident's security deposit shall be refunded to Resident consistent with Arizona law.

☒ The Security Deposit is held by the property owner. However, in the event you vacate your apartment, all Security Deposit refunds will be processed by Management on behalf of the property owner in accordance with the terms of your lease and applicable law,

**5. KEYS.** You will be provided __0__ apartment key(s), __1__ mailbox key(s), __1__ FOB(s), and/or __0__ other access device(s) for access to the building and amenities at no additional cost at move-in. If the key, FOB, or other access device is lost or becomes damaged during your tenancy or is not returned or is returned damaged when you move out, you will be responsible for the costs for the replacement and/or repair of the same.

**6. RENT AND CHARGES.** Unless modified by addenda, your base rent will be $ __1412.25__ per month ("base rent"). Your base rent and other monthly charges identified in "Description of Rent Elements" below are referred to as "rent" throughout the remainder of this Lease Contract and are payable in advance and without demand:

☒ at the on-site manager's office, or
☒ at our online payment site, or
☒ at __355 N Central Ave, Phoenix AZ 85004__

**DESCRIPTION OF RENT ELEMENTS:**

| | |
|---|---|
| Monthly Stated Base Rent | $ __1412.25__ |
| Monthly Discount/Concession | |
| (represents a reduction in Monthly Base Rent) | $ __0.00__ |
| Rental Tax | $ __32.48__ |
| Animal Rent (includes applicable tax) | $ __0__ |
| Garage/Carport Rent (includes applicable tax) | $ __0.00__ |
| Storage Unit Rent (includes applicable tax) | $ __0.00__ |
| Parking Space Rent (includes applicable tax) | $ __0.00__ |
| Additional Rent (Other) | |
| • n/a | $ __0.00__ |
| • n/a | $ __0.00__ |
| • n/a | $ __0.00__ |

**TOTAL RENT DUE AND PAYABLE MONTHLY:** $ __1444.73__

Prorated rent of $ __423.68__ is due for the remainder of *[check one]*: ☒ 1st month or ☐ 2nd month, on _____

Otherwise, you must pay your rent on or before the 1st day of each month (due date) with no grace period. Cash is unacceptable without our prior written permission. You must not withhold or offset rent unless authorized by statute. We may, at our option, require at any time that you pay all rent and other sums in cash, certified or cashier's check, money order, or one monthly check rather than multiple checks. At our discretion, we may convert any and all checks to ACH for the purposes of collecting payment. Rent is not considered accepted if the payment/ACH is rejected, does not clear, or is stopped for any reason. If you don't pay all rent on or before the __5th__ day of the month, you'll pay a late charge. Your late charge will be *(check one)*: ☒ a flat rate of $ __50.00__ or ☐ __1__ % of your total monthly rent payment to be charged on the __5th__ day thereafter that rent and other charges under this lease are unpaid. You'll also pay a charge of $ __25.00__ for each returned check or rejected electronic payment, plus a late charge. If you don't pay rent on time, you'll be delinquent and all remedies under this Lease Contract will be authorized. We'll also have all other remedies for such violation. Resident is responsible for all rental taxes, and will pay any increases in all rental taxes upon 30 days written notice from landlord.

If a municipality that levies a transaction privilege tax on residential rent changes the percentage of that tax, then we, upon thirty days'

© 2021, National Apartment Association, Inc. - 9/2021, Arizona    Page 1 of 8
☑ Blue Moon eSignature Services Document ID: 346566363

written notice to you, may adjust the amount of rent due to equal the difference caused by the new percentage amount of the tax. The adjustment to rent shall not occur before the date upon which the new tax is effective. All payment obligations under this Lease Contract shall constitute rent under this Lease Contract.

**REPLACEMENT COSTS**
(If not paid immediately, these charges shall be due and payable with the next monthly rent):

| | | |
|---|---|---|
| Replacement Access Fob | $ | 75.00 |
| Replacement Remote | $ | 75.00 |
| Replacement Keys | $ | 25.00 |
| Other: Mailbox Key | $ | 25.00 |
| Other: Pool Pass Residential | $ | 25.00 |
| Other: Pool Pass Guest (2) | $ | 50.00 |

**7. UTILITIES.** We'll pay for the following items, if checked:
☐ water   ☐ gas   ☐ electricity   ☐ masterantenna
☐ wastewater   ☐ trash   ☐ cable TV
☐ other n/a

You'll pay for all other utilities, related deposits, and any charges, fees, or services on such utilities. You must not allow utilities to be disconnected for any reason—including disconnection for not paying your bills—until the lease term or renewal period ends. Cable channels that are provided may be changed during the Lease Contract term if the change applies to all residents. Utilities may be used only for normal household purposes and must not be wasted. If your electricity is ever interrupted, you must use only battery-powered lighting. If any utilities are submetered for the apartment, or prorated by an allocation formula, we will attach an addendum to this Lease Contract in compliance with state agency rules or city ordinance. If you fail to transfer all utilities for which you are responsible under this Lease Contract into your name, we may give you 10 days notice of default as described in the "Other Default" section in Paragraph 32 (Default by Resident), and if you have failed to transfer the utilities into your name at the end of that 10-day period, we may disconnect utilities without further notice to you.

**8. INSURANCE.** We do not maintain insurance to cover your personal property or personal injury. We are not responsible to any resident, guest, or occupant for damage or loss of personal property or personal injury from (including but not limited to) fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, hurricane, negligence of other residents, occupants, or invited/uninvited guests or vandalism unless otherwise required by law.

In addition, we urge all Tenants, and particularly those residing in coastal areas, areas near rivers, and areas prone to flooding, to obtain flood insurance. Renter's insurance may not cover damage to your property due to flooding. A flood insurance resource which may be available includes the National Flood Insurance Program managed by the Federal Emergency Management Agency (FEMA).

We ☒ require ☐ do not require you to get your own insurance for losses to your personal property or injuries due to theft, fire, water damage, pipe leaks and the like.

If renter's insurance is required, you shall maintain at all times during the Term of this Lease, at your sole expense, a renter's insurance policy, or its equivalent, issued by a licensed insurance company in a minimum policy coverage amount of $ 100000.00 , and you shall provide us with proof of such insurance to our satisfaction.

If no box is checked, renter's insurance is not required.

Additionally, you are *(check one)* ☒ required to purchase personal liability insurance ☐ not required to purchase personal liability insurance. If no box is checked, personal liability insurance is not required. If required, failure to maintain personal liability insurance throughout your tenancy, including any renewal periods and/or lease extensions, may be an incurable breach of this Lease Contract and may result in the termination of tenancy and eviction and/or any other remedies as provided by this Lease Contract or state law.

You acknowledge that no portion of the rent paid by you under this agreement will be applied to the owner's structural fire insurance and that you are in no way a co-insured under such policy, and that, in order to reduce the cost of insurance, the Owner has chosen to purchase fire and extended coverage insurance for the property for which the above rental agreement applies, with a deductible in the amount of $ 25000.00 . If you or any member of your household, guest or invitee causes damages to the premises in an amount that is less than the amount of this insurance deductible, you agree to indemnify and reimburse the Owner for the amount of such damages, and that you may be liable for costs in excess of the deductible under any subrogation clause of the said policy. It is recommended that you secure insurance to protect your interest in the event of such a loss.

**9. LOCKS AND LATCHES.** Keyed lock(s) will be rekeyed after the prior resident moves out. The rekeying will be done before you move into your apartment.

You may at any time ask us to change or rekey locks or latches during the Lease Term. We must comply with these requests, but you must pay for them, unless otherwise provided by law.

Payment for Rekeying, Repairs, Etc. You must pay for all repairs or replacements arising from misuse or damage to devices by you or your occupants, or guests during your occupancy. You may be required to pay in advance if we notify you within a reasonable time after your request that you are more than 30 days delinquent in reimbursing us for repairing or replacing a device which was misused or damaged by you, your guest or an occupant; or if you have requested that we repair or change or rekey the same device during the 30 days preceding your request and we have complied with your request. Otherwise, you must pay immediately after the work is completed.

## Special Provisions and What If Clauses

**10. SPECIAL PROVISIONS.** The following special provisions and any addenda or written rules furnished to you at or before signing will become a part of this Lease Contract and will supersede any conflicting provisions of this printed Lease Contract form.

See Additional Special Provisions

_____
_____
_____
_____

See any additional special provisions.

**11. REIMBURSEMENT.** You must promptly reimburse us for loss, damage, government fines, or cost of repairs or service in the apartment community due to a violation of the Lease Contract or rules, improper use, or negligence by you or your guests or occupants. Unless the damage or wastewater stoppage is due to our negligence, we're not liable for—and you must pay for—repairs, replacement costs, and damage to the following that result from you or your invitees, guests, or occupants' negligence or intentional acts: (1) damage to doors, windows, or screens; (2) damage from window- or doors left open; and (3) damage from wastewater stoppages caused by improper objects in lines exclusively serving your apartment. We may require payment at any time, including advance payment of repairs for which you're liable. Delay in demanding sums you owe is not a waiver.

**12. PROPERTY LEFT IN APARTMENT.**
Removal after Surrender. Upon termination of your tenancy, you agree to return all keys and physically vacate the apartment and remove all of your personal property. If you fail to remove your personal property at the time you return possession to the landlord and return all keys, we may throw away, give away, or otherwise dispose of any personal property left in the apartment unless an agreement in writing is otherwise negotiated.

Removal after Abandonment, Judicial Eviction or Other Means. When we retake possession of your unit, whether following abandonment, judicial eviction, or any other method other than your voluntary surrender of the apartment unit, we may store any personal possessions you've left in the abandoned unit. We will notify you of the location of your stored property by certified mail, return receipt requested to your last known address and to any other known addresses.

We will store your personal property for 14 calendar days after our notification to you of your abandonment. After this time, we may sell the property, retain the proceeds, and apply them towards the outstanding delinquencies. We will mail you any excess proceeds to your last known address. However, if we determine that the value of the property is less than it would cost to store and move said personal property, we may throw away, give away to charity, or otherwise dispose of some or all of the property. Any animal that is left in the apartment may be transported, at our discretion, to a shelter or boarding facility. In such an event, we will maintain records of the name and location of the facility to which the animal was removed. In addition, we may dispose of perishable items or those items that are either contaminated or a biohazard as we deem fit.

If you request access to your personal property and offer to pay for the storage and/or removal costs in writing, we will provide access to your personal property within five days of receipt of your offer and upon delivery of the payment of those costs.

**13. FAILING TO PAY FIRST MONTH'S RENT.** If you don't pay the first month's rent when or before the Lease Contract begins, all future rent will be automatically accelerated without notice and immediately due. We also may end your right of occupancy and recover damages, future rent, attorney's fees, court costs, and other lawful charges. Our rights and remedies under paragraph 32 (Default by Resident) apply to acceleration under this paragraph.

**14. RENT INCREASES AND LEASE CONTRACT CHANGES.** No rent increases or Lease Contract changes, except as allowed under the terms of paragraph 6 (Rent and Charges) and elsewhere in this Lease Contract, are allowed before the initial Lease Contract term ends, except for changes allowed by any special provisions in paragraph 10 (Special Provisions), by a written addendum or amendment signed by you and us, or by reasonable changes of apartment rules allowed under paragraph 18 (Community Policies or Rules). If, at least 5 days before the advance notice deadline referred to in paragraph 3 (Lease Term), we give you written notice of rent increases or lease changes effective when the lease term or renewal period ends, this Lease Contract will automatically continue month-to-month with the increased rent or lease changes. The new modified Lease Contract will begin on the date stated in the notice (without necessity of your signature) unless you give us written move-out notice under paragraph 44 (Move-Out Notice).

**15. DELAY OF OCCUPANCY.** If occupancy is or will be delayed for construction, repairs, cleaning, or a previous resident's holding over, we're not responsible for the delay. The Lease Contract will remain in force subject to: (1) abatement of rent on a daily basis during delay; and (2) your right to terminate as set forth below. Termination notice must be in writing. After termination, you are entitled only to refund of deposit(s) and any rent paid. Rent abatement or Lease Contract termination does not apply if delay is for cleaning or repairs that don't prevent you from occupying the apartment.

If there is a delay, you may terminate or exercise other remedies up to the date when the apartment is ready for occupancy, but not later, by the following methods: (1) You may terminate the Lease Contract upon 5 days advanced written notice; OR (2) You may maintain an action for possession of the dwelling in accordance with state law.

**16. AD VALOREM TAXES/FEES AND CHARGES - ADDITIONAL RENT.** Unless otherwise prohibited by law, if, during the term of this Agreement, any locality, city, state, or Federal Government imposes upon Us, any fee, charge, or tax, which is related to or charged by the number of occupants, or by the apartment unit itself, such that we are charged a fee, charge, or tax, based upon your use or occupancy of the apartment, we may add this charge as Additional Rent, during the term of the Lease Contract, with thirty (30) days advance written notice to you. After this written notice (the amount or approximate amount of the charge, will be included), you agree to pay, as Additional Rent, the amount of the charge, tax or fee imposed upon us, as a result of your occupancy. As examples, these charges can include, but are not limited to: any charges we receive for any zoning violation, sound, noise or litter charge; any charge under any nuisance or chronic nuisance type statute, 911 or other life safety, per person, or per unit charge or tax and any utility bill unpaid by you, which is then assessed to us for payment.

**While You're Living in the Apartment**

**17. DISCLOSURE RIGHTS.** If someone requests information on you or your rental history for law-enforcement, governmental, or business purposes, we may provide it.

**18. COMMUNITY POLICIES OR RULES.** You and all guests and occupants must comply with any written apartment rules and community policies, including instructions for care of our property. Our rules are considered part of this Lease Contract. We may make reasonable changes to written rules, upon 30 days written notice, if they are distributed and applicable to all units in the apartment community and do not change dollar amounts on page 1 of this Lease Contract.

Amenities. Amenities and their use are not guaranteed and may be closed, temporarily or permanently, at the sole and absolute discretion of the owner based on the business needs of the community or in response to any of the categories listed in Paragraph 41 (Force Majeure), without notice, obligation or recompense of any nature to Resident.

**19. LIMITATIONS ON CONDUCT.** The apartment and other areas reserved for your private use must be kept clean and free of trash, garbage, and other debris. Trash must be disposed of at least weekly in appropriate receptacles in accordance with local ordinances. Passageways may be used only for entry or exit. You agree to keep all passageways and common areas free of obstructions such as trash, storage items, and all forms of personal property. No person shall ride or allow bikes; skateboards, or other similar objects in the passageways. Any swimming pools, saunas, spas, tanning beds, exercise rooms, storerooms, laundry rooms, and similar areas must be used with care in accordance with apartment rules and posted signs. Glass containers are prohibited in all common areas. You, your occupants, or guests may not anywhere in the apartment community: use candles or use kerosene lamps or kerosene heaters without our prior written approval; cook on balconies or outside; or solicit business or contributions. Conducting any kind of business (including child care services) in your apartment or in the apartment community is prohibited—except that any lawful business conducted "at home" by computer, mail, or telephone is permissible if customers, clients, patients, or other business associates do not come to your apartment for business purposes. We may regulate: (1) the use of patios, balconies, and porches; (2) the conduct of furniture movers and delivery persons; and (3) recreational activities in common areas. You'll be liable to us for damage caused by you or any guests or occupants.

We may exclude from the apartment community guests or others who, in our judgment, have been violating the law, violating this Lease Contract or any apartment rules, or disturbing other residents, neighbors, visitors, or owner representatives. We may also exclude from any outside area or common area a person who refuses to

show photo identification or refuses to identify himself or herself as a resident, occupant, or guest of a specific resident in the community.

You agree to notify us if you or any occupants are convicted of any felony, or misdemeanor involving a controlled substance; violence to another person or destruction of property. You also agree to notify us if you or any occupant registers as a sex offender in any state. Informing us of criminal convictions or sex offender registry does not waive our right to evict you.

**20. PROHIBITED CONDUCT.** You, your occupants or guests, or the guests of any occupants, may not engage in the following activities: behaving in a loud or obnoxious manner; disturbing or threatening the rights, comfort, health, safety, or convenience of others (including our agents and employees) in or near the apartment community; disrupting our business operations; manufacturing, delivering, possessing with intent to deliver, or otherwise possessing a controlled substance or drug paraphernalia; engaging in or threatening violence; possessing a weapon prohibited by state law; discharging a firearm in the apartment community; displaying or possessing a gun, knife, or other weapon in the common area in a way that may alarm others; storing anything in closets having gas appliances; tampering with utilities or telecommunications; bringing hazardous materials into the apartment community; or injuring our reputation by making bad faith allegations against us to others.

**21. PARKING.** We may regulate the time, manner, and place of parking cars, trucks, motorcycles, bicycles, boats, trailers, and recreational vehicles by anyone. We may have unauthorized or illegally parked vehicles towed under an appropriate statute. A vehicle is unauthorized or illegally parked in the apartment community if it:

(1) has a flat tire or other condition rendering it inoperable; or
(2) is on jacks, blocks or has wheel(s) missing; or
(3) has no current license plate or no current registration and/or inspection sticker; or
(4) takes up more than one parking space; or
(5) belongs to a resident or occupant who has surrendered or abandoned the apartment; or
(6) is parked in a marked handicap space without the legally required handicap insignia; or
(7) is parked in space marked for manager, staff, or guest at the office; or
(8) blocks another vehicle from exiting; or
(9) is parked in a fire lane or designated "no parking" area; or
(10) is parked in a space marked for other resident(s) or unit(s); or
(11) is parked on the grass, sidewalk, or patio; or
(12) blocks garbage trucks from access to a dumpster; or
(13) belongs to a resident and is parked in a visitor or retail parking space.

**22. RELEASE OF RESIDENT.** Unless you're entitled to terminate your tenancy under paragraphs 10 (Special Provisions), 15 (Delay of Occupancy), 31 (Responsibilities of Owner), or 44 (Move-Out Notice), you won't be released from this Lease Contract for any reason—including but not limited to voluntary or involuntary school withdrawal or transfer, voluntary or involuntary job transfer, marriage, separation, divorce, reconciliation, loss of co-residents, loss of employment, bad health, or death.

**23. MILITARY PERSONNEL CLAUSE.** All parties to this Lease Contract agree to comply with any federal law, including, but not limited to the Service Member's Civil Relief Act, or any applicable state law(s). If you are seeking to terminate this Lease Contract and/or subsequent renewals and/or Lease Contract extensions under the rights granted by such laws.

**24. RESIDENT SAFETY AND PROPERTY LOSS.** You and all occupants and guests must exercise due care for your own and others' safety and security, especially in the use of smoke detectors and carbon monoxide detectors, keyed deadbolt locks, keyless bolting devices, window latches, and access control devices.

**Smoke Detectors and Carbon Monoxide Detectors.** We'll furnish smoke detectors and carbon monoxide detectors only if required by statute, and we'll test them and provide working batteries when you first take possession. After that, you must test the smoke detectors and the carbon monoxide detectors on a regular basis, and pay for and replace batteries as needed, unless the law provides otherwise. We may replace dead or missing batteries at your expense, without prior notice to you. You must immediately report smoke-detector and carbon monoxide detector malfunctions to us. Neither you nor others may disable neither the smoke detectors nor the carbon monoxide detectors. If you damage or disable the smoke detector or carbon monoxide detector or remove a battery without replacing it with a working battery, you may be liable to us under state statute for $100 plus one month's rent, actual damages, and attorney's fees. If you disable or damage the smoke detector or the carbon monoxide detector, or fail to replace a dead battery or report malfunctions to us, you will be liable to us and others for any loss, damage, or fines from fire, smoke, or water.

**Casualty Loss.** We're not liable to any resident, guest, or occupant for personal injury or damage or loss of personal property from any cause, including but not limited to: fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, or vandalism unless otherwise required by law. During freezing weather, you must ensure that the temperature in the apartment is sufficient to make sure that the pipes do not freeze (the appropriate temperature will depend upon weather conditions and the size and layout of your unit). If the pipes freeze or any other damage is caused by your failure to properly maintain the heat in your apartment, you'll be liable for damage to our and other's property. If you ask our representatives to perform services not contemplated in this Lease Contract, you will indemnify us and hold us harmless from all liability for these services.

**Crime or Emergency.** Dial 911 or immediately call local medical emergency, fire, or police personnel in case of accident, fire, smoke, or suspected criminal activity, or other emergency involving imminent harm. You should then contact our representative. We're not obliged to furnish security personnel, security lighting, security gates or fences, or other forms of security. If we provide any access control devices or security measures upon the property, they are not a guarantee to prevent crime or to reduce the risk of crime on the property. You agree that no access control or security measures can eliminate all crime and that you will not rely upon any provided access control or security measures as a warranty or guarantee of any kind. We're not responsible for obtaining criminal-history checks on any residents, occupants, guests, or contractors in the apartment community. If you or any occupant or guest is affected by a crime, you must make a written report to our representative and to the appropriate local law-enforcement agency. You also must furnish us with the law-enforcement agency's incident report number upon request.

**25. CONDITION OF THE PREMISES AND ALTERATIONS.** You accept the apartment, fixtures, and furniture as is, except for conditions materially affecting the health or safety of ordinary persons. We disclaim all implied warranties. You'll be given an inventory and Condition form on or before move-in. You must note on the form all defects or damage and return it to our representative. Otherwise, everything will be considered to be in a clean, safe, and good working condition.

You must use customary diligence in maintaining the apartment and not damaging or littering the common areas. Unless authorized by statute or by us in writing, you must not perform any repairs, painting, wallpapering, carpeting, electrical changes, or otherwise alter your property. No holes or stickers are allowed inside or outside the apartment. But we'll permit a reasonable number of small nail holes for hanging pictures on sheetrock walls and in grooves of wood-paneled walls, unless our rules state otherwise. No water furniture, washing machines, additional phone or TV-cable outlets, alarm systems, or lock changes, additions, or rekeying is permitted unless statutorily allowed or we've consented in writing. You may install a satellite dish or antenna provided you sign our satellite dish or antenna lease addendum which complies with reasonable restrictions allowed by federal law. You agree not to alter, damage, or remove our property, including alarm systems, smoke detectors and carbon monoxide detectors, furniture, telephone and cable TV wiring, screens, locks, and access control devices. When you move in, we'll supply light bulbs for fixtures we furnish, including exterior fixtures operated from inside the apartment; after that, you'll replace them at your expense with bulbs of the same type and wattage. Your improvements to the apartment (whether or not we consent) become ours unless we agree otherwise in writing.

**26. REQUESTS, REPAIRS, AND MALFUNCTIONS.** IF YOU OR ANY OCCUPANT NEEDS TO SEND A NOTICE OR REQUEST—FOR EXAMPLE, FOR REPAIRS, INSTALLATIONS, SERVICES, OR SECURITY-RELATED MATTERS—IT MUST BE SUBMITTED THROUGH EITHER THE ONLINE TENANT/MAINTENANCE PORTAL, OR SIGNED AND IN WRITING AND DELIVERED TO OUR DESIGNATED REPRESENTATIVE (except in case of fire, smoke, gas, explosion, overflowing sewage, uncontrollable running water, electrical shorts, or crime in progress). Our written notes on your oral request do not constitute a written request from you.

Our complying with or responding to any oral request regarding security or non-security matters doesn't waive the strict requirement for written notices under this Lease Contract. You must promptly notify us in writing of: water leaks; electrical problems; malfunctioning lights; broken or missing locks or latches; and other conditions that pose a hazard to property, health, or safety. We may change or install utility lines or equipment serving the apartment if the work is done reasonably without substantially increasing your utility costs. We may turn off equipment and interrupt utilities as needed to avoid property damage or to perform work. If utilities malfunction or are damaged by fire, water, or similar cause, you must notify our representative immediately. If air conditioning or other equipment malfunctions, you must notify our representative as soon as possible on a business day. We'll act with customary diligence to make repairs and reconnections. Rent will not abate in whole or in part.

If we believe that fire or catastrophic damage is substantial, or that performance of needed repairs poses a danger to you, we may terminate your tenancy within a reasonable time by giving you written notice. If your tenancy is so terminated, we'll refund prorated rent and all deposits, less lawful deductions.

**27. ANIMALS.** Unless otherwise provided under federal, state, or local law, no animals (including mammals, reptiles, birds, fish, rodents, and insects) are allowed, even temporarily, anywhere in the apartment or apartment Community unless we've so authorized in writing. You must remove an illegal or unauthorized animal within 24 hours of notice from us, or you will be considered in default of this Lease Contract. If we allow an animal as a pet, you must execute a separate animal addendum which may require additional deposits, rents, fees or other charges. An animal deposit is considered a general security deposit. We will authorize an assistance animal for a disabled person. When allowed by applicable laws, before we authorize an assistance animal, if the disability is not readily apparent, we may require a written statement from a qualified professional verifying the disability-related need for the assistance animal. If we authorize an assistance animal, we may require you to execute a separate animal and/or assistance animal addendum. Animal deposits, additional rents, fees or other charges will not be required for an assistance animal needed due to disability, including an emotional support or service animal, as authorized under federal, state, or local law. You must not feed stray or wild animals.

If you or any guest or occupant violates animal restrictions (with or without your knowledge), you'll be subject to charges, damages, eviction, and other remedies provided in this Lease Contract. If an animal has been in the apartment at any time during your term of occupancy (with or without our consent), we'll charge you for defleaing, deodorizing, and shampooing. Initial and daily animal-violation charges and animal-removal charges are liquidated damages for our time, inconvenience, and overhead (except for attorney's fees and litigation costs) in enforcing animal restrictions and rules. We may remove an unauthorized animal by (1) leaving, in a conspicuous place in the apartment, a 24-hour written notice of intent to remove the animal, and (2) following the procedures of paragraph 28 (When We May Enter). We may keep or kennel the

© 2021, National Apartment Association, Inc. - 9/2021, Arizona
Blue Moon eSignature Services Document ID: 346566363

animal or turn it over to a humane society or local authority. When keeping or kenneling an animal, we won't be liable for loss, harm, sickness, or death of the animal unless due to our negligence. We'll return the animal to you upon request if it has not already been turned over to a humane society or local authority. You must pay for the animal's reasonable care and kenneling charges. We have no lien on the animal for any purpose.

**28. WHEN WE MAY ENTER.** Except in case of emergency or when it is impractical to do so, landlord will give at least 2-day advance written notice of any entry into an apartment. This notice may be hand delivered to someone in the apartment, or may be sent certified or registered mail. If notice is sent by mail, it is deemed received 5 days after mailing or the day the person receives the mail, whichever occurs first. Notice to us of a service or maintenance request automatically grants us the authority to enter the apartment at all reasonable times for the purpose of that request. We have the right to enter in case of emergencies and, subject to notice requirements, in cases where entry is for: responding to our request; making repairs or replacements; estimating repair or refurbishing costs; performing pest control; doing preventive maintenance; changing filters; testing or replacing smoke-detector batteries or carbon monoxide detector batteries; retrieving unreturned tools, equipment or appliances; preventing waste of utilities; exercising our contractual lien; leaving notice; delivering, installing, reconnecting, or replacing appliances, furniture, equipment, or access control devices; removing or rekeying unauthorized access control devices; removing unauthorized window coverings; stopping excessive noise; removing

health or safety hazards (including hazardous materials); or items prohibited under our rules; removing perishable foodstuffs if your electricity is disconnected; removing unauthorized animals; cutting off electricity according to statute; retrieving property owned or leased by former residents; inspecting when immediate danger to person or property is reasonably suspected; allowing persons to enter as you authorized in your rental application (if you die, are incarcerated, etc.); allowing entry by a law officer with a search or arrest warrant, or in hot pursuit; showing apartment to prospective residents (after move-out or vacate notice has been given); or showing apartment to government inspectors for the limited purpose of determining housing and fire ordinance compliance by us and to lenders, appraisers, contractors, prospective buyers, or insurance agents.

**29. JOINT AND SEVERAL RESPONSIBILITY.** Each resident is jointly and severally liable for all Lease Contract obligations. If you or any guest or occupant violates the Lease Contract or rules, all residents are considered to have violated the Lease Contract. Our requests and notices (including sale notices) to any resident constitute notice to all residents and occupants. Notices and requests from any resident or occupant (including notices of tenancy termination, repair requests, and entry permissions) constitute notice from all residents. In eviction suits, each resident is considered the agent of all other residents in the apartment for service of process. Security-deposit refunds and deduction itemizations of multiple residents will comply with paragraph 49 (Deposit Return, Surrender and Abandonment).

## Replacements

**30. REPLACEMENTS AND SUBLETTING.** Replacing a resident, subletting, assignment, or granting a right or license to occupy is allowed only when we expressly consent in writing. If departing or remaining residents find a replacement resident acceptable to us before moving out and we expressly consent, in writing, to the replacement, subletting, assignment, or granting a right or any license to occupy, then:

(1) a reasonable administrative (paperwork) and/or transfer fee will be due, and a rekeying fee will be due if rekeying is requested or required; and

(2) the departing and remaining residents will remain liable for all lease obligations for the rest of the original lease term.

**Procedures for Replacement.** If we approve a replacement resident, then, at our option: (1) the replacement resident must sign this Lease Contract with or without an increase in the total security deposit; or (2) the remaining and replacement residents must sign an entirely new Lease Contract. Unless we agree otherwise in writing, your security deposit will automatically transfer to the replacement resident as of the date we approve. The departing resident will no longer have a right to occupancy or a security deposit refund, but will remain liable for the remainder of the original Lease Contract term unless we agree otherwise in writing—even if a new Lease Contract is signed.

## Responsibilities of Owner and Resident

**31. RESPONSIBILITIES OF OWNER.** We'll act with customary diligence to:

(1) keep common areas reasonably clean, subject to paragraph 25 (Conditions of the Premises and Alterations);

(2) maintain fixtures, furniture, hot water, heating and A/C equipment;

(3) comply with applicable federal, state, and local laws regarding safety, sanitation, and fair housing; and

(4) make all reasonable repairs, subject to your obligation to pay for damages for which you are liable.

If we violate any of the above, you may terminate your tenancy and exercise other remedies under state statute only as follows:

(a) You must make a written request for repair or remedy of the condition. Your request must involve a material breach of the Lease Contract, and it must include a description of all needed repairs or actions;

(b) after receiving the request, we have a reasonable time to repair, considering the nature of the problem and the reasonable availability of materials, labor, and utilities; and

(c) if repairs involving a material noncompliance have not been completed within 10 days, or within 5 days if the repairs materially affect your health and safety, you may terminate your tenancy and exercise other statutory remedies.

**32. DEFAULT BY RESIDENT.** You'll be in default if you or any guest or occupant violates any terms of this Lease Contract including but not limited to the following violations: (1) you don't pay rent or other amounts that you owe when due; (2) you or any guest or occupant violates the apartment rules, or fire, safety, health, or criminal laws, regardless of whether or where arrest or conviction occurs; (3) you abandon the apartment; (4) you give incorrect or false answers in a rental application; (5) you or any occupant is arrested, convicted, or given deferred adjudication for a felony offense involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia under state statute; (6) any illegal drugs or paraphernalia are found in your apartment; (7) you or any guest or

occupant engages in any of the prohibited conduct described in paragraph 20 (Prohibited Conduct); or (8) you or any occupant, in bad faith, makes an invalid complaint to an official or employee of a utility company or the government.

**Lease Renewal When A Breach or Default Has Occurred.** In the event that you enter into a subsequent Lease prior to the expiration of this Lease and you breach or otherwise commit a default under this Lease, We may, at our sole and absolute discretion, terminate the subsequent Lease, even if the subsequent Lease term has yet to commence. We may terminate said subsequent Lease by sending you written notice of our desire to terminate said subsequent Lease.

**Eviction.** *Failure to Maintain Unit.* If you default in your obligations to maintain the apartment unit and that default materially affects the health and safety of you or other residents, we may give you 5 days written notice of tenancy termination, and will in that notice describe your acts or omissions that constitute the breach of the Lease Contract. If you cure these breaches within the 5-day deadline, your tenancy will not terminate. Otherwise, we may file for eviction immediately. If there are further incidences of similar types of breaches for which you have been given previous notice, we may file for eviction 10 days after written notification to you of an additional noncompliance of the same or similar nature as the previous noncompliance.

*Irreparable Default.* If your default is material and irreparable, including but not limited to discharging a weapon, homicide, prostitution, criminal street gang activity, or other statutorily proscribed violations, we may deliver you a written notice of immediate tenancy termination and file for eviction immediately.

*Nonpayment of Rent.* If you default for nonpayment of rent, and fail to bring rent current within 5 days after we deliver written notice to you of our intent to terminate your tenancy if rent is not paid within that time, we may terminate your tenancy by filing an eviction action. Accepting money at any time does not waive our right to damages, past or future rent, or other sums owed under the Lease Contract, and accepting partial payment of rent does not

☑ Blue Moon eSignature Services Document ID: 346566363

waive our right to continue with eviction proceedings. We are not required to accept partial payment, but if we do so, you agree to sign a waiver agreement in which you agree to make scheduled payments and agree that we have waived none of our enforcement rights by accepting partial payment.

**Other Default.** If you otherwise default in a manner not described above in this eviction subsection, we may deliver written notice to you that your tenancy will terminate not sooner than 10 days after the receipt of our notice if your breach is not remedied within 10 days. If you fail to cure the breaches outlined in our notice within this 10-day period, we may file for eviction immediately.

**Acceleration.** All monthly rent for the rest of the Lease Contract term or renewal period will be accelerated automatically without notice or demand (before or after acceleration) and will be immediately due and delinquent if, without our written consent: (1) you move out, remove property in preparing to move out, or give oral or written notice (by you or any occupant) of intent to move out before the Lease Contract term or renewal period ends; and (2) you've not paid all rent for the entire Lease Contract term or renewal period. Such conduct is considered a default for which we need not give you notice. Remaining rent also will be accelerated if you're judicially evicted or move out when we demand because you've defaulted. Acceleration is subject to our mitigation obligations below.

**Holdover.** You or any occupant, invitee, or guest must not hold over beyond the date contained in your move-out notice or our notice to vacate (or beyond a different move-out date agreed to by the parties in writing). If holdover occurs, then (1) we may immediately file suit for possession; (2) you will be liable for 2 month's rent or

twice our actual damages, whichever is greater; and (3) at our option, we may extend the lease term—for up to 1 month from the date of notice of lease extension—by delivering written notice to you or your apartment while you continue to holdover.

**Other Remedies.** We may report unpaid amounts to credit agencies. If you default and move out early, you will pay us any amounts stated to be rental discounts in paragraph 10 (Special Provisions), in addition to other sums due. Upon your default, we have all other legal remedies, including tenancy termination and lockout under state statute. Unless a party is seeking exemplary, punitive, sentimental or personal-injury damages, the prevailing party may recover from the non-prevailing party attorney's fees and all other litigation costs. Late charges are liquidated damages for our time, inconvenience, and overhead in collecting late rent (but are not for attorney's fees and litigation costs). All unpaid amounts bear 18% interest per year from due date, compounded annually. You must pay all collection-agency fees if you fail to pay all sums due within 10 days after we mail you a letter demanding payment and stating that collection agency fees will be added if you don't pay all sums by that deadline.

**Remedies Cumulative.** Any remedies set forth herein shall be cumulative, in addition to, and not in limitation of, any other remedies available to Landlord under any applicable law.

**Mitigation of Damages.** If you move out early, you'll be subject to all other remedies. We'll exercise customary diligence to relet and mitigate damages. We'll credit all subsequent rent that we actually receive from subsequent residents against your liability for past-due and future rent and other sums due.

---

## General Clauses

**33. ENTIRE AGREEMENT.** Neither we nor any of our representatives have made any oral promises, representations, or agreements. This Lease Contract is the entire agreement between you and us.

**34. NO AUTHORITY TO AMEND UNLESS IN WRITING.** Our representatives (including management personnel, employees, and agents) have no authority to waive, amend, or terminate this Lease Contract or any part of it, unless in writing, and no authority to make promises, representations, or agreements that impose security duties or other obligations on us or our representatives unless in writing.

**35. NO WAIVER.** No action or omission of our representative will be considered a waiver of any subsequent violation, default, or time or place of performance. Our not enforcing or belatedly enforcing written-notice requirements, rental due dates, acceleration, liens, or other rights isn't a waiver under any circumstances.

**36. NOTICE.** Except when notice or demand is required by statute, you waive any notice and demand for performance from us if you default. Written notice to or from our managers constitutes notice to or from us. Any person giving a notice under this Lease Contract should retain a copy of the memo or letter that was given. All notices must be signed.

**37. MISCELLANEOUS.**
  A. Exercising one remedy won't constitute an election or waiver of other remedies.
  B. Unless prohibited by law or the respective insurance policies, insurance subrogation is waived by all parties.
  C. All remedies are cumulative.
  D. No employee, agent, or management company is personally liable for any of our contractual, statutory, or other obligations merely by virtue of acting on our behalf.
  E. This Lease Contract binds subsequent owners.
  F. Neither an invalid clause nor the omission of initials on any page invalidates this Lease Contract.
  G. All provisions regarding our non-liability and conduty apply to our employees, agents, and management companies.
  H. This Lease Contract is subordinate or superior to existing and future recorded mortgages, at lender's option.
  I. All lease obligations must be performed in the county where the apartment is located.
  J. All discretionary rights reserved for us within this Lease Contract or any accompanying addenda are at our sole and absolute discretion.

**38. WAIVER OF JURY TRIAL.** To minimize legal expenses and, to the extent allowed by law, you and we agree that a trial of any lawsuit based on statute common law, and/or related to this Lease Contract shall be to a judge and not a jury.

**39. CONTACTING YOU.** By signing this lease, you are agreeing that we, our representative(s) or agent(s) may contact you. You agree that we may contact you using any contact information relating to your lease including any number (I) you have provided to us (II) from which you called us, or (III) which we obtained and through which we reasonably believe we can reach you. You agree we may use any means to contact you. This may include calls made to your cellular telephone using an automatic telephone dialing system, artificial or prerecorded voice messages, text messages, mail, e-mail, and calls to your phone or Voice over Internet Protocol (VoIP) service, or any other data or voice transmission technology. You agree to promptly notify us if you change any contact information you provide to us. You are responsible for any service provider charges as a result of us contacting you.

**40. OBLIGATION TO VACATE.** If we provide you with a notice to vacate, or if you provide us with a written notice to vacate or intent to move-out in accordance with paragraphs 3 (Lease Term), and we accept such written notice, then you are required to vacate the Apartment and remove all of your personal property therefrom at the expiration of the Lease term, or by the date set forth in the notice to vacate, whichever date is earlier, without further notice or demand from us.

**41. FORCE MAJEURE.** If we are prevented from completing performances of any obligations hereunder by an act of God, strikes, epidemics, war, acts of terrorism, riots, flood, fire, hurricane, tornado, sabotage, or other occurrence which is beyond the control of the parties, then we shall be excused from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

Furthermore, if such an event damages the property to materially affect its habitability by some or all residents, we reserve the right to vacate any and all leases and you agree to excuse us from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

**42. PAYMENTS.** Payment of all sums is an independent covenant. At our option and without notice, we may apply money received (other than sale proceeds under paragraph 12 (Property Left in Apartment) or utility payments subject to governmental regulations) first to any of your unpaid obligations, then to current rent—regardless of notations on checks or money orders and regardless of when the obligations arose. All sums other than rent are due upon our demand. After the due date, we do not have to accept the rent or any other payments.

**43. ASSOCIATION MEMBERSHIP.** We represent that either: (1) we or; (2) the management company that represents us, is at the time of signing this Lease Contract or a renewal of this Lease Contract, a member of both the National Apartment Association and any affiliated state and local apartment (multi-housing) associations for the area where the apartment is located.

## Columbia Debt Recovery LLC DBA Genesis
## State Disclosures

**TO ALL CONSUMERS – Notice about Electronic Check Conversion:** When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day we receive your payment and you will not receive your check back from your financial institution. Also, you authorize us to represent a check as an electronic fund transfer from your account if your payment is returned unpaid.

**Please be aware of the following rights. This list does not contain a complete list of the rights consumers have under state and federal law.**

**California Residents:** The state Rosenthal Fair Debt Collection Practices Act, and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or http://www.ftc.gov/.

As required by law, you are hereby notified that a negative credit agency report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

**CALIFORNIA COLLECTIONS LICENSE NUMBER: 10771-99**

**Colorado Residents:** The Colorado office of Columbia Debt Recovery is located at 27 North Willerup, Suite B, Montrose, CO 81401, telephone (970) 249-7514. FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE WWW.COAG.GOV/CAR. A consumer has the right to request in writing that a debt collector or collection agency cease further communication with the consumer. A written request to cease communication will not prohibit the debt collector or collection agency from taking any other action authorized by law to collect the debt.

**Minnesota Residents:** This collection agency is licensed by the Minnesota Department of Commerce.

**Maine Residents:** Hours of Operation: M-F 8:00am – 5:00pm PDT; Call toll free (866) 863-9194.

**New York:** Debt collectors, in accordance with the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., are prohibited from engaging in abusive, deceptive, and unfair debt collection efforts, including but not limited to: (i) the use or threat of violence; (ii) the use of obscene or profane language; and (iii) repeated phone calls made with the intent to annoy, abuse, or harass. If a creditor or debt collector receives a money judgment against you in court, state and federal laws may prevent the following types of income from being taken to pay the debt:1. Supplemental security income, (SSI); 2. Social security; 3. Public assistance (welfare); 4. Spousal support, maintenance (alimony) or child support; 5. Unemployment benefits; 6. Disability benefits; 7. Workers' compensation benefits; 8. Public or private pensions;9. Veterans' benefits; 10. Federal student loans, federal student grants, and federal work study funds; and11. Ninety percent of your wages or salary earned in the last sixty days.

**New York City Borough Residents:** Department of Consumer Affairs, City of New York, License # 2095802-DCA. Please contact Hayden Hunter at (866) 863-9194 if you have questions. Para un agente de habla hispana, llame al (877)397-9337 Please see https://www1.nyc.gov/site/dca/index.page for a translation of commonly used debt collection terms in your preferred language.

**North Carolina Residents:** North Carolina Department of Insurance Permit # 119507065 & # 519352683

**Utah Residents:** As required by Utah law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

COLUMBIA DEBT RECOVERY LLC DBA GENESIS
906 SE EVERETT MALL WAY STE 301 EVERETT, WA 98208-3744
TOLL FREE: 866-863-9194 MONDAY-FRIDAY 8AM TO 5PM PST
SEND WRITTEN DISPUTES TO: PO BOX 3630 EVERETT, WA 98213-8630

APRIL 25, 2025

PR1-Account #:0010131188

ROACH,ANDREW DAVID
2900 N BREASWOOD BLVD APT2411
HOUSTON TX 77025

ORIGINAL CREDITOR: KENECT PHOENIX
PLACED FOR COLLECTIONS ON: 01/10/24

| | |
|---|---|
| Original Balance: | $3560.48 |
| Current Principal: | $3560.48 |
| Interest Due: | $459.45 |
| Total Due: | $4019.93 |

ANDREW DAVID ROACH

In reference to your recent request, please find enclosed validation of debt
with KENECT PHOENIX

Should you have any further questions, please contact the undersigned below
or you may email documentation to Compliance@genesiscred.com for review.

Sincerely,

COLUMBIA DEBT RECOVERY LLC DBA GENESIS
(866) 863-9194

This is a communication from a debt collector. This is an attempt to collect
a debt. Any information will be used for that purpose. As of the date of this
letter you owe the amount stated above. Your account bears interest at 010.00
percent per annum. Because interest and other charges vary from day to day,
please contact us to learn the exact amount you owe as of the date of your
payment.

THURSTON COUNTY·
SHERIFF

## CAUSE NO. 2025 JUN 10 AM 9: 16

| | | |
|---|---|---|
| **ANDREW ROACH,** | RECEIVED | § HON. COURT ____ th, |
| *PLAINTIFFS* | § | |
| **V.** | § | **DISTRICT COURT** |
| **COLUMBIA DEBT RECOVERY,** | § | |
| *DEFENDANT* | § | **HARRIS COUNTY, TEXAS.** |

### AFFIDAVIT OF LAST KNOWN ADDRESS OF DEFENDANT(S)

### AND NON-MILTARY STATUS

**BEFORE ME,** the undersigned authority, duly authorized to administer oaths and take acknowledgments, personally appeared, Andrew Roach, who after by me first duly sworn, deposes, and says:

1. I, Andrew Roach, am over the age of eighteen (18) years old, and having personal knowledge of the facts set forth herein, and am competent to testify to the following facts and matters;

2. Plaintiff filed this above styled and numbered Cause with the Harris County District Court of Texas which retains appropriate jurisdiction over this Cause of Action(s) contained and asserted in Plaintiff's Original Petition to this Hon. Court.

3. Columbia Debt Recovery LLC (Doing Business As, 'Genesis') is a Limited Liability Corporation under the governing laws of the State of Washington, USA, with a principal address at 906 SE Everett Mall Way, Suite 301, Everett, WA 98208, with a registration expiration date set for January 31, 2026.

4. Columbia Debt Recovery LLC (Doing Business As, 'Genesis' retains a 'Registered Agent Name': CORPORATION SERVICE COMPANY with the following addresses:
   a. **Street Address:** 300 DESCHUTES WAY SW STE 208 MC-CSCI, TUMWATER, WA, 98501, UNITED STATES.
   b. **Mailing Address:** 300 DESCHUTES WAY SW STE 208 MC-CSCI, TUMWATER, WA, 98501, UNITED STATES.

5. Columbia Debt Recovery LLC (Doing Business As 'Genesis'), is not of military status, governmental entity, or individual but rather a limited liability company under the laws of the State of Washington, as affirmed by the State of Washington Secretary of State. This status was expressly acknowledged and affirmed herein by Plaintiff through diligent governmental record search and verifications. Columbia Debt Recovery LLC; UBI Number: **604 074 740.**

**Further Affiant Sayeth Naught.**                    *[Signature Page Follows]*



**Andrew Roach**



ANDREW ROACH
Notary Public, State of Texas
Comm. Expires 11-02-2027
Notary ID 134630531

*Duly Sworn and Subscribed before me on May 27, 2025.*

**Notary**

ALIA AL QAISSY
Notary ID #132724408
My Commission Expires
February 28, 2029

**State of Texas,**

**County of Harris**

**Personally known to me.**

*Respectfully Submitted.*

*Andrew Roach*

Andrew Roach, Plaintiff, Pro Se,

2917 Lake Forest Dr, Upper Marlboro, MD 20774

P: 424-420-5550 / drewroach37@gmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a correct, true and full copy of the foregoing has been personally served on Defendant(s) and or Defendant(s) authorized Counsel, in Cause 202369852, in this action.

*Respectfully Submitted,*

*Andrew Roach*

Andrew Roach, Plaintiff, Pro Se,

2917 Lake Forest Dr, Upper Marlboro, MD 20774

P: 424-420-5550 / drewroach37@gmail.com

# BUSINESS INFORMATION

Business Name:
**COLUMBIA DEBT RECOVERY, LLC**

UBI Number:
**604 074 740**

Business Type:
**WA LIMITED LIABILITY COMPANY**

Business Status:
**ACTIVE**

Principal Office Street Address:
**906 SE EVERETT MALL WAY, SUITE 301, EVERETT, WA, 98208, UNITED STATES**

Principal Office Mailing Address:
**906 SE EVERETT MALL WAY, SUITE 301, EVERETT, WA, 98208, UNITED STATES**

Expiration Date:
**01/31/2026**

Jurisdiction:
**UNITED STATES, WASHINGTON**

Formation/Registration Date:
**01/10/2017**

Period of Duration:
**PERPETUAL**

Inactive Date:

Nature of Business:
**DEBT COLLECTION AGENCY**

# REGISTERED AGENT INFORMATION

Registered Agent Name:
**CORPORATION SERVICE COMPANY**

Street Address:
**300 DESCHUTES WAY SW STE 208 MC-CSC1, TUMWATER, WA, 98501, UNITED STATES**

Mailing Address:
**300 DESCHUTES WAY SW STE 208 MC-CSC1, TUMWATER, WA, 98501, UNITED STATES**

# GOVERNORS

| Title | Governors Type | Entity Name | First Name | Last Name |
|---|---|---|---|---|
| GOVERNOR | INDIVIDUAL | | WILLIAM P. | WODJAK |

*Andrew Roach v. Columbia Debt Recovery, LLC*

# Exhibit "B"

**HCDistrictclerk.com**    ROACH, ANDREW vs. COLUMBIA DEBT RECOVERY    7/10/2025
(DBA GENESIS)
Cause: 202538552    CDI: 7    Court: 125

## JUDGMENT/EVENTS

| Date | Description | Order Signed | Post Jdgm | Pgs /Page | Volume | Filing Attorney | Person Filing |
|------|-------------|--------------|-----------|-----------|--------|-----------------|---------------|
| 6/2/2025 | ORIGINAL PETITION | | | 0 | | | ROACH, ANDREW |